**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UTICA MUTUAL INSURANCE**
**COMPANY,**

                **Plaintiff,**           **6:13-cv-1178**
                                        **(GLS/TWD)**

       **v.**

**CLEARWATER INSURANCE**
**COMPANY,**

                **Defendant.**
_____

**APPEARANCES:**           **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Cooper, Erving Law Firm         PHILLIP G. STECK, ESQ.
39 North Pearl Street
4th Floor
Albany, NY 12207

Sidley, Austin Law Firm          WILLIAM M. SNEED, ESQ.
One South Dearborn Street
Chicago, IL 60603

**FOR THE DEFENDANT:**
Chadbourne, Parke Law Firm     DAVID M. RAIM, ESQ.
12000 New Hampshire Avenue, NW
Washington, DC 20036

1301 Avenue of the Americas     JOHN F. FINNEGAN, ESQ.
New York, NY 10019            MELISSA K. DEPETRIS, ESQ.

**Gary L. Sharpe**
**Chief Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

# I. **Introduction**

Plaintiff Utica Mutual Insurance Company commenced this diversity action against defendant Clearwater Insurance Company, alleging breach of contract claims and seeking declaratory relief.  (Compl., Dkt. No. 1.)  Pending is Clearwater's motion for partial summary judgment.  (Dkt. No. 35.)  For the reasons that follow, the motion is granted.

# II. **Background**

Before delving into the relevant facts, it is useful first to provide a brief overview of the subject matter of this dispute, including definitions of industry jargon used below.  This case involves reinsurance—a transaction in which "one insurer . . . 'cedes' all or part of the risk it underwrites, pursuant to a policy or group of policies, to another insurer."  *Unigard Sec. Ins. Co. v. N. River Ins. Co.* (*Unigard II*), 4 F.3d 1049, 1053 (2d Cir. 1993) (citations omitted).  In other words, reinsurance is insurance of insurance, the purpose of which "is to diversify the risk of loss."  *Id.*  The insurance company that issues a policy to a policyholder—here, Utica—is called the insurer, the ceding insurer, or the reinsured.  *See generally id.*  Logically, the insurance company that insures the insurer for a share of its liability

under a policy—here, Clearwater—is called the reinsurer.  *Id.*

As pertinent here, one type of reinsurance policy is a facultative reinsurance policy, whereby "a[n] . . . insurer purchases reinsurance for a part, or all, of a single insurance policy."  *Id.* at 1054.  While there are many types of insurance policies, this case concerns liability insurance policies, which typically include a duty on the insurer to both defend and indemnify its policyholder for liability claims.  *See generally Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984).  Below, the court refers to amounts an insurer pays to defend its policyholder as "expenses," and amounts an insurer pays to indemnify its policyholder as "losses."

## A.   <u>Facts</u>[1]

Utica, the insurer, issued a number of primary insurance policies, including general and commercial general liability insurance policies, to Goulds Pumps Inc.  (Def.'s Statement of Material Facts (SMF) ¶ 5, Dkt. No. 35, Attach. 3.)  Utica also issued umbrella policies to Goulds; specifically, as relevant here, Utica issued an umbrella policy effective during the calendar year 1978 (the "1978 Umbrella") and an umbrella policy effective during the calendar year 1979 (the "1979 Umbrella").  (*Id.* ¶ 6.)  The

---

[1]  Unless otherwise noted, the facts are not in dispute.

umbrella policies each have an indemnity liability limit of $25 million excess of primary limits, per occurrence and in the aggregate.  (*Id.* ¶ 8.)

