**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X
UTICA MUTUAL INSURANCE COMPANY,  :
                                       :       No. 6:13-CV-01178 (GLS/TWD)
                     Plaintiff,       :
      v.                                 :       **ORAL ARGUMENT REQUESTED**
                                         :
CLEARWATER INSURANCE COMPANY,  :       **CONFIDENTIAL**
                                         :       <u>**REDACTED**</u>
                                         :
                   Defendant.     :
---------------------------------------------------------X     June 1, 2015

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

COOPER ERVING & SAVAGE LLP
39 North Pearl Street
Albany, NY 12207
P 518-449-3900

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
P 312-853-7899

*Attorneys for Plaintiff
Utica Mutual Insurance Company*

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................2

    I.      Reinsurance Background. ........................................................................2

    II.    The Contracts at Issue in This Case. ......................................................2

    III.   Treatment of Defense Costs in the Coverage Litigation Between Goulds and
            Utica. .......................................................................................................3

    IV.   The Settlement and Subsequent Litigation. ...........................................5

LEGAL STANDARD .....................................................................................................5

ARGUMENT ..................................................................................................................6

    I.      CLEARWATER MUST DEFER TO UTICA'S INTERPRETATION OF ITS
            OWN UMBRELLA POLICIES. ............................................................6

    II.    THERE IS A PLAUSIBLE BASIS FOR UTICA'S DEFENSE COST
            DETERMINATION. .................................................................................9

         A.    Utica Reasonably Interpreted Its Umbrella Policies to Cover Defense
                Costs...............................................................................................9

         B.    Utica's Position is Consistent with ████████████████ . .10

         C.    Relevant Case Law Support's Utica's Position. ......................11

         D.    Utica's Position is Supported By Its Historical Interpretation of Its
                Umbrella Policies...........................................................................18

         E.    Clearwater's Employees Support Utica's Interpretation. .........19

CONCLUSION ..............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.W. Chesterton Co. v. Northbrook Excess & Surplus Ins. Co.*,
    No. 96-4871, 1999 WL 34804129 (Sup. Ct. Mass. Sept. 29, 1999) ........................................18

*Aetna Cas. & Sur. Co. v. Certain Underwriters*,
    56 Cal. App. 3d 791 (1976) ................................................................................................11, 12

*Am. Special Risk Ins. Co. v. A-Best Prods. Inc.*,
    975 F. Supp. 1019 (N.D. Ohio 1977) ......................................................................................17

*Am. Motorists Ins. Co. v. Trane Co.*,
    544 F. Supp. 669 (W.D. Wis. 1982), *aff'd*, 718 F.2d 842 (7th Cir. 1983) .............................13

*Am. Safety Indem. Co. v. 612 Realty LLC*,
    No. 600347/2004, 2009 WL 2407822 (N.Y. Sup. Ct. Aug. 4, 2009) ......................................16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..............................................................................................................5, 6

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*,
    932 F.2d 442 (5th Cir. 1991) ..............................................................................................14, 16

*British Int'l Ins. Co. v. Seguros La Republica, S.A.*,
    342 F.3d 78 (2d Cir. 2003) ........................................................................................................6

*Cannon Elec., Inc. v. ACE Prop. & Cas. Ins. Co.*,
    No. BC 290354 (Cal. Super. Ct. L.A. Cnty.) ...........................................................................4

*Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*,
    979 F.2d 268 (2d Cir. 1992) ...................................................................................................6, 9

*Commercial Union Ins. Co. v. Swiss Reinsurance Am. Corp.*,
    413 F.3d 121 (1st Cir. 2005) .......................................................................................7, 8, 11, 14

*Continental Cas. Co. v. Roper Corp.*,
    173 Ill. App. 3d 760 (1988) ................................................................................................17, 18

*Garmany v. Mission Ins. Co.*,
    785 F.2d 941 (11th Cir. 1986) ............................................................................................17, 18

*Hartford Acc. & Indem. Co. v. Superior Court*,
    23 Cal. App. 4th 1774 (1994) ..................................................................................................11

*Hartford Accident & Indem. Co. v. Pacific Emp'rs. Ins. Co.*,
    862 F. Supp. 160 (S.D. Tex. 1994) .......................................................................13

*Mentor Ins. Co. (U.K.) v. Brannkasse*,
    996 F.2d 506 (2d Cir. 1993)..............................................................................7, 9

*Mission Nat'l Ins. Co. v. Duke Transp. Co.*,
    792 F.2d 550 (5th Cir. 1986) ..........................................................................14, 16

*N. River Ins. Co. v. CIGNA Reinsurance Co.*,
    52 F.3d 1194 (3d Cir. 1995).................................................................................7

*Nat'l Union Fire Ins. Co. v. Am. Re-Insurance Co.*,
    351 F. Supp. 2d 201 (S.D.N.Y. 2005)......................................................................7

*Pergament Distribs., Inc. v. Old Republic Ins. Co.*,
    128 A.D.2d 760 (N.Y. App. Div. 1987) ............................................................14, 16

*Poller v. Columbia Broad Sys. Inc.*,
    368 U.S. 464 (1962)...........................................................................................6

*R.T. Vanderbilt Co. v. Hartford Accident & Indem. Co.*,
    Case No. X02UWYCV075016321, 2014 WL 1647133 (Sup. Ct. Conn. Mar.
    28, 2014) ..................................................................................................16, 17

*R&Q Reins. Co. v. Utica Mut. Ins. Co.*,
    18 F. Supp. 3d 389, 391 (S.D.N.Y. 2014)................................................................18

