## NORTON ROSE FULBRIGHT

January 17, 2019

**By ECF**

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
United States

Hon. Gary L. Sharpe,
  Senior U.S. District Judge
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 11207

**John F. Finnegan**
**Partner**
Direct line +1 212 408 5180
john.finnegan@nortonrosefulbright.com

Tel +1 212 408 5100
Fax +1 212 541 5369
nortonrosefulbright.com

Re:   Utica Mutual Ins. Co. v. Clearwater Ins. Co.
      6:13-cv-01178-GLS-TWD

Dear Judge Sharpe:

We write to advise the Court of an unusual situation and to seek the Court's guidance as to how to proceed. In a nutshell, Clearwater and Utica had been working together to craft a joint status report and, when all remained to be done was for Utica to draft its responses to Clearwater's inserts setting forth Clearwater's positions, Utica's counsel unilaterally withdrew from the agreed-upon process and filed a status report solely on behalf of Utica. We now recite the facts in greater detail, following which we propose two possible solutions for the Court's consideration.

On January 2, 2019, the Court issued a text order soliciting the parties' views on two topics (the "Topics") and directing the parties to file a joint status report on or before January 17, 2019. The parties' lawyers discussed the Topics and related matters, and agreed upon a format and schedule for preparing the joint status report. More particularly, the parties agreed that:

1) On January 15, 2019, on or before noon, Utica's counsel would send Clearwater's counsel a draft report setting forth (i) the areas of the parties' agreement and disagreement and (ii) Utica's position on any matter in controversy. The draft report would leave placeholders for Clearwater to insert its position on the matters in controversy.

2) On January 16, 2019, on or before 5:00 p.m., Clearwater's counsel would send Utica's counsel a revised version of the draft report adding in Clearwater's position on matters in controversy and proposing edits, if any, to language jointly proffered by the parties.

3) On January 17, 2019, Utica would file a final copy of the report with the Court, having added to it, if Utica elected to do so, supplemental comments responsive to Clearwater's positions.

*Norton Rose Fulbright and Chadbourne & Parke – A Powerful Combination*

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

CPAM: 33611050.1

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

Hon. Gary L. Sharpe,
January 17, 2019
Page 2

NORTON ROSE FULBRIGHT

In accordance with this agreement, on January 15th, Utica provided Clearwater with a draft joint status report and, on January 16th, Clearwater sent Utica a revised draft.  After reviewing the revised draft, which set forth Clearwater's positions in Clearwater's own words, Utica's counsel baulked and insisted that Clearwater substantially revise the substance of one of the two entries captioned "Clearwater's position."  Clearwater declined to do so, believing it was entitled to state its position on an important issue in the manner it thought appropriate.  Utica's counsel persisted and advised Clearwater that if Clearwater did not relent, Utica would file with the Court a report that set forth merely Utica's position.  In Utica's counsel's words: "[We] plan to file a Status Report tomorrow on behalf of Utica.  Since this will not be a Joint Status Report, we won't include text that purports to come from Clearwater."

Regrettably, Utica's counsel has now made good on its threat.  Earlier today, Utica filed a report with the Court that does not include Clearwater's positions as drafted by Clearwater.  In fact, the report filed by Utica avoids altogether a meaningful discussion of the one and only substantive point of contention between the parties.

One possible solution to the present situation -- in which only one party's views are now before this Court -- is for the Court to authorize Clearwater to file the revised draft that it returned to Utica's counsel on January 16, 2019.   We attach a copy of that draft report (without signature pages) to assist the Court in deciding next steps.  This document, unlike what Utica filed earlier today, contains both Utica's positions, in Utica's own words, and Clearwater's positions, in Clearwater's own words.   It also contains language mutually acceptable to both parties.  Another potential solution is for the Court to direct Utica to add to the January 16th draft any supplemental comments Utica might have and to file, as the Court originally had requested, a joint status report on or before a date to be selected by the Court.

We await your instructions.


