IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UTICA MUTUAL INSURANCE COMPANY,

          Plaintiff,

v.

CLEARWATER INSURANCE COMPANY,

          Defendant.

6:13-cv-1178 (GLS/TWD)

# SUPPLEMENTAL MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANT'S APRIL 20, 2015
# MOTION FOR PARTIAL SUMMARY JUDGMENT

NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 408-5100
Fax: (212) 541-5369

*Attorneys for Defendant, Clearwater Insurance Company*

John F. Finnegan
Allison Goodman Gold

      Of Counsel

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................2

      A.      The Significance of the Second Circuit's Decision..................................................2

      B.      Additional, Including Later-Decided, Cases Construing "Not Covered By" Language in The Direct Insurance Context ............................................................3

      C.      Judge Sannes' March 20, 2018 Decision in *Utica/Munich Re* ................................6

      D.      This Court's Earlier Reliance on Utica's Case Law And on Utica's Characterization of Witness Testimony Was Misplaced .........................................7

              1.      Utica's Case Law .........................................................................................7

              2.      Clearwater Witness Testimony: .................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Aetna Cas. & Surety Co. v. Certain Underwriters,
    56 Cal. App. 3d 791 (2d App. Dist. 1976)...................................................................7

American Motorists Insurance Co. v. Trane Co.,
    544 F. Supp. 669 (W.D. Wisc. 1982), aff'd, 718 F.2d 842 (7th Cir. 1983) ................9

American Safety Indemnity Co. v. 612 Realty LLC,
    2009 WL 2407822 (N.Y. Sup. Ct. Aug. 4, 2009).......................................................4

American States Insurance Co. v. Insurance Co. of Pennyslyvania,
    2014 WL 294969 (E.D. Cal. Jan. 24, 2014) ...............................................................8

Arkwright-Boston Mfrs. Mutual Insurance Co. v. Aries Marine Corp,
    932 F.2d 442 (5th Cir. 1991) .....................................................................................4

Azco Hennes Sanco, Ltd. v. Wisconsin Ins. Sec. Fund,
    177 Wis. 2d 563 (Ct. App. 1993)..........................................................................9, 10

Eastpointe Condominium Assoc. v. Travelers Cas. & Sur. Co.,
    379 Fed. App'x 906 (11th Cir. 2010) .........................................................................7

Global Reinsurance Corp. v. Century Indemnity Co.,
    30 N.Y.3d 508 (2017) ................................................................................................6

Hartford Accident & Indemnity Co. v. Superior Court,
    23 Cal. App. 4th 1774 (1st App. Dist. 1994).............................................................7

Henry Schein, Inc. v. Archie & White Sales, Inc.,
    139 S. Ct. 524 (2019).................................................................................................7

Hopeman Bros., Inc. v. Continental Cas. Co.,
    307 F. Supp. 3d 433 (E.D. Va. 2018) ........................................................................4

Insurance Co. of North America v. West of England Shipowners Mutual
    Insurance Ass'n,
    890 F. Supp. 1292 (E.D. La. 1995)............................................................................4

Insurance Company of the State of Pennsylvania v. County of San Bernardino,
    2017 WL 2903259 (March 8, 2017), reconsideration denied, 2017 WL
    3579701 (C.D. Cal. July 18, 2017) ........................................................................7, 8

Mine Safety Appliances Co. v. AIU Insurance Co.,
    2016 WL 498848 (Del. Super. Ct. 2016).........................................................4, 5, 6

CPAM: 33648340.1

Nooter Corp. v. Allianz Underwriters Ins. Co.,
    536 S.W.3d 251 (Mo. Ct. of Appeals 2017) .................................................................3, 5

R.T. Vanderbilt Co. v. Hartford Acc. & Indem. Co.,
    156 A.3d 539 (Conn. App. Ct.), cert. granted in part, 327 Conn. 923 (2017) ...........3, 4, 6

Schulman Investment Co. v. Olin Corp.,
    514 F. Supp. 572 (S.D.N.Y. 1981) ..................................................................................8

Scott's Liquid Gold v. Lexington Ins. Co.,
    293 F.3d 1180 (10th Cir. 2002) ......................................................................................4

St. Paul Travelers Cos. v. Corn Island Shipyard, Inc.
    495 F.3d 376 (7th Cir. 2007) ..........................................................................................4

Utica Mutual Insurance Co. v. Munich Reinsurance America, Inc.,
    6:12-cv-00196 (BKS/ATB), 2018 WL 1737623 (N.D.N.Y. March 20, 2018) ................6

