**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------X
UTICA MUTUAL INSURANCE COMPANY,   :
                                                                      :
                                    Plaintiff,         :         No. 6:13-cv-01178 (GLS/TWD)
            v.                                             :
                                                                      :
CLEARWATER INSURANCE COMPANY,   :
                                                                      :
                                                                      :
                                    Defendant.     :         March 21, 2019
----------------------------------------------------------X

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S APRIL 20, 2015
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

DISCUSSION ..................................................................................................................... 2

   I.   THE AUTHORITY SINCE 2015 SUPPORTS UTICA. ................................................. 2

   II.  AS UTICA'S INTERPRETATION WAS REASONABLE, IT PROPERLY PAID
       DEFENSE. ........................................................................................................ 4

CONCLUSION ................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Commercial Lines LLC v. Water Quality Ins. Syndicate*,
  No. 09-cv-7957 (RWL), 2018 U.S. Dist. LEXIS 194202 (S.D.N.Y. Nov. 7, 2018) ................6

*Am. Commercial Lines LLC v. Water Quality Ins. Syndicate*,
  679 F. App'x 11 (2d Cir. 2017) ...........................................................................................6

*Appalachian Ins. Co. v. Gen. Elec. Co.*,
  863 N.E.2d 994 (N.Y. 2007)................................................................................................6

*Goulds Pumps, Inc. v. Travelers Cas. & Sur. Co.*,
  No. B 255439, 2016 Cal. App. LEXIS 4674 (Cal. Ct. App. June 22, 2016).......................4, 5

*Great Am. Ins. Co. v. Sequoia Ins. Co.*,
  No. CV 16-8456-GW, 2017 U.S. Dist. LEXIS 214502 (C.D. Cal. Aug. 21, 2017) ................5

*Hansard v. Fed. Ins. Co.*,
  46 N.Y.S.3d 163 (App. Div. 2017) .......................................................................................1

*Hopeman Bros., Inc. v. Continental Cas. Co.*,
  307 F. Supp. 3d 433 (E.D. Va. 2018) ...............................................................................2, 3

*Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*,
  363 F.3d 137 (2d Cir. 2004).................................................................................................5

*London Mkt. Insurers v. Superior Court*,
  53 Cal. Rptr. 3d 154 (Cal. Ct. App. 2007) ...........................................................................6

*Mine Safety Appliances Co. v. AIU Ins. Co.*,
  No. 10C-07-241 MMJ, 2016 Del. Super LEXIS 64 (Del. Super. Jan. 22, 2016) ................3, 6

*N. River Ins. Co. v. ACE Am. Reinsurance Co.*,
  361 F.3d 134 (2d Cir. 2004).................................................................................................4

*Nooter Corp. v. Allianz Underwriters Ins. Co.*,
  536 S.W.3d 251 (Mo. Ct. App. 2017)................................................................................3, 4

*R.T. Vanderbilt Co. v. Hartford Accident & Indem. Ins. Co.*,
  156 A.3d 539 (Conn. App. Ct. 2017)................................................................................3, 6

*San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co.*,
  No. 3:15-cv-1401-BEN-MDD, 2016 U.S. Dist. LEXIS 88362 (S.D. Cal. July 6, 2016) .........7

*U.S. Fid. & Guar. Co. v. Am. Re-Insurance Co.*,
   985 N.E.2d 876 (N.Y. 2013) ........................................................................4

*In re Viking Pump, Inc.*,
   148 A.3d 633 (Del. 2016) ......................................................................2, 4

*In re Viking Pump, Inc.*,
   52 N.E.3d 1144 (N.Y. 2016) ...................................................................1, 5

*Westport Ins. Co. v. Cal. Cas. Mgmt. Co.*,
   No. 17-15924, 2019 U.S. App. LEXIS 4889 (9th Cir. Feb. 20, 2019) ....................5

*World Ambuette Transp., Inc. v. Lee*,
   78 N.Y.S.3d 137 (N.Y. App. Div. 2018) .................................................5

**Other Authorities**

THE UMBRELLA BOOK (1976) ...............................................................................9

"Umbrella Notes No. 4" in THE UMBRELLA BOOK (James A. Robertson, ed. July 1980.)..........8, 9

## **INTRODUCTION**

The issue raised by Clearwater's motion is whether Utica owed defense costs to its insured, Goulds Pumps, Inc. ("Goulds"), under the 1978-1981 umbrella policies that Clearwater reinsured. Clearwater contends that the umbrella policies had no defense obligation and therefore Utica should not have paid such costs. According to Clearwater, the umbrella policy provision stating that a defense is owed "with respect to any occurrence not covered by" the policies underlying the umbrella does not apply after the underlying policy exhausts its limits. Clearwater maintains that the umbrella policy owes defense only if the underlying policy never applied at all. In other words, Clearwater says "**not** covered by" can only mean "**never** covered by" and cannot include "**no longer** covered by."

