IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UTICA MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CLEARWATER INSURANCE COMPANY,<br><br>Defendant. | 6:13-cv-1178 (GLS/TWD) |

## SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S APRIL 20, 2015 MOTION FOR PARTIAL SUMMARY JUDGMENT

NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
Tel: (212) 408-5100
Fax: (212) 541-5369

*Attorneys for Defendant, Clearwater Insurance Company*

John F. Finnegan
Allison Goodman Gold

    Of Counsel

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

        A.      Utica's Efforts to Distinguish Clearwater's Authorities is Unavailing .................... 2

        B.      Utica Relies on Inapposite Case Law ....................................................................... 3

        C.      Utica Impermissibly Adduces Still Additional Extrinsic Evidence ......................... 5

APPENDIX A (Judge Sannes' March 29, 2019 Post-Trial
                  Decision in Utica/MunichRe) ............................................................................... A-1

## TABLE OF AUTHORITIES
**Page(s)**

**Cases**

American Commercial Lines LLC v. Water Quality Insurance Syndicate,
   679 Fed. Appx. 11 (2d Cir. 2017)..................................................................................3, 4, 5

Cannon Electric Inc. v. ACE Property & Casualty Insurance Co.,
   BC 290354, slip op. (Ca. Super. Ct. January 28, 2014), aff'd sub nom Goulds
   Pumps, Inc. v. Travelers Casualty & Surety Co., B255439, 2016 WL 3564244
   (Cal. Ct. App. June 22, 2016) ..................................................................................................3

Metromedia Co. v. Fugazy,
   983 F.2d 350 (2d Cir. 1992)...................................................................................................1

Mine Safety Appliances Co. v. AIU Insurance Co.,
   2016 WL 498848 (Del. Super. Ct. 2016)................................................................................2

Nooter Corp. v. Allianz Underwriters Insurance Co.,
   536 S.W.3d 251 (Mo. Ct. of Appeals 2017) ...........................................................................2

R.T. Vanderbilt Co. v. Hartford Accident & Indemnity Co.,
   156 A.3d 659 (Conn. App. Ct.), cert. granted in part, 327 Conn. 923 (2017)..........................2

San Diego Unified Port District v. National Union Fire Insurance Co.,
   2016 WL 3766364 (S.D. Ca. July 6, 2016) ........................................................................3, 4

Utica Mutual Insurance Co. v. Clearwater Insurance Co.,
   906 F.3d 12 (2d Cir. 2018).....................................................................................................2

Utica Mutual Insurance Co. v. Munich Reinsurance America, Inc.,
   6:13-cv-00743-BKS-ATB, slip op. (N.D.N.Y. March 29, 2019) ...............................................1

In re Viking Pump, Inc.,
   148 A.3d 633 (Del. Sup. Ct. 2016) .........................................................................................5

**Other**

The Umbrella Book (1976 &1980 editions) ...................................................................................5

CPAM: 33898987.1

Clearwater[1] submits this reply brief to address arguments made by Utica in its Supplemental Opposition Memorandum and to provide a further update as respects relevant case law. On March 29, 2019, in another of the lawsuits filed by Utica against its reinsurers, Judge Sannes ruled that the phrase "occurrence not covered by" **in a Utica umbrella policy** is unambiguous and does not include (as Utica contends) primary exhaustion. Appx. A at 41. Judge Sannes sua sponte reversed her earlier finding of ambiguity in order "to correct a clearly erroneous finding." Id. at 36. Judge Sannes now recognizes that Utica's construction of its policy obligations is "untenable." Id. at 41.[2]

As it has done from the outset, Utica strived in its opposition to divert this Court's attention from the carefully-crafted, straightforward wording of Utica's Umbrella Policies and from the case law that has construed provisions comparable or identical to Article II in those Policies. In its supplemental brief, Utica employs three artifices: 1) Utica pretends that relevant authorities are distinguishable; 2) Utica relies on inapposite decisions; and 3) Utica impermissibly adduces extrinsic evidence.

The dispositive issue on this motion is whether Article II of Utica's Umbrella Policies -- either standing alone or when considered in the context of the Policies as a whole -- is ambiguous. It is not. In pertinent part, Article II reads:

> With respect to any **occurrence** not covered by [underlying primary] policies. . ., but covered by the terms and conditions of this policy. . ., the company shall . . . defend any suit against the insured . . . . [Bolding in original.]

The plain import of this language is that Utica will defend its policyholder (Goulds in this case)

---

[1] Clearwater adopts here the same conventions and abbreviations earlier used by it.

