IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UTICA MUTUAL INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>   v.<br><br>CLEARWATER INSURANCE COMPANY,<br><br>       Defendant. | 6:13-cv-1178 (GLS/TWD) |

**REJOINDER IN FURTHER SUPPORT OF DEFENDANT'S
APRIL 20, 2015 MOTION FOR PARTIAL SUMMARY JUDGMENT**

                     NORTON ROSE FULBRIGHT US LLP
                     1301 Avenue of the Americas
                     New York, NY 10019
                     Tel: (212) 408-5100
                     Fax: (212) 541-5369

                     *Attorneys for Defendant, Clearwater*
                     *Insurance Company*

John F. Finnegan
Allison Goodman Gold

   Of Counsel

Clearwater submits this rejoinder to address arguments first made by Utica in its June 21, 2019 surreply. [DE 156] Utica contends (at 1 & 4) that Judge Sannes' March 29, 2019 decision in Utica/MRA "does not support Clearwater's position in this case." According to Utica, the Utica/MRA decision "is based in significant part on language not appearing in the Utica [umbrella] policies at issue here." Utica is wrong.

The critical and determinative contractual language in both this case and in the Utica/MRA case is **IDENTICAL**. Utica's 1978-81 Umbrella Policies (the contracts at issue here) and Utica's 1973 umbrella policy (the contract at issue in Utica/MRA) each provides that Utica has a defense obligation only "[w]ith respect to any occurrence not covered by" underlying primary insurance. Compare 2019 U.S. Dist. LEXIS 5347 at *55 (quoting the 1973 defense provision) (appeal filed) with DE 65-6 at 2 (the 1978 umbrella policy). The centerpiece of Judge Sannes' recent decision is her construction of the phrase "occurrence not covered by." Judge Sannes concluded that those words, standing alone and in the context of the entire agreement, are unambiguous. 2019 U.S. Dist. LEXIS 5347, at *54 (earlier, at "the summary judgment stage, [this] Court found the 'occurrence not covered by language' in the defense endorsement ambiguous" but, upon reconsidering, finds the phrase "unambiguous"; "it does not include exhaustion of [a primary policy's limit]").

In short, the Utica/MRA decision is squarely on point, probative and compelling. There, as here, the controversy dealt with, and the decision turned on, the meaning of the phrase "occurrence not covered by." Further, there, as here, the parties' arguments were the same. As Judge Sannes explained:

> In this litigation [referring to the Utica/MRA case], Munich has maintained that the "occurrence not covered by" language means an occurrence that is "not within the scope of coverage provided by underlying policies of insurance." (Dkt. No. 300-5, at 8). Utica reads the "occurrence not covered by" language more

broadly as including occurrences that are "not covered" by the primary policy because that policy has been exhausted. (Dkt. No. 310, at 11).

Guided by the plain meaning of the words "occurrence not covered by" and by "the strength of the case law supporting Munich's [the reinsurer's] position," Judge Sannes rejected Utica's construction, concluding (at *61) that it was "untenable:"

> There is no basis in law, or in the terms of the [1973 Utica] Umbrella, for inferring that "occurrence not covered" means anything other than the type of risk Utica assumed under primary policies.

Id. at *57 (collecting cases construing the meaning of "coverage," including the New York Court of Appeals decision in NYU v. Continental Ins. Co., 87 N.Y.2d 308, 323 (1995)).

While the definition of "retained limit" is somewhat different in Utica's 1973 and Utica's 1978-81 Umbrella Policies, this circumstance is immaterial. First, Utica nowhere explains how the definition of "retained limit" in the 1978-81 Umbrella Policies could render the phrase "occurrence not covered by" ambiguous. Utica's omission is telling. If the definition of "retained limit" in the 1978-81 Umbrella Policies affected the construction of the phrase "occurrence not covered by," and even arguably rendered those words unclear, Utica most assuredly would have explained how -- in detail.

Second, in Utica/MRA, Utica conceded that its various umbrella policies, whether the 1973 policy or its 1977 and later policies, were "sufficiently similar for purposes of interpretation." Id. at *13n. 20. Utica cannot now reverse field (after losing on one policy) and assert that a variance in the definition of "retained limit" compels that the words "occurrence not covered by" be interpreted differently in different policy years.

