**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**UTICA MUTUAL INSURANCE
COMPANY,**

                **Plaintiff,**

                v.

**CLEARWATER INSURANCE
COMPANY,**

                **Defendant.**

**6:13-cv-1178
(GLS/TWD)**

_____

# SUMMARY ORDER

On November 21, 2018, the Second Circuit issued a mandate that, among other things, vacated this court's grant of partial summary judgment in favor of defendant Clearwater Insurance Company.[1] (Dkt. No. 138.) As relevant here, the Second Circuit determined that "[t]he district court must . . . resolve . . . whether [plaintiff] Utica [Mutual Insurance Company]'s underlying policies obligate Utica to pay asbestos-related [defense] costs."

---

[1] The court presumes the parties' familiarity with the factual background of this action. (Dkt. No. 107 at 2-10.) Likewise, the standard of review pursuant to Federal Rule of Civil Procedure 56 will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

(*Id.* at 19.) Accordingly, the court ordered supplemental briefing on Clearwater's motion for partial summary judgment. (Dkt. Nos. 143, 155.) For the following reasons, Clearwater's motion, (Dkt. No. 65), is denied.

It is undisputed that Utica is not entitled to recover certain expenses, such as defense costs, from Clearwater under their reinsurance agreements if Utica's 1978-81 umbrella policies did not require Utica to pay such expenses to Goulds Pumps Inc. (Dkt. No. 138 at 16-17.) Thus, the issue is whether Utica was obligated to pay defense costs to Goulds, which turns on the meaning of the following contractual provision in the umbrella policies:

> With respect to any **occurrence** not covered by the policies listed in the schedule of underlying insurance or any other insurance collectible by the **insured**, but covered by the terms and conditions of this policy (including damages wholly or partly within the amount of the **retained limit**), [Utica] shall:
>
> (a) defend any suit against the **insured** alleging **personal injury**, **property damage**, or **advertising offense**, even if such suit is groundless, false or fraudulent[.]

(Dkt. No. 85, Attach. 6 at 3; *compare* Dkt. No. 65, Attach. 10 ¶ 6, *with* Dkt. No. 79, Attach. 1 at 10.)

In sum, Clearwater argues that the "occurrence not covered by" language "is unambiguous, . . . refers to the fact of coverage, not to the

2

extent of coverage," and "do[es] not require Utica to pay any asbestos defense costs incurred by Goulds following the exhaustion of Utica's underlying primary policies." (Dkt. No. 144 at 1-2 (emphases omitted).) Put another way, Clearwater argues that "[t]he plain import of this language is that Utica will defend [the Goulds] . . . in only one circumstance, namely, where a claim or lawsuit arose from an occurrence . . . that falls (i) outside the scope of the underlying primary policies' coverage grant but (ii) within the scope of the [u]mbrella [p]olicies' separate, broader grant of coverage." (Dkt. No. 152 at 1-2.)

Utica, on the other hand, argues that "a loss is 'covered by' a policy only if the loss is owed under the terms of that policy," which means "once the primary policies exhaust, any occurrence leading to a claim against the umbrella policy is no longer 'covered by' the underlying policies [and] . . . [s]uch an occurrence would then fall within the umbrella policies' defense provision." (Dkt. No. 79 at 10.) Utica contends that "[Clearwater's] interpretation is in tension with common sense, which dictates that if an insurer has no obligation to pay a loss under its policy, then that loss is not 'covered' under the policy." (*Id.*)

"An insurance agreement is subject to principles of contract

3

interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 25 N.Y.3d 675, 680 (2015). Under New York law,[2] "[w]hen construing insurance policies, the language of the contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 257 (2016) (internal quotation marks and citations omitted). "An agreement is unambiguous when its words have a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Vintage, LLC v. Laws Const. Corp.*, 13 N.Y.3d 847, 849 (2009) (internal quotation marks and citation omitted). If a contract is unambiguous, the court does not consider extrinsic evidence. *See Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002); *see also Marin v. Constitution Realty, LLC*, 28 N.Y.3d 666, 673 (2017) (holding "[a]greements are construed in accord with the parties' intent" and the "best evidence of that intent is the parties' writing") (internal quotation marks and citation omitted). However, if competing interpretations are

---

[2] The court previously determined that New York law governs this contract dispute. (Dkt. No. 106 at 10 n.4.)

"reasonable on their face," courts may consider extrinsic evidence, such as "customs, practices, usages[,] and terminology as generally understood in the particular trade or business." *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 21 n.8 (2d Cir. 2018) (internal quotation marks and citations omitted).

