IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UTICA MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CLEARWATER INSURANCE COMPANY,<br><br>Defendant. | No. 6:13-cv-1178 (GLS/TWD) |

**DEFENDANT CLEARWATER INSURANCE COMPANY'S OPPOSITION TO UTICA'S
MOTION *IN LIMINE* NO. 3: EXPERT TESTIMONY OF JOHN COLE**

Defendant, Clearwater Insurance Company ("Clearwater"), respectfully submits this opposition to Motion *in Limine* No. 3: Expert Testimony of John Cole (Dkt. 174), filed by plaintiff, Utica Mutual Insurance Company ("Utica"). In its motion, Utica asks the Court to prohibit Clearwater's expert, John Cole, from testifying or offering any opinions on any topic.

Utica's motion should be denied. Mr. Cole's expert opinions are properly admissible under Fed. R. Evid. 401, 702, 703 and 704, and any particular issue Utica might have with Mr. Cole's testimony, or its foundation, may be addressed by Utica on cross examination.

## ARGUMENT

Utica challenges the admissibility of Mr. Cole's testimony by asserting that: (1) Mr. Cole will offer "only legal opinions" (he will not); (2) that Mr. Cole's opinions are not relevant because they will not assist the trier of fact (they will); (3) and that Mr. Cole lacks an adequate basis for testifying as to customs and practices within the insurance industry (he does not).

As explained below, Utica has misconstrued Mr. Cole's opinions, as well as the questions to be submitted to the jury, in order to make its argument fit within a template that is not this case.

Mr. Cole's opinions are not inadmissible legal conclusions. To the contrary, his testimony will assist the trier of fact with understanding the intricacies of relevant insurance and reinsurance industry standards and practices, which will be unfamiliar to most, if not all, jurors. In short, there is no basis to prohibit Mr. Cole from testifying.

## I.  MR. COLE'S BACKGROUND AND CREDENTIALS

While Mr. Cole is an accomplished lawyer, this circumstance does not disqualify him from testifying as an expert witness, particularly not, where, as here, he is being asked to use his decades of business experience handling and managing complex claims, and his understanding of industry practices based upon his experience, to inform his opinions.

Mr. Cole has been employed more than thirty years in a variety of claim and legal positions in the property-casualty insurance industry. For approximately two decades, he was a senior Claim and Legal Executive with responsibility for managing complex property-casualty insurance claims and litigation. More specifically, during the period of 1984-2002, he held the following senior executive positions: Executive Vice President and Chief Claims Officer – North America for the Zurich Group; Executive Vice President, Legal Services – Zurich Group; Senior Vice President and Chief Claims Officer – Maryland Casualty Company; Senior Vice-President and General Counsel and Vice-President and Chief Claims Attorney – Maryland Casualty Company. During his tenure as Senior Vice- President and General Counsel, he was responsible for company-wide insurance regulatory compliance nationwide, including those specific regulations relevant to insurance claims practices.

Mr. Cole's experience with respect to the evaluation of complex insurance and reinsurance claims includes executive management responsibility for complex coverage litigation for Maryland Casualty Company and later Zurich Group – North America for more than two decades (1981-2002). His claim executive responsibility regarding complex case management has

included management of all Asbestos and "Mass Tort" claims from 1980 forward, creation of a dedicated Construction Defect unit, establishment of coverage and claim management practices, authorization of declaratory judgment coverage litigation, management of approved "Panel" counsel, assessment and approval of complex claim coverage positions, evaluation and authorization of settlement and other related disposition actions. During the referenced time frame, his executive responsibilities also included management of Claim Legal departments, including a Staff Counsel operation consisting of more than 300 employee trial attorneys based in more than 40 offices nationwide. The Claim Legal department attorneys under his supervision were responsible for the management of (cumulatively) several hundred declaratory judgment actions pending nationwide seeking adjudication and resolution of a broad range of coverage issues under liability policies, particularly Asbestos issues. Overall, his Chief Claims Officer responsibilities entailed management of a national Claims staff of more than 3,500 professionals with responsibility for more than 550,000 pending claims across all lines of property-casualty business countrywide.

