## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF NEW YORK

UTICA MUTUAL INSURANCE COMPANY,

                                    Plaintiff,

                    v.                                    No. 6:13-cv-1178 (GLS/TWD)

CLEARWATER INSURANCE COMPANY,

                                    Defendant.

## DEFENDANT CLEARWATER INSURANCE COMPANY'S
## REVISED PROPOSED CLOSING JURY INSTRUCTIONS

Defendant, Clearwater Insurance Company ("Clearwater"), respectfully submits the following revised proposed closing jury instructions. Clearwater reserves the right to supplement or modify these proposed instructions.

**NORTON ROSE FULBRIGHT US LLP**

Thomas J. McCormack
John F. Finnegan
Victoria V. Corder
Allison L. Silverman
1301 Avenue of the Americas
New York, NY 10019

Joy L. Langford
799 9th St. NW
Suite 1000
Washington, DC 20001

*Attorneys for Defendant, Clearwater*
*Insurance Company*

**TABLE OF CONTENTS**

**Page**

PROPOSED CLOSING JURY INSTRUCTION NO. 1 (Introduction).........................................1

PROPOSED CLOSING JURY INSTRUCTION NO. 2 (Role of Court and Jury)......................2

PROPOSED CLOSING JURY INSTRUCTION NO. 3 (Types of Evidence)..............................4

PROPOSED CLOSING JURY INSTRUCTION NO. 4 (Weight of Evidence)...........................6

PROPOSED CLOSING JURY INSTRUCTION NO. 5 (Burden of Proof)..................................9

PROPOSED CLOSING JURY INSTRUCTION NO. 6 (Introduction to Utica's Breach of Contract Claims).........................................................................................................10

PROPOSED CLOSING JURY INSTRUCTION NO. 7 (Elements of Contract Claims)...........11

PROPOSED CLOSING JURY INSTRUCTION NO. 8 (Element 1 – Contract Duties)............12

PROPOSED CLOSING JURY INSTRUCTION NO. 9 (Conditions Precedent to Contract Duties)...................................................................................................................14

PROPOSED CLOSING JURY INSTRUCTION NO. 10 (Element 2 – Utica's Performance/ Material Breach).........................................................................................16

PROPOSED CLOSING JURY INSTRUCTION NO. 11 (Implied Obligations - Good Faith).......................................................................................................................17

PROPOSED CLOSING JURY INSTRUCTION NO. 12 (Implied Obligations - Duty of Utmost Good Faith).....................................................................................................18

PROPOSED CLOSING JURY INSTRUCTION NO. 13 (Element 3 – Clearwater's Breach).......................................................................................................................24

PROPOSED CLOSING JURY INSTRUCTION NO. 14 (Element 4 – Utica's Damages)........25

PROPOSED CLOSING JURY INSTRUCTION NO. 15 (Affirmative Defenses – Generally).................................................................................................................26

PROPOSED CLOSING JURY INSTRUCTION NO. 16 (Introduction to Counterclaim for Breach of Contract).................................................................................................27

PROPOSED CLOSING JURY INSTRUCTION NO. 17 (Counterclaim - Elements of Contract Claim)..........................................................................................................28

PROPOSED CLOSING JURY INSTRUCTION NO. 18 (Counterclaim – Element 1 – Contract Duties)..........................................................................................................29

PROPOSED CLOSING JURY INSTRUCTION NO. 19 (Counterclaim - Element 2 – Clearwater's Performance).........................................................................................30

PROPOSED CLOSING JURY INSTRUCTION NO. 20 (Counterclaim - Element 3 – Utica's Breach)...........................................................................................................31

PROPOSED CLOSING JURY INSTRUCTION NO. 21 (Counterclaim - Element 4 – Damages)....................................................................................................................32

# TABLE OF CONTENTS
(continued)

**Page**

PROPOSED CLOSING JURY INSTRUCTION NO. 22 (Introduction to Damages) ............... 33

PROPOSED CLOSING JURY INSTRUCTION NO. 23 (Expectation Damages) ..................... 34

PROPOSED CLOSING JURY INSTRUCTION NO. 24 (Prejudgment Interest) .................... 37

PROPOSED CLOSING JURY INSTRUCTION NO. 25 (Special Verdict Form) ................... 38

**PROPOSED CLOSING JURY INSTRUCTION NO. 1**
**(Introduction)[1]**

Now that you have heard all the evidence and the arguments of counsel, I must instruct you on the law applicable to this case.  Continue to pay attention and listen carefully, as you have done throughout the trial, and you will be able to follow and apply the law to the facts of this case as you find them to be.

I will begin my charge by giving you some general instructions.  Next, I will instruct you in more detail regarding Utica's claims, Clearwater's affirmative defenses, and Clearwater's counterclaim.  Then I will instruct you regarding damages, and my instructions will end with a final conclusion.

---

[1] Utica Mutual Ins. Co. v. Fireman's Fund Insurance Company, Case No. 09-cv-00873 (N.D.N.Y. Dec. 21, 2017) ("Utica v. Fireman's Fund") – Jury Instruction I

## PROPOSED CLOSING JURY INSTRUCTION NO. 2
### (Role of Court and Jury) [2]

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you; that is, if any attorney or witness has stated a legal principle different from any that I state to you in these instructions, it is my instructions that you are bound to follow.

You are not to consider one instruction alone as stating the law, but are to consider the instructions as a whole.  You should not concern yourself with the wisdom of any rule of law. Regardless of any opinion that you may have as to what the law may be, or ought to be, you must accept and apply the law as I give it to you.

As members of the jury, you are the sole and exclusive judges of the facts.  You examine the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the varying evidence.

In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence.

---

[2] Adapted from Utica v. Firemans Fund – Jury Instruction II; Utica Mutual Ins. Co. v. Century Indemnity Co., Case No. 13-cv-00995 (Sept. 30, 2019) ("Utica v. Century") – Jury Instruction II; 3 Fed. Jury Prac. & Instr. § 103:30 (6th ed.), Evidence in the case.

The function of a lawyer is to call your attention to facts that are most helpful to his or her side of the case.  What the lawyer says, however, is not binding on you, and in the final analysis your own recollection and interpretation of the evidence controls your decision.

In deciding the facts of this case and applying the law, you must not be swayed by feelings of bias, prejudice, or sympathy towards any party.  The parties and the public expect you to carefully and impartially consider all the evidence in this case, follow the law as I state it, and reach a decision regardless of the consequences.

