**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UTICA MUTUAL INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>          v.<br><br>CLEARWATER INSURANCE COMPANY,<br><br>                              Defendant. | No. 6:13-cv-1178 (GLS/TWD) |

**DEFENDANT CLEARWATER INSURANCE COMPANY'S
<u>RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

**NORTON ROSE FULBRIGHT US LLP**
Thomas J. McCormack
John F. Finnegan
Victoria V. Corder
Allison L. Silverman
1301 Avenue of the Americas
New York, NY 10019

Joy L. Langford
799 9th St. NW
Suite 1000
Washington, DC 20001

*Attorneys for Defendant, Clearwater Insurance
Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    Rule 50(A) Legal Standard ................................................................................ 2

    Ii.    Clearwater Is Entitled To Judgment As A Matter Of Law On Utica's Claims For Breach Of The TPF&C Memoranda .................................................. 3

    Iii.    Utica Has Failed To Adduce Proof Showing It Was Obligated By The Common Law Of Indemnification To Pay Certain Amounts To Goulds Allocated And Billed To The 1978-81 Umbrella Policies Under The Settlement Agreement ............................................................................................ 6

    Iv.    The Court Should Find As A Matter Of Law That The Phrase "Occurrence Not Covered By" Unambiguously Refers To The Type Of Risk, Not Exhaustion Or Collectability ............................................................................ 9

    V.    As The Primary Policies Lack Aggregate Limits, Utica Cannot Prove Clearwater's Liability As A Matter Of Law ..................................................... 11

CONCLUSION ...................................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*,
　　305 F.3d 82 (2d. Cir. 2002)..................................................................................13

*Bath Cty. v. Amy*,
　　80 U.S. 244 (1871).............................................................................................13

*Cannon Electric Inc. v. ACE Property & Casualty Insurance Co.*,
　　No. BC 290354 (Cal. Super. Ct. L.A. Co. Jan. 28, 2014), *aff'd, Goulds Pumps,*
　　*Inc. v. Travelers Cas. & Sur. Co.*, No. B255439, 2016 WL 3564244 (Cal. Ct.
　　App. June 22, 2016) .............................................................................................1

*E-21 Global, Inc. v. Second Renaissance, LLC*,
　　360 F. App'x 172 (2d. Cir. 2009) .........................................................................2

*Fane v. Zimmer*,
　　927 F.2d 124 (2d. Cir. 1991)................................................................................2

*H.S. Equities, Inc. v. Hartford Accident & Indem. Co.*,
　　609 F.2d 669 (2d. Cir. 1979).................................................................................7

*H.S. Equities, Inc. v. Hartford Accident & Indem. Co.*,
　　661 F.2d 264 (2d Cir. 1981)..............................................................................7, 8

*Haskin v. United States*,
　　No. 10-cv-5089, 2015 WL 3971730 (E.D.N.Y. June 30, 2015)............................12

*Johnson v. Nextel Commc'ns., Inc.*,
　　660 F.3d 131 (2d. Cir. 2011)................................................................................5

*Kerman v. City of New York*,
　　374 F.3d 93 (2d. Cir. 2004)................................................................................12

*Kooleraire Servs. & Installation Corp. v. Board of Ed. Of City of New York*,
　　28 N.Y.2d 101 (1971) ..........................................................................................4

*MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*,
　　No. 603751/2009, 2017 WL 1201868 (N.Y. Sup. Ct. N.Y. Cty. Mar. 31, 2017)....................12

*Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*,
　　61 N.Y.2d 106 (1984) .......................................................................................3, 5

*MHR Capital Partners LP v. Presstek, Inc.*,
    12 N.Y.3d 640 (2009) ..................................................................................................4

*Nostrand v. Hughes*,
    54 A.D. 602 (2d Dep't 1900) .....................................................................................13

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
    86 N.Y.2d 685 (1995) .............................................................................................3, 4

*Rainbow v. Swisher*,
    72 N.Y.2d 106 (1988) ................................................................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) .....................................................................................................2