Clearwater, the reinsurer, then agreed to issue facultative reinsurance certificates (the "Certificates") to Utica, and thereby reinsure a portion of Utica's exposure under both the 1978 Umbrella and the 1979 Umbrella.  (*Id.* ¶¶ 9, 10.)  The preamble of both of the Certificates provides that, "[Clearwater],[2] in consideration of the payment of premiums, statements contained in the declarations, and subject to the terms and General Conditions of this certificate does hereby reinsure [Utica as follows]"; the Certificates then go on to state the terms and conditions. (Dkt. No. 35, Attach 2. at 4, 8.)  Notably, the Certificates contain a clause titled "Section D [Clearwater]'s Liability and Basis of Acceptance" (the "Liability Clause"), which identifies the portion of Utica's exposure that Clearwater agreed to reinsure.  (*Id.*)  Specifically, for the 1978 Umbrella, and pursuant to certificate N-21163 (the "1978 Certificate"), Clearwater agreed to reinsure 100 percent of the $5 million layer that exceeds $20

_____

[2] Clearwater was previously known as Skandia America Reinsurance Corporation. (*See generally* Dkt. No. 35, Attach. 2 at 4-6.)  Utica does not dispute the authenticity of either certificate.

million of the underlying policy limit.  (Def.'s SMF ¶ 9; Dkt. No. 35, Attach. 2 at 4.)  For the 1979 Umbrella, and pursuant to certificate N-22001 (the "1979 Certificate"), Clearwater agreed to reinsure 16.6 percent (or $2.5 million) of the $15 million layer that exceeds $10 million of the underlying policy limit.  (Def.'s SMF ¶ 10; Dkt. No. 35, Attach. 2 at 8.)

In or about March 2003, Goulds, which had been named as a defendant in asbestos claims, commenced an action against Utica, seeking a declaration as to Utica's coverage obligations.  (Def.'s SMF ¶ 14.) Around February 2007, Goulds and Utica settled the declaratory judgment action, and, thereafter, Utica began making payments to Goulds, which continue today.  (*Id.* ¶ 15.)  At some point in 2012, Utica began billing Clearwater.  (*Id.* ¶ 16.)

## B.    <u>Procedural History</u>

Utica commenced this action on September 20, 2013, alleging that Clearwater has breached its contractual obligations to Utica under, among other contracts, the 1978 and 1979 Certificates.  (*See generally* Compl.) Following joinder of issue, (Dkt. No. 17), Clearwater filed the now-pending motion for partial summary judgment, seeking a declaration that its liability, if any, under the 1978 and 1979 Certificates is capped at $5 million and

$2.5 million, respectively, (Dkt. No. 35).

## III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion[3]

The sole issue presented by Clearwater's motion is whether Utica can recover defense costs and/or other expense payments in excess of the sums stated in the Liability Clauses in the 1978 and 1979 Certificates—$5 million and $2.5 million, respectively.  Relying on Second Circuit and New York Court of Appeals case law, Clearwater contends that the Liability Clauses establish absolute "limits" on its liability, and "caps the reinsurer's

---

[3] Clearwater contends, and Utica does not disagree, that New York law governs this dispute.  (Dkt. No. 35, Attach. 1 at 3 & n.1.)  The court agrees.  Utica is organized under the laws of New York and has a principal place of business in New York.  (Compl. ¶ 2.)  Further, the 1978 and 1979 Certificates were underwritten and issued by Clearwater from its New York offices, and were then delivered to Utica at its offices in New York.  (Def.'s SMF ¶¶ 4, 11.)  Finally, the 1978 and 1979 Certificates reinsure a risk underwritten by Utica for Goulds, which was, at the time, a New York-domiciled insured.  (*Id.* ¶¶ 6, 7.)  Thus, New York has the most significant relationship to the transactions at issue here, which compels application of New York law.  *See St. Paul Fire & Marine Ins. Co. v. Emp'rs Reins. Corp.*, 919 F. Supp. 133, 136 (S.D.N.Y. 1996); *In re Liquidation of Midland Ins. Co.*, 16 N.Y.3d 536, 543-44 (2011).

overall liability for both indemnity and expenses." (Dkt. No. 35, Attach. 1 at 6-8.)  Utica, however, argues that the court should deny Clearwater's motion because the case law relied upon by Clearwater is inapposite, and Utica has presented an alternative and reasonable interpretation of the Certificates that conflicts with Clearwater's interpretation.  (Dkt. No. 42 at 6-14.)  In the alternative, Utica requests that the court defer ruling on the motion because the language in the Certificates is ambiguous, thus necessitating further discovery and consideration of extrinsic evidence.  (*Id.* at 14-17.)  The court agrees with Clearwater.