*Radar v. Duke Transp. Inc.*,
    492 So.2d 532 (La. Ct. App. 1986)..................................................................14, 16

*Salahuddin v. Goord*,
    467 F.3d 263 (2d Cir. 2006)..................................................................................5

*Schulman Inv. Co. v. Olin Corp.*,
    514 F. Supp. 572 (S.D.N.Y. 1981)........................................................................12

*In re Silicone Implant Ins. Coverage Litig.*,
    652 N.W.2d 46 (Minn. Ct. App. 2002)..............................................................13, 14

*St. Paul Travelers Cos. v. Corn Island Shipyard, Inc.*,
    495 F.3d 376 (7th Cir. 2007) .........................................................................14, 16

*Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp.*,
    419 F.3d 181 (2d Cir. 2005)..................................................................................8

*Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*,
    609 F.3d 143 (3d Cir. 2010)...........................................................................7, 14

*Travelers Indem. Co. v. SCOR Reinsurance Co.*,
   62 F.3d 74 (2d Cir. 1995) ................................................................2, 3, 9

*U.S. Fid. & Guar. Co. v. Am. Re-Insurance Co.*,
   20 N.Y.3d 407 (N.Y. 2013) ...................................................................7

*Unigard Sec. Ins. Co. v. N. River Ins. Co.*,
   79 N.Y.2d 576 (1992) ...........................................................................7

*United States Fire Ins. Co. v. Aspen Bldg. Corp.*,
   367 S.E.2d 478 (Va. 1988)...................................................................13

*Utica Mut. Ins. Co. v. Goulds Pumps, Inc.*,
   No. CA 2003-002721 (Sup. Ct. N.Y. Oneida Cnty.) ............................4

*Viking Pump, Inc. v. Century Indem. Co.*,
   No. 10C-06-141, 2013 WL 7098824 (Del. Super. Ct. Oct. 31, 2013)....................................12

*Wells Fargo Bank v. Cal. Ins. Guar. Ass'n*,
   38 Cal. App. 4th 936 (1995) ................................................14, 15, 16

**Statutes & Other Authorities**

Barry R. Ostrager & Mark Kay Vyskocil, *Modern Reinsurance Law & Practice*
   (3d ed. 2014) .....................................................................................8, 9

David M. Raim & Joy L. Langford, *New Appleman Law Practice Guide* (2007) ........................6

Fed. R. Civ. Proc. 56(a) ...................................................................................5

Thomas S. Novack, *The Defense Obligation of Excess and Umbrella Liability*
   *Policies*, 36 Fall Brief 12 (2006).......................................................17

## INTRODUCTION

In this reinsurance contract dispute, the reinsurer (Defendant Clearwater Insurance Company, "Clearwater") takes issue with the manner in which the reinsured (Plaintiff Utica Mutual Insurance Company, "Utica") construed its own coverage. According to Clearwater, Utica should not have interpreted its 1978-1981 umbrella policies to cover the costs of its policyholder (Goulds Pumps, Inc., "Goulds") in defending covered claims against Goulds. Clearwater presents its argument on the present motion as if this Court's task were to resolve a dispute between Utica and Goulds over the scope of the Utica policies' defense coverage.

This entire approach is misconceived. Clearwater comes to this Court not as the insurer litigating coverage with its policyholder, but as a reinsurer seeking to avoid liability by re-litigating its reinsured's claims determinations. Longstanding principles of reinsurance law prohibit this form of second-guessing: a reinsurer cannot avoid liability by substituting its claims judgment for its reinsured's. Further, this Court does not undertake a *de novo* review of the Utica coverage obligations to Goulds. Rather, as long as there was an arguable basis for Utica's claims determination as to defense costs, it is binding on Clearwater.

The record readily establishes an arguable basis for Utica's claims determination. The plain language of the subject policies, Utica's historical interpretation of its form umbrella language, ███████████████████████████████████, and case law dating back more than 30 years all support Utica's claims determination. Clearwater cannot avoid liability by re-litigating the issue, and this Court should deny Clearwater's Motion for Partial Summary Judgment.

1

**BACKGROUND**

I.      **Reinsurance Background.**

Broadly speaking, reinsurance is insurance for insurance companies. An insurance company that issues a policy buys coverage from another insurer respecting the liability incurred in connection with the policy issued. The insurance company that issues a policy is called the insurer, the reinsured, the ceding company, or the cedent; and this Brief will use the term "reinsured." The party that covers the insurer for a share of its liability under the policy issued is called the reinsurer.

There are two main types of reinsurance contracts: treaty and facultative. A reinsurance treaty is a contract that covers a class of policies issued by the insurer (*i.e.*, all auto policies issued by the insurer in the 2013 calendar year). A facultative reinsurance contract, in contrast, generally covers a single risk or policy. *See Travelers Indem. Co. v. SCOR Reinsurance Co.*, 62 F.3d 74, 76 (2d Cir. 1995).

II.     **The Contracts at Issue in This Case.**

In this case, Utica is the reinsured. Clearwater is the reinsurer, under facultative reinsurance contracts.

Utica issued primary liability insurance policies to its policyholder Goulds for each year from 1955 to 1996, and also issued umbrella policies to Goulds for the periods July 1, 1964 to August 31, 1975, and January 1, 1977 to December 31, 1982. (Dkt. 65-10 ("Clwtr.'s SMF") ¶¶ 5-6.) A primary policy is the initial insurance coverage applicable to a loss, and typically provides coverage until it pays out its limit, or exhausts. Umbrella policies attach over underlying insurance and apply after the underlying coverage pays out its limit.