Respectfully,

John F. Finnegan


JF/ls

To: All Counsel of Record (By ECF)

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

UTICA MUTUAL INSURANCE COMPANY, :    **SIDLEY DRAFT @ 1/15/19 with NRF**
                                           :    **edits and additions @ 1/16/19**

            Plaintiff,       :       No. 6:13-cv-01178 (GLS/TWD)

      v.                                :

                                               :

CLEARWATER INSURANCE COMPANY,   :

                                               :

            Defendant.      :       January 17, 2019

------------------------------------------------------------X

## JOINT STATUS REPORT

On January 2, 2019, the Court issued a text order directing the parties to submit a joint

status report addressing (1) whether the court should resolve the meaning of "not covered by"

based on the parties previously-filed summary judgment papers or permit supplemental briefing,

and (2) all outstanding issues to be resolved at trial. (Dkt. 139.) Plaintiff, Utica Mutual Insurance

Company ("Utica"), and Defendant, Clearwater Insurance Company ("Clearwater"), have

conferred on these issues and provide the following joint report.

**I.**      **Whether the court should resolve the meaning of "not covered by" based on the**
           **parties previously-filed summary judgment papers or permit supplemental briefing.**

The parties agree that the court should permit supplemental briefing on the meaning of

"not covered by" in the Utica umbrella policies, but disagree as to the appropriate timing of this

briefing. Utica proposes that simultaneous supplemental briefs and reply briefs be filed February

8 and March 1, 2019, respectively. Clearwater proposes that supplemental briefing be conducted

only after the Honorable Brenda K. Sannes issues a post-trial decision in *Utica Mutual Insurance*

*Company v. Munich Reinsurance America, Inc.*, Nos. 12-CV-196, 13-CV-743 (N.D.N.Y) ("the

Munich Re case")*.* Judge Sannes earlier determined in the Munich Re case that the "not covered

by" language was ambiguous. *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 12-CV-

196, 2018 U.S. Dist. LEXIS 107997, at ** 75-76 (N.D.N.Y. Mar. 20, 2018). A trial was held on that issue and others in July 2018, and there has been no ruling since then.

Each party's position on the timing of the supplemental briefing is stated briefly below.

### A. Utica's position on the timing of supplemental briefing

Utica sees no basis to suspend briefing in this case because a ruling may issue in another case. The parties have no idea when Judge Sannes will rule, and the Munich Re case involves different reinsurance contracts and different underlying policies than those at issue in this case. Although the case addresses some similar issues, it is far from clear that a ruling in that case "could potentially be dispositive here," which is what Clearwater contends.

In the case before this Court, Utica demanded a jury trial. Thus, if the "not covered by" language is found to be ambiguous (as Judge Sannes found) and that finding in and of itself does not result in summary judgment for Utica, then a jury will determine what the language means.

Utica requests that the Court direct that the parties file simultaneous supplemental briefs and reply briefs on the "not covered by" issue on February 8 and March 1, 2019, respectively.

### B. Clearwater's position on the timing of supplemental briefing

While supplemental briefing of the "not covered by" issue is in order, it makes no sense, at least from Clearwater's perspective, to prepare or file additional briefs at this time.  In March 2018, in another of the many lawsuits involving Utica and its reinsurers, Judge Sannes decided competing summary judgment motions addressing, among other issues, "not covered by" language in the 1973 and 1975 umbrella policies issued by Utica to Goulds.  Judge Sannes concluded that the "not covered by" language in Utica's 1973 and 1975 umbrella policies was susceptible to two "plausible" interpretations, precluding summary judgment. Id. (indicating, at

2

page 75, that Munich Re, the reinsurer, "appears to have the stronger argument").   Thereafter, in July 2018, Judge Sannes held a roughly three-week bench trial to receive documentary and testimonial evidence, including expert witness testimony, to assist her in resolving the perceived ambiguity in the "not covered by" language (and, in addition, to assist her when addressing several other issues, including whether the follow-the-fortunes doctrine is implied in every facultative reinsurance contract).  Post-trial briefing in the Munich Re case was completed in or about October 2018.  All that now remains is for Judge Sannes to issue her opinion, which Clearwater anticipates will likely occur in short order, potentially as early as February or March 2019.  Judge Sannes' decision could well have dispositive effect in this case.  For example, if she were to rule following trial that Utica's umbrella policies do not obligate Utica to cover defense costs upon the exhaustion of Utica's underlying primary policies, Utica almost certainly would be estopped from taking a different position here.  Regardless, and at a minimum, Judge Sannes' post-trial ruling -- whatever it may be -- will doubtless affect the tenor of the parties' supplemental briefing in this case.  Either Utica or Clearwater is going to trumpet the decision while the other argues it is distinguishable or immaterial.