In re Viking Pump, Inc.,
    148 A.3d 633 (Del. Sup. Ct. 2016) .........................................................................4, 5, 9

Wells Fargo Bank, N.A. v. California Ins. Guar. Assoc.,
    45 Cal. Rptr. 2d 537 (Cal. Ct. App. 1995) ......................................................................8

## PRELIMINARY STATEMENT

Clearwater[1] submits this Supplemental Memorandum of Law in further support of its April 20, 2015 motion for partial summary judgment. Now, as before, Clearwater contends that the "occurrence not covered by" language contained in Article II of Utica's 1978-81 Umbrella Policies is unambiguous and that these Umbrella Policies do not require Utica to pay any asbestos defense costs incurred by Goulds following the exhaustion of Utica's underlying primary policies (assuming the limits of Utica's 1978-81 primary policies could be exhausted). See, e.g., DE 65-9 (Clearwater's Opening Mem. of Law) at 10-19. Significantly, Clearwater's understanding of Article II is consistent with, and supported by, the vast majority of the direct insurance cases in which "occurrence not covered by" language was squarely at issue. Id. (indicating that in 2015, only one case even arguably supported Utica's position and it was distinguishable and that earlier still, in 2003, when Utica extended defense coverage to Goulds under Utica's 1978-81 Umbrella Policies, no case supported Utica's position).

Since June 22, 2015, the date on which Clearwater completed briefing its motion for partial summary judgment, there have been three relevant developments: 1) the Second Circuit's September 25, 2018 decision vacating this Court's denial of Clearwater's motion; 2) Judge Sannes' March 20, 2018 decision denying another reinsurer's motion seeking summary judgment based upon "occurrence not covered by" language in Utica-issued umbrella policies; and 3) a handful of later-decided cases that, like the cases earlier cited by Clearwater, concluded that the "occurrence not covered by" language in an umbrella policy is unambiguous, and refers to the *fact* of coverage, not to the **extent** of coverage, meaning that where, as here, asbestos claims

---

[1]   Clearwater adopts in this memorandum the same conventions and abbreviations earlier used by it.

were covered by underlying primary policies, the umbrella insurer could <u>never</u> be called upon to pay defense costs.

Below (in Point D), Clearwater also explains why this Court was mistaken when it earlier relied upon Utica's characterization of certain cases and testimony.[2]

## ARGUMENT

### A.   The Significance of the Second Circuit's Decision

The Second Circuit concluded that two of Clearwater's reinsurance contracts (the "Certificates") do not contain an express or an implied follow-the-settlements clause and do not impose upon Clearwater any follow-the-settlements obligations. 906 F.3d 12, 23. The Second Circuit also concluded that the three remaining reinsurance contracts at issue (the "TPF&C Contracts") do not contain an operative follow-the-settlements clause, relieving Clearwater of any obligation to follow Utica's settlement with Goulds. <u>Id.</u> at 21-23. In short, follow-the-settlements has no application in this case. <u>Id.</u> Based upon this conclusion, the Second Circuit vacated this Court's decision (i) granting summary judgment to Utica and (ii) denying Clearwater's motion for partial summary judgment. <u>Id.</u> at 14.

The Second Circuit's follow-the-settlements rulings are significant because this Court's earlier decision was premised on the notion that follow-the-settlements governed and afforded Utica great deference. Utica can no longer argue -- as it earlier had -- that this Court, as well as Clearwater, must "defer" to its interpretation of the Umbrella Policies. Nor can Utica continue to argue that this Court is barred from interpreting those Policies "anew." In the absence of follow-

---

[2]   The facts recited in Clearwater's 2015 Rule 7.1 Statement -- all of which were acknowledged to be accurate by Utica [<u>see</u> DE 79-1 at 9-11] -- and in Clearwater's 2015 briefs [DEs 65-9 & 93], remain true today. Of course, the issue currently before this Court is a question of law, namely, whether certain contract language is ambiguous or unambiguous. Thus, nothing beyond the four corners of the Umbrella Policies is material on this motion.