Utica disagrees. Nothing in the umbrella language compels Clearwater's interpretation. An average insured reading the defense provision would reasonably expect that a loss is "not covered by" a primary policy after that policy exhausts. *See In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016) (insurance policies "must be interpreted according to common speech and consistent with the reasonable expectation of the average insured"); *Hansard v. Fed. Ins. Co.*, 46 N.Y.S.3d 163, 166 (App. Div. 2017). Moreover, Clearwater's own witnesses embraced this interpretation, which is a natural one. (*See* Dkt. 79-1 at 7-8.) The pertinent authority since the parties last briefed this issue supports Utica's interpretation.

In addition, Utica's interpretation has already been found reasonable by this Court and upheld by the California court presiding over the Goulds coverage litigation. Even if accepted, Clearwater's arguments do no more than show that the umbrella policy defense provision is ambiguous. If that provision is ambiguous, then Utica properly paid defense because ambiguities are construed in favor of coverage.

## <u>DISCUSSION</u>

## I.    THE AUTHORITY SINCE 2015 SUPPORTS UTICA.

As the Court directed supplemental filings, the principal focus should be on developments after this issue was first briefed in 2015. Since that time, two courts have addressed this exact issue under New York law.[1] Both held that an umbrella policy with "not covered by" language owed a defense after the underlying primary policy exhausted. *See In re Viking Pump, Inc.*, 148 A.3d 633, 641, 660-662 (Del. 2016) ("*Viking Pump*"); *Hopeman Bros., Inc. v. Continental Cas. Co.*, 307 F. Supp. 3d 433, 441, 464-465 (E.D. Va. 2018) ("*Hopeman*").

*Viking Pump* is particularly instructive, as it not only discussed the "not covered by" defense provision but also placed it in the context of the general coverage language in the umbrella policies before it. In that regard, the umbrella policies applied over the "retained limit," a term defined to include the precise circumstance of primary exhaustion. The court held that it would distort the purpose of the umbrella policies to construe "not covered by" so narrowly that it would foreclose a defense under the umbrella following primary exhaustion. 148 A.3d at 662. Under that interpretation, a liability policy intended to apply after primary exhaustion would not defend after primary exhaustion, even though it included an express defense obligation. The "retained limit" language at issue in *Viking Pump* is **identical** to the Utica umbrella policy language at issue. *Compare id*. at 661 *with* Dkt. 65-1 at Ex. 5, GPA 00857-858.[2] The same context supporting the umbrella policy defense obligation applies here.

---

[1] In the underlying coverage litigation, Utica and Goulds disputed whether New York or California law applied to the policies. Utica cites both New York and California authority herein, emphasizing New York. Utica and Goulds are New York companies and the policies were negotiated, executed, and delivered in New York.

[2] Clearwater half-heartedly contends that *Viking Pump* is distinguishable because the "not covered by" provision in that case differs from Utica's. (*See* Dkt. 144, at 5.) This argument fails, as there is no meaningful difference in the "not covered by" provisions.

The court in *Hopeman* echoed the *Viking Pump* analysis, which is sheer commonsense. According to the *Hopeman* court, "the reasonable expectation of the average insured" would be that the umbrella policy with the "not covered by" language provides a defense after primary exhaustion. 307 F. Supp. 3d at 465.

None of the post-2015 cases Clearwater cites interprets "not covered by" under New York law. Those cases apply Connecticut, Missouri, and Pennsylvania law and thus are not germane here. (Dkt. 144 at 3-4.)

Clearwater's authority is also unpersuasive because it involved policy language that specifically addressed the situation of primary exhaustion and distinguished it from "not covered by." *See R.T. Vanderbilt Co. v. Hartford Accident & Indem. Ins. Co.*, 156 A.3d 539, 654-659 (Conn. App. Ct. 2017) ("*Vanderbilt*") (Coverage A applies after primary exhaustion, whereas Coverage B applies if there is no primary coverage); *see also Mine Safety Appliances Co. v. AIU Ins. Co.*, No. 10C-07-241 MMJ, 2016 Del. Super LEXIS 64, at *18 (Del. Super. Jan. 22, 2016). As the court in *Vanderbilt* put it: "[I]t is difficult to understand how the parties to an agreement could reasonably expect that one provision, Coverage A, would disclaim any obligation by the insurer to provide a defense once the underlying policy is exhausted while the very next provision, Coverage B, imposes a duty to defend under the very same circumstances." 156 A.3d at 656. The Utica policies at issue do <u>not</u> distinguish between exhaustion and "not covered by."