[2] The crucial language in Utica's 1973 umbrella (the contract that Judge Sannes construed) is no different than the language in Utica's 1978-81 Umbrella Policies. In each, the phrase "occurrence not covered by" is the focal point, suggesting that the outcome here should be no different than in Utica/MunichRe.

in only one circumstance, namely, where a claim or lawsuit arose from an occurrence, that is, from an accident, that falls (i) outside the scope of the underlying primary policies' coverage grant but (ii) within the scope of the Umbrella Policies' separate, broader grant of coverage. (Umbrella policies routinely provide more expansive, gap-filling coverage than primary policies. See Utica Mut. Ins. Co. v. Clearwater Ins. Co., 906 F.3d 12, 15 (2d Cir. 2018).)  As Judge Sannes found: "There is no basis in law, or in the terms of the [Utica] Umbrella [Policy], for inferring that "occurrence not covered by" means anything other than the type of risk … Utica assumed under primary policies."  Appx. A at 39.

Any doubt that Article II applies only in a single, very narrow circumstance is dispelled when one considers Utica's Umbrella Policies in their entirety.  Article I of Utica's Umbrella Policies, which is the coverage grant setting forth Utica's indemnity obligation, provides that Utica has a duty to indemnify its policyholder in each of two circumstances: (1) when an occurrence is not covered by underlying primary policies; and, in addition, (2) when an underlying primary limit either is exhausted (by payment of claims fully eroding an aggregate limit) or exceeded (in the case of a single catastrophic loss).  The juxtaposition of Articles I and II demonstrates that Article II cannot reasonably be read to apply following the exhaustion of primary policies.  When Utica intended to extend coverage based upon the exhaustion of primary limits, Utica said so explicitly.  This Court should not countenance Utica's efforts to conflate the separate bases triggering the separate coverage grants in Articles I and II.

**A.**     **Utica's Efforts to Distinguish Clearwater's Authorities is Unavailing**

Utica seeks to distinguish R.T. Vanderbilt, Mine Safety and Nooter -- each of which was discussed in Clearwater's February 25, 2019 supplemental memorandum -- arguing that these cases did not apply New York law.  Utica's argument misses the mark.  In each of these cases, the courts (applying similar, if not the identical, canons of construction that a New York court

2

would apply) concluded that the language "occurrence not covered by" was "unambiguous[ ]" and did "not require [an umbrella] insurer to defend claims that would have been covered by underlying [primary] insurance but for its exhaustion." R.T. Vanderbilt, 156 A.3d at 659; see also Mine Safety, 2016 WL 498848 at *7; Nooter 536 S.W. 3d at 282.  These courts persuasively explained why Utica's construction of Article II (or its functional equivalent) was unreasonable based solely upon the policy language.  These courts, as many before them, recognized that the phrase "occurrence not covered by" referred solely to the breadth of a primary's coverage grant, and had nothing whatsoever to do with the availability of primary limits.  The determinative inquiry when "occurrence not covered by" language is used by an umbrella insurer to delimit its defense obligation is the nature of the occurrence, not the primary's obligation to pay.  Accord Appx. A at 41-42 (relying upon R.T. Vanderbilt and Nooter).[3]

**B.   Utica Relies on Inapposite Case Law**

In its supplemental brief, Utica cites two cases that neither party earlier mentioned. These cases are American Commercial Lines LLC v. Water Quality Insurance Syndicate, 679 Fed. Appx. 11 (2d Cir. 2017) (hereinafter, "WQIS") and San Diego Unified Port District v.

---

[3] Utica's current discussion of Cannon Electric -- the California lawsuit by Goulds against its insurers -- is disingenuous.  In its initial opposition brief [DE 79], Utica accurately described the holding in Cannon Electric.  Utica earlier wrote (at 5):

> During [the Cannon Electric] trial, both Goulds and its insurers interpreted Utica's umbrella policies to cover defense costs, disputing only whether payment of those costs eroded the policy limits.  The court ruled that . . . defense costs . . . were in addition to limits, and did not erode the limits.  (Emphasis added.)

Now, in its supplemental opposition brief, Utica describes the holding in Cannon Electric very differently.  Utica now says (at 4) that the California court "held that 'Utica has a duty to defend under the 1977-1983 umbrella policies.'"  Utica knows better, as demonstrated by Utica's original description of the California case.  Utica knows well that the California court NEVER addressed the antecedent issue, which is whether and when Utica's Umbrella Policies impose a defense obligation upon Utica.  To reiterate, in Cannon Electric, the "only" issue (as Utica itself earlier acknowledged) was whether Utica's Umbrella Policies were cost-supplemental or cost-inclusive.