Third, here, the path to finding clarity is more straightforward and less nettlesome than it was in Utica/MRA. In the 1978-81 Umbrella Policies, "retained limit" is used in Article I (Utica's grant of indemnity coverage) to trigger Utica's duty to make loss payments. Article I's

2

"retained limit" trigger requires Utica to pay loss in each of two circumstances: (i) when the limits of an applicable primary policy are exceeded or exhausted; or (ii) when there never was any applicable primary coverage, in which case the umbrella policy "drops down" and, subject to a "retained limit," functions as a primary policy. The 1978-81 Umbrella Policies address Utica's obligation to pay a policyholder's defense costs in a second, separate coverage grant (Article II). Unlike Article I, Article II does not use "retained limit" to trigger Utica's obligation. Rather, Article II is tied solely to whether an "occurrence was not covered by" an underlying primary policy. If there never was any applicable primary policy, Utica's umbrella policy drops down and provides (as a primary policy would) first dollar defense coverage. The determination of defense coverage under Article II of Utica's 1978-81 Umbrella Policies has nothing to do with the policyholder's "retained limit" or that phrase's definition.[1]

In Utica/MRA, the contract's construct was different. As initially issued, Utica's 1973 umbrella policy applied on an "ultimate net loss" basis. This meant that there was a single policy limit available for both indemnity and defense costs, and each of those two coverages was tethered to the definition of "retained limit." Utica later amended its 1973 policy to change the basis on which coverage for defense costs would apply -- from cost inclusive to cost supplemental. This change, however, did not delink Utica's defense obligation from the policy's definition of "retained limit." Judge Sannes therefore had to grapple with the policy's definition of "retained limit" when evaluating the scope of Utica's defense obligation. This Court, unlike Judge Sannes, need not do so. Here, to reiterate, "retained limit" is not a factor that must be

---

[1] The phrase "retained limit" only appears in Article II in a parenthetical. The parenthetical reference clarifies that in those instances in which Utica has a defense obligation, Utica must pay defense costs whether or not the policyholder has first satisfied its retained limit, which is how Judge Sannes concluded the 1973 policy worked as well.

3

considered when evaluating whether Utica has a defense obligation. In other words, here, unlike in Utica/MRA where the definition of "retained limit" affected Utica's duty to defend, the facts more strongly support the conclusion that "occurrence not covered by" is unambiguous.[2]

Utica's discussion of Judge Sannes' treatment of Viking Pump is incomplete. Judge Sannes distinguished Viking Pump on two bases. First, she noted that the prefatory language in the defense provision of Liberty Mutual's umbrella policy (the policy at issue in Viking Pump) was "materially different" than Utica's policy language:

> The defense provision at issue in Viking Pump does not contain the language "occurrence not covered by"; instead the provision there applied to "*personal injury* . . . covered under this policy . . . but not covered under any underlying policy." (Italics in original.)

While Judge Sannes also observed that the definition of "retained limit" in Liberty Mutual's policy differed somewhat from the language in Utica's 1973 umbrella, this fact merely provided Judge Sannes with additional support for her conclusion that Viking Pump was an outlier, and not probative. Utica's myopic focus on only the second, the less important of two distinguishing characteristics, is disingenuous.

In sum, Utica's assertion (at 1) that Judge Sannes' decision "supports Utica's position" is absurd. In truth, Utica/MRA establishes that Utica's arguments here are baseless. Utica grasps at straws to discredit Judge Sannes' well-reasoned opinion, as well as her sound conclusions.

---

[2] Utica's efforts to conflate paragraph b of the 1973 definition of retained limit with paragraph 2 of the 1978-81 definition are misplaced. Paragraph b in the 1973 definition addresses the situation where a primary policy never applied. In contrast, paragraph 2 in the 1978-81 definition addresses a different situation, namely, where the primary policy initially applied but no longer does because its aggregate limit is exhausted. The 1978-81 policies also address the situation where there was never any primary coverage, at subsection 3.b of the definition. Thus, an apples to apples comparison of the 1973 and the 1978-81 policies would be between paragraphs b and 3.b, not paragraphs b and 2.

Dated: New York, New York
June 27, 2019

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

By: /s/ *John F. Finnegan*
    A Member of the Firm
    NDNY Bar Roll No. 515774

1301 Avenue of the Americas
New York, NY 10019
Tel: 212-408-5100
Fax: 212-541-5369

*Attorneys for Defendant, Clearwater Insurance Company*

Allison Goodman Gold
    Of Counsel