Here, the parties' agreement defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising offense which is neither expected nor intended from the standpoint of the insured." (Dkt. No. 85, Attach. 6 at 4 (emphases omitted).) "Covered" is not defined by the agreement, but its plain dictionary meaning is "afford[ed] protection against or compensation for." *See* Cover, *Merriam–Webster's Collegiate Dictionary* (10th ed. 1997). The "schedule of underlying insurance" refers to a document attached to the umbrella policies, which lists a primary policy as one of the underlying insurances; "[e]ach of the underlying 1978-81 primary policies had a $500,000 per occurrence limit and each was listed on the schedule of underlying insurance of the [u]mbrella [p]olicy that sat excess to it." (Dkt. No. 65, Attach. 9 at 4, 12.) Finally, the policy defines "retained limit" as follows:

5

as to each **occurrence** with respect to which insurance is afforded under this policy:

   (1)    if an underlying policy is also applicable or would be applicable but for breach of policy conditions; the relevant "each person," "each accident," "each occurrence[,]" or similar limit of liability stated therein (less any reduction thereof by reason of an overriding aggregate limit of liability) plus all amounts payable under other insurance, if any; [or]

   (2)    if any underlying policy otherwise applicable is inapplicable by reason of exhaustion of an aggregate limit of liability; all amounts payable under other insurance, if any[.] . . .

For the purpose of determining the **retained limit**, "other insurance" means any other valid and collectible insurance (except under and underlying policy) which is available to the **insured**, or would be available to the insured in the absence of this policy, it being the intention that this policy shall not apply under or contribute with such other insurance unless the company's agreement thereto is endorsed hereon.

(Dkt. No. 85, Attach. 6 at 4.)

First, Clearwater argues that another clause in Article II[3] of the umbrella policy, "[c]lause (h)[,] makes clear that where primary coverage

---

[3] Elsewhere, Clearwater refers to "Article II" as "Section II," (Dkt. No. 65, Attach. 9 at 13), but the court assumes it intended to reference the same provision.

6

was purchased, Utica has no defense obligation under its umbrella policy." (Dkt. No. 65, Attach. 9 at 13.) However, it stops short of explaining how this is so. Clause (h) states that "this policy does not apply to defense costs covered by policies of underlying insurance." (Dkt. No. 85, Attach. 6 at 3.) To be sure, this clause does nothing to define "covered by," but instead merely reiterates that defense costs, like occurrences, must not be "covered" by an underlying primary policy in order to be "covered" under the umbrella policies. This does nothing to rebut Utica's interpretation. (Dkt. No. 79 at 10.) Similarly, Clearwater's emphasis on the definition of "occurrence" does nothing to define the phrase "not covered by." (Dkt. No. 144 at 10 n.7.) That is, even if "[t]he definition of 'occurrence' remains unchanged whether . . . underlying coverage is untapped, partially eroded[,] or fully exhausted," (*id.*), this provides no clues regarding whether an "occurrence" is "covered."

Next, although Clearwater cites several cases in support of its interpretation of the phrase "not covered by" when used in umbrella policies, (*see, e.g.*, Dkt. No. 65, Attach. 9 at 11, 13-17 (citing *Garmany v. Mission Ins. Co.*, 785 F.2d 941, 947 (11th Cir. 1986) ("'Not covered by said underlying insurances,' as that phrase is understood in normal usage,

7

speaks only to the *fact* of coverage under the underlying policy, not to the *extent* of coverage under that policy.")); Dkt. No. 144 at 3-5), it fails to convince the court that it has met its summary judgment burden. Most notably, the parties discuss a recently-issued decision from this District that dealt with another Utica umbrella policy. (Dkt. Nos. 152, 156, 157.) In those proceedings, the court found the "occurrence not covered by" language to be ambiguous at summary judgment and only reconsidered that determination after holding a ten-day bench trial, at which ten fact witnesses and five expert witnesses testified. *See Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 6:12-cv-196, 2019 WL 1427427, at *1, *17 & n.36 (N.D.N.Y. Mar. 29, 2019). Moreover, that decision dealt with a 1973 Utica umbrella policy, which contained materially different language than Utica's 1978-81 umbrella policies. (Dkt. No. 156 at 2-4); *see Utica Mut. Ins. Co.*, 2019 WL 1427427 at *18-19. Although Clearwater points to the similarities between the umbrella policies, (Dkt. No. 157 at 1-4), it also concedes that the language is "somewhat different," (*id.* at 2), which changes the context of the agreement as a whole. *See Weiss v. Weiss*, 52 N.Y.2d 170, 174 (1981) ("[A]n agreement, where possible, should be read as a whole so as to give each section meaning.").