In his positions of executive responsibility, Mr. Cole was responsible for the management of asbestos, mass tort and environmental claims for more than two decades. His direct "hands-on" experience in the management of asbestos claims and related coverage litigation began in July 1980 when he became personally responsible for the management of Maryland Casualty's policyholders with the most significant involvement in asbestos claim litigation. These responsibilities included account specific evaluation of coverage and coverage issues, asbestos claim illnesses alleged and potential exposure, coordination with multiple insurers and achievement of individual/multiple plaintiff and coordination of policyholder asbestos claim dispositions. In that capacity, he attended the very first Defense Research Institute Asbestos

Seminar in September 1980 and in ensuing years served as a frequent speaker at numerous asbestos and asbestos medicine seminars. Mr. Cole's additional qualifications, professional achievements, and organizational memberships are further detailed in his report.[1]

## II. UTICA MISCHARACTERIZES MR. COLE'S EXPERT OPINIONS AS LEGAL CONCLUSIONS; THEY ARE NOT

Utica asserts in its motion that Mr. Cole is anticipated to testify about legal conclusions only. Utica has misrepresented the thrust of Mr. Cole's testimony. He will not offer legal conclusions. Rather, Mr. Cole will testify to the following opinions at trial:

1. *First,* Mr. Cole will testify that based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, "Utica's decision to allocate more than 90% of its settlement to the umbrella policies, which played no part whatever in the no aggregates risk, is objectively unreasonable and without any rational basis on its face." (D-140 at 17.)

2. *Second*, Mr. Cole will testify that based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, "[to] the extent that Utica Mutual's ceded loss billings include any amounts attributable to Utica's refreshed and arbitrarily enlarged umbrella policy limits for the 1978-80 policy years, as opposed to the policy terms and limits existing at the time of Skandia/Clearwater's original facultative placement, they are objectively unreasonable and completely inconsistent with generally accepted insurance and reinsurance standards and practices." (D-140 at 18.)

3. *Third*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, Utica's determination to "re-assign [its so-called orphan share] payments (exceeding $31 million) to its own umbrella policies" . . . "is unreasonable, wholly inconsistent with accepted industry standards and practices, and contrary to the overarching requirements of utmost good faith" inherent in the parties' reinsurance relationship. (D-140 at 19-20.)

4. *Fourth*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, Utica's decision "to allocate a total of $18,388.64 [in declaratory judgment fees/costs to Utica's primary policies]" and more than $4.1 million of these

---

[1] *See* Expert Report of John Cole, dated December 8, 2014. Mr. Cole's report is filed as Dkt. 174-2 or Exhibit 1 to plaintiff's Motion *in Limine* No. 3. The report is referred to herein as "D-140," which is its trial exhibit number.

4

    fees/costs to the umbrella layer . . . "is patently unreasonable and contrary to generally accepted insurance and reinsurance practices." Mr. Cole will explain that an inverse allocation should have occurred because Utica's primary policies, not Utica's umbrella policies, created Utica's exposure in the declaratory judgment action with Goulds. (D-140 at 20.)

5. *Fifth*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, "any claim professional [lawyer or not] experienced in umbrella policy coverage interpretation would understand that the explicit Section II qualification "not covered" [in the umbrella policies] refers to the <u>scope</u> of the coverage afforded by the "underlying policy" – not whether that policy had arguably paid sufficient indemnity (and defense costs) to provably exhaust the underlying policy." (D-140 at 21.)

6. *Sixth*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, Utica's "unilateral and material changes to the scope of the risk originally assumed [by Clearwater] were unreasonable and markedly inconsistent with accepted industry practice." Clearwater anticipates that this testimony will be premised in part on Utica's duty of utmost good faith. (D-140 at 22.)

7. *Seventh*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, if "reinsurance considerations" influenced "Utica Mutual's attempt to solve a massive primary insurance exposure through an unprecedented revision of the terms of its umbrella policies" . . . "[s]uch actions were more than just unreasonable and contrary to accepted industry practice, such motivations are clearly in breach of what insurance and reinsurance professionals accept as an overarching duty of utmost good faith." (D-140 at 22.)

8. *Eighth*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, "if true [that Clearwater was kept entirely unaware of the significance of the underlying aggregate issues by Utica until December 2012 or later] . . . Clearwater was impermissibly prevented from considering in real time a reasonably forthcoming disclosure of material facts and developments, which industry practice dictates is the responsibility of any cedent, in order to allow the reinsurer to understand and evaluate its potential exposure." (D-140 at 22.)

    This exposition of Mr. Cole's opinions, particularly when juxtaposed against Utica's pithy summaries (often less than a sentence), should alone make clear that Mr. Cole is not offering pure legal conclusions. Rather, he was retained to testify, and will testify, based not upon his legal education but upon his decades of experience as a claims professional and industry participant.

5

Insofar as Mr. Cole was initially prepared to offer testimony concerning the application of follow-the-settlements to the factual matrix in this case, his testimony might need to be reshaped in light of the Second Circuit's opinion concluding that follow-the-settlements has no application here, particularly if Utica continues down its newfound path of trying to use a common law indemnification theory in place of follow-the-settlements.[2]  Mr. Cole might be of the opinion that his previously expressed thoughts concerning follow-the-settlements apply with equal force to Utica's newfound theorem.  Further, Mr. Cole might now testify that the absence of follow-the-settlements is itself a significant consideration insofar it makes the facts of this case somewhat atypical and requires Utica, as a matter of industry practice, to support its cessions in a different, more exacting fashion.

### III.     MR. COLE'S OPINIONS ARE RELEVANT BECAUSE THEY WILL ASSIST THE TRIER OF FACT

#### A.     Legal Standard Under Fed. R. Evid. 702(a)

"The decision to admit expert testimony is left to the broad discretion of the trial judge…." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995).  "Doubts about the usefulness of an expert's testimony[ ] should be resolved in favor of admissibility." *Canino v. HRP, Inc.*, 105 F. Supp. 2d 21, 28 (N.D.N.Y. 2000) (quoting *Marmol v. Biro Mfg. Co.*, No. 93-CV-2659(SJ), 1997 WL 88854, at *4 (E.D.N.Y. Feb. 24, 1997)); *E.E.O.C. v. Beauty Enterprises, Inc.*, 361 F. Supp. 2d 11, 20 (D. Conn. 2005); *see also Larabee v. M M & L Int'l Corp.*, 896 F.2d 1112, 1116, n.6 (8th Cir. 1990) ("[We] note that 'doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'") (quoting J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 702[02] at 702-30 (1988)).

---

[2] *See* Utica's Motion *in Limine* No. 1 (Dkt. 172).

The proper scope of expert testimony is delineated by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Pursuant to Rule 702(a), in deciding the admissibility of expert testimony, the district court must decide whether the testimony will be relevant to issues in the case. This relevancy analysis requires the court to decide whether the testimony might "help the trier of fact." *See In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016).

Apart from considering whether the testimony will assist the trier of fact, there is no separate evidentiary rule precluding expert opinions touching on the ultimate issues in a case. *See* Fed. R. Evid. 704(a) (an "opinion is not objectionable just because it embraces an ultimate issue"); Advisory Committee Notes to Rule 704 (explaining that the ultimate issue rule has been "abolished" and offering that the provisions of Rule 701, 702 and 403 "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach").

Thus, courts in this Circuit commonly permit experts to "opine on an issue of fact within the jury's province," although they disallow "testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d. Cir. 1991) (affirming

admission of expert testimony because expert "did not give his opinion as to whether [defendant] violated the securities laws"); *United States v. Duncan*, 42 F.3d 97, 103 (2d. Cir. 1994) (affirming admission of expert testimony using terms legal "money laundering" and "false" tax returns because "it does not simply tell the jury what decision to make"); *Montanez v. City of Syracuse*, No. 6:16-cv-00550 (BKS/TWD), 2019 WL 4257134, at *9 (N.D.N.Y. Sept. 9, 2019) (finding that expert's testimony that conduct "deviated materially from good and accepted" industry standards did not state legal conclusion); *Haritatos v. Hasbro Inc.*, No. 6:05-cv-930, 2007 WL 3124626, at *2 (N.D.N.Y. Oct. 23, 2007) (internal citations and quotations omitted) ("[A] distinction is drawn between ultimate factual conclusions that are dispositive of particular issues if believed, and opinions phrased in terms of inadequately explored legal criteria that would merely tell the jury what result to reach; the former is admissible, the latter is not.").

Experts may permissibly testify regarding mixed questions of law and fact. *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993). Further, an expert's mere use of phrases with legal meaning does not render an expert's testimony inadmissible. *Duncan*, 42 F.3d at 103; *see also Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 709 (2d. Cir. 1989) (only opinions phrased in terms of "inadequately explored legal criteria" are inadmissible).

Moreover, as Utica itself previously has argued (successfully), "[o]pinion testimony that arguably states a legal conclusion may be helpful and admissible if the case involves a specialized industry." *Utica Mut. Ins. Co. v. Munich Reins. Am. Inc.*, No. 6:12-cv-00196 (BKS), 2018 WL 3135847, at *7 (N.D.N.Y. June 27, 2018) (hereinafter, "*MunichRe*") (citing 4 Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2016)); *see also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191 (S.D.N.Y. 2009) (permitting expert's "assessment of the reasonableness of Merck's

8

conduct in light of her experience and her understanding" because it would be helpful to the jury). The insurance/reinsurance industry is without a doubt a specialized industry.

Utica has previously argued that reinsurance is a specialized industry. In the *MunichRe* case, Utica defeated a motion *in limine*, arguing, in part, that because reinsurance is specialized, its expert should be permitted to opine on the reasonableness of Utica's allocation decisions and coverage determinations. *See MunichRe*, 2018 WL 3135847, at *7. This Court should not countenance Utica's efforts to argue out of the other side of its mouth, here.

### B. Mr. Cole's Opinions Satisfy Fed. R. Evid. 702(a)

The Court should admit Mr. Cole's opinions because they will assist the trier of fact in satisfaction of Rule 702(a). Mr. Cole will offer testimony that will help the members of the jury understand whether or not Utica fully performed its obligations under the reinsurance agreements (an essential element of each of Utica's five breach of contract claims) by opining as to how certain of Utica's acts, which Mr. Cole has assumed as true, diverged from insurance and reinsurance industry standards and practices.

Utica's complaint that Mr. Cole did not catalogue relevant industry standards in his report rings hollow. Mr. Cole made clear that his opinions were based on decades of experience handling and managing complex claims. Further, Utica deposed Mr. Cole and had the opportunity to explore with him the predicates for each of his opinions.

Following the submission of all evidence at trial, the jury will be asked to determine whether Utica did or did not fully perform its obligations under the reinsurance contracts, and, in particular, whether Utica acted in derogation of, or consistent with, its duty of utmost good faith. These are the ultimate issues for the jury to decide in this case.

Mr. Cole's opinions will assist the jury by enabling the jury to compare the facts as found by them with the hypothetical facts Mr. Cole has assumed as true, and then to evaluate whether

the facts as found by the jury deviate from industry norms using Mr. Cole's templacte for guidance. The admissibility of Mr. Cole's individual opinions are addressed below *seriatim*.

1. *First,* Mr. Cole will testify that based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, "Utica's decision to allocate more than 90% of its settlement to the umbrella policies, which played no part whatever in the no aggregates risk, is objectively unreasonable and without any rational basis on its face." (D-140 at 17.)

Mr. Cole's first opinion is plainly admissible and helpful to the jury's task. Mr. Cole's opinion as to the reasonableness of the allocation should be admitted because the case involves a specialized industry. Indeed, this is the exact same argument that Utica itself made, and won, in another reinsurance dispute where Utica sought to admit an expert opinion to the effect that Utica's allocation decisions and coverage determinations were reasonable. *See MunichRe*, 2018 WL 3135847, at *7. A number of other courts have recognized the permissibility of expert testimony regarding reasonableness, even in industries with which jurors might be very familiar. *See e.g. Cavanaugh v. Woods*, 718 F.3d 1244, 1250 (10th Cir. 2013) ("A police practices expert could have testified that under the circumstances faced by Officer Davis a reasonable officer would have concluded that Cavanaugh was a threat and used similar force."); *Jackson v. E-Z-GO Div. of Textron, Inc.*, 326 F. Supp. 3d 375, 401 (W.D. Ky. 2018) (permitting expert testimony that inadequate warnings were "unreasonably dangerous" and were a "substantial factor" in causing injury because they did not embrace ultimate legal issue).

The mere use of the word "unreasonable" does not render Mr. Cole's opinion a legal conclusion, as Utica argues. Indeed, the cases Utica cites regarding use of the term "unreasonable" are inapposite, as, unlike here, they occurred in contexts where a jury would not be meaningfully

assisted by the expert's specialized knowledge regarding the reasonableness of certain acts.[3] Furthermore, in some of the cases Utica cites, the jury was charged with determining whether the acts in question were reasonable, and that determination was dispositive. *It is not here*. While the reasonableness of the Utica-Goulds settlement allocation is probative of whether or not Utica violated its duty of utmost good faith, it is not dispositive of Utica's claims. Thus, Mr. Cole's opinion does not "merely tell the jury what result to reach" and should be admitted. *See Duncan*, 42 F.3d at 103.

Because Mr. Cole's first opinion will provide relevant, helpful context to the jury regarding whether Utica's practices conformed to the standards of a complex industry, it should be admitted.

> 2. *Second*, Mr. Cole will testify that based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, "[to] the extent that Utica Mutual's ceded loss billings include any amounts attributable to Utica's refreshed and arbitrarily enlarged umbrella policy limits for the 1978-80 policy years, as opposed to the policy terms and limits existing at the time of Skandia/Clearwater's original facultative placement, they are objectively unreasonable and completely inconsistent with generally accepted insurance and reinsurance standards and practices." (D-140 at 18.)

Mr. Cole's second opinion will also be helpful to the jury and, for this reason, is admissible. As discussed above, Mr. Cole's use of the term "reasonable" poses no bar to the admission of this or other of his opinions.

Here too, Mr. Cole's testimony regarding whether Utica's actions were in line with industry practice will provide helpful information and insights to the jury about the specialized nature of the insurance and reinsurance industries, and does not reach a legal conclusion. *See Montanez*, 2019 WL 4257134, at *9 (finding that expert's testimony that conduct "deviated materially from

---

[3] *E.g., Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017) (whether police use of force was reasonable); *In re Longtop Fin. Techs. Ltds. Sec. Litig.*, 32 F. Supp. 3d 453, 463 (S.D.N.Y. 2014) (securities fraud claim requiring a showing of "reasonable reliance").

11

good and accepted" industry standards did not state legal conclusion); *see also Sutton v. Tompkins Cty.*, No. 5:03-cv-0664, 2006 WL 2481977, at *4 (N.D.N.Y. Aug. 25, 2006) ("[T]estimony from one person in a specific industry or practice may be utilized to explain procedures within that industry.").

> 3. *Third*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, Utica's determination to "re-assign [its so-called orphan share] payments (exceeding $31 million) to its own umbrella policies" . . . "is unreasonable, wholly inconsistent with accepted industry standards and practices, and contrary to the overarching requirements of utmost good faith" inherent in the parties' reinsurance relationship.  (D-140 at 19-20.)

Mr. Cole's third opinion is also both admissible and relevant. Utica argues that this opinion embraces a legal conclusion, presumably because Mr. Cole utilized the phrase "utmost good faith" in his report. However, the mere use of legal terminology (assuming utmost good faith is purely legal terminology) does not render inadmissible Mr. Cole's opinion that what Utica did with the orphan shares was inconsistent with industry standards and practices. *See Duncan*, 42 F.3d at 103 (permitting expert testimony using terms "money laundering" and "false" tax returns); *see also A.E. Evans v. Ind. School Dist. No. 25 of Adair Cty, Ok.*, 936 F.2d 472, 476 (10th Cir. 1991) ("[A]n expert may, however, refer to the law in expressing his or her opinion."). Further, few industries are subject to an utmost good faith standard (as contrasted with good faith). Mr. Cole will be able to explain what utmost good faith means in the reinsurance context and how it is intended to apply in practice to cedents and reinsurers, which is testimony a lay jury is likely to find very helpful.

At bottom, Mr. Cole's third opinion merely states that, if the facts presented to him about Utica's practices were true, in his opinion they run counter to typical industry conduct. The jury must still find that, first, the facts Mr. Cole assumed as true have support in the record, and, second, that Utica's conduct precludes its ability to prevail on its contract claims. Mr. Cole's opinion does

not go so far as to usurp the jury's role and tell the jury what conclusions to reach. *See Bilzerian*, 926 F.2d at 1295 (admitting expert opinion that "enable[s] the jury to evaluate a defendant's conduct against the standards of accepted practice"); *see also Highland Capital Mgmt. v. Schneider*, 551 F. Supp. 2d 173, 181 (S.D.N.Y. 2008) (although expert could not testify that "there was a binding agreement" he could "based upon his experience, point to factors indicating to him that…there was an agreement.").

Because this opinion will help the jury to compare Utica's conduct to the standards of accepted practice, about which the average juror is likely unfamiliar, it is helpful, relevant, and admissible.

> 4. *Fourth*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, Utica's decision "to allocate a total of $18,388.64 [in declaratory judgment fees/costs to Utica's primary policies]" and more than $4.1 million of these fees/costs to the umbrella layer . . . "is patently unreasonable and contrary to generally accepted insurance and reinsurance practices." Mr. Cole will explain that an inverse allocation should have occurred because Utica's primary policies, not Utica's umbrella policies, created Utica's exposure in the declaratory judgment action with Goulds. (D-140 at 20.)

Mr. Cole's fourth opinion is both admissible and helpful to the jury's task for the reasons stated regarding Mr. Cole's first, second and third opinions.

> 5. *Fifth*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, "any claim professional [lawyer or not] experienced in umbrella policy coverage interpretation would understand that the explicit Section II qualification "not covered" [in the umbrella policies] refers to the scope of the coverage afforded by the "underlying policy" – not whether that policy had arguably paid sufficient indemnity (and defense costs) to provably exhaust the underlying policy." (D-140 at 21.)

Mr. Cole's fifth opinion is also admissible and helpful to the jury's evaluation of whether Utica's billings to Clearwater were appropriate under the terms of the reinsurance contracts, and if so, whether Clearwater is liable for all or only part of those billings. Claims handling and

coverage evaluation are highly complex and nuanced issues. The jury will need assistance in understanding how Utica should have approached an understanding of its umbrella policies (a topic likely foreign to the average juror).

In cases dealing with complex industries, "expert testimony may help a jury understand unfamiliar terms and concepts." *Bilzerian,* 926 F.2d at 1294; *see also United States v. Van Dyke*, 14 F.3d 415, 422 (8th Cir. 1994) (finding reversible error where district court failed to allow expert to "explain or clarify the significance" of complex regulation where doing so "would clearly have assisted the jury in understanding the regulation"); *Duncan*, 42 F.3d at 101 n.3 (courts "generally permit[] the elicitation of testimony from expert witnesses that shed light on activities not within the common knowledge of the average juror").[4]

> 6. *Sixth*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, Utica's "unilateral and material changes to the scope of the risk originally assumed [by Clearwater] were unreasonable and markedly inconsistent with accepted industry practice." Clearwater anticipates that this testimony will be premised in part on Utica's duty of utmost good faith. (D-140 at 22.)

Mr. Cole's sixth opinion is both admissible and helpful to the jury's task for the reasons stated regarding Mr. Cole's earlier opinions.

> 7. *Seventh*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, if "reinsurance considerations" influenced "Utica Mutual's attempt to solve a massive primary insurance exposure through an unprecedented revision of the terms of its umbrella policies" . . . "[s]uch actions were more than just unreasonable and contrary to accepted industry practice, such motivations are clearly in breach

---

[4] Opinion five merely explains a term with a specialized meaning in the insurance industry: it does not purport to engage in contract interpretation. However, in the event that the Court were to find that the policies are ambiguous, then interpretation of such policies is a question of fact for the jury, and opinion five would not impermissibly state a legal conclusion even if it was regarded as engaging in contract interpretation. *See e.g., Employers Reins. Corp. v. Mid-Continent Cas. Co.*, 202 F. Supp. 2d 1212, 1217 (D. Kan. 2002) (expert "opinions regarding contract interpretation are admissible if the Court determines that the reinsurance agreement is ambiguous").

of what insurance and reinsurance professionals accept as an overarching duty of utmost good faith." (D-140 at 22.)

The portions of opinion seven regarding reasonableness and accepted industry practices are admissible and relevant for the reasons indicated regarding Mr. Cole's earlier opinions.

The remainder of Mr. Cole's seventh opinion should also be admitted. Opinions that "arguably state[] a legal conclusion may be helpful and admissible if the case involves a specialized industry." *MunichRe*, 2018 WL 3135847, at *7 (permitting testimony regarding good faith of Utica's allocation of settlement payments among primary and umbrella policies).

Even expert opinions that express an opinion that a law was violated are not impermissible legal conclusions where they are "not a simple bald assertion of the law" and "give the jury helpful information beyond a simple statement on how it's verdict should read." *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993) (permitting expert opinion that an individual was "not a responsible person under § 6672"). Such opinions are permissible in that they offer "sufficient detail to permit the jury to independently evaluate [the expert's] conclusions." *Id*. (quoting *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987)).

Opinion seven is just such an opinion. Mr. Cole's report walks through the bases for this opinion in detail. D-140 at 23. Further, just as the expert in *Fiataruolo* "couched his opinion specifically 'on the evidence I looked at,'" Mr. Cole's report notes that "the documented facts reviewed suggest…" before going on to express his opinion. D-140 at 22; *Fiataruolo*, 8 F.2d at 942. Because opinion seven will help the jury understand the evidence in order to reach their own, independent conclusion on a specialized issue, it should be admitted.

8. *Eighth*, Mr. Cole will testify that, based upon the facts and assumptions set forth in his report and his knowledge of industry customs and practices, in his opinion, "if true [that Clearwater was kept entirely unaware of the significance of the underlying aggregate issues by Utica until December 2012 or later] . . . Clearwater was impermissibly prevented from considering in real time a reasonably forthcoming disclosure of material facts and developments, which industry practice

15

dictates is the responsibility of any cedent, in order to allow the reinsurer to understand and evaluate its potential exposure." (D-140 at 22.)

Mr. Cole's eighth opinion is also admissible and helpful to the jury's task, and therefore relevant, for the reasons stated regarding Mr. Cole's earlier opinions.

### IV. MR. COLE'S TESTIMONY CONCERNING INDUSTRY PRACTICE IS ADMISSIBLE

Utica also urges the court to reject Mr. Cole's opinions based on "industry practices," arguing that he does not identify any actual industry practices to contrast with Utica's actions. (Motion at 5.) Utica's argument should be rejected.

As to the bases of an expert's opinion, Fed. R. Evid. 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Mr. Cole's opinions are based upon "[his] review of the materials provided […], the particular facts, allegations and issues documented and referenced therein, as well as [his] relevant professional experience," which included working for thirty years in the property-casualty insurance industry, and "two decades of service as a Senior Claim and Legal executive with responsibility for management of complex property-casualty insurance claims and litigation." D-140 at 1. Five single-spaced pages of his expert report further detail the basis of Mr. Cole's knowledge about the customs and practices of the insurance industry.

As articulated in his extensive report, Mr. Cole's years of experience at multiple prominent insurance and reinsurance companies, along with his extensive participation in insurance industry trade groups, provide a firm foundation for his opinions regarding industry custom and practice

because he has had ample experience from which to "personally observe" such practices.  *See* Fed. R. Evid. 703; *see also Marcus Dairy, Inc. v. Rollin Dairy Corp.*, No. 3:05-cv-589, 2008 WL 11375364, at *1–2 (D. Conn. Sept. 24, 2008) (expert with 28 years of industry experience was qualified to offer opinion on industry practice).  Utica has never argued in this case, and does not argue now, that Mr. Cole's qualifications are deficient, or that he impermissibly relies on facts or data that an expert in the field would not.  Mr. Cole has plainly satisfied Rule 703's requirements to testify as to industry customs and practices.

Utica's contention that Mr. Cole fails to "identify any actual industry custom" falls flat.  For this proposition, Utica relies on *Primavera Familienstifung v. Askin*, where a district court held that an expert's sole statement that "brokers and dealers are expected to act with the highest integrity" failed to sufficiently articulate industry customs for the jury's consideration. 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001), *abrogated on other grounds by Casey v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011).  The expert testimony in that case is nothing like Mr. Cole's testimony here.  Apparently, Utica overlooked the following passage of Mr. Cole's report:

> Utica Mutual's actions with respect to the issues described above were required by accepted industry standards and practices to constitute good faith coverage and allocation determinations, made consistent with the actual terms and conditions of the policy coverage at issue, and to have been made consistent with its obligations to its reinsurers of candor and utmost good faith.

D-140 at 22-23.  The standards identified by Mr. Cole are far more detailed than those in *Primavera* and less open to subjective interpretation.  Further, Mr. Cole connects these industry standards to the opinions he offers.  For example, in light of the industry practice to take action consistent with a policy's terms and conditions, Mr. Cole opines that "this interpretation is inconsistent with the plain language of Utica's 1978-81 umbrella policies and is therefore

17

unreasonable on its face." *Id.* at 20.  Utica's assertion that Mr. Cole failed to identify "any" such practices is disingenuous and should be rejected.

To the extent Utica disagrees, Utica is free to probe Mr. Cole's basis of knowledge on cross examination.  *See Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination."); *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 134 (S.D.N.Y. 2015) (same).[5]

## **CONCLUSION**

For the foregoing reasons, Clearwater respectfully asks the Court to deny Utica's Motion *in Limine* No. 3.

---

[5] Insofar as Utica prevails on any aspect of its motion *in limine*, Clearwater expects that the ruling should apply reciprocally and bar Utica's expert, Edward McKinnon, from offering his opinions as well.  Though not a lawyer, Mr. McKinnon offers competing opinions on a number of the same topics as Mr. Cole (which is further proof that Mr. Cole's testimony is admissible expert opinion evidence based on industry practices).

18


Dated: June 1, 2021  **NORTON ROSE FULBRIGHT US LLP**

By: /s/ *Thomas J. McCormack*
    Thomas J. McCormack
    John F. Finnegan
    Victoria V. Corder
1301 Avenue of the Americas
New York, New York  10019-6022
Tel.:   (212) 318-3000
Fax:   (212) 318-3400

Joy L. Langford
Allison Goodman Gold
799 9th Street NW
Suite 1000
Washington, DC 20001
Tel.:   (202) 318-3000
Fax:   (212) 318-3400

*Attorneys for Defendant, Clearwater Insurance Company*

## CERTIFICATION OF SERVICE

    I certify that on June 1, 2021, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on all Counsel of Record.

                                                    */s/ Thomas J. McCormack*
                                                    Thomas J. McCormack