In this case, both of the parties are companies.  The mere fact that the parties are companies does not mean they are entitled to any lesser or greater consideration by you.  All litigants are equal before the law, and companies, big or small, are entitled to the same fair consideration as you would give any other individual.

## PROPOSED CLOSING JURY INSTRUCTION NO. 3
### (Types of Evidence)[3]

As I stated before, your duty is to determine the facts based on the evidence I have admitted. The term "evidence" includes the sworn testimony of witnesses and any exhibits admitted into the record.  Sworn testimony is the question combined with the answer of the witness.  However, the arguments, objections, and statements of lawyers as well as their questions to witnesses, standing alone, are not evidence.

While you should consider only the admitted evidence, you may draw inferences from the testimony and exhibits that are justified in light of common experience.  Generally speaking, there are two types of evidence presented during a trial—direct evidence and circumstantial evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence. A greater degree of certainty is not required of circumstantial evidence. You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

The parties have stipulated to certain facts.  A stipulation of facts is an agreement among the parties that a certain fact is true.  You must regard such agreed facts as true. The parties' Pre-Trial Stipulation, which is marked as Ex. ___ and was read into the record [at the conclusion of Utica's case], contains stipulated facts.

---

[3] Utica v. Century - Jury Instruction III; 3 Fed. Jury Prac. & Instr. § 104:05 (6th ed.), Direct and Circumstantial evidence

There has been evidence introduced in this case about the purported routine practices of the parties and other organizations affiliated with this matter.  This evidence may be considered by you in determining whether the party or witness acted in conformity with that habit or routine practice on the occasion in question.  The weight you give to habit evidence, if any, is entirely up to you, since you are the sole judges of the facts.

Charts were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence.  You are to give no greater consideration to the charts than you would give to the evidence upon which they are based.  It is for you to decide whether the charts correctly present the information contained in the testimony and in the exhibits on which they were based.

You listened to the deposition testimony of Theresa Chavez, Albert Ruhlmann and Barry Bradshaw.  A deposition is simply a procedure where prior to a trial the attorneys for one side may question a witness or an adverse party under oath before a court stenographer.  Prior testimony is testimony given by a witness in another proceeding, whether in court or arbitration.  You may consider the testimony of a witness given at a deposition or prior proceeding according to the same standards you would use to evaluate the testimony of a witness given at trial.[4]

---

[4] If Court takes judicial notice of anything at trial, mention that here.  *See* 3 Fed. Jury Prac. & Instr. § 103:30 (6th ed.), Evidence in the case.

## PROPOSED CLOSING JURY INSTRUCTION NO. 4
### (Weight of Evidence)[5]

You, the jury, are the exclusive judges of the facts.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.  You are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  In making the determination of which version to believe, you should carefully examine all the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

There is no magic formula to help you decide how much weight to give to the testimony of a particular witness.  To determine the credibility or believability of a witness, you should rely on the same tests you use in your everyday affairs.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.

You should consider the opportunity the witnesses had to see, hear, and know the things about which they testified, the accuracy of their memory, their candor or lack of candor, their intelligence, the reasonableness and probability of the testimony, its consistency or lack of consistency, and its corroboration or lack of corroboration with other credible testimony.

The testimony of a single witness that produces in your minds belief in a likelihood of truth is sufficient for the proof of any fact, and may justify a verdict in accordance with such testimony, even though a number of witnesses may have testified to the contrary, if, after considering all of the evidence in the case you hold greater belief in the accuracy and reliability of the one witness.  The test is not which side brings the greater number of witnesses, or presents the greater quantity

---

[5] Adapted from Utica v. Century – Jury Instruction IV.

6

of evidence.  The test is which witness, and which evidence, appeals to your minds as being the most accurate and trustworthy.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

People sometimes forget things and even a truthful witness may be nervous and contradict him or herself.  It is for you to decide, based on your total impression of the witness, how to weigh any discrepancies in his or her testimony.  You should, as always, use common sense and your own good judgment.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, opinions, and reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.

You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

If you deem it proper under all the circumstances, you are at liberty to disbelieve a witness's testimony even though it is not otherwise impeached or contradicted.  However, you are not required to do so, and you may accept all or such part of the testimony as you deem reliable and reject such part as you deem unworthy of acceptance.

Finally, if you find that any witness has willfully testified falsely as to any material fact, the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  However, you are not required to consider such a witness totally unworthy of belief.  You may accept so much of his or her testimony as you deem true, and disregard what you feel is false.

By the processes I have just described to you, as the sole judges of the facts, you must determine which of the witnesses you believe, what portion of their testimony you accept, and what weight you will give it. Nothing said in these instructions or by me during the trial is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive responsibility and duty of you, the jury.

## PROPOSED CLOSING JURY INSTRUCTION NO. 5
### (Burden of Proof) [6]

This is a civil case and therefore the plaintiff, Utica, has the burden to prove every essential element of its claims by a preponderance of the evidence. If Utica should fail to establish any essential element of its claims by a preponderance of the evidence, you should find for defendant Clearwater as to that claim.

As to the counterclaim, the defendant, Clearwater, is in the position of a plaintiff and Clearwater has the burden of proving the essential elements of the counterclaim.

Clearwater also has the burden of establishing the essential elements of certain affirmative defenses. I will explain this later.

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[6] 3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.), Preponderance of the evidence.

**PROPOSED CLOSING JURY INSTRUCTION NO. 6**
**(Introduction to Utica's Breach of Contract Claims)[7]**

The parties have each asserted claims for breach of contract against one another as well as defenses.  I will start with Utica's breach of contract claims.

Utica claims that Clearwater is liable for breach of five reinsurance contracts between the parties.  Generally speaking, if Utica proves that Clearwater is liable for breach of contract, Utica can obtain an award of contract damages as compensation for the losses caused by such a breach.

Briefly stated, this case involves five reinsurance contracts between Utica and Clearwater, pursuant to which Clearwater agreed to reinsure portions of four umbrella policies issued by Utica to Goulds Pumps for the years 1978, 1979, 1980 and 1981.  Utica claims that Clearwater breached the reinsurance contracts by failing to pay amounts billed to Clearwater.  Clearwater denies Utica's claims.  Moreover, as an additional defense, Clearwater claims that Clearwater is excused from paying Utica's reinsurance billings because Utica violated its duty of utmost good faith owed to Clearwater in material ways. In reply, Utica denies the affirmative defenses of Clearwater.

I will explain these items in greater detail in the following instructions.

---

[7] Kehoe, Jury Instructions for Contract Cases, § 2.01 Introduction to Contract Issues.

## PROPOSED CLOSING JURY INSTRUCTION NO. 7
### (Elements of Contract Claims) [8]

To establish its contract claims against Clearwater, Utica has the burden to prove four essential elements for each contract.  I will tell you briefly now what they are, and I will give you more details about each element in the instructions that follow.

The four essential elements which Utica must prove are:

(1) **Contract**.  Utica must prove that the parties entered into a contract that contained the terms claimed by the Utica.

(2) **Plaintiff's Performance**.  Utica must prove that Utica did what the contract required it to do.

(3) **Defendant's Breach**.  Utica must prove that Clearwater breached the contract.

(4) **Resulting Damage**.  Utica must prove that Clearwater's breach caused a loss to Utica.

If you find that Utica has proven all four of these essential elements, then your verdict must be for Utica.  If you find that Utica has not proven all of these essential elements, then your verdict must be for Clearwater.  There is one possible exception to these rules: if Clearwater has proven an affirmative defense discussed later in these instructions, then your verdict must be for Clearwater in any event.

I will now explain each element further.

---

[8] Kehoe, Jury Instructions for Contract Cases, § 2.02 Elements of Contract Claim.

## PROPOSED CLOSING JURY INSTRUCTION NO. 8
### (Element 1 – Contract Duties) [9]

The first essential element of Utica's contract claims requires Utica to establish both the existence of contracts between the parties, and what the obligations are under those contracts.

As to the first part of this element, Utica and Clearwater admit that Utica purchased five reinsurance contracts from Clearwater.  The parties further admit that these reinsurance contracts require Clearwater to reinsure a portion of the umbrella insurance coverage Utica provided to Goulds under the 1978, 1979, 1980, and 1981 Umbrella Policies in the following amounts:  (a) $5 million of the $25 million in umbrella coverage provided by Utica to Goulds in the 1978 Umbrella Policy, (b) $2.5 million of the $25 million in umbrella coverage provided by Utica to Goulds in the 1979 Umbrella Policy, (c) $42,500 of the 1979 Umbrella Policy, and (d) $85,000 of the 1980 and 1981 Umbrella Policies.  You will accept these facts as proven.

The parties further admit that Clearwater's liability under the reinsurance contracts follows that of Utica as a direct insurer.  What this means is that Utica must prove by a preponderance of the evidence that it was liable to pay to Goulds amounts allocated and billed to the 1978-81 Umbrella Policies, in order to establish that Clearwater was obligated to reinsure those amounts under the reinsurance contracts.

The parties disagree, however, on how they can establish Utica's obligations to Goulds.

### Interpret Policy Language of 1978-81 Umbrella Policies

Utica contends that it can prove its liability to Goulds by showing that the claims paid to Goulds and allocated to the 1978-81 Umbrella Policies were required to be paid under the terms of the Umbrella Policies.

---

[9] Kehoe, Jury Instructions for Contract Cases, § 3.01 Contract Duties.

Clearwater, on the other hand, contends that Utica cannot ignore the consequence of the Settlement Agreement between Utica and Goulds, when billing Clearwater under the reinsurance agreements.  As you know, on February 22, 2007, Utica and Goulds entered into a Settlement Agreement that resolved certain issues between Utica and Goulds, including obligations under the 1978 to 1981 primary and umbrella policies, and released Utica from any obligations except those expressly memorialized in the agreement.

Clearwater contends that the Settlement Agreement altered the terms of the 1978-81 Umbrella Policies by expanding the risk Clearwater had reinsured without its consent.

Clearwater further contends that Utica also failed to pass along to Clearwater the concessions to the 1978-81 Umbrella Policies that Utica received in the 2007 Settlement Agreement and a later 2016 Settlement Agreement.[10]

In order for Utica to prove Clearwater is obligated by the reinsurance contracts to pay amounts allocated to the 1978-81 contracts, it must prove by a preponderance of the evidence that it was obligated to pay Goulds for the amounts allocated to the 1978-81 policies.

---

[10] Clearwater objects to instructing the jury on Utica's ability to prove liability under the common law of indemnification given that Utica has failed to adduce sufficient proof at trial to support the instruction.

**PROPOSED CLOSING JURY INSTRUCTION NO. 9**
**(Conditions Precedent to Contract Duties)[11]**

One of the essential elements that Utica must prove is that the reinsurance contracts required Clearwater to do what Utica claims Clearwater must do.

Clearwater contends that the following events, which were required to take place before its obligations under the reinsurance agreements arose, did not occur.

1. **Aggregate Limits**

First, Clearwater contends that its obligations to reinsure the 1978-81 Umbrella Policies were never triggered because Utica's obligations to pay Goulds under the 1978-81 Umbrella Policies were never triggered. Clearwater contends this is so because the underlying 1978-81 Primary Policies issued to Goulds were never exhausted because they lacked aggregate limits. The parties admit that Utica's 1978-81 Umbrella Policies sit above the 1978-81 Primary Policies and each umbrella policy is triggered only if the primary policy underlying it was exceeded or exhausted by claim payments.

This is denied by Utica. Utica contends that it was Utica's and Gould's intent to always have aggregate limits in the 1978-81 Primary Policies, and the failure to include such limits was a mistake.

Utica has the burden to prove that the 1978-1981 Umbrella Policies were triggered either by showing that the 1978-1981 Primary Policies contained aggregate limits or were exceeded or exhausted in another way.

---

[11] Kehoe, Jury Instructions for Contract Cases, § 6.01 Conditions Precedent.

2. __Consent to Settle__

Second, Clearwater contends that its obligation to pay Goulds under certain of the reinsurance agreements (the 1979, 1980 and 1981 Towers Perrin, Forster & Crosby ("TPF&C") memoranda) was never triggered because those contracts required Utica to obtain consent from TPF&C to settle any of the claims made by Goulds under the 1978-81 Umbrella Policies, which Utica failed to do.

This is denied by Utica.

In order to recover billings pursuant to the TPF&C reinsurance contracts, Utica has the burden to prove that it sought TPF&C or Clearwater's consent to settle the underlying claims with Goulds.

3. __Defense Costs__

Third, Clearwater contends that Utica was not obligated by the 1978-81 Umbrella Policies to pay Goulds' defense costs after the 1978-81 Primary Policies exhausted (if they exhausted) pursuant to the language set forth in Article II of the Umbrella Policies, which provides coverage for "any occurrence not covered by" the primary policies.

This is denied by Utica.

In order to recover defense costs from Clearwater, Utica has the burden to prove that the amounts of defense expense billed to Clearwater under the 1978-81 Umbrella Policies were incurred in connection with an "occurrence not covered by" the underlying 1978-81 Primary Policies.

**PROPOSED CLOSING JURY INSTRUCTION NO. 10**
**(Element 2 – Utica's Performance/ Material Breach)[12]**

The second essential element of Utica's claims requires Utica to prove that it substantially performed its obligations under the 1978 to 1981 reinsurance contracts.

Clearwater contends that Utica committed the following material breaches:

1.   That Utica breached its duty of utmost good faith; and

2.   That Utica breached its implied duty of good faith and fair dealing.

This is denied by Utica.

To prevail on the second essential element, Utica has the burden to prove one of two things in this regard: either that it did not breach the duties listed above as Clearwater contends or that any such breach was not material.

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such facts as:

1.   Whether the breach would defeat the basic purpose of the contract.

2.   Whether the breach would cause disproportionate prejudice to the defendant.

3.   Whether the custom considers such a breach to be material.

4.   Whether excusing the breach would allow Utica to obtain an unreasonable and unfair advantage.

---

[12] Kehoe, Jury Instructions for Contract Cases, § 3.01 Contract Duties, § 6.02 Plaintiff's Material Breach.

## PROPOSED CLOSING JURY INSTRUCTION NO. 11
### (Implied Obligations - Good Faith)[13]

As a matter of law, the reinsurance contracts contain an implied agreement that each party would exercise good faith towards the other party when performing or enforcing the terms of the contract.  This implied agreement was part of the contract, just as though the contract stated it expressly.

In this instance, Utica had an obligation to exercise good faith when it billed Clearwater for amounts allocated to the 1978-81 Umbrella Policies following the Settlement Agreement so as to ensure that amounts were not allocated to those policies in a manner that was inconsistent with the 1978-81 Umbrella Policies Clearwater had agreed to reinsure.

---

[13] Kehoe, Jury Instructions for Contract Cases, § 3.02 Good Faith.

## PROPOSED CLOSING JURY INSTRUCTION NO. 12
### (Implied Obligations - Duty of Utmost Good Faith)[14]

As a matter of law, the reinsurance contracts contain an implied agreement that the parties will act with utmost good faith towards one another. Let me now explain what that means, and then I will explain the parties' positions.

The duty of utmost good faith is a foundational principle of reinsurance as well as an obligation implied by law on the parties to a reinsurance contract.[15]  While parties to all contracts must act with good faith towards one another, the duty of utmost good faith is a heightened standard that imposes upon the reinsured, like Utica, a duty to communicate[16] "without any

---

[14] Kehoe, Jury Instructions for Contract Cases, § 3.03 Implied Obligations.

[15] *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 4 F.3d 1049, 1054 (2d Cir. 1993) ("This utmost good faith may be viewed as a legal rule but also as a tradition honored by ceding insurers and reinsurers in their ongoing commercial relationships. …[Reinsurers] are protected...by a large area of common interest with ceding insurers and by the tradition of utmost good faith, particularly in the sharing of information."); *Mich. Nat'l Bank-Oakland*, 89 N.Y.2d 94, 106 (1996) ("The phrase *uberrimae fidei* and its translation, "of the utmost good faith," has long been used to characterize the core duty accompanying reinsurance contracts.") (citations omitted); *United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*, 53 F. Supp. 2d 632, 641 (S.D.N.Y. 1999) ("A reinsured owes its reinsurer a duty of utmost good faith.") (*citing Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 992 F. Supp. 278, 282 (S.D.N.Y. 1998)); *see generally* "A Suggested Reins. Glossary," in Reinsurance 665 (Strain ed. 1980) ("*Uberrimae Fidei* - Literally, of the utmost good faith. A defining characterization or quality of some (contractual) relationships, of which reinsurance is universally recognized to be one. Among other differences from ordinary relationships, the nature of reinsurance transactions is dependent upon a mutual trust and a lively regard for the interests of the other party even if inimical to one's own."); Robert M. Hall, "Utmost Good Faith in the Reinsurance Relationship," *available at https://www.harrismartin.com/publications/14/reinsurance/articles/16753/utmost-good-faith-in-the-reinsurance-relationship-by-robert-m-hall/.*

[16] *Mich. Nat'l Bank-Oakland*, 89 N.Y.2d 94, 106 (1996) ("Encompassed within this duty is a basic obligation of a reinsured to disclose to potential reinsurers all 'material facts' regarding the original risk of loss, and failure to do so renders a reinsurance agreement voidable or rescindable."); *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 4 F.3d 1049, 1054 (2d Cir. 1993) ("To enable them to set premiums and adequate reserves […] and to determine whether to 'associate' in the defense of a claim, reinsurers are dependent on their ceding insurers for prompt and full disclosure of information concerning pertinent risks."); *see also* Hall, "Utmost Good Faith in the

concealment or deception, however slight"[17] so as to ensure "prompt and full disclosure of information" pertinent to the relationship.[18]

In the context of this case, this means that the duty of utmost good faith obligated Utica to be candid and forthright with Clearwater, and to disclose all known circumstances that materially affected the risk being reinsured[19] by Clearwater under the 1978-81 Umbrella Policies, throughout the entirety of the Utica and Clearwater's relationship.[20]

---

Reinsurance Relationship," ("[U]tmost good faith, among other things, means a commitment to maintaining a good working relationship and open, candid communication.").

[17] Black's Law Dictionary 1520 (6th ed. 1990) (Defining the duty as "The most abundant good faith; absolute and perfect candor or openness and honesty; the absence of any concealment or deception, however slight"); *see also* Hall, "Utmost Good Faith in the Reinsurance Relationship," ([U]tmost good faith, among other things, means a commitment to maintaining a good working relationship and open, candid communication); "A Suggested Reins. Glossary," in Reinsurance 665 (Strain ed. 1980) ("*Uberrimae Fidei* - Literally, of the utmost good faith. A defining characterization or quality of some (contractual) relationships, of which reinsurance is universally recognized to be one. Among other differences from ordinary relationships, the nature of reinsurance transactions is dependent upon a mutual trust and a lively regard for the interests of the other party even if inimical to one's own.").

[18] *Unigard Sec. Ins. Co. v. N. River Ins. Co.,* 4 F.3d 1049, 1054 (2d Cir. 1993) ("To enable them to set premiums and adequate reserves…and to determine whether to 'associate' in the defense of a claim, reinsurers are dependent on their ceding insurers for prompt and full disclosure of information concerning pertinent risks."); *Mich. Nat'l Bank-Oakland*, 89 N.Y.2d 94, 106 (1996) ("Encompassed within this duty is a basic obligation of a reinsured to disclose to potential reinsurers all 'material facts' regarding the original risk of loss, and failure to do so renders a reinsurance agreement voidable or rescindable.").

[19] *Christiana Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992) (the duty of utmost good faith requires the reinsured to "disclose to the reinsurer all facts that materially affect the risk of which [the reinsured] is aware and of which the reinsurer itself has no reason to be aware").

[20] *Assoc. Indus. Ins. Co., Inc. v. Excalibur Reins. Corp.*, 2014 WL 6792021, at *20 (S.D.N.Y. Nov. 26, 2014) (affirming arbitral award finding that deficiencies in the cedent's claims handling constituted a violation of the duty of utmost good faith); *Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 09 CIV. 10607 RKE, 2014 WL 1285507, at *22 (S.D.N.Y. Mar. 31, 2014), aff'd, 599 F. App'x 16 (2d Cir. 2015) ("Thus, entering into those settlements without any notice to Clearwater was a knowing disregard of millions of dollars in risk to Clearwater. Accordingly, the court finds that no reasonable jury could conclude that Granite State met its duty of utmost good faith. Thus,

The duty of utmost good faith also obligated Utica to protect Clearwater's interests as if they were Utica's own in negotiating and allocating a settlement with Goulds.[21]

---

plaintiff breached its duty of utmost good faith to Clearwater as a matter of law."); William G. Clark, "Facultative Reinsurance: Reinsuring Individual Policies," in Reinsurance 131 (Strain ed. 1980) ("Considering the fact that the facultative reinsurer's relationship exists only with the ceding company and that it has no contact with the insured or the producer, it is imperative that the primary company promptly bring to the reinsurer's attention any material changes in the risk."). Further lending support to the ongoing duty of utmost good faith are the cases in which reinsurers were found to have violated such duty by failing to pay.  *See, e.g., Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 44* (1st Cir. 2000); *see also Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278, 282–83 (S.D.N.Y. 1998) ("The doctrine of uberrimae fidei, however, would count for very little if a reinsurer not only had to inform its reinsured that it considered desired information material, but had to renew this notice every six months. Such a result would effectively impose on reinsurers a duty of inquiry, despite well-settled precedent to the contrary."); *cf. Allstate Ins. Co. v. Am. Home Assur. Co.*, 43 A.D.3d 113, 121-22 (1st Dep't 2007) ("A reinsurer is not bound by the follow-the-fortunes doctrine where the reinsured's settlement allocation, at odds with its allocation of the loss with its insured, designed to minimize its loss, reflects an effort to maximize unreasonably the amount of collectible reinsurance.").

[21] *Assoc. Indus. Ins. Co., Inc. v. Excalibur Reins. Corp.*, No. 13 Civ. 8239(CM), 2014 WL 6792021, at *6 (S.D.N.Y. Nov. 26, 2014) (holding that the "duty of good faith…requires [the cedent] to protect its reinsurers' interests as if they were the cedent's own") (quoting *Unigard Sec. Ins. Co. Inc. v. North River Ins. Co.,* 4 F. 3d 1049, 1054 (2d Cir. 1993)); *Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 280 (2d Cir. 1992) ("The reinsured's duty of good faith, in the absence of specific inquiry, requires it "to place the underwriter in the same position as himself [and] to give to him the same means and opportunity of judging of the value of the risks.") (quoting *Sun Mutual Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510 (1883)); *cf. U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.*, 20 N.Y.3d 407, 421-22 (2013) ("[U]nder a follow-the-settlements clause like the one we have here, a cedent's allocation of a settlement for reinsurance purposes will be binding on a reinsurer if, but only if, it is a reasonable allocation, and consistency with the allocation used in settling the underlying claim does not by itself establish reasonableness."); *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 158 (3d Cir. 2010) ("We have broadly characterized the insurer's duty of good faith to its reinsurer as a duty not to take advantage of the reinsurer's dependence on the decisions made by the insurer…In the post-settlement allocation context, this means that an insurer breaches this duty when it makes allocation decisions primarily for the purpose of increasing its reinsurance recovery.") (citations omitted); *Hartford Accident & Indem. Co. v. Columbia Cas. Co.*, 98 F. Supp. 2d 251, 259 (D. Conn. 2000) (denying summary judgment to an insurer "in light of the inferences of unreasonableness or self-service that can be drawn" from the details of its post-settlement allocation).

"The doctrine imposes no duty of inquiry on the reinsurer", Clearwater; "rather, the burden is on the reinsured to volunteer all material facts."[22]

Both innocent and intentional failures to communicate material facts to reinsurers that are known to the reinsured violate the duty of utmost good faith.[23]

---

[22] *Allendale Mutual Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278 (S.D.N.Y. 1998) ("This doctrine imposes no duty of inquiry upon a reinsurer; rather, the burden is on the reassured to volunteer all material facts.") (collecting cases); *Reliance Ins. Co. v. Certain Member Cos.*, 886 F. Supp. 1147, 1154 (S.D.N.Y. 1995), *aff'd*, 99 F.3d 402 (2d Cir. 1995) ("[T]he cases make it clear that because the assured (or reassured in a reinsurance situation) is in the best position to know of any circumstances material to the risk, he must reveal those facts to the underwriter, rather than wait for the underwriter to inquire."); *United Fire & Cas. Co. v. Arkwright Mutual Ins. Co.*, 53 F. Supp. 2d 632, 641 (S.D.N.Y. 1999) ("The doctrine of utmost good faith imposes no duty of inquiry upon a reinsurer. Rather, the burden is on the reinsured to volunteer all material facts.") (citations omitted).

[23] *Michigan Nat'l Bank-Oakland v. Am. Centennial Ins. Co.*, 89 N.Y.2d 94, 107 (1996) ("[W]hen a ceding insurer has knowledge of circumstances that would influence a reinsurer's underwriting decision, in compliance with and in preservation of principles of utmost good faith, a ceding insurer is required to disclose all such circumstances."  Court held that cedent's insolvency was material and "triggered" an obligation for disclosure.); *Reliance Ins. Co. v. Certain Member Cos.*, 886 F. Supp. 1147, 1154 (S.D.N.Y. 1995), *aff'd*, 99 F.3d 402 (2d Cir. 1995) ("[P]laintiffs are not required to prove intent to show a violation of the duty of *uberrimae fidei*."); *Granite State Ins. Co. v. Clearwater Ins. Co.*, 2014 U.S. Dist. LEXIS 44573, at *63 (S.D.N.Y. Mar. 31, 2014) ("Breach of the duty of utmost good faith does not require malicious intent, but may be proven by conduct amounting to at least gross negligence or recklessness. Where a cedent 'willfully disregarded [a] risk to reinsurers [it] is guilty of gross negligence.' In such a case, that cedent has not met its obligation of utmost good faith, and the cedent's claim will be barred even absent a showing of tangible economic injury.") (internal citations omitted); Allendale Mut. Ins. Co. v. Excess Ins. Co., 992 F. Supp. 278, 282 (S.D.N.Y. 1998) ("[A] reinsured need not possess a specific intent to conceal information from a reinsurer to make a contract voidable . . . an innocent failure to disclose a material fact is sufficient."); *see also* Henry T. Kramer, "The Nature of Reinsurance," in  Reinsurance 9 (Strain ed. 1980) ("A basic duty of the reinsured is to disclose to the reinsurer all known information touching on the risk of loss…In the case of misrepresentation by the reinsured, relief may also be had if the effect is to seriously injure the reinsurer, even if (depending on the circumstances) the misrepresentation is innocent."); Paul, "Underwriting the Reinsured,' in Reinsurance 501 (Strain ed., rev. ed. 1997).

A factual representation or omission is material in the context of this case if a reasonable reinsurer would consider the fact important in deciding whether to honor a reinsurance billing.[24]

In this instance, Clearwater contends that Utica breached the duty of utmost good faith in the reinsurance contracts in the following ways:  (1) allocating the value Utica provided to Goulds in the 2007 Settlement Agreement to the umbrella policies (that were reinsured), as opposed to the primary policies, which were the subject of the dispute between Utica and Goulds; and (2) failing to disclose material information, or misrepresenting material information, to Clearwater before and after the Settlement Agreement was entered into concerning (a) the terms of the 2007 Settlement Agreement and the consequences of that Settlement Agreement on the risk under the 1978-81 Umbrella Policies that Clearwater had agreed to reinsure, and for which Utica was billing

---

[24] *Mich. Nat'l Bank-Oakland*, 89 N.Y.2d 94, 106 (1996) ("Material facts are those likely to influence the decisions of underwriters; facts which, had they been revealed by the reinsured, would have either prevented a reinsurer from issuing a policy or prompted a reinsurer to issue it at a higher premium." Court held that cedent's insolvency was material and "triggered" an obligation for disclosure.); *Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278, 282 (S.D.N.Y. 1998) ("Materiality is generally a question of fact, and is determined by consideration of what a reasonable reinsured would have believed to be material to the reinsurer at the time of contracting."); Jury Instructions in *AXA v. New Hampshire Ins. Co.*, No. 1:05-cv-10180, 2008 WL 8457511 (S.D.N.Y. Jan. 30, 2008) (Rakoff, J.) ("An insurer like AIG owes a duty to a reinsurer like AXA to disclose to the reinsurer those facts, known to the insurer but unlikely to be known to the reinsurer, that a reasonable insurer understands that a reasonable reinsurer would need to know to assess the risks of the reinsurance. […] a failure to disclose is "material" in the context of this case if the omitted information, if disclosed, would have been important to a reasonable reinsurer in deciding whether to enter into the Facility in question."); *see also New York Bowery Fire Ins. Co. v. New York Fire Ins. Co.*, 17 Wend. 359, 367 (N.Y.Sup.Ct. 1837) (in the context of marine vessel insurance, where the duty also applies, holding that the reinsured must disclose every "fact and circumstance which can possibly influence the mind of any prudent and intelligent insurer, in determining whether he will underwrite the policy at all, or [at] what premium he will underwrite it"); *Allstate Ins. Co. v. Am. Home Assur. Co.*, 43 A.D.3d 113, 121-22 (1st Dep't 2007) ("A reinsurer is not bound by the follow-the-fortunes doctrine where the reinsured's settlement allocation, at odds with its allocation of the loss with its insured, designed to minimize its loss, reflects an effort to maximize unreasonably the amount of collectible reinsurance.").

Clearwater and (b) the impact of the settlement agreement on allocation and billings sent to reinsurers including Clearwater.

Utica denies this.

**PROPOSED CLOSING JURY INSTRUCTION NO. 13**
**(Element 3 – Clearwater's Breach)[25]**

The third essential element of Utica's claims requires Utica to prove that Clearwater breached the 1978 to 1981 reinsurance contracts.

Utica claims that Clearwater breached the reinsurance contracts by failing to pay reinsurance billings issued by Utica to Clearwater as they came due.

Clearwater admits that to date it has received billings from Clearwater in the outstanding amount of $10,901.005, but denies that its failure to pay those billings breached any obligation under the reinsurance contracts.  Clearwater contends that the amounts it was billed are not owed under the terms of the reinsurance contracts, that it has been denied information sufficient to determine what, if any, amounts are owed, and that Utica has failed to satisfy Clearwater that the Settlement Agreement did not expand the risk it reinsures (thus expanding its payment obligations without its consent).

In order to prove Clearwater breached its obligations under the reinsurance contracts, Utica most prove by a preponderance of the evidence that at the time of each billing to Clearwater, all amounts Utica sought from Clearwater were properly owed under the reinsurance contracts.

---

[25] Kehoe, Jury Instructions for Contract Cases, § 3.01 Contract Duties.

**PROPOSED CLOSING JURY INSTRUCTION NO. 14**
**(Element 4 – Utica's Damages)**

The fourth essential element of Utica's claims requires Utica to prove that Clearwater's breach of the reinsurance contracts damaged Utica. Utica claims that Clearwater's failure to pay reinsurance billings damaged Utica. Clearwater claims that it did not owe the reinsurance billings sent to it by Utica and therefore Utica could not have been damaged by its failure to pay.

In order to prove Clearwater breached the reinsurance contracts, Utica most prove by a preponderance of the evidence that Clearwater's failure to pay the reinsurance billings damaged Utica.

## PROPOSED CLOSING JURY INSTRUCTION NO. 15
### (Affirmative Defenses – Generally)[26]

An affirmative defense is a fact or circumstance which would excuse Clearwater from being liable to Utica, even if Utica meets its burden of proof on its claims.

In this lawsuit, Clearwater has raised the following affirmative defenses: That Utica's claims are barred, in whole or in part, by Utica's breaches of: (i) the duty of utmost good faith; or (ii) the implied duty of good faith and fair dealing.

I have already explained to you what those duties are.

Clearwater contends that even if it is liable to Utica under the reinsurance contracts, its performance should be excused because of Utica's material breach of the duty of utmost good faith or the duty of good faith and fair dealing.

The burden to prove an affirmative defense is on Clearwater. If Clearwater proves any one of the affirmative defenses mentioned above, then your verdict must be for Clearwater.

---

[26] Kehoe, Jury Instructions for Contract Cases, § 8.01 Affirmative Defenses – Generally.

26

**PROPOSED CLOSING JURY INSTRUCTION NO. 16**
**(Introduction to Counterclaim for Breach of Contract)[27]**

As I mentioned previously, Clearwater has also asserted a counterclaim against Utica in this case for breach of contract.  I will now explain Clearwater's counterclaim.

Clearwater paid Utica's initial billings on November 7, 2012, before it learned that Utica's had breached the reinsurance agreements, and asserts that it is entitled to recover its payment. Generally speaking, if Clearwater proves that Utica is liable for breach of contract, Clearwater can obtain an award of contract damages as compensation for the losses caused by such a breach.

Utica denies Clearwater's claims and asserts that the amounts billed were properly billed and owed to it under the reinsurance contracts.

I will explain these items in greater detail in the following instruction.

---

[27] Kehoe, Jury Instructions for Contract Cases, § 2.01 Introduction to Contract Issues.

**PROPOSED CLOSING JURY INSTRUCTION NO. 17**
**(Counterclaim - Elements of Contract Claim) [28]**

To establish its counterclaim against Utica, Clearwater has the burden to prove four essential elements.  I will tell you briefly now what they are, and I will give you more details about each element in the instructions that follow.

The four essential elements which the plaintiff must prove are:

(1) **Contract**.  Clearwater must prove that the parties entered into a contract that contained the terms claimed by the Clearwater.

(2) **Plaintiff's Performance**.  Clearwater must prove that it did what the contract required it to do.

(3) **Defendant's Breach**.  Clearwater must prove that Utica breached the contract.

(4) **Resulting Damage**.  Clearwater must prove that Utica's breach caused a loss to Clearwater.

If you find that Clearwater has proven all four of these essential elements then your verdict must be for Clearwater on the counterclaim.  If you find that Clearwater has not proven all of these essential elements, then your verdict must be for Utica on the counterclaim.

I will now explain each element further.

---

[28] Kehoe, Jury Instructions for Contract Cases, § 2.02 Elements of Contract Claim.

**PROPOSED CLOSING JURY INSTRUCTION NO. 18**
**(Counterclaim – Element 1 – Contract Duties)[29]**

The parties admit the existence of contracts between them, and that Clearwater's liability under the reinsurance contracts follows that of Utica as a direct insurer.  Thus, the first essential element of Clearwater's counterclaim requires Clearwater to prove by a preponderance of the evidence that Utica was not liable to Goulds for the amounts allocated to the 1978-81 Umbrella Policies and billed to Clearwater in 2012.

---

[29] Kehoe, Jury Instructions for Contract Cases, § 2.02 Elements of Contract Claim.

**PROPOSED CLOSING JURY INSTRUCTION NO. 19**
**(Counterclaim - Element 2 – Clearwater's Performance)[30]**

The second essential element of Clearwater's counterclaim requires Clearwater to prove that it substantially performed its obligations under the 1978 to 1981 reinsurance contracts.

Utica contends in its affirmative claims that Clearwater materially breached the reinsurance contracts by failing to pay billings as they became due.

This is denied by Clearwater.

To prevail on the second essential element, Clearwater has the burden to prove one of two things in this regard: either that it did not breach the contracts or that any such breach was not material.

I already instructed you on what is to be considered in determining whether a breach if material in the context of Utica's breach of contract claim. The same considerations apply here.

---

[30] Kehoe, Jury Instructions for Contract Cases, § 3.01 Contract Duties, § 6.02 Plaintiff's Material Breach.

## PROPOSED CLOSING JURY INSTRUCTION NO. 20
### (Counterclaim - Element 3 – Utica's Breach)[31]

The third essential element of Clearwater's counterclaim requires Clearwater to prove that Utica breached the 1978 to 1981 reinsurance contracts.

Clearwater claims that Utica breached the reinsurance contracts by (1) billing Clearwater for amounts that Utica was not obligated to pay Goulds under the terms of the 1978-81 Umbrella Policies, as such policies might have been impacted by the Settlement Agreement, (2) breaching its duty of utmost good faith in the various ways previously described, (3) and breaching its duty of good faith and fair dealing in connection with billing Clearwater.

Utica denies this.  Utica contends that it billed Clearwater for amounts Utica was obligated to pay Goulds, denies that it breached its duty of utmost good faith, and denies that it breached its duty of good faith and fair dealing.

In order to prove Utica breached its obligations under the reinsurance contracts, Clearwater most prove by a preponderance of the evidence that some or all of the amounts Utica sought from Clearwater were reinsurance billings for amounts Utica did not owe or pay to Goulds.

---

[31] Kehoe, Jury Instructions for Contract Cases, § 3.01 Contract Duties.

**PROPOSED CLOSING JURY INSTRUCTION NO. 21**
**(Counterclaim - Element 4 – Damages)[32]**

The fourth essential element of Clearwater's counterclaim requires Utica to prove that Utica's breach of the reinsurance contracts damaged Clearwater.  Clearwater claims that it paid $993,159 in reinsurance billings under the pretense that they were proper, and if they were not, it was damaged.  Utica takes the position that the billings were properly owed.  In order to prove Utica breached the reinsurance contracts, Clearwater most prove by a preponderance of the evidence that some or all of the amounts Clearwater paid Utica is not owed under the reinsurance contracts.

---

[32] Kehoe, Jury Instructions for Contract Cases, § 3.01 Contract Duties.

**PROPOSED CLOSING JURY INSTRUCTION NO. 22**
**(Introduction to Damages)[33]**

If you find that Clearwater is liable to Utica for breach of contract, then you must determine the amount of money to award to Utica as contract damages.  The following instructions will tell you how to do that.

If you find that Clearwater is not liable, then then you will have no occasion to consider the subject of damages for Utica's claims.

The same is true for Clearwater's counterclaim.  If you find that Utica is liable to Clearwater for breach of contract, then you must determine the amount of money to award to Clearwater as contract damages.  The following instructions will also tell you how to do that.

If you find that Utica is not liable, then then you will have no occasion to consider the subject of damages for Clearwater's counterclaim.

---

[33] Kehoe, Jury Instructions for Contract Cases, § 9.01 Introduction to Damages.

## PROPOSED CLOSING JURY INSTRUCTION NO. 23
### (Expectation Damages)[34]

**Breach of Contract Claims**

If Clearwater is liable for breach of contract, then Utica may recover contract damages to put it in the same financial position that it would have obtained under the reinsurance contracts, if they had not been breached.

For its claims, Utica seeks $10,901.005 in damages, representing the amounts billed to Clearwater that have not been paid. Specifically, Utica Mutual seeks to recover [_____] in indemnity and defense costs under the 1978 reinsurance contract, broken down as follows: $5,000,000 in indemnity and $[_____] in defense.  Utica Mutual also seeks to recover $[_____] in indemnity and expense under the 1979 contract, broken down as follows:  $2,500,000 in indemnity and $[_____] in defense.  Finally, Utica Mutual seeks to recover $[_____] in indemnity and expense under the three memoranda of reinsurance, broken down as follows: $212,500 in indemnity and $[_____] in expense.

If it is found liable on Utica's claims, Clearwater denies that such damages should be awarded because Utica's damages under the contracts are less than what was billed to Clearwater or none.  Clearwater contends that the Settlement Agreement modified the 1978-81 Policies in various ways that have not been explained or proven, rendering Utica's billings an inadequate substitute for its damages.

Utica has the burden to prove its contract damages. To do this, Utica must present evidence that will enable you to determine the fair and reasonable value of its loss.

---

[34] Kehoe, Jury Instructions for Contract Cases, § 9.11 Expectation Damages.

Whether Utica has proven any contract damages is for you to decide, but your decision must be based upon the evidence and the law stated in these instructions.  You may not award damages on the basis of guess, speculation or conjecture.

If Utica has established that Clearwater is liable for breach of contract, but Utica has not met its burden of proof as to any damages, you shall award Utica only $1.00 as nominal damages.

**<u>Counterclaim</u>**:

My instructions on damages for Clearwater's counterclaim are similar.  If Utica is liable for breach of contract, then Clearwater may also recover contract damages to put it in the same financial position that it would have obtained under the reinsurance contracts, if they had not been breached.

For its counterclaim, Clearwater seeks to recover from Utica the $993,159 that Clearwater paid to Utica in 2012 before discovering facts that led it to question the appropriateness of Utica's billings.  Clearwater contends that it was improperly billed and that it paid amounts that are not due under the reinsurance contracts.

Utica denies the claim and asserts that the billings are proper.

Clearwater has the burden to prove its contract damages. To do this, Clearwater must present evidence that will enable you to determine the fair and reasonable value of its loss.

Whether Clearwater has proven any contract damages is for you to decide, but your decision must be based upon the evidence and the law stated in these instructions.  You may not award damages on the basis of guess, speculation or conjecture.

If Clearwater has established that Utica is liable for breach of contract, but Clearwater has not met its burden of proof as to any damages, you shall award Clearwater only $1.00 as nominal damages.

## PROPOSED CLOSING JURY INSTRUCTION NO. 24
### (Prejudgment Interest)

Both parties seek an award of prejudgment interest from the date of their damage to the date of the judgment. If you award damages to either party, you must specify the date on which their damages were suffered so interest can be properly calculated.

The law provides that interest is to be awarded from the date or dates that payments became due. If you find in favor of Utica on any of its claims, then you must also decide the date or dates on which payments became due.

The same is true for Clearwater's counterclaim.  If you find in favor of Clearwater on its counterclaim, then you may decide that interest is due from the date Clearwater made its payment. Clearwater's position is that November 7, 2012, the date it paid the improper billing, was the date when its counterclaim accrued.

**PROPOSED CLOSING JURY INSTRUCTION NO. 25**
**(Special Verdict Form)**

This case will be decided on the basis of the answers that you give to each of the questions that will be submitted to you.  Many questions call for either a "Yes" or "No" answer.

While it is important that the views of all jurors be considered, all of you must agree on the answer to each question.  When you have all agreed, the foreperson of the jury will check the appropriate choice in the space provided for the answer.  Remember, the decision must be unanimous. When you have answered all of the questions, the foreperson must sign the form and report to the court.

Do not assume from the question or from the wording of the question or from my instructions on it what the answer should be.

Dated: July 6, 2021

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Thomas J. McCormack*
    Thomas J. McCormack
    John F. Finnegan
    Victoria V. Corder
    Allison L. Silverman
1301 Avenue of the Americas
New York, New York  10019-6022
Tel.:   (212) 318-3000
Fax:   (212) 318-3400

Joy L. Langford
799 9th Street NW
Suite 1000
Washington, DC 20001
Tel.:   (202) 318-3000
Fax:   (212) 318-3400

*Attorneys for Defendant, Clearwater*
*Insurance Company*

**<u>CERTIFICATION OF SERVICE</u>**

I certify that on July 6, 2021, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on all Counsel of Record.


*<u>/s/ Thomas J. McCormack</u>*
Thomas J. McCormack