*S.E.C. v. Ginder*,
    752 F.3d 569 (2d. Cir. 2014) .......................................................................................2

*Schron v. Troutman Sanders LLP*,
    20 N.Y.3d 430 (2013) ................................................................................................12

*Sec. Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp.*,
    31 N.Y.2d 436 (1972) ..................................................................................................5

*Teitelbaum Holdings, Ltd. v. Gold*,
    48 N.Y.2d 51, 396 N.E.2d 1029 (1979) ....................................................................13

*Utica Mut. Ins. Co. v. American Reins. Co. n/k/a Munich Reinsurance of America,
    Inc.*, No. EFCA2013-002587 (N.Y. Sup. Ct. Oneida Cnty. Apr. 30, 2021) ...........10

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*,
    906 F.3d 12 (2d Cir. 2018) ........................................................................3, 4, 5, 6, 11

*Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*,
    381 F. Supp. 3d 185 (N.D.N.Y. 2019) ...................................................................9, 10

*W.W.W. Assocs., Inc. v. Giancontieri*,
    77 N.Y.2d 157, 566 N.E.2d 639 (1990) ...............................................................12, 13

*Warren v. Pataki*,
    823 F.3d 125 (2d. Cir. 2016) .......................................................................................2

**Rules and Statutes**

Fed. R. Civ. P. 50(a) .............................................................................................................1

Fed. R. Civ. P. 50(a)(1) ........................................................................................................2

**Other Authorities**

Restatement (Second) of Contracts § 225 cmt. b..............................................................................4

Defendant, Clearwater Insurance Company ("Clearwater"), hereby submits the following memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 50(a), for judgment as a matter of law on the issues set forth herein.[1]

## INTRODUCTION

Clearwater is entitled to judgment as a matter of law on four issues.

*First*, Clearwater is entitled to judgment as a matter of law in its favor on Utica's claims alleging breach of the TPF&C Memoranda because it has failed to prove that Utica obtained consent from Clearwater to settle the dispute with Goulds, as it must under that contract.

*Second*, Clearwater is entitled to judgment as a matter of law on that portion of Utica's reinsurance billings that arise from obligations stemming exclusively from the Settlement Agreement, not the 1978-81 Umbrella Policies that Clearwater reinsured:  Utica has utterly failed to prove that the common law of indemnification obligated Utica to pay certain amounts it did pay to Goulds, that were not required under the policy language (*i.e.*, the orphan shares).

---

[1] As used in this brief, "Goulds" means Goulds Pumps, Inc.; the "primary policies" means the primary insurance policies Utica issued to Goulds for the 1978, 1979, 1980, and 1981 years; the "umbrella policies" means the umbrella policies Utica issued to Goulds for the 1978, 1979, 1980 and 1981 years; the "DJ" means the coverage action filed in California by Goulds against insurers, including Utica, which case is *Cannon Electric Inc. v. ACE Property & Casualty Insurance Co.*, No. BC 290354 (Cal. Super. Ct. L.A. Co. Jan. 28, 2014), *aff'd*, *Goulds Pumps, Inc. v. Travelers Cas. & Sur. Co.*, No. B255439, 2016 WL 3564244 (Cal. Ct. App. June 22, 2016); the "reinsurance agreements" means (a) the Casualty Facultative Reinsurance Certificate N-21163 which reinsures $5 million of the layer $5 million excess $20 million of Utica's 1978 umbrella policy, (b) the Casualty Facultative Reinsurance Certificate N-22001 which reinsures $2.5 million of the layer $15 million excess $10 million of Utica's 1979 umbrella policy and (c) the reinsurance accepted on behalf of Clearwater by TPF&C acting in its capacity as a reinsurance pool manager, memorialized in Memoranda of Reinsurance (the "TPF&C Memoranda," which are **P-3** and **P-4**), which reinsures (i) 8.5% (or $42,000) part of $500,000 of the layer $15 million excess $10 million of Utica's 1979 umbrella policy and (ii) 8.5% (or $85,000) part of $1 million of the layer $15 million excess of $10 million of Utica's 1980 and 1981 umbrella policies; and the "Settlement Agreement" means the settlement agreement Utica and Goulds entered into in 2007, which is **P-111**.

*Third*, the Court should find as a matter of law that the phrase "occurrence not covered by" unambiguously refers to the type of risk, not exhaustion or collectability, and thus Clearwater is not obligated to pay Utica's supplemental defense expenses as a matter of law.

*Fourth*, given that the Second Circuit held as a matter of law that the primary policies are unambiguous, Utica cannot prove Clearwater has breached the reinsurance contracts through the use of extrinsic evidence, requiring judgment in Clearwater's favor as a matter of law on all of Utica's claims.

## ARGUMENT

### I.    RULE 50(A) LEGAL STANDARD

Judgment as a matter of law is appropriate when there is no legally sufficient evidentiary basis for a reasonable jury's verdict.  Fed. R. Civ. P. 50(a)(1); *S.E.C. v. Ginder*, 752 F.3d 569, 574 (2d. Cir. 2014). A legally sufficient basis is lacking when the evidence favoring the movant is "so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Warren v. Pataki*, 823 F.3d 125, 139 (2d. Cir. 2016). A "mere scintilla of evidence" is insufficient to present a question to the jury. *E-21 Global, Inc. v. Second Renaissance, LLC*, 360 F. App'x 172, 175 (2d. Cir. 2009) (citing *Fane v. Zimmer*, 927 F.2d 124, 128 (2d. Cir. 1991)). In assessing the propriety of judgment as a matter of law, the Court should "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached," at least to the extent that such evidence comes from disinterested witnesses. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000)).

## II.   CLEARWATER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON UTICA'S CLAIMS FOR BREACH OF THE TPF&C MEMORANDA

Clearwater is also entitled to judgment as a matter of law in its favor on Utica's claims, and Clearwater's counterclaims, concerning the reinsurance billings sought under the TPF&C Memoranda.[2] Utica has utterly failed to prove (and cannot prove) that Utica obtained consent from TPF&C or Clearwater, as those contracts required it to do, prior to settling the dispute with Goulds and billing Clearwater under the TPF&C Memoranda.  Since Utica cannot satisfy a condition precedent to its performance under those reinsurance contracts, it cannot prove its breach of contract claims arising in connection with those contracts.

The TPF&C Memoranda provide that "[a]ll claims settlements when authorized by Towers, Perrin, Forster & Crosby, Inc. shall be binding on the reinsurers…". *See* P-3 at 2, P-4 at 2. On appeal to the Second Circuit, the parties agreed that Utica's obligation to obtain authorization for a settlement was a condition precedent to the reinsurer's liability for settlement payments. *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 22 (2d. Cir. 2018).

A condition precedent "must occur before a duty to perform a promise in the agreement arises," unless the condition is excused. *Id*. (citing *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995)). Failure to satisfy a condition precedent "excuses performance by the other party whose performance is so conditioned." *Id*. (quoting *Merritt Hill*

---

[2] The TPF&C Memoranda refers to the reinsurance accepted on behalf of Clearwater by TPF&C acting in its capacity as a reinsurance pool manager, memorialized in Memoranda of Reinsurance, which reinsures (i) 8.5% (or $42,000) part of $500,000 of the layer $15 million excess $10 million of Utica's 1979 umbrella policy and (ii) 8.5% (or $85,000) part of $1 million of the layer $15 million excess of $10 million of Utica's 1980 and 1981 umbrella policies.  The TPF&C Memoranda are P-3 and P-4.

*Vineyards Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 113 (1984)). Express conditions are those agreed to by the parties themselves. *Oppenheimer & Co.*, 86 N.Y.2d at 690. Express conditions "must be literally performed; substantial performance will not suffice." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640 (2009).

A condition precedent may be excused on a handful of grounds, none of which apply here.[3] Utica argued to the Second Circuit that impossibility excused its performance of the condition precedent, but the Second Circuit squarely rejected this contention. *Utica Mut. Ins. Co.*, 906 F.3d at 22-23. It noted that for impossibility to excuse Utica's performance, it would have to show either that (1) "the condition is of only minor importance, its happening is a mere technicality, and a forfeiture will result by insisting on its occurrence" or (2) that Clearwater "has frustrated or prevented the occurrence of the condition." *Id.* (internal citations omitted); *see also Kooleraire Servs. & Installation Corp. v. Board of Ed. Of City of New York*, 28 N.Y.2d 101, 106 (1971) ("one may not take advantage of a condition precedent, the performance of which he himself has rendered impossible."). The Second Circuit found that Utica failed to show that obtaining TPF&C's authorization was impossible, by showing, for example, that TPF&C did not exist.[4] *Utica Mut. Ins. Co.*, 906 F.3d at 23. Nor did Utica show that TPF&C's decision to step away from

---

[3] *See* Restatement (Second) of Contracts § 225 cmt. b (noting that non-occurrence of a condition precedent may be excused by (1) a subsequent promise to perform in spite of the non-occurrence of the condition, (2) acceptance of performance despite non-occurrence of the condition, (3) by rejection following its non-occurrence accompanied by an inadequate statement of reasons, (4) a repudiation of the conditional duty or a party's manifestation of an inability to perform it, (5) hindrance of the condition's occurrence due to the other parties breach of the duty of good faith and fair dealing, or (6) impracticability.). As Clearwater made its initial payments to Utica subject to a reservation of rights, no acceptance of Utica's non-compliant performance occurred.

[4] After a series of mergers, TPF&C continues as part of Willis Towers Watson. *See* "Our History," Willis Towers Watson, available at https://www.willistowerswatson.com/en-US/About-Us/our-history.

4

acting as reinsurance pool manager was attributable to Clearwater. *Id*. Moreover, the Second Circuit noted that even if Utica could establish that its performance of the condition was excused, it would still need to establish that Clearwater's performance was not also excused by non-occurrence of the condition precedent. *Id*.

Utica has not demonstrated with any proof at trial that it met this condition precedent by obtaining TPF&C or Clearwater's authorization prior to its settlement with Goulds, and its billings to Clearwater. Nor has Utica shown that its failure to obtain TPF&C's authorization for its settlement with Goulds was excused. Utica offers no evidence showing that Clearwater rendered fulfillment of this condition impossible. Further, Utica fails to demonstrate that obtaining authorization was a "mere technicality" that would result in forfeiture, since authorization of settlements is an important means for reinsurers to protect themselves and, as the course of this action plainly shows, Utica's settlement with Goulds was controversial and approval was far from guaranteed. *Id*. at 22; *c.f. Sec. Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440 (1972) ("Notice provisions in insurance policies afford the insurer an opportunity to protect itself and the giving of the required notice is a condition to the insurer's liability. Absent a valid excuse, a failure to satisfy the notice requirement vitiates the policy.") (internal citations omitted). Nor has Utica shown that Clearwater's performance was not also excused by Utica's failure to obtain authorization, as required. *Utica Mut. Ins. Co.*, 906 F.3d at 23.

To prevail on its breach of contract claim, Utica must show both that it complied with all of its obligations under the contract, and that Clearwater failed to perform despite an obligation to do so. *Johnson v. Nextel Commc'ns., Inc.*, 660 F.3d 131, 142 (2d. Cir. 2011). However, Utica's unexcused failure to fulfill a condition precedent of the TPF&C Memoranda excused Clearwater's obligation to perform under the contracts. *Utica Mut. Ins. Co.*, 906 F.3d at 22 (quoting *Merritt Hill*

*Vineyards Inc.*, 61 N.Y.2d at 113). Accordingly, Utica cannot carry its burden on its claims under the TPF&C Memoranda, and Clearwater is entitled to judgment as a matter of law on Utica's breach of contract claims regarding these contracts. Clearwater is further entitled to judgment as a matter of law on its counterclaim regarding the amounts it paid to Utica with respect to billings under the TPF&C Memoranda.

### III. UTICA HAS FAILED TO ADDUCE PROOF SHOWING IT WAS OBLIGATED BY THE COMMON LAW OF INDEMNIFICATION TO PAY CERTAIN AMOUNTS TO GOULDS ALLOCATED AND BILLED TO THE 1978-81 UMBRELLA POLICIES UNDER THE SETTLEMENT AGREEMENT

Utica has failed to prove that it was obligated to pay certain amounts to Goulds that it allocated and billed the 1978-81 umbrella policies under the Settlement Agreement (*i.e.*, the orphan shares). Clearwater is entitled to judgment as a matter of law that it did not reinsure payments that Utica was not obligated to pay under the reinsured umbrella policies.

The common law of indemnification cannot be used to establish Clearwater's liability for orphan shares. In order to recover from Clearwater, Utica must establish its "proven liability on the umbrella policies." *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 25 (2d Cir. 2018) ("Clearwater is not obligated under [any of the reinsurance contracts] to follow Utica's settlement with Goulds, but rather must indemnify Utica according to Utica's proven liability on the umbrella policies."). Utica contends that one way for it to establish liability on the umbrella policies is through the common law of indemnification. This is not so. Moreover, there was no proof adduced at trial to support the application of this doctrine to the facts of the Utica/Goulds Settlement Agreement, which settled an issue with the aggregate limits, not underlying coverage claims by asbestos plaintiffs.

This doctrine provides that where an insured offered its insurer an opportunity to defend a third-party action and the insurer declined, and the insured later settled the third-party action in

good faith, the common law of indemnification establishes a rebuttable presumption that, in an action between the insured and its insurer, the facts asserted in the third-party complaint are true. *H.S. Equities, Inc. v. Hartford Accident & Indem. Co.*, 661 F.2d 264, 268 (2d Cir. 1981) ("*HS Equities II*") ("when an indemnitor has been accorded a reasonable opportunity to defend a third-party action against the indemnitee and declines, the good-faith settlement of the third-party claim by the indemnitee *is presumptive evidence of the facts alleged in the third-party complaint*.") (emphasis added); *see also HS Equities, Inc. v. Hartford Accident & Indem. Co.*, 609 F.2d 669, 671 (2d. Cir. 1979) ("*HS Equities I*") ("certain consequences attached to Hartford's decisions to decline to assume the defense of the [] action… One of these consequences… is that the burden was placed on Hartford to successfully contest matters which otherwise are presumed to have been established in the litigation against HS. HS was entitled to advance the fact of its settlement of the Odessey action as presumptive evidence of the conclusion that Michael had committed the actions alleged in the Odesseys' complaint.").

Therefore, the common-law of indemnification could only establish a rebuttable presumption of Utica's liability to Goulds for orphan share payments if (1) Utica declined to defend the asbestos suits brought against Goulds, (2) Goulds subsequently settled those asbestos suits in good faith, and (3) the facts alleged in the asbestos suit complaints established Utica's liability for orphan shares. *See HS Equities II*, 661 F.2d at 268.

Utica plainly cannot establish that the common law of indemnification rendered it liable to Goulds for the orphan shares. Orphan shares occur when a policyholder has a gap in coverage, rendering it responsible for defense costs and indemnity payments: this gap may occur because the policyholder failed to purchase coverage, its insurer is insolvent, or is otherwise not performing. The orphan shares at issue here arose when Utica informed Goulds that the limits of certain primary

policies issued to Utica by Goulds had been exhausted, and Goulds was thus liable for costs and indemnity payments beyond these limits. *See* D-29; P-98. Goulds responded by naming Utica in a lawsuit and arguing that the limits were not exhausted, because the primary policies contained no products aggregate limit. *See* D-72; P-114 at 12-13.

Putting aside the merits of this dispute, whether or not Utica or Goulds was liable for orphan shares had nothing to do with the asbestos claims asserted against Goulds, and thus no good-faith settlement between a claimant and Goulds could establish a presumption of Utica's liability through the common-law of indemnification. Since the common law of indemnification doctrine establishes an insured's good-faith settlement as "presumptive evidence of the facts alleged in the third-party complaint," and because liability for the orphan shares was an issue of insurance between Utica and Goulds, entirely unrelated to the actions between Goulds and plaintiffs allegedly exposed to asbestos by Goulds's products, the common law of indemnification could never establish Utica's liability for such amounts. *HS Equities II*, 661 F.2d at 268. As the common law of indemnification does not provide an avenue for Utica to prove its liability for the orphan share payments, it may only foist those payments upon Clearwater if it proves Utica was liable for them under the umbrella policies, something Utica has utterly failed to do.

Utica has failed to adduce any evidence showing that it was obligated by the common law of indemnification to pay certain amounts to Goulds that it paid and allocated to the 1978-81 umbrella policies under the Settlement Agreement (*i.e.*, the orphan shares).  Clearwater is entitled to judgment as a matter of law in its favor on that portion of the reinsurance billings that are attributable to amounts that Utica paid to Goulds that were not expressly required to be paid under the language of the umbrella policies, as Clearwater did not reinsure such amounts.

**IV.   THE COURT SHOULD FIND AS A MATTER OF LAW THAT THE PHRASE "OCCURRENCE NOT COVERED BY" UNAMBIGUOUSLY REFERS TO THE TYPE OF RISK, NOT EXHAUSTION OR COLLECTABILITY**

In Utica's action against Munich Reinsurance, Judge Sannes reconsidered that court's initial determination that the phrase "occurrence not covered by" as used in the 1973 defense endorsement to Utica's umbrella policies to Goulds was ambiguous, and instead held that the provision was unambiguous, and the earlier finding of ambiguity had been clearly erroneous. *Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 381 F. Supp. 3d 185, 209, n.36 (N.D.N.Y. 2019). Clearwater respectfully invites the Court to follow suit here and interpret the corresponding, unambiguous term of the 1978-81 umbrella policies itself, based on their plain language and without reference to extrinsic evidence.

In *MunichRe*, as here, Utica argued that language in the umbrella policies obligated it to pay Goulds defense costs in addition to limits, thereby obligating its reinsurer to follow suit and pay its share of defense expenses in addition to limits when the corresponding primary policies were exhausted.  MunichRe's argument in response, just like Clearwater's, is that the phrase "occurrence not covered by" in the umbrella policies refers only to occurrences "not within the scope of coverage provided by underlying policies of insurance." *Id*. at 210.  Read this way, exhaustion of the primary policies would not trigger the umbrella policies to pay defense expense.

The *MunichRe* court interpreted the unambiguous policies to reject "Utica's reading of 'occurrence not covered by' as including exhaustion" as "untenable." *Id.* at 212. In light of "the strength of the caselaw supporting Munich's position," the Court noted there was "no basis in law" or in the contract terms to infer that "occurrence not covered means anything other than the type of risk" and that Utica's interpretation had "no legal support" at the time it extended coverage to Goulds for defense expenses. *Id*. at n. 36, 210; n. 42. The court further noted that Utica's interpretation would lead to an absurd result, and that the "majority of courts addressing the 'not

covered' or 'occurrence not covered by' language have found it unambiguous and that it refers to the type of risk, not exhaustion or collectability." *Id.* at 212 (collecting cases). Therefore, the *MunichRe* court found that because the asbestos claims were covered by the primary policies, the umbrella policies did not obligate Utica to pay supplemental defense expenses upon exhaustion of the primary policies. *Id.* at 213. Clearwater witness Bill Bouvier's testimony in trial that the custom and practice in the industry is to read the language as Judge Sannes did further lends credit to this interpretation.

Here, the Court should similarly find that the terms of the 1978-81 umbrella policies issued to Goulds are unambiguous and decide their meaning as a matter of law. *See Rainbow v. Swisher*, 72 N.Y.2d 106, 109 (1988) (noting that where a contract is clear and unambiguous on its face, the intent of the parties must be determined "from within the four corners of the instrument, not from extrinsic evidence."). Specifically, this Court should find that the 1978-81 umbrella policies' plain language did not compel Utica to pay defense expense to Goulds.

Judge Sannes's reasoning regarding the 1973 policies applies with equal force to the 1978-81 umbrella policies at issue here. *See* Decision (Dkt. 204), *Utica Mut. Ins. Co. v. American Reins. Co. n/k/a Munich Reinsurance of America, Inc.*, No. EFCA2013-002587 (N.Y. Sup. Ct. Oneida Cnty. Apr. 30, 2021) (finding the language in Utica's 1977 and later umbrella policies to be identical in all material respects to the language in Utica's 1973 umbrella policy at issue in *MunichRe*, and granting judgment in favor of the reinsurer and dismissing Utica's claims). Based on the foregoing, this Court should find that the 1978-81 umbrella policies' plain language did not compel Utica to pay defense costs, and therefore Clearwater is entitled to judgment as a matter of law that it was not required to pay defense costs, and is entitled to be reimbursed for any defense costs previously paid.

10

## V.    AS THE PRIMARY POLICIES LACK AGGREGATE LIMITS, UTICA CANNOT PROVE CLEARWATER'S LIABILITY AS A MATTER OF LAW

To prevail on its breach of contract claims absent the application of follow-the-settlements, Utica "has the burden of proving that the loss was specifically caused by a risk covered in the reinsurance contract." *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 25 (2d Cir. 2018). As a matter of law, Utica cannot meet this burden if there were no aggregate limits in the primary policies Utica issued from 1978-81, as that would eliminate any exposure Utica's 1978-81 umbrella policies may have had to Goulds' asbestos losses. As Clearwater only reinsures a portion of the 1978-81 umbrella policies, eliminating exposure to these policies forecloses any liability Clearwater could have to Utica under their reinsurance contracts.[5]

The Second Circuit previously found that Utica's 1978-81 primary policies issued to Goulds lacked aggregate limits, impliedly holding that the contracts are unambiguous as a matter of law and interpreting the plain meaning of its language without extrinsic evidence.  In the Second Circuit's own words:

- "The primary policies Utica issued to Goulds from 1978 to 1981 had a glaring omission: they did not include aggregate limits of liability. In other words, the policies failed to specify the maximum amount Utica would pay Goulds. Because that maximum amount defined the limit of Utica's liability to Goulds under its primary policies, the omissions exposed Utica to potentially limitless liability."

- "The absence of a specific aggregate-liability limit became a problem for Utica…."

- "The policies simultaneously proved costly to Utica, which had failed to include aggregate limits in certain years' policies."

*Id.* at 14, 16 (emphasis added).

---

[5] There was no proof adduced at trial to show that the 1978-81 policies were ever exhausted by meeting the occurrence limit of those policies (which all parties agree exists).  This means that the only way the 1978-81 umbrella policies reinsured by Clearwater could have been triggered was by Goulds claims exhausting the aggregate limit – of which there were none in the relevant policies.

The Second Circuit's determination that the policy language at issue is unambiguous and the policies lack aggregate limits binds the Court. *See Kerman v. City of New York*, 374 F.3d 93, 110 (2d. Cir. 2004) ("Where issues have been explicitly or implicitly decided on appeal, the law-of-the case doctrine obliges the district court on remand to follow the decision of the court of appeals…[where the appellate court] has decided a question of law, the lower court on remand lacks discretion to decide that question to the contrary") (internal quotations omitted); *MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*, No. 603751/2009, 2017 WL 1201868, at *11 (N.Y. Sup. Ct. N.Y. Cty. Mar. 31, 2017) (where binding precedent exists holding that a contract is unambiguous, the "court is legally prohibited from considering parol evidence to interpret it"); *see also Haskin v. United States*, No. 10-cv-5089, 2015 WL 3971730, at *7 (E.D.N.Y. June 30, 2015) ("The fact that the issues were presented to the Second Circuit in a different posture does not negate its findings.")**.**

Understanding that the Court has decided that the 1978-81 primary policies are ambiguous and that it would permit extrinsic evidence at trial,[6] it is Clearwater's position that the Second Circuit's holding that the 1978-81 primary policies are unambiguous contracts is correct, meaning that the interpretation of the policies is a question of law for the court to decide with reference to policy language alone. *See Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013) (a clear, unambiguous written agreement must be enforced according to the plain meaning of its terms without resort to parol evidence—extrinsic evidence outside the four corners of the document); *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 566 N.E.2d 639, 642 (1990) (a party may not introduce extrinsic evidence in order to create an ambiguity in a writing that is clear and

---

[6] Day 5 Tr. 53:11-13 ("THE COURT: That's okay. I'm just pointing out the ambiguity is not really at issue because I found it's ambiguous, right?")

unambiguous); *Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 85 (2d. Cir. 2002) (the "proper interpretation of an unambiguous contract is a question of law for the court"); *Teitelbaum Holdings, Ltd. v. Gold*, 48 N.Y.2d 51, 396 N.E.2d 1029, 1032 (1979) (interpreting unambiguous provision of Settlement Agreement as a matter of law); *Bath Cty. v. Amy*, 80 U.S. 244, 247 (1871) ("Issues of fact are to be tried by jury; issues of law, by the court.").

The Court should find as a matter of law that the 1978-81 primary policies lacked aggregate limits, disregarding the parole evidence introduced at trial concerning the subject and withdrawing the issue from the jury's consideration. This result is appropriate under New York law, given that the Second Circuit found the policies were unambiguous. *See Nostrand v. Hughes*, 54 A.D. 602, 603 (2d Dep't 1900) (holding that where a lease left blank the purpose for which the premises were to be occupied, the trial court "clearly err[ed]" by admitting parol evidence of a verbal agreement allegedly explaining the purpose); *W.W.W. Assocs., Inc.*, 77 N.Y.2d at 163 (parole evidence is not permitted to be used to interpret an unambiguous contract or to create an ambiguity).

If the 1978-81 primary policies lack aggregate limits, Clearwater cannot be found to have breached the reinsurance contracts by failing to pay billings because without aggregate limits, Utica cannot show – and has not shown – that Utica's obligation to pay Goulds claims under the 1978-81 umbrella policies was ever triggered.[7] If the umbrella policies were not triggered, Clearwater's obligation to pay under the reinsurance contracts has not occurred. Accordingly, Clearwater is entitled to judgment as a matter of law in its favor on Utica's five breach of contract claims, and judgment in its favor on its counterclaim seeking the return of previously paid amounts.

---

[7] Utica has not shown with any evidence that the primary policies were exhausted in any other way.

## **CONCLUSION**

For the foregoing reasons, Clearwater requests that this court grant its motion in whole or in part, and enter judgment on these issues in its favor.

Dated: July 7, 2021

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Thomas J. McCormack*
    Thomas J. McCormack
    John F. Finnegan
    Victoria V. Corder
    Alisson L. Silverman
1301 Avenue of the Americas
New York, New York  10019-6022
Tel.:   (212) 318-3000
Fax:   (212) 318-3400

Joy L. Langford
799 9th Street NW
Suite 1000
Washington, DC 20001
Tel.:   (202) 318-3000
Fax:   (212) 318-3400

*Attorneys for Defendant, Clearwater*
*Insurance Company*

## **CERTIFICATION OF SERVICE**

I certify that on July 7, 2021, a copy of the foregoing was filed with the Court's electronic

case filing system, thereby effecting service on all Counsel of Record.


*/s/ Thomas J. McCormack*
Thomas J. McCormack