Under New York law, if contractual language is clear and unambiguous, the court, as a matter of law, enforces the provisions in accordance with their plain and ordinary meaning.  *See Vintage, LLC v. Laws Constr. Corp.*, 13 N.Y.3d 847, 849 (2009).  Where ambiguity is absent from the contract, extrinsic evidence generally cannot be considered in its interpretation.  *See W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990).  "Ambiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation."  *Brad H. v. City of N.Y.*, 17 N.Y.3d 180, 186 (2011).  Whether an agreement is ambiguous is a question of law answered by the

court.  *See Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009).  And "[w]hen the interpretation of an ambiguous contract depends on extrinsic evidence, it presents a question of fact for a jury."  *Arrow Commc'n Labs., Inc. v. Pico Prods., Inc.*, 219 A.D.2d 859, 860 (4th Dep't 1995); *see Sutton v. E. River Sav. Bank*, 55 N.Y.2d 550, 554 (1982).  Unlike liability insurance policies, reinsurance contracts are not construed against the drafter.  *See British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 81-82 (2d Cir. 2003).

Importantly, the exact question now before the court has been considered and decided by both the Second Circuit and the New York Court of Appeals.  In *Bellefonte Reins. Co. v. Aetna Cas. & Sur. Co.*, 903 F.2d 910, 914 (2d Cir. 1990), *Unigard II*, 4 F.3d at 1070-71, and *Excess Ins. Co. v. Factory Mut. Ins. Co.*, 3 N.Y.3d 577, 583-85 (2004), certificate limit-of-liability provisions that were silent as to whether they were expense-inclusive or -exclusive were deemed to be unambiguously expense-inclusive.  In *Bellefonte*, the Second Circuit reasoned that, where the certificate contained prefatory language reciting that the reinsurer's coverage for losses and expenses was "subject to" the certificate's stated limit, "[a]ny other construction of the reinsurance certificate[] would negate

the . . . *subject to*" provision. 903 F.2d at 914; *accord Unigard II*, 4 F.2d at 1070-71. Further, in *Excess Insurance*, the New York Court of Appeals held that reinsurers "cannot be required to pay loss adjustment expenses in excess of the stated limit in the reinsurance policy," and, in so holding, "follow[ed] the decisions of the United States Court of Appeals for the Second Circuit as expressed in [*Bellefonte* and *Unigard II*]." 3 N.Y.3d at 583. The New York Court of Appeals went even further than the Second Circuit, however, and noted that a facultative reinsurance certificate's stated limit provides an overall cap on the reinsurer's liability unless it expressly states that expenses are excluded from the certificate's limit. *Id.* at 583-84.

Here, as noted above, the preamble of both Certificates provides that Clearwater would reinsure Utica "subject to the terms and General Conditions of th[e] certificate." (Dkt. No. 35, Attach. 2 at 4, 8.) Additionally, both Certificates then go on to identify their terms and conditions. (*Id.*) Importantly, both Certificates contain a Liability Clause, which identifies the portion of Utica's exposure that Clearwater agreed to reinsure—in the 1978 Certificate, "100 [percent] of the layer $5 [million] excess of $20 [million] of the [underlying policy] limit," and in the 1979 Certificate, "16.6 [percent]

($2[.5 million]) of the layer $15 [million] excess of $10 [million] of the [underlying policy] limit." (*Id.*) Further, nowhere in either Certificate does it state that expenses or other costs are excluded from Clearwater's liability. Thus, Clearwater argues, (Dkt. No. 35, Attach. 1 at 6-8), and the court agrees, that the holdings of *Bellefonte*, *Unigard II*, and *Excess Insurance* are directly applicable to the language in the 1978 and 1979 Certificates. *See Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 976 F. Supp. 2d 254, 263-68 (N.D.N.Y. 2013). Nevertheless, the court addresses some of Utica's arguments below.

**A.    Absence of the Word "Limit"**

Utica contends that, because the Certificates do not specifically use the word "limit," but instead use the phrase "[Clearwater]'s Liability and Basis of Acceptance" and describe Clearwater's liability as a "share," *Bellefonte*, *Unigard II*, and *Excess Insurance* do not apply, because, in each of those cases, the certificates at issue used the word "limit." (Dkt. No. 42 at 7-11.) This argument is unpersuasive.

Clearwater's liability is described as a percentage share *of the underlying policy limit*. (Dkt. No. 35, Attach. 2 at 4, 8.) Thus, it logically follows that a percentage share of a policy limit is itself a limit on liability,

despite the absence of the word "limit."  At least one other court has

rejected a similar argument to the one advanced by Utica here.  In

*Continental Casualty Co. v. Midstates Reinsurance Co.*, the insured argued

that the certificate's "'reinsurance assumed' [provision] represents a share

of losses, but not a limit on expenses," and that "because there is no

mention of the word 'limit' . . . there is no reason to find that a limit on

expenses is clearly and unambiguously provided for in the reinsurance

certificate."  No. 2012-CH-42911, 2013 WL 4807551, at *4-5 (Ill. Cir. Ct.

Aug. 29, 2013).  In rejecting the insured's arguments, the court stated that,

"[i]n the reinsurance certificates in [*Bellefonte*, *Unigard II*, and *Excess

Insurance*] . . . there is a negotiated maximum amount of liability provided

for on the face of the reinsurance certificates," and describing the

maximum amount of liability in terms of shares of losses, or failing to

specifically use the word "limit" does not alter the conclusion that total

liability is capped.  *Id.*  Similarly, the Liability Clauses here, titled

"[Clearwater]'s Liability and Basis of Acceptance," represent the maximum

amount of liability that Clearwater agreed to insure, and the fact that the

1978 and 1979 Certificates do not specifically use the word "limit" is of no

moment.[4]

## B.   The Follow-the-Form Clause and the Claims Clause

Next, Utica relies on two clauses set forth in the general conditions section of the Certificates, and argues that its interpretation of those clauses "[h]armonizes" all of the provisions in the Certificates.  (Dkt. No. 42 at 7-9, 11-14.)  The court briefly discusses each clause in turn below.

### 1.   The Follow-the-Form Clauses

First, Utica argues that limiting Clearwater's liability ignores the follow-the-form clauses in the Certificates, "which provide[] the ceding company with reinsurance coverage that matches its policy obligations." (*Id.* at 11-14.)  Because the Second Circuit has already addressed, and rejected, this same argument, little discussion of this point is warranted.

The follow-the-form clauses state that "[Clearwater]'s liability . . . shall follow [Utica]'s liability in accordance with the terms and conditions of the policy reinsured hereunder *except with respect to those terms and/or conditions as may be inconsistent with the terms of this Certificate*."  (Dkt. No. 35, Attach. 2 at 5, 9 (emphasis added).)  In *Unigard II*, the Second

_____

[4] Notably, Shakespeare succinctly resolved a failure to call by name that which something is when he penned, "a rose by any other name would smell as sweet."  William Shakespeare, Romeo and Juliet, act 2, sc. 2.

Circuit held that a follow-the-form clause—which, like the follow-the-form clause here, stated that the liability of the reinsurers was subject to all of the terms and conditions of underlying excess policy, "except as otherwise provided by th[e] Certificate"—did not override the limitation on liability provision in the reinsurance certificate; instead, all other contractual language in the certificate had to be construed in light of the liability cap. 4 F.3d at 1070-71; *see Global Reins. Corp. of Am. v. Century Indem. Co.*, No. 13 Civ. 06577, 2014 WL 4054260, at *6 (S.D.N.Y. Aug. 15, 2014) (noting that follow-the-form clauses are "'structured so that they co-exist with, rather than supplant, the liability cap,'" and "'allowing [these clauses] to override the limitation on liability . . . would strip the limitation clause . . . of all meaning'" (quoting *Bellefonte*, 903 F.2d at 913)). Accordingly, Utica's argument fails.

### 2. The Claims Clause

Utica also contends that the formula set forth in general condition three, the claims clause, demonstrates that Clearwater's liability should not be capped. (Dkt. No. 42 at 4-5, 7-9.) The claims clauses explain how Clearwater's share of losses and expenses are to be calculated. (Dkt. No. 35, Attach. 2 at 5, 9.) Again, Utica's argument is unavailing.

First, in support of its argument that Clearwater's liability should not

be capped at $5 million under the 1978 Certificate, Utica employs an

example, whereby it calculates what Clearwater's liability would be if there

was a hypothetical $22 million loss.  (Dkt. No. 42 at 5.)  After performing

various calculations, Utica concludes that, in its fictional scenario,

Clearwater's total liability would be $3 million, with $2 million representing

its share of loss, and $1 million representing its share of expenses.  (*Id.*)

The court, however, fails to see how this scenario proves Utica's point or

otherwise demonstrates that Clearwater's liability could ever exceed $5

million under the 1978 Certificate.  Indeed, the court is enlightened only to

the extent that it now understands how Clearwater's share of expenses are

to be calculated compared to how its share of loss is to be

calculated—which, frankly, is irrelevant to the question presented.

More importantly, the Second Circuit has already rejected this

argument.

> We read the [certificate's claims clause] merely to
> differentiate the obligations for losses and for
> expenses.  The phrase in no way exempts defense
> costs from the overall monetary limitation in the
> certificate.  This monetary limitation is a cap on all
> payments under the certificate.  In our view, the . . .
> provision merely outlines the different components of

> potential liability under the certificate. It does not indicate that either component is not within the overall limitation.

*Bellefonte*, 903 F.2d at 913. Accordingly, Utica's argument, again, fails.

## C.    Further Discovery

Finally, Utica argues, alternatively, that the court should deny or defer ruling on Clearwater's motion pending further discovery, including the introduction of custom and practice evidence. (Dkt. No. 42 at 14-17.) In support of its argument, Utica cites out-of-Circuit case law for the proposition that "[c]ourts have recognized the need for extrinsic evidence to understand facultative reinsurance contracts, and in particular[,] provisions similar to [the Liability Clause]." (*Id.*)

As discussed above, however, when a contract is unambiguous, as the Certificates are here, extrinsic evidence generally cannot be considered in its interpretation. *See Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 66 (2d Cir. 2010); *W.W.W. Assocs.*, 77 N.Y.2d at 162. Further, consideration of custom or practice evidence is also inappropriate. Indeed, Utica offered the same argument in a recent case in this District, which the court rejected for two reasons. *See Munich*, 976 F. Supp. 2d at 269. First, "*Bellefonte*, *Unigard II*, and *Excess Insurance* did not consider evidence of

custom or practice, thereby suggesting that, at least with respect to a limit-of-liability provision silent as to its coverage of expenses, such evidence should not be relied upon." *Id.* (citations omitted). And second, "Utica's customs-and-practice evidence . . . purports to demonstrate that *Bellefonte*, *Unigard II*, and *Excess Insurance* were erroneously decided, because they established a presumption of cost-inclusiveness at odds with the reinsurance industry's customs and practices." *Id.* However, it is this court's obligation to follow, not second-guess, controlling precedent, which *Bellefonte*, *Unigard II*, and *Excess Insurance* undoubtedly are. *See Cowen & Co. v. Tecnoconsult Holdings Ltd.*, No. 96 CIV. 3748, 1996 WL 391884, at *4 n.3 (S.D.N.Y. July 11, 1996). Accordingly, because the Certificates are unambiguous, the court will not consider extrinsic evidence, or defer ruling on Clearwater's motion pending further discovery.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Clearwater's motion for summary judgment (Dkt. No. 35) is **GRANTED**; and it is further

**ORDERED** that Clearwater's liability, if any, under the 1978 Certificate and 1979 Certificate cannot exceed $5 million or $2.5 million,

respectively; and it is further

**ORDERED** that the parties contact Magistrate Judge Therèse Wiley

Dancks to schedule further proceedings in this matter; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

November 20, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court