Each of the Utica umbrella policies effective from 1978-1981 covers defense costs under the following provision:

> With respect to any occurrence not covered by the policies listed in the schedule of underlying insurance or any other insurance collectible by the insured, but covered by the terms and conditions of this policy (including damages wholly or partly within the amount of the retained limit), the company shall: (a) defend any suit against the insured . . . .

(Clwtr.'s SMF ¶ 6.)

Clearwater reinsured four of the Utica umbrella policies issued to Goulds pursuant to facultative reinsurance contracts.  Clearwater reinsured Utica directly in 1978 and 1979 (the "Clearwater Certificates"), and also as a member of a pool of reinsurers managed by Towers, Perrin, Forster & Crosby, Inc. ("TPFC") in 1979, 1980, and 1981 (the "TPFC Memoranda"). (*See* Clwtr.'s SMF ¶ 7.)

## III.    Treatment of Defense Costs in the Coverage Litigation Between Goulds and Utica.

Goulds was a pump manufacturer and became the subject of asbestos bodily injury claims (the "Goulds Claims"). (Clwtr.'s SMF ¶ 8.) Utica defended and indemnified Goulds for the Goulds Claims under its primary insurance policies. (*Id.*)

On February 28, 2003, Utica informed Goulds that the primary policies were exhausted. (Utica's Statement of Additional Material Facts ("Utica's SAMF")  ¶ 1.) Utica explained that when a primary policy exhausted, Utica allocated the excess indemnity and expense to the corresponding umbrella policy. (*Id.*) Utica also explained that the umbrella policies from 1977-1982 "had a defense provision in addition to policy limits," and that Utica would be paying the defense costs allocated to those policies. (*Id.*)[1] This position was consistent with Utica's historical interpretation of its umbrella policy language. (*Id.* ¶¶ 3-5.)

---

[1] By contrast, Utica explained that its umbrella policies from 1964 to 1976 included an obligation to pay defense costs, but with all such payments eroding the limits, based on the different language in those policies. (Utica's SAMF ¶ 2 (explaining that the 1964 to 1976 policies required Utica "[t]o pay on behalf of the insured the ultimate net loss which the insured may sustain by reason of liability imposed upon the insured by law or assumed by the insured under

On February 26, 2003, Goulds added Utica as a defendant to litigation in California respecting coverage for the Goulds Claims. *See Cannon Elec., Inc. v. ACE Prop. & Cas. Ins. Co.*, No. BC 290354 (Cal. Super. Ct. L.A. Cnty.). (Utica's SAMF ¶ 6.) Later in 2003, Utica filed a lawsuit against Goulds in New York, seeking a declaration of its duties under the policies it issued to Goulds. *Utica Mut. Ins. Co. v. Goulds Pumps, Inc.*, No. CA 2003-002721 (Sup. Ct. N.Y. Oneida Cnty.). (Utica's SAMF ¶ 7.)

These coverage actions involved many issues, including a dispute over whether New York or California law would govern Utica's insurance policies. (Utica's SAMF ¶ 8.) Utica and Goulds also contested whether Utica's pre-1977 umbrella policies covered defense costs in addition to the stated limits, or whether the payment of defense costs would erode the stated limits. (*Id.* ¶ 9.) Utica did not contest, however, that the 1978-81 umbrella policies covered defense costs in addition to limits. (*Id.* ¶¶ 1, 9.)

Coverage counsel advised Utica on multiple occasions that ██████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

---

written contract or agreement," where "ultimate net loss" was defined to include all expenses that the insured incurs defending a claim).)

**IV.     The Settlement and Subsequent Litigation.**

The coverage litigation settled in 2007. (Utica's SAMF ¶ 13.) The settlement

agreement ████████████████████████████████████████████████████████

██  ███  Utica has billed Clearwater as its reinsurer on the basis that the umbrella

policies cover defense costs, and now sues to collect all amounts due from Clearwater.

After Goulds settled with Utica, the coverage litigation in California continued, as there

were disputes between Goulds and other insurers, some of which concerned how Utica's

coverage applied. (Utica's SAMF ¶ 15.) The court held a trial respecting some of these disputes

and ruled in January 2014. (*Id.* ¶ 16.) The court held that Utica's umbrella policies should be

interpreted under California law. (*Id.*) During that trial, both Goulds and its insurers interpreted

Utica's umbrella policies to cover defense costs, disputing only whether payment of those costs

eroded the policy limits. (*Id.*)[2]

As of May 31, 2014, Utica had paid $31,281,390.04 in defense costs under the 1979-81

umbrella policies. (Utica's SAMF ¶ 18.) The bill to Clearwater for its share of these defense

costs is $950,229.71, or 3.04% of the total defense.  (*Id.* ¶¶ 17-19.)

## <u>LEGAL STANDARD</u>

A motion for summary judgment may be granted only when "the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. Proc. 56(a). The party moving for summary judgment bears the initial burden

of demonstrating the absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 256 (1986); *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A

genuine issue of material fact is defined as one that could be decided in favor of either party.

---

[2] The court ruled that the defense costs payable under the 1977-83 Utica umbrella policies were
in addition to limits, and did not erode the limits. (Utica's SAMF ¶ 15.)

*Anderson*, 477 U.S. at 249-50. In determining whether there is a genuine issue of material fact, the trial court must assume that the evidence presented by the nonmovant is credible and draw all reasonable inferences therefrom in the nonmovant's favor. *Id.* at 255. All doubts as to the evidence must be resolved in favor of the nonmovant. *Poller v. Columbia Broad Sys. Inc.*, 368 U.S. 464, 473 (1962).

<u>**ARGUMENT**</u>

**I.     CLEARWATER MUST DEFER TO UTICA'S INTERPRETATION OF ITS OWN UMBRELLA POLICIES.**

Clearwater completely ignores the deference due to Utica as a reinsured when it is interpreting its own umbrella policies. As a reinsurer, Clearwater may not substitute its interpretation of the umbrella policies for Utica's, nor may it re-litigate the meaning of those policies.[3] Instead, a reinsurer must "accept the cedent's good faith decisions on *all things* concerning the underlying insurance terms and claims against the underlying insured: coverage, tactics, lawsuits, compromise, resistance or capitulation." *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 85 (2d Cir. 2003) (emphasis added).  This deference is so robust that "a reinsurer is required to indemnify for payments reasonably within the terms of the original policy, *even if technically not covered by it*." *Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.,* 979 F.2d 268, 280 (2d Cir. 1992) (emphasis added) (internal citation omitted).

As commentators have explained, "[a]bsent exceptional circumstances, the ceding insurer's interpretation and application of its policy to the underlying claim cannot be revisited by reinsurers or the courts." *See* David M. Raim & Joy L. Langford, *New Appleman Law Practice Guide* § 40.17 (2007). Thus, this Court does not interpret Utica's umbrella policies

---

[3] This is a statement of the follow the fortunes doctrine. Utica incorporates by reference pages 8-10 of its Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, which explains why the follow the fortunes doctrine is applicable here. (Dkt. 64-2, at 8-10.)

anew; instead, Clearwater must pay if Utica's "good-faith payment is at least arguably within the scope of the insurance coverage that was reinsured." *Mentor Ins. Co. (U.K.) v. Brannkasse*, 996 F.2d 506, 517 (2d Cir. 1993); *see also Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 160 (3d Cir. 2010) ("*INA*") (deferring to the reinsured's decision because it "strikes us as plausible"); *see also Commercial Union Ins. Co. v. Swiss Reinsurance Am. Corp.*, 413 F.3d 121, 127 (1st Cir. 2005) (issue is not whether reinsured's interpretation was correct, as "reinsurer must abide by [reinsured's] 'good-faith payment' so long as it is 'arguably within the scope of the insurance coverage'.").

Reinsurers have "little room to dispute the reinsured's conduct of the case." *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 79 N.Y.2d 576, 583 (1992). The reinsurance industry could not operate effectively without granting substantial deference to reinsureds, because "[t]o review each decision de novo would invite long litigation over complex issues that courts may not be well equipped to resolve, creating cost and uncertainty and making the reinsurance market less efficient." *U.S. Fid. & Guar. Co. v. Am. Re-Insurance Co.*, 20 N.Y.3d 407, 419 (N.Y. 2013) ("*USF&G*"). Accordingly, courts apply a standard that "is purposefully low" and which ensures that "the decision-making process of the ceding insurer is <u>not</u> subject to a *de novo* review." *Nat'l Union Fire Ins. Co. v. Am. Re-Insurance Co.*, 351 F. Supp. 2d 201, 208 (S.D.N.Y. 2005) (emphasis added); *see also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1211 (3d Cir. 1995) ("the [follow the fortunes] doctrine forecloses courts from conducting *de novo* review of dispositions of coverage disputes between insurers and their insureds for the benefit of reinsurers").

Because this Court is not engaging in a *de novo* review of Utica's policy interpretation, Clearwater's lengthy discussion of the obligation to enforce unambiguous contractual terms as

written is simply irrelevant. (*See* Dkt. 65-9, ("Clwtr.'s Mem.") at 8-10.) With respect to Utica's interpretation of its contracts with Goulds, Utica's decisions are unassailable so long as there was any plausible basis to support them. Clearwater's arguments about whether Utica's contracts with Goulds are "unambiguous" are simply a red herring. The issue is not whether Utica "correctly" interpreted its policies to Goulds (according to Clearwater), but whether there was any arguable basis for Utica's interpretation. *Commercial Union Ins. Co. v. Swiss Reinsurance Am. Corp.*, 413 F.3d 121, 127 (1st Cir. 2005).

Clearwater tries to escape this bedrock principle by citing various authorities to the effect that the doctrine does not apply when the reinsured has no liability to the policyholder. (*See* Clwtr.'s Mem. at 20-21.) But those authorities do not concern competing interpretations of coverage. Rather, they involve a narrow exception that reinsurers need not indemnify a reinsured's *ex gratia* payments, *i.e.*, payments for "a loss falling squarely outside the scope of coverage afforded by the reinsured policy." *See* Barry R. Ostrager & Mary Kay Vyskocil, *Modern Reinsurance Law & Practice* § 4.02 (3d ed. 2014) ("The scope of the facultative reinsurer's obligation to pay a ceded loss is largely defined by the 'follow the fortunes' doctrine [collecting cases] . . . . However, the reinsurer is not obligated to pay for *ex gratia* losses, *i.e.*, losses that are clearly not covered under the original policy."); *id.* § 7.01. The *ex gratia* principle protects reinsurers from indemnifying payments that are pure gifts to the policyholder, made for gratuitous reasons.

The Second Circuit has explained exactly how narrow this exception is, likening its application to a situation where the reinsured had allocated an asbestos loss "to an entirely unrelated set of policies, for instance, policies providing dental insurance." *Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp.*, 419 F.3d 181, 194 (2d Cir. 2005). The sources that

Clearwater cites confirm the narrowness of the rule. *See* Kenneth Thompson, *Reinsurance* 277 (4th ed. 1996) (explaining that the rule means that the ceding company cannot "remit payment of premium by the insured" or "pay under a fire policy for a loss due to burglary" and still expect the reinsurer to pay). A payment is not *ex gratia* if the payment is "'arguably' or 'reasonably' within the scope of coverage afforded by the reinsured policy." *See Mentor Ins. Co. (U.K.) v. Brannkasse*, 996 F.2d 506, 517 (2d Cir. 1993); *Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 280 (2d Cir. 1992); Ostrager & Vyskocil, *Modern Reinsurance Law & Practice,* § 7.01. If the standard were otherwise, then reinsureds would have no protection from rank second-guessing of all of their coverage decisions, as a reinsurer could always argue that it has a *theory* whereby the reinsured could have avoided payment to the policyholder, if it had only pursued a particular interpretation, defense, or exclusion, thus supposedly rendering any payment to the policyholder *ex gratia*. Thus, Clearwater's summary judgment motion fails if there is any plausible basis for Utica's interpretation of the umbrella policies.

## II.     THERE IS A PLAUSIBLE BASIS FOR UTICA'S DEFENSE COST DETERMINATION.

Utica's defense cost determination was plausible for at least five reasons.  The plain language of the umbrella policies, ██████████████████████████ the relevant case law, Utica's historical practice, and the admissions of Clearwater's own employees all support Utica's interpretation.

### A.     Utica Reasonably Interpreted Its Umbrella Policies to Cover Defense Costs.

Utica reasonably interpreted the plain language of the 1978-81 umbrella policies to provide a defense obligation. The policies provide in the preamble to Section II that:

> With respect to any occurrence not covered by the policies listed in the schedule of underlying insurance or any other insurance collectible by the insured, but covered by the terms and conditions of this policy (including damages wholly or

partly within the amount of the retained limit), the company shall: (a) defend any
suit against the insured . . . .

(Clwtr.'s SMF ¶ 6.) A straightforward interpretation of this language is that, once the primary

policies exhaust, any occurrence leading to a claim against the umbrella policy is no longer

"covered by" the underlying policies. Such an occurrence would then fall within the umbrella

policies' defense provision.

Clearwater's alternative reading is that an occurrence is still "covered by" the underlying

policies, even when the underlying policies are exhausted and have no obligation for the

occurrence. This interpretation is in tension with common sense, which dictates that if an insurer

has no obligation to pay a loss under its policy, then that loss is not "covered" under the policy.

Clearwater relies heavily on subsection (h) of Section II, which states that "this policy

does not apply to defense costs covered by policies of underlying insurance." (*Id.*) This reliance

is misplaced because the provision merely reiterates the statement in the preamble that the

umbrella policy covers only defense costs that are not covered by underlying insurance. It does

not change the plausibility of Utica's common-sense reading of the term "covered by," which is

that a loss is "covered by" a policy only if the loss is owed under the terms of that policy.

    **B.**    **Utica's Position is Consistent with** ███████████████████████.

███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

## C.      Relevant Case Law Support's Utica's Position.

Utica's position is also consistent with relevant case law, particularly under California and New York law, which were potentially applicable to Utica's umbrella policies. In contrast, the cases that Clearwater cites have no bearing on whether Utica's interpretation was plausible.

### 1.      Ample Case Law Interprets "Covered By" In Accordance with Utica's View.

Goulds argued in the underlying coverage litigation that California law governed Utica's policies. (Utica's SAMF ¶ 8.) Under California law, an insurer's duty to defend is implied in law, such that "an excess carrier has a duty to defend after the primary coverage is exhausted unless the excess policy provides to the contrary." *Hartford Acc. & Indem. Co. v. Superior Court*, 23 Cal. App. 4th 1774, 1779-80 (1994). To overcome this presumption, the excess policy must explicitly and clearly state that coverage for defense costs is omitted:

> Nonetheless  the law imposes an implied obligationo defend where it is not expressly and clearly omitted from the particular risk. The legion of cases holding insurance carriers to the duty to defend, settle and otherwise deal with and for the insured, imposes duties implied by law in addition to the duties expressly bargained for and set forth in the written contracts of insurance. . . . This is but another way of stating the rule that if the exclusion is unclear or uncertain and is reasonably to be expected by the insured the obligation will be implied by law and included as part of the agreement of insurance.

*Aetna Cas. & Sur. Co. v. Certain Underwriters*, 56 Cal. App. 3d 791, 800 (1976).

Even assuming that Utica's umbrella policies were unclear on the subject, the California law presumption required Utica to pay defense costs. Utica's coverage counsel ████████████

████████████████████████████████████████████████

███████. *See* Dkt. 64-59, at UTICA_0000462-469; *see also id.* at UTICA_0000467

████████████████████████████

New York law similarly supported a Utica defense obligation under the umbrella policies. For example, in *Schulman Investment Co. v. Olin Corp.*, 514 F. Supp. 572, 576 (S.D.N.Y. 1981), the court interpreted policy language obligating the insurer to defend "with respect to any occurrence not covered by the underlying policies." The court stated that under that language, "[t]here may come a point at which the potential liability of the insured is so great that the excess carrier is required to participate in the defense despite any contractual provision disclaiming coverage of expenses covered by other policies." *Id.* at 577. This statement means that the *threat* of underlying exhaustion can lead to the higher layer policy being triggered for defense coverage.

In *Viking Pump, Inc. v. Century Indemnity Co.*, No. 10C-06-141, 2013 WL 7098824, at *23 (Del. Super. Ct. Oct. 31, 2013), the court interpreted a provision in an umbrella policy calling for a defense with respect to personal injury "covered under this policy (or which would be covered but for the Insured's retention as stated in the declarations), but not covered under any underlying policy or any other Insurance." Applying New York law, the court held that the umbrella policy covered defense costs after the limits of the underlying policy were exhausted.

Clearwater addresses this case in a footnote, claiming that it is distinguishable based on a parenthetical appearing in the policy language at issue in the case ("or which would be covered but for the Insured's retention as stated in the declarations"). (Clwtr.'s Mem. at 19 n.5.) That purported distinction fails, as the Utica policies at issue include essentially the same parenthetical ("including damages wholly or partly within the amount of the retained limit"). The

parenthetical is a sideshow. The basis for the court's decision was that a loss was "not covered" by underlying policies that had exhausted.

Case law from other jurisdictions confirms the plausibility of Utica's interpretation of the defense language in its umbrella policies. In *American Motorists Insurance Co. v. Trane Co.*, 544 F. Supp. 669, 692 (W.D. Wis. 1982), *aff'd*, 718 F.2d 842 (7th Cir. 1983), the court construed policy language requiring a defense "with respect to any occurrence not covered by" the underlying policies. The court interpreted the language to mean that the umbrella insurer must provide a defense if "the monetary limits of the underlying policy are exceeded." *Id.*

In *United States Fire Insurance Co. v. Aspen Building Corp.*, 367 S.E.2d 478, 479 (Va. 1988), the Virginia Supreme Court interpreted language covering defense costs "'[w]ith respect to any occurrence not covered, as warranted, by the underlying policies.'" The court explained that "[b]ecause Aspen's exposure exceeded [the] $ 50,000 [limit in the primary policy], the 'occurrence' was 'not covered, as warranted, by the underlying policies.'" *Id.*

To the same effect is *Hartford Accident & Indemnity Co. v. Pacific Employers Insurance Co.*, 862 F. Supp. 160, 164 (S.D. Tex. 1994), where the court interpreted a provision stating that the excess policy did not cover expenses "for which insurance is provided in the primary insurance." According to the court, this provision "merely states that [the excess insurer] does not have to pay the expenses for which [the primary insurer] is obligated *while its initial limits have not been met*." *Id.* at 164-65 (emphasis added). After that point, the excess insurer was obligated to pay defense costs. *Id.* at 165.

Finally, the excess policy at issue in *In re Silicone Implant Insurance Coverage Litigation*, 652 N.W.2d 46, 64 (Minn. Ct. App. 2002), stated that it did "not apply to any expenses for which insurance is provided in the primary insurance." The court held that this

language "does not clearly exclude payment of defense costs and a reasonable person would not understand that it did." *Id.* at 65.

All of these cases support the plausibility of Utica's interpretation that its umbrella policies covered defense costs.

## 2.      Clearwater's Cases Are Inapposite.

Given the proper standard, it does not matter if Clearwater can cite cases purportedly supporting its interpretation of the Utica umbrella language, as the issue is not whether Utica's interpretation was correct but whether there was a plausible basis for it. *INA*, 609 F.3d 143, 160 (3d Cir. 2010); *Commercial Union Ins. Co. v. Swiss Reinsurance Am. Corp.*, 413 F.3d 121, 127 (1st Cir. 2005). The case law cited above, which shows ample precedent supporting Utica's interpretation, readily establishes a plausible basis.

Even so, Clearwater's case law supposedly contradicting Utica's interpretation falls wide of the mark. Most of Clearwater's cases do not even address the question of whether an occurrence is "not covered" by a primary policy after its limits have exhausted. Instead, they address the entirely separate question of whether an occurrence is "not covered" when the underlying insurer is insolvent and cannot meet its obligations under the policy. *See St. Paul Travelers Cos. v. Corn Island Shipyard, Inc.*, 495 F.3d 376, 383-86 (7th Cir. 2007) (primary insurer was insolvent and would have provided unlimited coverage for loss at issue); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 446-47 (5th Cir. 1991) (primary insurer was insolvent and had not exhausted primary limits); *Mission Nat'l Ins. Co. v. Duke Transp. Co.*, 792 F.2d 550 (5th Cir. 1986) (primary insurer was insolvent); *Wells Fargo Bank v. Cal. Ins. Guar. Ass'n*, 38 Cal. App. 4th 936, 944-49 (1995) (underlying excess insurer was insolvent and had not exhausted limits); *Radar v. Duke Transp. Inc.*, 492 So.2d 532, 533 (La. Ct. App. 1986) (primary insurer was insolvent); *Pergament Distribs., Inc. v. Old Republic Ins. Co.*,

128 A.D.2d 760, 760-61 (N.Y. App. Div. 1987) (primary insurer was insolvent and had not exhausted primary limits). Whether an insurer has the money to pay what is owed under its policy is distinctly different than whether it owes under its policy.

This distinction is key, because all of Clearwater's "insolvency" decisions rely on the principle that an excess insurer does not generally insure against a primary insurer's insolvency, which is unrelated to the characteristics of the underlying loss. *See, e.g.*, *Wells Fargo*, 38 Cal. App. 4th at 949 ("[A]n insured may not 'reasonably expect' that an umbrella insurer will automatically assume the risk of the underlying insurer's insolvency. . . . Such [umbrella] coverage is not intended to insure against the underlying insurer's insolvency."). In contrast, the risk that losses will exhaust the primary limits is exactly what the umbrella insurer is agreeing to insure against. An umbrella insurer with Utica's language thus can "reasonably expect" to cover defense after the primary limits are exhausted. Utica's interpretation of the "not covered by" language tracks this reality, further bolstering its plausibility.

Given the reasoning underlying the "insolvency" cases, it is no surprise that the language of those cases actually supports Utica's position. For example, the Fifth Circuit in *Arkwright* drew a distinction between primary insurance that is "covered" versus primary insurance that is "collectible" or "recoverable":

> When an excess insurer uses the term "collectible" or "recoverable" it is agreeing to drop down in the event the primary coverage becomes uncollectible or unrecoverable; on the other hand, when an excess insurer uses the term "covered" or "not covered," it is agreeing to drop down only in the event that *the terms of the underlying policy* do not provide coverage for the occurrence or occurrences in question.

*Arkwright*, 932 F.2d at 446-47 (emphasis added). A policy limit is one of "the terms of the underlying policy" that limits coverage, and so under this interpretation, an exhausted primary policy does not provide coverage at all. That is the exact point supporting Utica's interpretation.[4]

Clearwater misstates the holding in *American Safety Indemnity Co. v. 612 Realty LLC*, No. 600347/2004, 2009 WL 2407822, at *5 (N.Y. Sup. Ct. Aug. 4, 2009). According to Clearwater, this case supports the view that a loss can be "covered" by a policy that is exhausted. (Clwtr.'s Mem. at 11.) But *American Safety* actually held the opposite: that a loss is *not covered* by a policy after exhaustion. *Am. Safety*, 2009 WL 2407822, at *5. Specifically, the court considered the extent of indemnity (rather than defense) coverage under an excess policy provision stating that "if underlying insurance does not cover damages, for reasons other than exhaustion of applicable limits of insurance by payment of claims, then we will not cover such damages." The very language used in that policy recognized that an exhausted policy no longer covers a claim. The court held that under this language, the excess insurer "*is obligated* to indemnify . . . for any damages that are *in excess of the underlying* … policy." *Id.* (emphasis added). The case actually supports Utica's position.

Clearwater relies on several cases that it represents as involving "virtually identical" policy language. But the language in each of these cases was not identical. For example, in *R.T. Vanderbilt Co. v. Hartford Accident & Indemnity Co.,* Case No. X02UWYCV075016321, 2014 WL 1647133, at *1 (Sup. Ct. Conn. Mar. 28, 2014), the umbrella policy provided for two separate coverages. The "not covered by" language applied only to Coverage B, whereas

---

[4] Clearwater's other "insolvency" cases similarly rely on this distinction between insurance that is "collectible" and insurance that "covers" a loss, a distinction that supports Utica's position. *See St. Paul*, 495 F.3d at 386; *Mission Nat'l*, 792 F.2d at 552-53; *Wells Fargo*, 38 Cal. App. 4th at 948; *Radar*, 492 So.2d at 535-36 (La. Ct. App. 1986); *Pergament Distribs.*, 128 A.D.2d at 761.

Coverage A included language expressly applying when the underlying policy had been exhausted. Because Coverage A applied when the primary policy was exhausted, the court concluded that Coverage B did not apply in that situation, and that under the language of that particular umbrella policy, an occurrence would be considered "covered" by the primary policy even after exhaustion. The court based its holding on the contrast between Coverage A and Coverage B. *Id.* at *5 (relying on "the manner in which Coverage A specifies situations of primary policy exhaustion while Coverage B does not").

Utica's 1978-81 umbrella policies have no separate provision addressing a situation when the underlying policies are exhausted. Thus, *R.T. Vanderbilt* has no application. Given that exhaustion of the underlying policy is a classic situation in which umbrella policies might apply and therefore it would be logical to expect an umbrella policy to address this situation somewhere, a reasonable conclusion is that the "not covered by" language in the Utica umbrellas addresses the situation when the underlying policy is exhausted.

Several other cases Clearwater cites also involve umbrella policies with separate provisions explicitly addressing primary exhaustion, and thus are distinguishable on the same basis. *See Garmany v. Mission Ins. Co.*, 785 F.2d 941, 943 (11th Cir. 1986) (basing its holding on "[t]hese two clauses, *when read in tandem*" (emphasis added)); *Am. Special Risk Ins. Co. v. A-Best Prods. Inc.*, 975 F. Supp. 1019, 1025 (N.D. Ohio 1977) (contrasting the "not covered by" language with "Condition 5" of the umbrella policy, which "refers to the Company's liability as being in excess of 'the applicable limits of the policies of underlying insurance,' i.e. exhaustion of the primary policy"); *Continental Cas. Co. v. Roper Corp.*, 173 Ill. App. 3d 760, 764 (1988) (accepting the insurer's argument that "Coverage A and B are mutually exclusive"); *see also* Thomas S. Novack, *The Defense Obligation of Excess and Umbrella Liability Policies*, 36 Fall

17

Brief 12, 15 (2006) (commenting that the outcomes of *Garmany, Roper*, and *A-Best Products* were "strictly limited to the policy language of those cases," and represent an "anomalous conclusion result[ing] from the peculiar policy language of the cases," and that "[i]t is possible . . . that the same provision in another policy might have a broader meaning than merely fact of coverage"). None of these cases supports Clearwater's interpretation of the language in Utica's umbrella policies, which lacks a separate clause addressing primary exhaustion.

Clearwater's last case is an unpublished opinion from a Massachusetts trial court applying Massachusetts law that addressed the meaning of the "not covered by" language only in *dicta*. *A.W. Chesterton Co. v. Northbrook Excess & Surplus Ins. Co.*, No. 96-4871, 1999 WL 34804129, at *14 (Sup. Ct. Mass. Sept. 29, 1999). The basis for the court's holding that the umbrella carriers need not cover defense costs was that the insured had not demonstrated that the underlying policies were exhausted. *Id.* This holding has nothing to do with the "not covered by" language. *A.W. Chesterton* does not undermine Utica's interpretation of its umbrella policies.[5]

**D.    Utica's Position is Supported By Its Historical Interpretation of Its Umbrella Policies.**

Utica's position on defense costs is supported by its historical interpretation of the defense costs, as shown by the un-rebutted testimony of several Utica employees:

- Utica's in-house counsel Kristen Martin testified that Utica's position on the defense cost provision predated Utica's dispute with Goulds, and that Utica

---

[5] Clearwater also errs by suggesting that the ruling of the arbitration panel in Utica's dispute with R&Q Reinsurance Company is somehow relevant. In that case, the panel held that "*the facultative certificates* reinsuring the 1978-1982 inclusive umbrella policies issued by Utica to Goulds do not cover defense costs." *R&Q Reins. Co. v. Utica Mut. Ins. Co.*, 18 F. Supp. 3d 389, 391 (S.D.N.Y. 2014) (emphasis added).  As thus stated, the panel's ruling concerned the coverage under the reinsurance contracts at issue and not the issue Clearwater has raised, which is whether the umbrella policies themselves covered defense costs. The pertinent language of R&Q's facultative certificates is unknown. The panel's ruling regarding R&Q's facultative certificates has no bearing on this case.

"absolutely" applied the same position consistently to all policyholders with similar language in their umbrella policies. (*See* Utica's SAMF ¶ 3.)

- Utica's underwriter John Griffin, who underwrote for Utica for "most of the time" between 1974 and 2014, stated that his understanding was "[t]hat the umbrella policy would provide defense." (Utica's SAMF ¶ 4.)

- Utica's General Counsel Richard Creedon, who had been at Utica since 1998, testified that Utica's interpretation of the umbrella policies' defense provision was a "long-standing policy" and that "it had just been a practice that we had adopted for some time that we had sold this as a vertical tower of coverage, providing indemnity and defense on commitments."  (Utica's SAMF ¶ 5.)

The court in the California coverage litigation also confirmed Utica's historical position, holding that "Utica's course of performance" was to interpret the umbrella policies to cover defense costs in addition to the umbrella limits. (Utica's SAMF ¶ 16.)

In light of these facts, Clearwater's suggestion that Utica's payment of defense costs under the umbrella policies was an *ex gratia* payment somehow designed to enhance its bargaining position (Clwtr.'s Mem. at 7 n.4) is absurd. As the evidence discussed above shows, Utica's position on defense coverage was longstanding and principled.

### E. Clearwater's Employees Support Utica's Interpretation.

Both Clearwater witnesses Laura McCaffrey and Albert Ruhlmann agreed with the principle underlying Utica's interpretation. Ms. McCaffrey was the Clearwater claims handler responsible for handling the Goulds claim. (Utica's SAMF ¶ 20.) During her deposition, she was asked "[i]f a primary is exhausted it no longer covers a claim, is that correct?" She responded, "I would say yes." (*Id.*) Mr. Ruhlmann was an underwriter at Clearwater's predecessor from 1978-80 when the Clearwater Certificates and the TPFC Memoranda were underwritten. (*Id.* ¶ 21.) Mr. Ruhlmann was asked in his deposition "if a primary policy is not paying out any additional limits, any loss presented to it is not covered by that primary?" (*Id.*) Mr. Ruhlmann confirmed: "That's correct." (*Id.*)

Clearwater's own employees thus confirm the plausibility of Utica's interpretation that a loss submitted to an exhausted primary policy is "not covered by" that policy. There is no basis for summary judgment in favor of Clearwater.

## CONCLUSION

For the reasons stated above, this Court should deny Clearwater's Motion for Partial Summary Judgment, and instead grant Utica's Motion for Summary Judgment with respect to whether Utica's interpretation of its umbrella policies to cover defense costs is binding on Clearwater (Dkt. 64-1).


DATED:        June 1, 2015


                                        Respectfully submitted,


                                        By: */s/ William M. Sneed*
                                              William M. Sneed

Phillip G. Steck
COOPER ERVING & SAVAGE LLP
39 North Pearl Street
Albany, NY 12207
P 518-449-3900
psteck@coopererving.com

William M. Sneed
Thomas D. Cunningham
Daniel R. Thies
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
P 312-853-7899
wsneed@sidley.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 1, 2015, a copy of the foregoing was electronically filed with the

Clerk of the U.S. District Court for the Northern District of New York using the CM/ECF

system, which sent notification of such filing to the attorneys listed below:

John F. Finnegan
Melissa DePetris
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

David M. Raim
Chadbourne & Parke LLP
1200 New Hampshire Avenue, NW
Washington, District of Columbia 20036

By: <u>*/s/ William M. Sneed*</u>
           William M. Sneed