Clearwater proposed to Utica that the parties await Judge Sannes' ruling before providing Your Honor with supplemental briefing.  See Ex. 3.[1]  Utica rejected this proposal without explanation.

Now, as before, Clearwater remains concerned that if the parties provide supplemental briefs to this Court before Judge Sannes rules in the Munich Re case, those additional briefs would ultimately be the first in two rounds of supplemental briefing.  Without doubt, at least one

---

[1] Clearwater's exhibit references are to its counsel's and Sidley's letters dated December 10, 2018 (Ex. 1), January 8, 2019 (Ex. 2) and January 10, 2019 (Ex. 3).

party will seek leave to submit further supplemental briefs once Judge Sannes rules.  Given this reality, Clearwater asks this Court to defer supplemental briefing for the time being and to set a supplemental briefing schedule only after Judge Sannes rules.

### C.  Utica's reply (unseen by Clearwater prior to filing)

[Utica comments, if any, to be inserted here]

## II.    Outstanding issues to be resolved at trial

The parties jointly agree that the following issues are outstanding and should be resolved at trial: Utica's claim respecting the unpaid bills and Clearwater's claim for a refund. These claims involve issues respecting reinsurance industry custom and practice, Utica's exposure to Goulds under the primary and umbrella policies issued by Utica to Goulds, and Clearwater's liability to Utica under the reinsurance contracts. The trial will also involve respective claims by Utica and Clearwater that the other owed and violated a duty of utmost good faith or implied good faith.

The parties agree that, if it comports with the court's schedule, a jury trial may be scheduled for the latter half of 2019.

## III.   Any need for additional discovery

The parties have also conferred as to the need for any additional discovery in this case, following the appellate decision. Clearwater wishes to reopen fact discovery in certain respects. Utica opposes that, but believes that the parties should engage in limited additional expert disclosures and discovery in light of the changed legal circumstances following the Second Circuit's opinion. Clearwater opposes that.

Each party briefly states its position below.

### A.  Utica's position on additional discovery

4

The Second Circuit's decision plainly changed the legal standards applicable to this dispute. The decision cast aside in certain respects prior Second Circuit decisions this Court relied upon in its summary judgment rulings, including *North River Ins. Co. v. ACE American Reinsurance Co.*, 361 F.3d 134 (2d Cir. 2004), and *Bellefonte Reinsurance Co. v. Aetna Casualty & Surety Co.*, 903 F.2d 910 (2d Cir. 1990). Also, expert disclosures in this case took place in large part *after* the Court granted partial summary judgment to Clearwater on its limits issue, a ruling that has since been vacated. The parties did not have the same incentives to address the substantive issue (whether Clearwater is liable for Utica's defense payments) after that ruling.

Utica believes the jury would benefit from expert testimony that takes account of the standards that now apply, in light of the substantive issue that remains after the partial summary judgment was vacated.

Utica suggests a brief period of time for further expert disclosures and discovery, with all such discovery completed by May 31, 2019.

With respect to fact discovery, this case is about a settlement that Utica executed in 2007. Unlike the legal standards, those facts have not changed. They were exhaustively discovered before the fact discovery cutoff.

### B. Clearwater's position on additional discovery

In December 2018, Clearwater proposed re-opening fact discovery on a very narrow basis. Following Utica's later request to re-open expert discovery, Clearwater has concluded that, on balance, all aspects of discovery should remain closed.

Insofar as the Court is prepared to re-open any aspect of discovery, Clearwater contends that it would be appropriate to re-open fact discovery on a limited basis, more particularly, to permit narrow discovery on events that occurred a year or more after discovery closed in this

5

case, for example, a May 2016 policy buy-back.  Clearwater obviously could not have conducted discovery of material events that had not occurred prior to the March 27, 2015 discovery deadline in this case.

Clearwater does not believe that any additional expert discovery is warranted, particularly where, as here, Utica has not identified a single industry custom or practice or "standard" that was added to this case by, or as a consequence of, the Second Circuit's September 25, 2018 ruling.  Utica did not identify any newly-added (or newly-pertinent) customs, practices or standards because there are none.  To the extent industry custom and practice is relevant today, the same customs and practices were equally relevant in September 2014 when the parties exchanged initial expert reports and, again, in January 2015, when the parties exchanged rebuttal expert reports.  Insofar as this Court's November 2014 ruling or the Second Circuit's later ruling impacted the necessity for expert testimony, each dispensed with the need for either party to adduce testimony regarding the so-called <u>Bellefonte</u> issue.  That issue is now out of this case.  In other words, Your Honor's decision and the Second Circuit's later decision delimited the scope of potentially relevant expert testimony, <u>not</u> expanded it.

Five additional brief comments are in order.  **First**, according to Utica, expert disclosures "took place in large part *after*" this Court's November 20, 2014 order granting Clearwater partial summary judgment.  Utica is wrong.  As indicated above, the parties exchanged initial expert reports ***beforehand***, in September 2014, two months before this Court ruled.  The parties' initial expert reports were supposed to address each and every topic on which the party producing the report planned to adduce expert testimony.  In short, the ship had sailed long before this Court had ruled on Clearwater's motion.  The parties had decided ***beforehand*** -- in September 2014 --

6

the scope of the expert testimony each wanted a jury to hear.

**Second**, the notion that "the parties did not have the same incentives to address the substantive issue (. . . defense payments) after" this Court's November 2014 ruling is incorrect. Utica's expert witness addressed the "not covered by" issue in both his <u>initial</u> report and, still again, in his <u>supplemental</u> report, which was submitted in January 2015, months after this Court ruled. The issue was also fodder for depositions, which occurred long afterward. Any doubt that the defense cost issue was an integral part of this case from the outset, and remained an integral part of this case throughout, even following the Court's November 2014 ruling, should be dispelled by the parties' April 2015 motions for summary judgment. In them, both parties -- Clearwater and Utica alike -- affirmatively addressed the defense cost issue. <u>E.g.</u>, DE 64-2 at i & ii (Utica's initial summary judgment motion which contains two point headings addressing the defense cost issue). The issue remained sufficiently prominent and significant following this Court's November 2014 ruling that Clearwater filed a second motion for partial summary judgment in which Clearwater addressed exclusively the "not covered by" language in Utica's 1978-81 umbrella policies.

In any event, the "not covered by" issue affects two components of Utica's reinsurance billings, timing and quantum. This Court's ruling, as is also true of the Second Circuit's decision, impacted merely one aspect affecting Utica's calculation of quantum and had nothing whatsoever to do with timing. The parties' controversy regarding defense costs was material both before and after this Court ruled, and before and after the Second Circuit ruled.

**Third**, Clearwater does not believe that Utica is being candid with this Court and, instead, is trying to use the Second Circuit's decision as a pretext to belatedly adduce expert

testimony regarding the follow-the-fortunes doctrine.  Based upon Utica's first draft of a joint status report, which included seven enumerated issues, it was immediately evident to Clearwater that Utica now wanted an opportunity to supplement its earlier expert disclosures and, for the first time, to have an expert opine that follow-the-fortunes is implied in every reinsurance contract as a matter of industry custom and practice (an argument that Utica, represented by different counsel, interposed in the Munich Re case years ago).  However, the time to designate an expert on that topic, namely, whether custom and practice implies a follow-the-fortunes obligation, expired years earlier, in September 2014.

From the outset, Clearwater has disputed the applicability of follow the fortunes.  The Second Circuit has now made clear that the contracts do not contain that principle as a matter of law.  If Utica had wanted to call an expert witness to testify that the doctrine is an implied reinsurance term, then Utica should have designated an expert on this topic in September 2014.  In the Munich Re case, Utica timely designated an expert to testify on this topic.  There is no reason why Utica could not have done the same here.  It is currently far too late -- more than four years too late -- to attempt now to supplement expert disclosures to address an issue that has been in this case since the day Clearwater filed its answer.  See, e.g., DE 17, ¶17 (denying Utica's assertion that Clearwater was obligated to follow Utica's fortunes).

In connection with summary judgment briefing in 2015, Clearwater observed:

> Utica has put forward no evidence suggesting that a follow the fortunes clause should be inferred in the Certificates despite the fact that the Certificates clearly do not provide for Clearwater to have any such obligation.

DE 93 at 3.  If Utica had wanted to fill this evidentiary gap, Utica should have sought leave to do so in 2015.  Once Utica read Clearwater's opposition papers, Utica was on notice (even if it had

not earlier perceived a deficiency) that it had failed to include a topic in its expert disclosures. But Utica did nothing.  Utica cannot now use the Second Circuit's recent decision to revisit tactical and strategic decisions it made long ago.

**Fourth**, Utica's assertion that a jury might benefit from expert testimony that addresses the "standards that <u>now</u> apply" to this case (emphasis added) presumes, without foundation, that the standards applicable today are materially different than they were before the Second Circuit ruled.  In truth, they are not.  Now, as before, Clearwater's liability, if any, will be determined based upon a determination of four overarching issues:

1) whether the 1978-81 primary policies issued by Utica to Goulds contain products aggregate limits and, if not, whether this circumstance bars Utica from ceding loss and expense to Clearwater as though the primary policies contained product aggregate limits;

2) whether the 1978-81 umbrella policies issued by Utica to Goulds obligated Utica to pay defense costs following the exhaustion of Utica's underlying primary policies (assuming those policies' limits could be exhausted) and, if so, whether Utica's and Goulds' 2007 settlement agreement changed the basis on which the umbrella policies covered defense costs from being cost-supplemental to cost-inclusive;

3) whether Utica's allocation and apportionment of indemnity, defense costs and other amounts is appropriate; and

4) whether Utica violated the duty of utmost good faith owed by Utica to Clearwater as a matter of industry custom and practice and/or the implied covenant of good faith and fair dealing owed by Utica to Clearwater by operation of law.  Clearwater will present evidence indicating that Utica breached both duties by its conduct.

Each of these four, core issues has been a part of this case from the outset.  The only differences today are: 1) Clearwater can no longer assert that its liability under its certificates is capped by <u>Bellefonte</u>; and 2) Utica can no longer rely on the Clearwater certificates to argue that Clearwater must follow its fortunes.  Rather, now, as framed by the Second Circuit, Utica must establish Clearwater's liability, if any, "on the basis of Utica's proven liability under its umbrella

policies issued to Goulds." Opinion at 7 & 31.

**Fifth**, Clearwater attaches, as Exhibits 1 to 3, the parties' substantive correspondence regarding re-opening fact discovery.  Rather than repeat here the reasons why it would be appropriate to re-open fact discovery, albeit on a very narrow basis, Clearwater respectfully refers the Court to its December 10, 2018 and January 10, 2019 letters.  Clearwater will only pursue re-opening fact discovery if the Court concludes that additional expert discovery is in order.  If the Court concludes that the record is closed with respect to expert discovery, Clearwater, which was the first to propose re-opening discovery in any respect (see Ex. 1),  is amenable to having the Court apply the same ruling to fact discovery.

### C. Utica's Reply (unseen by Clearwater prior to filing)

[Utica to insert]


\* \* \* \*

The parties are available for a status conference to discuss with the Court any issues raised in this submission or any other questions the Court may have.


DATED:  January 17, 2019

# EXHIBIT 1

December 10, 2018

**By Email**

William M. Sneed, Esq.
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

NORTON ROSE FULBRIGHT

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
United States

**John F. Finnegan**
**Partner**
Direct line +1 212 408 5180
john.finnegan@nortonrosefulbright.com

Tel +1 212 408 5100
Fax +1 212 541 5369
nortonrosefulbright.com

Re:   <u>Clearwater/Utica</u>

Dear Bill:

We expect that the parties will soon receive a notice from the district court scheduling a conference at which to discuss next steps and deadlines.  We write now to share with you Clearwater's perspective on these topics and to elicit from you Utica's perspective.

Clearwater believes that limited, supplemental fact discovery is in order, following which the case would again be trial ready.  More particularly, given the nearly four year hiatus since fact discovery initially concluded (on March 27, 2015) and the occurrence of several significant developments in the interim, Clearwater believes that Utica should produce the following additional materials:

1. All documents received into evidence at the Utica/FFIC and Utica/Munich Re trials, as well as all exhibits appended to the parties' summary judgment motions in the Utica/Century proceeding;

2. Transcripts of the Utica/FFIC and Utica/MunichRe trials;

3. All documents created, or located, by Utica or Resolute on or after March 27, 2015 that address either (i) the existence or absence of a stated products aggregate limit in one or more of the 1978-81 primary policies issued by Utica to Goulds or (ii) Utica's obligation under its 1977-81 umbrella policies to defend Goulds' asbestos claims following the alleged exhaustion of Utica's primary policy limits in those years.  For the avoidance of doubt, this request requires Utica to produce documents created by any of its agents, including Resolute and/or outside counsel retained by Utica or Resolute, as well as documents created by Utica's own employees.  If Utica will allow us to discuss with you documents produced in the R&Q/Utica dispute involving the Burnham cession, we can identify for you by author, date and Bates-number the ten or so documents that precipitated this request;

***Norton Rose Fulbright and Chadbourne & Parke – A Powerful Combination***

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.                                            CPAM: 33392264.1

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

William M. Sneed, Esq.
December 10, 2018
Page 2

NORTON ROSE FULBRIGHT

4.    Responses to Defendant's Second Set of Interrogatories and Third
      Request for Production of Documents, each of which is the subject of our
      January 13, 2016 letter to Magistrate Judge Dancks [DE 104]; and

5.    All documents relating to the negotiation of either the May 2016 buy-back
      between Utica and Goulds, or one or more of the agreements ancillary to
      the buy-back transaction.

Please let us know whether Utica will produce these materials and, if Utica declines to
produce one or more category of them, please explain why.  For its part, Clearwater is
amenable to producing any relevant, non-privileged coverage analyses that it prepared since
the close of the discovery.

Assuming the parties can complete supplemental fact discovery in this first quarter of
2019 (including depositions, if warranted), Clearwater believes that a trial in the third quarter of
2019 is feasible.

Finally, we ask you, as plaintiff's counsel, to prepare a first draft of a schedule that the
parties can mutually present to the Court providing deadlines for completing supplemental
document exchanges and for submitting pre-trial submissions.  The schedule should also
include a proposed trial date and address the length of the trial.

Very truly yours,

/s/ John F. Finnegan

John F. Finnegan
JF/ls

# EXHIBIT 2



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

WSNEED@SIDLEY.COM
+1 312 853 7899

AMERICA  •  ASIA PACIFIC  •  EUROPE

January 8, 2019

**By Email**

John F. Finnegan
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019-6022

Re:    Utica v. Clearwater, No. 13-cv-1178 (N.D.N.Y.)

Dear John:

Thank you for your letter of December 10, 2018 regarding the above referenced matter. Utica Mutual Insurance Company provides this response, in light of Judge Sharpe's January 2, 2019 Text Order.

Utica does not agree that any supplemental fact discovery is proper and will oppose reopening fact discovery in this case. This is a reinsurance case about Clearwater's obligation to reimburse Utica for billings that have been pending and owed for years, and the facts pertinent to that question have not changed since the appeals were filed. Nor is there any reason to import new documents and transcripts from other Utica litigations (involving different reinsurers, different issues, and different defenses) into the record in this case.

Instead, Utica proposes that the parties engage in supplemental expert discovery because, given the Second Circuit's decision, the legal standards and issues to be resolved at trial have changed. For example, we no longer see the need to have an expert address the *Bellefonte* issue in the same way, though we believe that different reinsurance industry custom and practice has become pertinent. Accordingly, Utica proposes that the parties agree to a period of supplemental expert discovery, to be completed by May 31, 2019, including all appropriate disclosures and depositions, as necessary.

The court's Text Order requested that the parties submit a joint status report addressing (1) whether the court should resolve the meaning of "not covered by" based on the parties' previously-filed summary judgment papers, and (2) all outstanding issues to be resolved at trial.

Utica proposes that the parties agree (1) that the court not rule on the issue based on the prior papers, but (2) that the parties submit supplemental briefing on the issue.

# SIDLEY

John Finnegan
January 8, 2019
Page 2

We suggest simultaneous supplemental briefs and reply briefs be filed February 8 and March 1, 2019, respectively.

The trial will include Utica's claim respecting the unpaid bills and Clearwater's claim for a refund.  These claims involve issues respecting reinsurance industry custom and practice, Utica's exposure to Goulds under the policies reinsured, and Clearwater's liability to Utica under the reinsurance contracts.

Utica believes that, if it comports with the court's schedule, the parties can complete this limited expert discovery and supplemental briefing on the "not covered by" issue so that the jury trial can be scheduled in the second half of 2019.

Please advise of your availability to discuss the issues in this letter and the requested joint status report.

Very truly yours,

William M. Sneed

WMS:

# EXHIBIT 3

January 10, 2019

# NORTON ROSE FULBRIGHT

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
United States

William M. Sneed, Esq.
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

**John F. Finnegan**
**Partner**
Direct line +1 212 408 5180
john.finnegan@nortonrosefulbright.com

Tel +1 212 408 5100
Fax +1 212 541 5369
nortonrosefulbright.com

Re:    Clearwater/Utica (Goulds Pumps)

Dear Bill:

We write to respond to your January 8, 2019 letter.  We address the four topics covered in your letter in the order in which each appears in your letter.

## A. Clearwater's Proposal to Reopen Fact Discovery to
## Address Events That Occurred After the March 27, 2015 Close of Discovery

Clearwater is disappointed by Utica's response to Clearwater's proposal to reopen fact discovery to allow limited disclosure pertaining to events, including two trials and a policy buy-back, that occurred a year or more after the March 27, 2015 close of discovery.  Obviously, Clearwater could not have earlier conducted discovery of events that had not yet transpired. Nor could Clearwater have earlier sought to obtain disclosure of documents that Utica and/or Resolute, Utica's agent, had not yet created or located.

For what it is worth, Clearwater believes that in light of the Second Circuit's decision, it is entitled to revisit a handful of discovery rulings that, at least in part, were premised on the notion (now discredited) that follow the settlements is applicable to this case.  Clearwater reserves the right, if court intervention becomes necessary, to expand its earlier, narrow request to reopen fact discovery.

By way of compromise, Clearwater is amenable to foregoing any effort by it to reopen fact discovery if Utica will drop its request to reopen expert discovery.  Please let us know how Utica wants to proceed.  In the event the parties cannot reach agreement that all discovery -- fact and expert -- is completed, Clearwater reserves its right to insist upon both additional fact and expert discovery.

One final comment is in order to ensure clarity as respects Clearwater's December 2018 request to reopen fact discovery on a limited, narrow basis.  Contrary to Utica's suggestion, Clearwater is not seeking "to import" wholesale "documents and transcripts from other Utica litigations (involving . . . different issues, and different defenses)."  Many of the issues in the Utica/MunichRe case and the Utica/FFIC case overlap issues in this matter.  Further, Clearwater's request for material from the trials in those two litigations was designed to ensure

*Norton Rose Fulbright and Chadbourne & Parke – A Powerful Combination*

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.                    CPAM: 33588847.1

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

NORTON ROSE FULBRIGHT

Chicago, IL 60603
January 10, 2019
Page 2

the completeness of the record here and to minimize authentication and admissibility issues that might arise when Clearwater proffers exhibits and transcripts from those proceedings.

### B. Utica's Proposal to Reopen Expert Discovery

We are not entirely certain what Utica was trying to convey when you wrote "we no longer see the need to have an expert address the *Bellefonte* issue **in the same way**." (Bolding added.) The so-called *Bellefonte* issue is now out of the case. As such, no expert testimony pertaining to the so-called *Bellefonte* issue is germane. If Utica contends otherwise, please advise. (In this regard, we remind you that the parties mutually deferred conducting any expert discovery on the *Bellefonte* issue once the court granted Clearwater's 2014 motion for partial summary judgment.) In addition, please advise what you meant by the phrase "in the same way."

Regardless, we disagree that "different" aspects of industry custom and practice have now "become pertinent." The Second Circuit's decision addressed factual and legal issues that were a part of this case from the outset. As such, insofar as industry custom and practice is currently in controversy or is otherwise pertinent, that custom or practice, whatever it might be, has been pertinent since 2013. In other words, the parties decided long ago what aspects of industry custom and practice they wanted their experts to address. There is no reason today to revisit those earlier, tactical decisions.

Further, your letter is conspicuously silent as to what industry customs and practices Utica contends were injected into this case for the first time by the Second Circuit's decision. This omission reinforces our assessment – and conclusion – that nothing has changed, which would warrant the reopening of expert discovery.

### C. The Court's Request Concerning Supplemental Summary Judgment Briefing

Clearwater believes that the parties should advise Judge Sharpe that "Yes, supplemental briefing is in order but not at this time." Clearwater is concerned that if the parties provide supplemental briefs on the schedule proposed by Utica, the parties will find themselves in the position of requesting the opportunity in the coming weeks to submit still additional supplemental briefs once Judge Sannes issues her post-trial decision in the Utica/MunichRe case. As you are doubtless aware:

1) in March 2018, Judge Sannes concluded (in the Utica/MunichRe case) that the "not covered by" language contained in similar Utica umbrella policies is ambiguous;

2) in July 2018, Judge Sannes conducted a three-week bench trial to receive documentary and testimonial evidence pertaining to the "not covered by" issue, as well as still other issues; and

3) in October 2018, the parties in the Utica/MunichRe case completed post-trial briefing.

NORTON ROSE FULBRIGHT

Chicago, IL 60603
January 10, 2019
Page 3

In view of these facts, Clearwater believes that the most appropriate course of action is to ask Judge Sharpe to permit supplemental summary judgment briefing after Judge Sannes has issued her decision in Utica/MunichRe, a decision that could potentially be dispositive here. If Utica agrees with this approach, please include it in the draft of the joint report that you are preparing for our review.

        For the sake of good order and to ensure that Clearwater's position remains clear, now, as before, Clearwater contends that the "not covered by" language is unambiguous and means that Utica had no obligation to pay Goulds' defense costs once the limits of Utica's primary policies had exhausted (assuming all such policies could exhaust their limits). Put differently, Clearwater's position is unaffected by Judge Sannes earlier finding of ambiguity in the Utica/MunichRe case. See Henry Schein, Inc. v. Archer & White Sales, Inc., slip op. at 7 (U.S. Sup. Ct. January 8, 2019) ("It is not unheard-of for one fair-minded adjudicator to think a decision is obvious in one direction but for another fair-minded adjudicator to decide the matter the other way.").

### D. The Court's Request Pertaining to Unresolved Issues

        Utica's broad description of the "outstanding issues to be resolved at trial" is generally satisfactory, though Clearwater reserves the right to suggest revisions to whatever language Utica might include in the draft report that you are preparing. We provide now one addition that we would ask you to include in the draft report to the court. Please fold in language to the effect that Clearwater has plead, and at trial will pursue, defenses based upon Utica's alleged violations of the duty of utmost good faith and the implied duty of good faith.

* * *

        If you believe that a call is in order, let us know. Otherwise, please send us a draft of the parties' joint status report -- ideally, before mid-day on Tuesday, January 15, 2019 -- leaving placeholders for "Defendant's Position" insofar as any divergent views remain between the parties.

Very truly yours,

John F. Finnegan
Partner

JF/ls