2

the-settlements, Utica's coverage decisions are entitled to **NO** deference. In order to prevail -- in order for Utica to recover defense costs from Clearwater -- Utica must establish that its coverage positions were correct. In the Second Circuit's words, Utica must "prove" that it was liable to pay Goulds' defense costs under Utica's Umbrella Policies. Id. at 25. Utica cannot meet this burden. The overwhelming majority of courts that have squarely addressed the "occurrence not covered by" issue in the direct insurance context have concluded that the language is not ambiguous and that umbrella insurers are not required to pay their policyholders' defense costs following the exhaustion of underlying primary policies. In other words, Clearwater's construction of Utica's Umbrella Policies, unlike Utica's, has garnered wide acceptance among courts reviewing the identical or similar policy language. Moreover, in 2003, when Utica made its decision to provide defense coverage to Goulds under Utica's Umbrella Policies, no relevant authority supported the policy construction that Utica now advocates. (As discussed below, the handful of cases cited by Utica that predate 2003 are inapposite. Each addressed a different, unrelated issue.)

  **B.** **Additional, Including Later-Decided, Cases Construing "Not Covered By" Language in The Direct Insurance Context**

Since 2015, when Clearwater initially briefed the "occurrence not covered by" issue, several courts have had the opportunity to consider this phrase and to weigh in on its meaning. The trend since 2015 is no different than the trend that had existed beforehand. Recently, as historically, the majority of the courts that considered the meaning of "occurrence not covered by" have concluded that the clause is unambiguous and does not require an umbrella or other excess insurer to defend its policyholder following the exhaustion of an underlying primary policy. E.g., R.T. Vanderbilt Co. v. Hartford Acc. & Indem. Co., 156 A.3d 539, 654-59 (Conn. App. Ct.), cert. granted in part, 327 Conn. 923 (2017); Nooter Corp. v. Allianz Underwriters Ins.

3

Co., 536 S.W.3d 251, 281-82 (Mo. Ct. of Appeals 2017); see also Mine Safety Appliances Co. v. AIU Ins. Co., 2016 WL 498848, at *7 (Del. Super. Ct. 2016) ("Covered" refers to the fact of coverage, not the extent of policy limits"); but see In re Viking Pump, Inc., 148 A.3d 633 (Del. Sup. Ct. 2016); Hopeman Bros., Inc. v. Continental Cas. Co., 307 F. Supp. 3d 433 (E.D. Va. 2018) (following Viking Pump).[3]

In R.T. Vanderbilt, a Connecticut appellate court considered the identical issue that is now before this Court. There, the policyholder argued that an occurrence is no longer covered by underlying primary policies once those policies' limits have exhausted. The court characterized this argument as "creative," and then rejected it, relying in part upon the teaching of sister courts that had found defense coverage is available to a policyholder under "occurrence not covered by" language only when the occurrence giving rise to a claim was not, and had never been, within the scope of the underlying primary policy's coverage. According to the court:

> [The insurer's reading of the policy is] plausible on its face and best comports with other specific provisions of the policy, the overall policy structure and the conclusions reached by our sister courts.... Coverage B [the equivalent of Article II here] unambiguously does not require the insurer to defend claims that would have been covered by underlying insurance but for its exhaustion. 156 A.3d at 659.

---

[3]  In its earlier briefs, Clearwater did not cite a handful of older cases that are also pertinent: St. Paul Travelers Cos. v. Corn Island Shipyard, Inc. 495 F.3d 376, 386 (7th Cir. 2007) ("the terms 'covered' and 'not covered' refer to whether the policy insures against a certain risk, not whether the insured can collect on the underlying policy"); Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp, 932 F.2d 442, 446-47 (5th Cir. 1991) (rejecting the policyholder's argument that an occurrence was not "covered" because the primary insurer had become insolvent; the court reasoned that the policyholder's argument ignored the distinction between "coverage" and "collectability"); Ins. Co. of N. Am. v. West of England Shipowners Mut. Ins. Ass'n, 890 F. Supp. 1292, 1295-96 (E.D. La. 1995) (same); Scott's Liquid Gold v. Lexington Ins. Co., 293 F.3d 1180, 1187 (10th Cir. 2002) ("'not covered' in [an umbrella] policy plainly refers to an event which does not meet the definition of a covered event in the underlying [primary] policies"; no duty to defend where underlying policy is exhausted); Am. Safety Indem. Co. v. 612 Realty LLC, 2009 WL 2407822, at *5 (N.Y. Sup. Ct. Aug. 4, 2009) (the term "covers" in an excess policy, as compared to the primary policy, should be construed to mean whether the primary policy provides coverage and not whether the primary coverage is available or collectible).

4

In <u>Nooter</u> too, the "interpretation of the phrase 'any occurrence not covered' control[led] the outcome.'" 536 S.W.3d at 282. The court held that this language did not require excess insurers to provide a defense where the underlying primary policy had covered an occurrence and would have continued to respond but for its limits' exhaustion. In the court's words (at 282):

> We find that the language of the [two excess] Polic[ies] … obligates these excess insurers to defend [their policyholder] only if the terms of these excess policies cover an occurrence and the terms of the underlying insurance does not.[4]

While the majority of the recent cases support Clearwater's construction of Article II of Utica's Umbrella Policies, the Delaware Supreme Court's recent decision in <u>Viking Pump</u> arguably does not. It affirms a 2013 Superior Court decision in which the Delaware trial court had found that the policyholder was owed a defense under its excess policies following the exhaustion of a primary policy's limits. The Delaware Supreme Court's 2016 decision, however, suffers the same infirmities as the earlier trial court's decision. As previously discussed (in Clearwater's Opening Brief at 19 n.5), the facts in <u>Viking Pump</u> are materially different and the holding in <u>Viking Pump</u> is contrary to the overwhelming weight of judicial authority. The defense provision in <u>Viking Pump</u> is structured differently and worded differently than Utica's Umbrella Policies. For example, "personal injury" replaces "occurrence" in the "not covered by" clause. Moreover, neither the Delaware Superior Court nor the Delaware Supreme Court discussed, no less sought to distinguish, key cases from other jurisdictions that reject <u>Viking Pump's</u> teaching. Finally, <u>Viking Pump</u> is at odds with <u>Mine Safety</u>, another Delaware decision.

---

[4] <u>Nooter</u> belies Utica's assertion that cases involving insolvent primary insurers are distinguishable and therefore not probative. The <u>Nooter</u> court concluded that an earlier precedent that dealt with an insolvent primary insurer was nonetheless binding in the case before it, which arose in the context of a primary policy whose limits were exhausted, because the overriding principle – the dispositive consideration – was the same: "not covered" meant not within the scope of coverage – not within a policy's coverage grant – and had nothing whatsoever to do with whether insurance proceeds were or were not recoverable.

2016 WL 498848, at *7 (concluding "that the phrase 'not covered' in Coverage B [here, Article II] means that the claim was not covered *ab initio*"). [5]

C.     **Judge Sannes' March 20, 2018 Decision in *Utica/Munich Re***

In Utica Mutual Insurance Co. v. Munich Reinsurance America, Inc., 6:12-cv-00196 (BKS/ATB), 2018 WL 1737623 (N.D.N.Y. March 20, 2018), Munich, another of Utica's reinsurers, sought summary judgment, arguing that "occurrence not covered by" language in the 1973 and 1977 umbrella policies issued by Utica to Goulds did not require Utica to pay defense costs. Judge Sannes denied Munich's motion (and five of the parties' six other pending motions), concluding that Utica's umbrella policies were ambiguous, "though Munich appears to have the stronger argument." Id. at *24 (footnote omitted).

This Court is not bound by Judge Sannes' finding of ambiguity and should not follow it for each of two reasons. First, Munich presented voluminous extrinsic evidence as a fallback to its argument that the contact was unambiguous. See, e.g., Utica's Opp. Brief in Munich [DE 310] at 17 (Munich "spen[t] the vast majority of its brief discussing extrinsic evidence"). In light of this extrinsic evidence, it is unsurprising that Judge Sannes ordered a trial on this issue, even while at the same time recognizing the strength of Munich's argument based upon the language alone.

---

[5]   Further, Viking Pump is not a reliable predictor of New York law. The Delaware Supreme Court certified two questions to the New York Court of Appeals, asking the Court of Appeals to consider two of a Delaware trial court's conclusions of law. The Court of Appeals rejected one of the two, finding that vertical, not horizontal, exhaustion applied. Considering this track record, there is no reason to believe that the Court of Appeals would have adopted the Delaware courts' construction of "not covered by." Further, there is good reason to believe the Court of Appeals would have rejected it. In Global Reinsurance Corp. v. Century Indemnity Co., 30 N.Y.3d 508, 519 (2017), the Court of Appeals reiterated the principle that courts may not imply a contractual obligation that could easily have been stated explicitly but was not. Here, where Utica sought to condition an obligation on either the exhaustion or the collectibility of a primary policy, Utica did so explicitly. See DE 65-1 (Chavez Aff.) at Ex. 5, pgs. 3 & 6.

6

Second, in her opinion, Judge Sannes did not analyze any of the many prior decisions, like R.T. Vanderbilt, that squarely address the issue currently before this Court. Those decisions conclude that there is only one reasonable construction of the phrase "occurrence not covered by," a construction that recognizes the umbrella (or excess) insurer never agreed to pay defense costs.

In any event, Judge Sannes' decision does not preclude this Court from making its own independent determination as to the clarity of the phrase "occurrence not covered by." In a recent unanimous decision, the United States Supreme Court made this point, remarking: "It is not unheard-of for one fair-minded adjudicator to think a decision is obvious in one direction but for another fair-minded adjudicator to decide the matter the other way." Henry Schein, Inc. v. Archie & White Sales, Inc., 139 S. Ct. 524, 531 (2019); see also Eastpointe Condominium Assoc. v. Travelers Cas. & Sur. Co., 379 Fed. App'x 906, 909 (11th Cir. 2010) ("the fact that different judges have reached different interpretations of similar policy language does not necessarily mean that the language is ambiguous") (citations omitted).

> D.   **This Court's Earlier Reliance on Utica's Case Law And on Utica's Characterization of Witness Testimony Was Misplaced**

1.   **Utica's Case Law**:  In its earlier decision, this Court appeared to suggest that Utica had cited relevant case law supportive of its interpretation of Article II. This Court wrote: "Utica cites case law from California, New York, and other jurisdictions that support its interpretation." 2016 WL 254770, at *7. In truth, Utica's cases were, and today remain, inapposite.

Neither of the two California cases cited by Utica interpreted the phrase "occurrence not covered by." Nor did either case interpret an umbrella policy. Rather, in each case, the court evaluated vastly different language found in a primary policy to determine the extent of a

7

primary insurer's obligation to provide a policyholder with defense coverage.  See Aetna Cas. & Surety Co. v. Certain Underwriters, 56 Cal. App. 3d 791 (2d App. Dist. 1976); Hartford Acc. & Indemn. Co. v. Superior Ct., 23 Cal. App. 4th 1774 (1st App. Dist. 1994).

In any event, Utica's insinuation that California law is supportive of its position is mistaken.  In Insurance Company of the State of Pa. v. County of San Bernardino, 2017 WL 2903259 (March 8, 2017), reconsideration denied, 2017 WL 3579701 (C.D. Cal. July 18, 2017) ("ICOSP"), the court explained:

> Under California law, when the terms "covered" and "coverage" are used in an insurance policy, the terms refer to the scope of coverage based on the terms in the policy and not how much is paid or how much damage the insured incurred. "In the context of an insurance policy, coverage means 'inclusion within the scope of an insurance policy,' not 'the act or fact of covering.'"

Id. at *5.  (citations omitted); accord Am. States Ins. Co. v. Ins. Co. of Pa., 2014 WL 294969, at *5 (E.D. Cal. Jan. 24, 2014) (same).

Based upon ICOSP, it is reasonable to conclude that if a California court were asked to decide the issue now before this Court, the California court would embrace Clearwater's interpretation of the Umbrella Policies and eschew Utica's.  Indeed, one of Utica's two cases actually supports this conclusion and thus Clearwater's position.  In Hartford Accident, the court wrote: "[A]n excess carrier has a duty to defend after the primary coverage is exhausted *unless* the excess policy provides to the contrary." 23 Cal. App. 4th at 1779-80 (emphasis added).  Here, Utica's Umbrella Policies provide to the contrary.  Utica's Umbrella Policies state that Utica is only obligated to defend a policyholder where the policyholder never had primary insurance covering an occurrence.  Accord Wells Fargo Bank, N.A. v. California Ins. Guar. Assoc., 45 Cal. Rptr. 2d 537, 545 (Cal. Ct. App. 1995) ("not covered" refers to the scope of an underlying primary policy's coverage, and not to whether the primary policy's limits remain available, collectible or recoverable).

8

Similarly, the single New York case that Utica cites as "relevant case law" is inapposite. In <u>Schulman Investment Co. v. Olin Corp.</u>, 514 F. Supp. 572 (S.D.N.Y. 1981), the umbrella insurer argued that it had no obligation to pay defense costs for two reasons: (1) the policyholder's "damages were too small to invoke excess coverage," and (2) the policyholder's request for damages was barred by "express limitations in its policies," namely, a clause that restricted its defense obligation to an "occurrence not covered by" underlying primary insurance. <u>Id</u> at 575. The court addressed only the first of these two issues in its opinion, concluding that it was unnecessary to grapple with the "occurrence not covered by" issue because the underlying claims did not implicate the umbrella policy. In dicta, however, the court intimated that if it had had to rule on the "occurrence not covered by" issue, it might well have found for the insurer, not the policyholder. After block quoting the Defense Settlement provision that contained the "occurrence not covered by" language, the court added (at 576):

> In addition, the policy did "not apply to defense, investigation, settlement or expenses covered by underlying insurance." <u>Viewed together</u>, these provisions [both of which also appear in Utica's Umbrella Policies] reflect the limited role and shielded position of the excess insurance carrier.

With one exception, Utica's remaining authorities are immaterial as none of them addressed an issue that is even remotely analogous here.[6] The sole exception is <u>Viking Pump</u>, which Clearwater discussed above (in Point B). In short, Utica's assertion that its interpretation of Article II is well-grounded in decisional law is baseless.

---

[6] By way of illustration, in <u>American Motorists Insurance Co. v. Trane Co.</u>, 544 F. Supp. 669 (W.D. Wisc. 1982), <u>aff'd</u>, 718 F.2d 842 (7th Cir. 1983), the court considered whether an excess insurer could be called upon to contribute to defense costs where the ad damnum in the underlying litigation exceeded the primary policy's limit. Utica's reliance on <u>Trane</u> is also misplaced because the federal courts' application of state law was later expressly discredited by a Wisconsin appellate court. See <u>Azco Hennes Sanco, Ltd. v. Wisconsin Ins. Sec. Fund</u>, 177 Wis. 2d 563, 569-70 (Ct. App. 1993).

    **2.**     **Clearwater Witness Testimony:** Utica's reliance on the testimony of two Clearwater witnesses is misplaced. During their depositions, Utica asked Laura McCaffrey (a reinsurance claims handler) and Albert Ruhlmann (a retired underwriter), neither of whom was involved in the placement or drafting of the Utica Policies, whether a "claim" or "loss" would be covered by an underlying primary policy once the primary policy's limits were exhausted. Over objection, the witnesses correctly responded "no." Their testimony, however, is immaterial for present purposes. As explained by Clearwater in its Response to Utica's Statement of Additional Material Facts [DE 94 at ¶¶ 20 & 21]:

> The issue before this Court is <u>not</u> whether Utica might have to pay a loss (or claim) under its umbrella policies following the exhaustion of Utica's primary limits. Rather, the issue raised by Clearwater's summary judgment motion is whether, and in what circumstances, Utica might have to pay defense costs under one or more of its 1978-81 umbrella policies. Second, the operative language in Utica's umbrella policies reads: "[w]ith respect to any **occurrence** not covered by the [underlying primary] polices." Thus, in order to determine whether Utica had or might have had an obligation to pay defense costs, Utica's counsel should have focused his questions on "occurrences," rather than on "claims." As John Cole explained during his [expert] deposition, an occurrence can be covered by a policy even though the policy no longer has any available limits to pay claims.

Cole's expert testimony is buttressed by <u>Azco</u>, wherein the court explained:

> Azco [the policyholder] maintains, however, that Mission's [the insurer's] policy plainly obligates it to defend against any "claim" made against Azco which is not covered by the underlying insurance. . . . The policy, however, frames Mission's duty to defend not in terms of "claims," but rather in terms of "occurrences" not covered by the underlying insurance. And we agree . . . that the difference [in wording] is important. (177 Wisc. 2d at 569.)[7]

---

[7] The term "occurrence" is defined in Utica's Umbrella Policies. DE 65-1, at Ex. 5, pg. 3. It means "an accident, . . . which results in **personal injury, property damage or advertising offense** which is neither expected nor intended from the standpoint of the insured." (Emphasis in original.) This definition is not tied in any way to, nor in any way dependent upon, the existence of claims, the availability of policy limits or the collectability of underlying primary insurance. The definition of "occurrence" remains unchanged whether there is one claim or one million claims, or no losses whatsoever. The definition also remains unchanged whether underlying coverage is untapped, partially eroded or fully exhausted.

10

CPAM: 33648340.1

Dated:    New York, New York
             February 25, 2019

                                          Respectfully submitted,

                                          NORTON ROSE FULBRIGHT US LLP

                                          By:        */s/ John F. Finnegan*
                                                           A Member of the Firm
                                                           NDNY Bar Roll No. 515774
                                       1301 Avenue of the Americas
                                       New York, NY 10019
                                       Tel: 212-408-5100
                                       Fax: 212-541-5369

                                       *Attorneys for Defendant, Clearwater Insurance Company*

Allison Goodman Gold
        Of Counsel

11