In the Missouri decision cited by Clearwater, the court acknowledged there was a colorable argument that the "not covered by" language was ambiguous. *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251, 282 (Mo. Ct. App. 2017). However, the court considered itself bound by an earlier Missouri decision that dealt with whether the attachment point of an umbrella policy could be ignored when the underlying primary carrier was insolvent.

*Id.* There is no issue of primary insolvency here.

Most of the "authority" Clearwater has offered, both in 2015 and now, concerns this insolvency issue, and not the primary exhaustion issue. *See* Dkt. 144 at 4 n.3, 8; Dkt. 65-9 at 11, 16-18. Whether an umbrella carrier must ignore its attachment point and act as primary insurance when the primary carrier is insolvent has nothing at all to do with the dispute before this Court, which is whether an umbrella carrier has a defense obligation after a loss exceeds the attachment point because it has exhausted the primary coverage. The court in *Viking Pump* noted that the case authority involving insolvency is inapposite. 148 A.3d at 661 n.125.

The pertinent cases, which are those that involve solvent carriers and the defense obligation of an umbrella carrier after primary exhaustion, support Utica's interpretation.

## II.    AS UTICA'S INTERPRETATION WAS REASONABLE, IT PROPERLY PAID DEFENSE.

This Court has already rejected Clearwater's argument that defense coverage was "clearly beyond the scope of" Utica's umbrella policies. (Dkt. 106 at 24.) Even under a follow the fortunes standard (which this Court applied in 2016, and which the Second Circuit has since held is not applicable here), the insurer's payment and allocation decisions must be "reasonable" to be binding on reinsurers. *See* Dkt. 106 at 12, 14; *N. River Ins. Co. v. ACE Am. Reinsurance Co.*, 361 F.3d 134, 141 (2d Cir. 2004); *U.S. Fid. & Guar. Co. v. Am. Re-Insurance Co.*, 985 N.E.2d 876, 882 (N.Y. 2013). Thus, this Court has already found that there was a reasonable basis for Utica to pay defense under the umbrella policies.

So did the California court presiding over the Goulds asbestos coverage litigation. After a trial, that court held that "Utica has a duty to defend under the 1977-1983 Utica umbrella policies" and that the defense payments were owed in addition to limits. (Dkt. 64-14 at pp. 25-29 of 40.) The California Court of Appeal affirmed in 2016. *See Goulds Pumps, Inc. v. Travelers*

4

*Cas. & Sur. Co.*, No. B 255439, 2016 Cal. App. LEXIS 4674, at *53 (Cal. Ct. App. June 22, 2016). This ruling should end the debate over whether Utica owed a defense under the umbrella policies.[3]

Utica's interpretation of the "not covered by" language is reasonable, which means that the best Clearwater can do is show that the term is ambiguous because there may be another reasonable interpretation. *See World Ambuette Transp., Inc. v. Lee*, 78 N.Y.S.3d 137, 141 (N.Y. App. Div. 2018) ("A contract is ambiguous if the terms are 'reasonably susceptible of more than one interpretation.'"). If the term is ambiguous, then Utica owed defense to Goulds because ambiguities are construed against the insurer and in favor of coverage. *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) ("Any ambiguity as to the insurer's duty to defend is resolved in favor of the insured."); *In re Viking Pump, Inc.*, 52 N.E.3d at 1151; *Westport Ins. Co. v. Cal. Cas. Mgmt. Co.*, No. 17-15924, 2019 U.S. App. LEXIS 4889, at *23 (9th Cir. Feb. 20, 2019). This is particularly the case if California law applies, as it imposes a duty to defend on an excess insurer following primary exhaustion unless the excess policy provides to the contrary. *Great Am. Ins. Co. v. Sequoia Ins. Co.*, No. CV 16-8456-GW (SSx), 2017 U.S. Dist. LEXIS 214502, at **22-23 (C.D. Cal. Aug. 21, 2017), *citing Hartford Accident & Indem. Co. v. Superior Court*, 23 Cal. App. 4th 1774, 1779-1780 (1994).[4]

The Second Circuit found language similar to "not covered by" ambiguous in *American*

---

[3] The California trial and appellate courts also found that all Utica primary policies had aggregate limits, flatly rejecting Clearwater's main contention in this reinsurance litigation. *Goulds Pumps, Inc.* 2016 Cal. App. LEXIS 4674, at *51: "No serious argument can be made under California law that there was no aggregate in any relevant Utica Mutual Insurance Company policy. The result is the same under New York law."

[4] Clearwater recognizes this consequence of ambiguity. While it previously urged this Court to stay consideration of the "not covered by" issue until Judge Sannes issues a decision in *Utica Mutual Insurance Co. v. Munich Reinsurance America, Inc.*, Nos. 12-CV-196, 13-CV-743 (N.D.N.Y.), Clearwater now argues that Judge Sannes' finding in 2018 that "not covered by" is ambiguous should be ignored. (Dkt. 144 at 6-7.)

*Commercial Lines LLC v. Water Quality Insurance Syndicate*, 679 F. App'x 11 (2d Cir. 2017). The case concerned whether a primary insurer (WQIS) had to defend after its indemnity limits exhausted. The policyholder argued that it did, relying on a provision stating that WQIS owed defense costs incurred with respect to "liabilities covered" under the primary policy. According to the policyholder, "liabilities covered" referred to whether an incident is the type of liability covered by the primary policy, not whether the coverage is exhausted.[5] The Second Circuit found the defense provision ambiguous because it could reasonably be read to refer only to liabilities that WQIS was required to cover under the policy and WQIS was not required to cover liabilities after its indemnity limit was exhausted.[6] *Id.* at 14.

The same analysis applies here. The "not covered by" term is reasonably read to include the situation where the underlying policy has exhausted. An occurrence that was covered by the policy before exhaustion is not covered by the policy after exhaustion. Also, given that New York and California law generally treat each asbestos claimant as a separate occurrence, new asbestos claimants filing after exhaustion were *never* an occurrence covered by the exhausted primary policy. *See Appalachian Ins. Co. v. Gen. Elec. Co.*, 863 N.E.2d 994 (N.Y. 2007); *London Mkt. Insurers v. Superior Court*, 53 Cal. Rptr. 3d 154 (Cal. Ct. App. 2007).

As discussed above, Clearwater relies on cases where the subject umbrella policy specifically set forth how the policy would respond following primary exhaustion, contrasting that with how it would respond if an occurrence was "not covered by" the primary. *See Vanderbilt*, 156 A.3d at 654-659; *see also Mine Safety Appliances Co.*, 2016 Del. Super LEXIS

---

[5] Clearwater makes the same argument. *See* Dkt. 144 at 1; *see also* Dkt. 65-9 at 13.

[6] On remand, the district court ruled for WQIS, holding that it did not "cover" liabilities after its limits exhausted. *Am. Commercial Lines LLC v. Water Quality Ins. Syndicate*, No. 09-cv-7957 (RWL), 2018 U.S. Dist. LEXIS 194202 (S.D.N.Y. Nov. 7, 2018).

64, at *18. These cases underscore the ambiguity in a policy referring only to "not covered by" with no further explication. If the "not covered by" language alone were sufficient to convey to an average insured that the umbrella policy has no defense obligation following primary exhaustion, then there would be no need for policy language clarifying the point.

However, policies with clarifying language exist. The clarifications have included an explanation that there is defense coverage under the umbrella following primary exhaustion, as well as an explanation that there is not. *See San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co.*, No. 3:15-cv-1401-BEN-MDD, 2016 U.S. Dist. LEXIS 88362, at *17 (S.D. Cal. July 6, 2016) (defense coverage owed under umbrella policies that applied to occurrences not covered by underlying insurance due to exhaustion). This circumstance illustrates that, absent clarification that it is distinct from primary exhaustion, the "not covered by" phrase can reasonably be read to include primary exhaustion.

To the extent this Court considers how the insurance industry views the "not covered by" language, Utica refers to the discussion below in an insurance hornbook from 1980, roughly contemporaneous with the umbrella policies at issue here. The author concludes that Utica's interpretation is clearly supported by the language, whereas the interpretation Clearwater urges would expose the umbrella insurer to punitive damages:



# Umbrella Notes ™

No. 4                                                                July, 1980

## When do Umbrellas Defend?

A subscriber called us recently about defense coverage under his umbrella. His firm's primary and umbrella liability coverage were provided in 1973 by a major insurer whose umbrella form is included in *The Umbrella Book*.™ The primary limits have been exhausted, so the insurer says it will no longer defend or investigate claims on the insured's behalf under the primary policy—and also refuses to provide defense under the umbrella, under which no claims have been paid.

The defense provisions of this umbrella form read in part as follows:

"With respect to any **occurrence** *not covered by the underlying policies* listed in the schedule of underlying insurance, or any other underlying insurance collectible by the **insured**, *but covered by the terms and conditions of this policy* the Company shall, in addition to the amount of **ultimate net loss** payable;

(1) *defend any suit* against the **insured** seeking damages on account of **personal injury, property damage** or **advertising liability,** even if any of the allegations of the suit are groundless, false or fraudulent; and may make such investigation and settlement of any claim or suit as it deems expedient;

...."                                  [emphasis added]

The wording above could apply either to underlying limits or the insured's retention. It seems clear to us that the insurer has a contractual obligation to defend the insureds after underlying coverage is exhausted.

The information given to us makes it appear that the insurer is abandoning the defense of claims which the umbrella ultimately will cover. This seems contrary to the insurer's interests, in addition to the problems it causes the insured. However, the insured's own attorneys are pleased because they now believe that they have a good chance to collect punitive damages as well as the cost of the claims and defense from this insurer.

We do not understand why insurers become involved in disputes like this one. But the moral for the insured is to beware, even if the policy seems to clearly provide coverage.

## Bituminous Casualty

The Bituminous umbrella form included with this supplement is the first "plain language" umbrella form for commercial risks. It also is one of the few truly original umbrellas created from scratch, instead of simply plagiarizing terms from other insurers' forms. The result is a broad, clearly worded form which responds to the market served by Bituminous.

The form contains language similar to the Business Auto Policy, using personal pronouns freely. The writers took pains to introduce clarity to the wording of policy terms.

Bituminous prefers to write at least one of the underlying coverages for their umbrella. The form is approved in all states except New Jersey and is offered in most parts of the U.S. except New England and the Pacific Coast. They report that it is selling well. We have been unable to determine whether this is because of the policy form's clarity or its pricing.

## Cincinnati Insurance Company

Cincinnati is a regional insurer, operating primarily in the Mid-West and Southern U.S. Like the Chicago/Interstate form, the occurrence definition is inadequate. The form and our comments are included in pages CIN-1ff.

## Interstate Group

Chicago Insurance Company and Interstate Fire and Casualty both are part of the Interstate Group. Their umbrella form wording is identical, except for the company imprints on the jacket and the form numbers. The Chicago form is printed in this supplement on pages CHI-1ff, and a page for Interstate F & C is included (IFC-1), to refer the reader to the analysis of the Chicago form.

The policy defines occurrence as an "accident," a defect found in about 40% of umbrella forms we have analyzed. Though we tire of repeating it, this definition does not adequately cover personal or advertising injuries, which are not accidents—they are acts, injuries or events, and often intentional, though the resulting injuries may be unintended.

( over )

*Umbrella Notes* are published as a supplement to *The Umbrella Book.*
*Umbrella Notes* and *The Umbrella Book* © 1981 by Warren, McVeigh & Griffin, 1420 Bristol Street North, Newport Beach, California 92660.

"Umbrella Notes No. 4" in THE UMBRELLA BOOK (James A. Robertson, ed. July 1980.)

The original edition of this hornbook made the same point: "not covered by" can include exhausted underlying coverage. *See* THE UMBRELLA BOOK at 44 (1976).

There is no comparable authority from this era to the contrary.


### CONCLUSION

As a reasonable interpretation of Utica's umbrella policies supports a defense obligation to Goulds, Clearwater is bound to reimburse its share of the defense payments. This Court should (a) deny Clearwater's April 20, 2015 Motion for Partial Summary Judgment, and (b) enter judgment in favor of Utica, directing Clearwater to pay its share of the defense and other expense payments under the umbrella policies it reinsured.

DATED:  March 21, 2019

By: */s/ William M. Sneed*


SIDLEY AUSTIN LLP

William M. Sneed
   wsneed@sidley.com
Thomas D. Cunningham
   tcunningham@sidley.com
One South Dearborn
Chicago, IL 60603
Telephone: 312-853-7000
Fax: 312-853-7036


COOPER ERVING & SAVAGE LLP

Phillip G. Steck
   psteck@coopererving.com
39 North Pearl Street
Albany, NY 12207
Telephone: 518-432-3900
Fax: 518-432-3111

*Attorneys for Plaintiff*

9