3

Case 6:13-cv-01178-GLS-TWD   Document 152   Filed 04/04/19   Page 7 of 9

National Union Fire Insurance Co., 2016 WL 3766364 (S.D. Ca. July 6, 2016). Neither case is particularly relevant. Further, each is readily distinguishable.

In San Diego, the preface to the defense provision in National Union's umbrella policy contained, as here, "occurrence not covered by" language. Critically, the policy in San Diego, unlike here, included a second sentence. The additional verbiage (at *5) read: "This Insuring Agreement shall ***also*** apply to occurrences not covered by any underlying insurance due to exhaustion of any aggregate limits by reason of any losses paid thereunder." (Emphasis added.) This additional language would have been wholly unnecessary if, as Utica argues, the words "occurrence not covered by," standing alone, encompass situations in which the aggregate in an underlying primary policy is exhausted by the payment of claims. If Utica's position were correct, the additional language in National Union's policy would have been mere surplusage. But the language was not intended to be meaningless. Rather, it was designed to provide the policyholder with an additional benefit, which is why the policy provides that this "Insuring Agreement [the defense obligation] shall ***also*** apply. . . ."

The policy language and issue in WQIS were materially different from those here. The issue in WQIS was whether the insurer had an unlimited duty to defend. The policyholder argued -- and the trial court agreed (at least initially) -- that the insurer had to continue to provide a defense even after the insurer had paid its $5 million indemnity limit. The Second Circuit reversed finding (at 14) that the phrase "liabilities covered," the operative language in the defense provision, was ambiguous and "could reasonably be read to refer only to liabilities that WQIS [the insurer] was required to cover under Coverage A [which addressed indemnity]."

Here, the language under consideration does not read "liabilities covered" but rather reads "occurrence not covered by." This circumstance alone distinguishes WQIS. WQIS is also

4

CPAM: 33898987.1

distinguishable because the term "liabilities" was not defined in the WQIS policy and, for this reason, could be understood to refer to the insurer's duty to pay losses. Here, in contrast, Utica's Umbrella Policies define the term "occurrence" -- to mean "an accident." DE 65-6 at 3. This definition does not hint at or otherwise allude to an insurer's payment obligations and thus ensures that the phrase "occurrence not covered by" is read to refer solely to the scope of a primary policy's coverage, as distinct from the availability of limits under it.[4]

### C. Utica Impermissibly Adduces Still Additional Extrinsic Evidence

Utica's reliance on the Umbrella Book at this late stage of the proceeding is curious. The book, as well as the July 1980 "Umbrella Note," were available to Utica when Utica prepared its initial opposition papers in May 2015. If Utica genuinely believed that the Umbrella Book was persuasive, Utica would have mentioned it earlier. Not surprisingly, the Umbrella Note is not truly probative. The language of the umbrella policy discussed in the Note is materially different. The prefatory clause in the defense provision quoted in the Note includes the phrase "in addition to the amount of ultimate net loss payable." This language creates ambiguity because the implication is that defense costs are payable whenever the insurer has an obligation to pay indemnity. Further, the Umbrella Book is extrinsic evidence and, for this reason, is not properly considered by this Court unless the Court, upon analyzing the Policy alone, first concludes (mistakenly) that there is an ambiguity. See DE 93 at 7-8.

---

[4] The operative phrase in Viking Pump is "*personal injury*. . . not covered under," which is more akin to the WQIS construct, i.e., "liabilities covered," than the language in Utica's Policies. See Appx. A at 43 ("language in *Viking Pump* is materially different than the [Utica] policy language here").

WQIS belies Utica's argument (at 5) that ambiguous policy language must always be construed in favor of coverage. If Utica's argument had had any merit, the Second Circuit panel in WQIS would not have remanded for further proceedings. Nor would the district court have later concluded, as it did following a trial on the merits, that the insurer's construction, rather than the policyholder's, was correct. 2018 WL 6332908, *10 (S.D.N.Y. Nov. 7, 2018).

CPAM: 33898987.1

Dated:   New York, New York
         April 4, 2019

            Respectfully submitted,

            NORTON ROSE FULBRIGHT US LLP

            By: _____ */s/ John F. Finnegan*
                 A Member of the Firm
                 NDNY Bar Roll No. 515774
            1301 Avenue of the Americas
            New York, NY 10019
            Tel: 212-408-5100
            Fax: 212-541-5369

            *Attorneys for Defendant, Clearwater Insurance Company*

Allison Goodman Gold

    Of Counsel

6