Likewise, a number of the other cases cited by Clearwater are distinguishable because they dealt with occurrences that were "not covered" due to the insurer's insolvency—as opposed to being "not covered" due to the terms of the underlying policy itself (*e.g.,* exhaustion limits), (Dkt. No. 79 at 14-18)—or "involved policy language that specifically addressed the situation of primary exhaustion," (Dkt. No. 147 at 3). In sum, the specific language of the underlying policies here is distinguishable. (*Id.* at 16-18); *see Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 594 F. App'x 700, 704 (2d Cir. 2014) (distinguishing decisions that interpreted different policies than specific policy at issue).

Furthermore, notwithstanding Clearwater's reliance on case law and secondary sources that deal with the meaning of insurance phrases in absolutes, (Dkt. No. 65, Attach. 9 at 15, 19; Dkt. No. 144 at 3-4), New York law disfavors such maxims because "insurance contracts, like other agreements, should be enforced as written," and "parties to an insurance arrangement may generally contract as they wish and the courts will enforce their agreements without passing on the substance of them." *Viking Pump*, 27 N.Y.3d at 257. As Clearwater itself ironically points out, previous interpretations of similar language "do[] not preclude this [c]ourt

9

from making its own independent determination as to the clarity of the phrase 'occurrence not covered by.'" (Dkt. No. 144 at 7); *see Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 531 (2019) ("It is not unheard-of for one fair-minded adjudicator to think a decision is obvious in one direction but for another fair-minded adjudicator to decide the matter the other way.").

Ultimately, the "not covered by" provision in the umbrella policies, taken in the context of the agreement as a whole and viewed in the light most favorable to Utica, is susceptible to more than one reasonable meaning. *Cf. Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26, 28 (2d Cir. 1988). That is, the language here suggests that Utica would provide defense costs to the Goulds for accidents that the underlying policies did not compensate them for, but it does not unambiguously state whether it is referring to compensation that does not occur because it is outside the scope of the underlying primary policies' coverage grant or because the underlying policy has been exhausted. Given the plain meaning of "covered," it appears that this provision could apply to either or both situations. Moreover, the definition of "retained limit" suggests that the umbrella policies were intended to provide coverage "if any underlying

policy . . . [was] inapplicable by reason of exhaustion of an aggregate limit of liability." (Dkt. No. 85, Attach. 6 at 4); *accord In re Viking Pump, Inc.*, 148 A.3d 633, 662 (Del. Sup. Ct. 2016) ("A reading of 'covered' to refer to whether the primary policy provides coverage, and not whether it is collectible, distorts the actual purpose of the . . . umbrella policies."). The court cannot say that an average insured reading this defense provision would not reasonably expect that an occurrence is not covered by a primary policy after that policy has been exhausted. *See Hopeman Bros., Inc. v. Cont'l Cas. Co.*, 307 F. Supp. 3d 433, 465-66 (E.D. Va. 2018) (holding "not covered" provision ambiguous under New York law); *Viking Pump*, 148 A.3d at 662 ("[T]he reasonable expectation of the average insured would be that 'covered under' concerns whether the underlying insurance is collectible."). To be clear, at this stage, the court expresses no opinion about which interpretation is more reasonable; the court finds only that Utica's interpretation is sufficiently reasonable, and the contract is ambiguous. *See Mellon Bank v. United Bank Corp. of N.Y.*, 31 F.3d 113, 115 (2d Cir. 1994).

Given that Clearwater provides no extrinsic evidence, (Dkt. No. 144 at 2 n.2), the court is unable to resolve this ambiguity as a matter of law at

11

this stage. *See 3Com Corp. v. Banco do Brasil*, 171 F.3d 739, 746-47 (2d Cir. 1999) (holding court may only resolve ambiguity as a matter of law if extrinsic evidence is "so one-sided that no reasonable person could decide the contrary"). At trial, the parties should present evidence of "customs, practices, usages[,] and terminology as generally understood in the particular trade or business" to resolve this ambiguity. *See Utica Mut. Ins. Co.*, 906 F.3d at 21 n.8 (internal quotation marks and citations omitted); *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) ("[T]he meaning of the ambiguous contract is a question of fact for the factfinder.").

Accordingly, it is hereby

**ORDERED** that Clearwater's motion for partial summary judgment (Dkt. No. 65) is **DENIED**; and it is further

**ORDERED** that this action is deemed trial-ready and a scheduling order shall issue in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

July 25, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge