## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF NEW YORK

UTICA MUTUAL INSURANCE COMPANY,

                              Plaintiff,

            v.                                    No. 6:13-cv-1178 (GLS/TWD)

CLEARWATER INSURANCE COMPANY,

                              Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CLEARWATER INSURANCE COMPANY'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW AND RULE 59 MOTION FOR A NEW TRIAL OR TO ALTER OR AMEND THE JUDGMENT

**NORTON ROSE FULBRIGHT US LLP**
Thomas J. McCormack
John F. Finnegan
Victoria V. Corder
Allison L. Silverman
1301 Avenue of the Americas
New York, NY 10019

Joy L. Langford
799 9th St. NW
Suite 1000
Washington, DC 20001

*Attorneys for Defendant,*
*Clearwater Insurance Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.      LEGAL STANDARD.................................................................................... 3

II.     CLEARWATER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
        THAT IT IS NOT REQUIRED TO PAY SUPPLEMENTAL DEFENSE
        EXPENSE AND IT IS ENTITLED TO A NEW TRIAL ON WHETHER UTICA
        VIOLATED ITS DUTIES OF GOOD FAITH AND UTMOST GOOD FAITH ............. 4

III.    CLEARWATER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
        UTICA'S CLAIMS FOR BREACH OF THE TPF&C MEMORANDA BECAUSE
        UTICA FAILED TO ADDUCE ANY PROOF THAT IT SOUGHT TPF&C'S OR
        CLEARWATER'S AUTHORIZATION TO SETTLE WITH GOULDS ..................... 10

IV.     CLEARWATER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
        THOSE PORTIONS OF UTICA'S BILLINGS THAT UTICA WAS NOT
        OBLIGATED TO PAY TO GOULDS UNDER THE 1978-81 UMBRELLA
        POLICIES ................................................................................................... 13

V.      CLEARWATER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
        BECAUSE THE PRIMARY POLICIES LACK PRODUCTS AGGREGATE
        LIMITS ...................................................................................................... 20

VI.     CLEARWATER IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY
        CHARGES ERRONEOUSLY INSTRUCTED THE JURY ABOUT THE DUTY
        OF UTMOST GOOD FAITH........................................................................... 22

VII.    CLEARWATER IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY
        CHARGES AND VERDICT SHEET IMPROPERLY PERMITTED THE JURY
        TO FIND CLEARWATER LIABLE WITHOUT REQUIRING UTICA TO
        PROVE ALL THE ELEMENTS OF ITS CONTRACT CLAIMS ................................ 33

VIII.   THE COURT SHOULD VACATE THE AWARD OF PREJUDGMENT
        INTEREST OR AMEND THE DATE FROM WHICH UTICA IS ENTITLED TO
        BEGIN CALCULATING PREJUDGMENT INTEREST ............................................ 36

CONCLUSION......................................................................................................... 40

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*155 Henry Owners Corp. v. Lovlyn Realty Co.*,
231 A.D.2d 559 (2d Dep't 1996) ........................................................................37

*AboveNet Commc'ns, Inc. v. A&D Data Corp.*,
No. 08 Civ. 6188, 2010 WL 235005 (S.D.N.Y. Jan. 19, 2010)..............................38

*Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*,
305 F.3d 82 (2d Cir. 2002)...................................................................................22

*Alfaro v. Wal-Mart Stores, Inc.*,
210 F.3d 111 (2d Cir. 2000).....................................................................................3

*Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*,
992 F. Supp. 278 (S.D.N.Y. 1998)................................................................. *passim*

*Am. Safety Indem. Co. v. 612 Realty LLC*,
24 Misc. 3d 1232(A), 901 N.Y.S.2d 897 (N.Y. Sup. Ct. 2009) ..............................7

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
No. 90 Civ. 7811, 1995 WL 3006 (S.D.N.Y. 1995) ..............................................24

*Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*,
425 F.3d 126 (2d Cir. 2005)..................................................................................34

*Assembly Point Aviation, Inc. v. Richmor Aviation, Inc.*,
No. 1:13-cv-298, 2017 WL 2223919 (N.D.N.Y. May 19, 2017) ...........................34

*Assoc. Indus. Ins. Co., Inc. v. Excalibur Reins. Corp.*,
No. 13 Civ. 8239(CM), 2014 WL 6792021 (S.D.N.Y. Nov. 26, 2014) ...........30, 31

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*,
821 F.3d 297 (2d Cir. 2016)............................................................................32, 33

*Beal Sav. Bank v. Sommer*,
8 N.Y.3d 318 (2007) ..............................................................................................8

*Bevevino v. Saydjari*,
574 F.2d 676 (2d Cir. 1983)....................................................................................4

*Boyce v. Soundview Tech. Grp., Inc.*,
464 F.3d 376 (2d Cir. 2006)......................................................................22, 23, 26

*British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*,
342 F.3d 78 (2d Cir. 2003)....................................................................................27

*Carvel Corp. v. Diversified Mgmt. Grp., Inc.*,
   930 F.2d 228 (2d Cir. 1991).................................................................. 23

*Chem. Bank v. Stahl*,
   272 A.D.2d 1 (1st Dep't 2000) .............................................................. 24

*Granite State Ins. Co. v. Clearwater Ins. Co.*,
   No. 09 CIV. 10607 RKE, 2014 WL 1285507 (S.D.N.Y. Mar. 31, 2014),
   *aff'd*, 599 F. App'x 16 (2d Cir. 2015)....................................................29

*HS Equities, Inc. v. Hartford Accident & Indem. Co.*,
   609 F.2d 669 (2d Cir. 1979)....................................................................17

*HS Equities, Inc. v. Hartford Accident & Indem. Co.*,
   661 F.2d 264 (2d Cir. 1981)........................................................17, 18, 34

*Haskin v. United States*,
   No. 10-cv-5089, 2015 WL 3971730 (E.D.N.Y. June 30, 2015)............21

*Hathaway v. Coughlin*,
   99 F.3d 550 (2d Cir. 1996)......................................................................33

*Johnson v. Nextel Commc'ns, Inc.*,
   660 F.3d 131 (2d Cir. 2011)....................................................................12

*Kachkovskiy v. Khlebopros*,
   164 A.D.3d 568 (2d Dep't 2018) ............................................................38

*Kerman v. City of New York*,
   374 F.3d 93 (2d Cir. 2004)......................................................................20

*Knight v. U.S. Fire Ins. Co.*,
   804 F.2d 9 (2d Cir. 1986) .......................................................................31

*LNC Invs., Inc. v. First Fidelity Bank, N.A. New Jersey*,
   173 F.3d 454 (2d Cir. 1999)..............................................................23, 33

*MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*,
   No. 603751/2009, 2017 WL 1201868 (Sup. Ct., N.Y. Cty. Mar. 31, 2017) ..........................20

*Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*,
   61 N.Y.2d 106 (1984)..............................................................................12

*MHR Capital Partners LP v. Presstek, Inc.*,
   12 N.Y.3d 640 (2009)..............................................................................12

*In Re Liquidation of Union Indem. Ins. Co. of N.Y.*,
   89 N.Y.2d 94, 674 N.E.2d 313 (1996).......................................24, 27, 28

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005).....................................................................4

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
   86 N.Y.2d 685 (1995)..............................................................................12

iii

*Pergament Distribs., Inc. v. Old Republic Ins. Co.*,
 128 A.D.2d 760 (2d Dep't 1987) ..................................................................7, 8

*Posttape Assocs. v. Eastman Kodak Co.*,
 537 F.2d 751 (3rd Cir. 1976) .............................................................................23

*Random Ventures, Inc. v. Advanced Armament Corp., LLC*,
 2014 WL 2082124 (S.D.N.Y. May 2, 2014), *aff'd as modified sub nom.*
 *Thompson v. Advanced Armament Corp., LLC*, 614 F. App'x 523 (2d Cir.
 2015) ....................................................................................................................38

*Reliance Ins. Co. v. Certain Member Cos.*,
 886 F. Supp. 1147 (S.D.N.Y. 1995), *aff'd*, 99 F.3d 402 (2d Cir. 1995) .....................28, 31, 32

*Schipani v. McLeod*,
 541 F.3d 158 (2d Cir. 2008) ..............................................................................36

*Schron v. Troutman Sanders LLP*,
 20 N.Y.3d 430 (2013) .........................................................................................21

*Sinclair v. Long Island R.R.*,
 985 F.2d 74 (2d Cir. 1993) .................................................................................35

*Song v. Ives Labs, Inc.*,
 957 F.2d 1041 (2d Cir. 1992) .......................................................................4, 13

*Spodek v. Park Prop. Dev. Assocs.*,
 96 N.Y.2d 577 (2001) ...................................................................................37, 38

*Sriraman v. Patel*,
 761 F. Supp. 2d 23 (E.D.N.Y. 2011) .................................................................38

*Terra Firma Invs. (GP) 2 Ltd. v. Citigroup Inc.*,
 716 F.3d 296 (2d Cir. 2013) .........................................................................25, 27

*U.S. v. Space Hunters, Inc.*,
 429 F.3d 416 (2d Cir. 2005) ..............................................................................12

*Unigard Sec. Ins. Co. Inc. v. N. River Ins. Co.*,
 4 F.3d 1049 (2d Cir. 1993) .................................................................................30

*United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*,
 53 F. Supp. 2d 632 (S.D.N.Y. 1999) .................................................................27

*United States v. Masotto*,
 73 F.3d 1233 (2d Cir. 1996) ..............................................................................23

*United States v. Quattrone*,
 441 F.3d 153 (2d Cir. 2006) ..............................................................................35

*UST Private Equity Inv'rs Fund, Inc. v. Salomon Smith Barney*,
 733 N.Y.S.2d 385 (1st Dep't 2001) ...................................................................31

iv

*Utica Mut. Ins. Co. v. Am. Reins. Co. n/k/a Munich Reinsurance of Am., Inc.*,
No. 2013-002587 (Sup. Ct., Oneida Cty. Apr. 30, 2021) ........................................8

*Utica Mut. Ins. Co. v. Century Indem. Co.*,
No. 6:13-cv-995, 2018 WL 4625404 (N.D.N.Y. Sept. 26, 2018).....................24, 26

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*,
906 F.3d 12 (2d Cir. 2018)................................................................. *passim*

*Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*,
381 F. Supp. 3d 185 (N.D.N.Y. 2019) ...........................................................4, 5

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc., Century Indemnity Co.*,
Nos. 19-1241; 19-4335 (2d Cir. July 29, 2021) ....................................... *passim*

*Volkswagen Bristol Motors, Inc. v. Daimler-Benz of N.A., Inc.*,
46 A.D.2d 644 (1st Dep't 1974) ..................................................................37

*W.W.W. Assocs., Inc. v. Giancontieri*,
77 N.Y.2d 157, 566 N.E.2d 639 (1990)........................................................22

*Wolf v. Am. Tech. Ceramics Corp.*,
84 A.D.3d 1224 (2d Dep't 2011) .................................................................38

**Statutes and Other Authorities**

11 Fed. Prac. & Proc. Civ. § 2806 (3d ed.) .......................................................4

Black's Law Dictionary 1520 (6th ed. 1990).....................................................32

Fed. R. Civ. P. 50(a)(1) ...............................................................................3

Fed. R. Civ. P. 50(b) ..............................................................................1, 3

Fed. R. Civ. P. 56......................................................................................3

Fed. R. Civ. P. 59..................................................................................1, 4

Henry T. Kramer, "The Nature of Reinsurance," in Reinsurance 9 (Strain ed. 1980) .................................................................................................28

N.Y. C.P.L.R § 5001..............................................................................36, 37

Paul, "Underwriting the Reinsured," in Reinsurance 501 (Strain ed., rev. ed. 1997) .................................................................................................29

Restatement (Second) of Contracts §§ 225-230 ...............................................12

v

Defendant, Clearwater Insurance Company ("Clearwater"), hereby submits the following Memorandum of Law in support of its Motion, pursuant to Fed. R. Civ. P. 50(b), for Judgment as a Matter of Law and its Motion, pursuant to Fed. R. Civ. P. 59, for a New Trial or To Alter or Amend the Judgment.[1]

## INTRODUCTION

Clearwater respectfully renews all of the arguments set forth in its Rule 50(a) Motion for Judgment as a Matter of Law (Dkt. 247), filed on July 7, 2021, which was not granted. Specifically, Clearwater renews its argument that it is entitled to judgment finding it is not liable for supplemental defense expenses because the plain language of the umbrella policies do not require Utica to pay defense expense in addition to limits to Goulds, and, in any event, post-settlement, Utica did not pay defense expense in addition to limits to Goulds. Indeed, a Second Circuit decision issued last week, after the trial in this matter concluded, is directly controlling on this issue and requires this Court to find (as Clearwater has argued all along) that Clearwater is not liable for defense expense in addition to limits. *See* Ex. A (*Utica Mut. Ins. Co. v. Munich*

---

[1] As used in this brief: (1) "Goulds" means Goulds Pumps, Inc.; (2) the "primary policies" means the primary insurance policies Utica issued to Goulds for the 1978, 1979, 1980, and 1981 years (Ex. P (D-3), Ex. Q (D-4), Ex. R (D-5); Ex. S (D-7), Ex. T (D-8), Ex. U (D-9), and Ex. V (D-10)); (3) the "umbrella policies" means the umbrella policies Utica issued to Goulds for the 1978, 1979, 1980 and 1981 years (Ex. W (D-11), Ex. X (D-12), Ex. Y (D-13), and Ex. Z (D-14)); (4) the "reinsurance agreements" means (a) the Casualty Facultative Reinsurance Certificate N-21163 which reinsures $5 million of the layer $5 million excess $20 million of Utica's 1978 umbrella policy (Ex. AA (D-15)), (b) the Casualty Facultative Reinsurance Certificate N-22001 which reinsures $2.5 million of the layer $15 million excess $10 million of Utica's 1979 umbrella policy (Ex. AB (D-16)), and (c) the reinsurance accepted on behalf of Clearwater by TPF&C acting in its capacity as a reinsurance pool manager, memorialized in Memoranda of Reinsurance (the "TPF&C Memoranda" (Ex. D (P-3), Ex. E (P-4)), which reinsures (i) 8.5% (or $42,000) part of $500,000 of the layer $15 million excess $10 million of Utica's 1979 umbrella policy and (ii) 8.5% (or $85,000) part of $1 million of the layer $15 million excess of $10 million of Utica's 1980 and 1981 umbrella policies; and (5) the "Settlement Agreement" means the settlement agreement Utica and Goulds entered into in 2007 (Ex. J (P-111)).

1

*Reinsurance Am., Inc.*, *Century Indem. Co.*, Nos. 19-1241; 19-4335, at 10-26 (2d Cir. July 29, 2021)) (hereinafter, the "MunichRe/Century Decision").

Clearwater also renews its arguments that it is entitled to judgment as a matter of law on Utica's claims alleging breach of the TPF&C Memoranda because Utica failed to prove that it obtained consent from TPF&C or Clearwater to settle the dispute with Goulds; that Utica was not obligated by the common law of indemnification to pay Goulds (and therefore Clearwater is not liable for reinsurance billings based upon) certain amounts allocated and billed to the umbrella policies under the Settlement Agreement; and that the primary policies lacked aggregate limits, foreclosing Utica's claims.  Clearwater asks the Court to enter judgment as a matter of law on these four issues and to amend the damages award accordingly.

Further, Clearwater now moves for a new trial and to alter or amend the judgment on additional grounds.  *First*, over Clearwater's objections, the final jury instructions and verdict form contained egregious misstatements of law concerning the duty of utmost good faith and the elements required to prove a breach of that duty, which prejudiced Clearwater.  *Second*, in light of the Second Circuit's MunichRe/Century Decision, which requires the Court to find Utica is not entitled to recover defense expense from Clearwater, Clearwater is entitled to a new trial.  If the jury had been charged that the Court had found that defense expense was not recoverable as a matter of law, as Clearwater had argued in its Rule 50(a) Motion (and at all times prior to trial), the jury could have found that Utica had violated its duty of utmost good faith by billing those expenses to Clearwater.[2]  *Third*, over Clearwater's objections, the final jury instructions and verdict form failed to charge the jury with answering the central question the Second Circuit

---

[2] Indeed, the Second Circuit held that Century is entitled to a new trial precisely for this reason, and the Court should find the same here. Ex. A (MunichRe/Century Decision) at 34-35.

directed to be determined at trial: whether Utica established Clearwater's "proven liability under its umbrella policies issued to Goulds."[3]  This failure coupled with the legally erroneous inclusion of charges on the common law of indemnification, which has no place in this case, permitted Utica to prevail without proving the elements of its claims, plainly prejudicing Clearwater and necessitating a new trial.

In addition, Clearwater moves to vacate the award of prejudgment interest.  Utica's calculation of interest based upon a single date, December 2, 2012 (the date chosen by the jury), violates New York law and would result in a windfall to Utica.  December 2, 2012 is arguably the date on which the first of Utica's unpaid invoices became due.  All of Utica's other unpaid billings became due afterward, in some instances years afterward.

## ARGUMENT

### I.   LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  When a party renews its motion for judgment as a matter of law after a verdict has been returned, the court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."  *Id*. at 50(b)(1).  "The same standard that applies to a pretrial motion for summary judgment pursuant to Fed. R. Civ. P. 56 also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (internal quotation and citation omitted).  That is, "viewing the evidence in the light most favorable to [the non-movant] and giving [the non-movant] the

---

[3] *Utica Mut. Ins. Co. v. Clearwater Ins. Co*., 906 F.3d 12 (2d Cir. 2018).

benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence, [the movant] is nevertheless entitled to judgment as a matter of law." *Id*.

"In contrast to a motion for judgment as a matter of law, a motion for a new trial pursuant to Fed. R. Civ. P. 59 may be granted by the district court, although there is evidence to support the jury's verdict, so long as the district court determines that, in its independent judgment, the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice." *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (internal quotation and citation omitted).   In addition, "a trial judge hearing a motion for a new trial 'is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner.'"   *Song v. Ives Labs, Inc*., 957 F.2d 1041, 1047 (2d Cir. 1992) (quoting *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1983)). "[A] new trial motion may be granted even if there is substantial evidence to support the verdict." *Bevevino*, 574 F.2d at 683 (citing 11 Fed. Prac. & Proc. Civ. § 2806 (3d ed. 2019)).

## II. CLEARWATER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT IT IS NOT REQUIRED TO PAY SUPPLEMENTAL DEFENSE EXPENSE AND IT IS ENTITLED TO A NEW TRIAL ON WHETHER UTICA VIOLATED ITS DUTIES OF GOOD FAITH AND UTMOST GOOD FAITH

Clearwater is entitled to judgment as a matter of law that it is not obligated to pay Utica for defense expense in addition to limits.

The umbrella policies are unambiguous and do not obligate Utica to pay Goulds defense expenses in addition to limits.   This result, which has been long urged by Clearwater, is now required by the Second Circuit's MunichRe/Century Decision, issued on July 29, 2021, which affirmed Judge Sannes's decision in the *MunichRe* case[4] and found that the phrase "occurrence not covered by," which also appears in Utica's 1973 umbrella policy, is unambiguous and does not obligate Utica to pay defense expense in addition to limits (nor did the 2007 Settlement Agreement

---

[4] *Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 381 F. Supp. 3d 185 (N.D.N.Y. 2019).

4

or the facultative reinsurance agreement).  *See* Ex. A (MunichRe/Century Decision) at 9-26.[5]  In light of the MunichRe/Century Decision, this Court must now find as a matter of law that the 1978-81 umbrella policies are unambiguous.  *See id*. at 9-16 (finding the 1973 umbrella policy was unambiguous as a matter of law and interpreting the policy as a matter of law).[6]

In addition, the Court must also find that the 1978-81 umbrella policies do not cover defense expense in addition to limits as a matter of law, and should direct a judgment that Clearwater is not liable for defense expense, as Clearwater has long advocated.[7]  This Court is bound by the interpretation of identical policy language in the MunichRe/Century appeals, in which the Second Circuit (Judge Jacobs, writing for a unanimous panel) affirmed Judge Sannes's decision that the phrase "occurrence not covered by" "unambiguously refers to the umbrella policy's drop-down coverage of risks that were not already insured under the primary policy." Ex. A (MunichRe/Century Decision) at 12.  At trial in this case, the jury should never have been asked to interpret the umbrella policies' language on defense expense.

The Second Circuit began its interpretation of Utica's 1973 umbrella policy by observing that the policy provides coverage either upon exhaustion of primary limits *or* where a risk is not covered by Utica's underlying primary policy.  *Id*. at 10.  Utica's 1978-81 umbrella policies operate in the exact same fashion.  Next, the Second Circuit observed that the 1973 primary policy

---

[5] The Second Circuit held that the expenses were not recoverable under a follow-the-settlements reinsurance contract (which we do not even have here).  Ex. A (MunichRe/Century Decision) at 22-26.

[6] The MunichRe/Century Decision affirmed Judge Sannes's decision, which Clearwater had urged this Court to follow in its Rule 50(a) Motion, in *Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, in which the Court found after trial that the phrase "occurrence not covered by" was unambiguous. 381 F. Supp. 3d at 209, n.36.

[7] *See* Dkt. 247 at 9 (Clearwater's Motion for Judgment as a Matter of Law); Dkt. 147 at 3 (Clearwater's Supplemental Mem. in Support of Motion for Partial Summary Judgment); Dkt. 65-9 at 11 (Mem. in Support of Clearwater's Motion for Partial Summary Judgment).

(underlying the 1973 umbrella policy) covered bodily injury from asbestos claims, just as the primary policies underlying the 1978-81 policies at issue here do. *Id*. at 11.

The Second Circuit then went on to interpret the precise language at issue in the Utica umbrella policies reinsured by Clearwater. It observed that the endorsement to the 1973 umbrella policy pays defense expense in addition to limits, but only "[w]ith respect to any occurrence not covered by" the 1973 primary policy. *Id*. at 11-12. This same language is in the 1978-81 umbrella policies.[8] The Second Circuit then held that the phrase "occurrence not covered by" as used in the 1973 umbrella policy referred to an occurrence, or risk, that is outside the scope of the primary policy – *i.e.*, it applies where there is a "drop-down coverage for risks that were not already insured under the primary policy." Ex. A (MunichRe/Century Decision) at 12. In other words, the language contemplates that Utica would pay defense expense in addition to limits but only for risks other than asbestos bodily injury claims. *Id*. at 13-16.

In reaching this conclusion, the Second Circuit observed that the 1973 policy as endorsed defined the term occurrence using highly similar language to that used in the 1978-81 umbrella policies. *Id*. at 12-13 ("'Occurrence' means an 'accident during the policy period,' or a 'continuous or repeated exposure to conditions' when 'the bodily injury or property damage occurs during the policy period.'"); *compare with* Ex. W (D-12) at 13 ("Occurrence means an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage,

---

[8] *See* Ex. W (D-11) at 2, Ex. X (D-12) at 15, Ex. Y (D-13) at 3, Ex. Z (D-14). The versions of the 1981 umbrella policy entered at trial all appear to be missing the page of the policy covering defense costs. *See* Ex. Z (D-14), Ex. F (P-11), Ex. G (P-19). However, Utica concedes in its papers that all of the umbrella policies contain the same language. *See* Dkt. 171 (Utica's Trial Brief) at 4 ("Each Umbrella Policy covered expense under the following provision: …'With respect to any occurrence not covered by the policies…'"). Further, the sample policy jackets for the 1978-1982 umbrella policies all contain the same defense cost provision containing the "occurrence not covered by" language. *See, e.g.*, Ex. H (P-93).

or advertising offense which is neither expected nor intended from the standpoint of the insured."). The Second Circuit next observed that under New York law, "covered" is a term of art that usually describes a risk that is insured.  Ex. A (MunichRe/Century Decision) at 13.  As a result, the Court concluded that the phrase "not covered" "delineates uninsured risks and is not a function of exhaustion."  *Id.* at 14-15.

Indeed, New York courts consistently agree that the phrase "occurrence not covered by" unambiguously refers to the type of risk and whether it was within the scope of underlying coverage, not whether primary coverage was exhausted.  *See, e.g.*, *Pergament Distribs., Inc. v. Old Republic Ins. Co.*, 128 A.D.2d 760, 761 (2d Dep't 1987) (finding that the terms "covered" and "not covered" in an umbrella policy refer to "whether the policy insures against a certain risk, not whether the insured can collect on any underlying policy"); *Am. Safety Indem. Co. v. 612 Realty LLC*, 24 Misc. 3d 1232(A), 901 N.Y.S.2d 897 (Sup. Ct., N.Y. Cty. 2009) (concluding that the term "covers" in an excess insurance policy, as compared to the primary policy, should be construed to mean whether the primary policy provides coverage and not whether that primary coverage is available or collectible).

For these reasons, the Second Circuit held as a matter of law that Utica was not required to pay defense expense in addition to limits under the 1973 umbrella policy.[9]  As explained by the Second Circuit:

> The phrase "occurrence not covered by" unambiguously refers to the umbrella policy's drop-down coverage of risks that were not already insured under the primary policy.  For example, the umbrella policy insures "mental injury" and

_____

[9] The Second Circuit also held that defense expenses were not required under the 2007 Settlement Agreement, finding that the Settlement Agreement "contradicts Utica's present contention that the reinsurers must reimburse defense costs *in addition to* the umbrella policy limits."  Ex. A (MunichRe/Century Decision) at 20 (emphasis in original).

"false arrest" while the primary policy does not.  The endorsement does not bear upon the excess coverage of bodily injury, which includes asbestos injury.

Ex. A (MunichRe/Century Decision) at 12 (internal citation omitted).

The Second Circuit squarely rejected Utica's argument (advanced in the *MunichRe* Appeal, as well as before this Court) that "an occurrence is 'not covered by' the primary policy once the primary exhausts." *Id.* at 14.  In the words of the Second Circuit:

> But neither the umbrella nor the primary policy suggests that an occurrence is no longer a "covered" risk after exhaustion; what ceases is the obligation to pay for liabilities arising from the risks that are covered.  The phrase "not covered" in the endorsement is consistent with the umbrella policy: it delineates uninsured risks and is not a function of exhaustion.  See also Pergament Distribs., Inc. v. Old Republic Ins. Co., 128 A.D.2d 760, 761 (2d Dep't 1987) ("[T]he terms 'covered' and 'not covered' refer to whether the policy insures against a certain risk not whether the insured can collect on an underlying policy.").
>
> Utica's construction erases parts of the endorsement.  See Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324 (2007) ("A reading of the contract should not render any portion meaningless.").  If the endorsement paying defense in addition to limits applied to both the drop-down and the excess coverages, there would be no need to specify that it applies when an occurrence is "not covered by" the primary policy.  It would have been enough that it applies to occurrences "covered by the terms and conditions of this [umbrella] policy." J. App'x 532, No. 19-1241.  The phrase "not covered by" narrows the endorsement, and narrows it to the drop-down feature of the umbrella.

*Id.* at 14-16 (footnote omitted).

The Second Circuit's reasoning regarding Utica's 1973 umbrella policy applies with equal force to Utica's 1978-81 umbrella policies at issue here.  The operative language in the 1973 and 1978-81 umbrella (namely, the phrase "occurrence not covered by") is identical.  *See* note 8, *supra*; *see also* Decision (Dkt. 454 at 3); Ex. B (*Utica Mut. Ins. Co. v. Am. Reins. Co. n/k/a Munich Reinsurance of Am., Inc.*, No. 2013-002587 (Sup. Ct., Oneida Cty. Apr. 30, 2021) (appeal pending) (finding the language in Utica's 1977-1984 umbrella policies issued to Burnham Corp. to be identical in all material respects to the language in Utica's 1973 umbrella policy issued to Goulds at issue in *MunichRe*, granting judgment in favor of the reinsurer, and dismissing Utica's claims)).

8

Moreover, the Second Circuit squarely rejected the argument earlier advanced by Utica in this case (and adopted by this Court) that the term "covered" is equivocal. As previously noted, the Second Circuit held that because "'[c]overed' is a term of art that usually describes a risk that is insured.… 'not covered' refers to risks that are uninsured." Ex. A (MunichRe/Century Decision) at 13 (citations omitted). Next, the Second Circuit concluded that the term "covered" as used elsewhere in the 1973 policy "refers to insured risk, and there is no reason to give the term a different meaning in the endorsement." *Id*. at 14. The same is true for the 1978-81 umbrella policies, which elsewhere use "covered" as referring to an insured risk. *E.g.*, Ex. W (D-11) at 2 (noting that "this policy does not apply to defense expense *covered* by policies of underlying insurance") (emphasis added).

At trial, Utica argued that "occurrence not covered by" referred to situations where the underlying primary policy's limit had been exhausted in order to justify its having billed Clearwater for defense expense in addition to limits—a risk Clearwater did not otherwise reinsure. The jury subsequently awarded Utica defense expense. As discussed above, Utica's contention was flatly rejected by the Second Circuit in the MunichRe/Century Decision and must now be rejected here as well. *See* Ex. A (MunichRe/Century Decision) at 14 ("[N]either the umbrella nor the primary policy suggests that an occurrence is no longer a 'covered' risk after exhaustion; what ceases is the obligation to pay for liabilities arising from the risks that are covered.").

In short, the MunichRe/Century Decision mandates the conclusion that the 1978-81 umbrella policies only provide coverage for defense expense for occurrences that never fell within the scope of coverage of Utica's 1978-81 primary policies. Here, since Goulds's asbestos losses *were* covered by Utica's primary policies, defense expense for Goulds's asbestos claims were never covered by Utica's umbrella policies. As a result, Utica is not entitled to be indemnified for

9

defense expense because those costs need not have been paid by Utica under the umbrella policies.

Accordingly, this Court must find that the 1978-81 Utica umbrella policies did not obligate Utica to pay defense expense and, therefore, Clearwater is not required to pay defense expense, reducing Clearwater's liability by $4,181,664 plus interest.[10]

Moreover, Clearwater is entitled to a new trial. If the jury had been charged that defense expense were not recoverable by Utica as a matter of law, as Clearwater had argued in its Rule 50(a) Motion (and at all times prior to trial), the jury could easily have found that Utica violated its duty of good faith and/or duty of utmost good faith. Indeed, for this precise reason, the Second Circuit granted Century a new trial, and this Court should do the same. *See* Ex. A (MunichRe/Century Decision) at 34-35 ("If Century had to pay defense in addition to limits, as the jury found based on instructions, then it was natural for the jury to conclude that Utica's billing was proper and therefore in good faith. A new trial on Century's counterclaim is therefore warranted.").

**III.    CLEARWATER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON UTICA'S CLAIMS FOR BREACH OF THE TPF&C MEMORANDA BECAUSE UTICA FAILED TO ADDUCE ANY PROOF THAT IT SOUGHT TPF&C'S OR CLEARWATER'S AUTHORIZATION TO SETTLE WITH GOULDS**

In *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, the Second Circuit held that Utica was not entitled to summary judgment on the TPF&C Memoranda[11] because, among other things, Utica had failed to satisfy a condition precedent to Clearwater's liability:

---

[10] *See* Ex. N (P-329A) at 7. $4,181,664 represents the sum of all items from the "Clearwater Expense" column.

[11] The TPF&C Memoranda provide that "[a]ll claims settlements ***when authorized by Towers, Perrin, Forster & Crosby, Inc.*** shall be binding on the reinsurers…." *See* Ex. D (P-3) at 2, Ex. E (P-4) at 2 (emphasis added). Earlier in this case, the Second Circuit held, and the parties agreed, that this sentence imposed upon Utica "a condition precedent to [Clearwater's] liability for settlement payments" under the TPF&C Memoranda. *Utica Mut.*, 906 F.3d at 22.

> The parties agree that the authorization language imposes a condition precedent to a reinsurer's liability for settlement payments. […]
>
> Utica failed to show that Clearwater was obliged to follow the settlement under the TPF&C memoranda, notwithstanding that Utica never got TPF&C's authorization before settling.  Utica has established neither that (1) the condition is minor, a mere technicality, and would result in forfeiture, nor that (2) Clearwater hindered satisfaction of the condition.  […]
>
> [E]ven if Utica had shown that obtaining TPF&C's authorization was impossible and thus excused, Utica also needed to establish that Clearwater's performance was not also excused by reason of the unrealized condition—the authorization for settlement.

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 21–23 (2d Cir. 2018) (reversing the grant of summary judgment to Utica under the TPF&C Memoranda).

At trial, Utica offered no proof that it had sought TPF&C's or Clearwater's approval to settle with Goulds, a settlement that (according to Utica's board presentations) enabled Utica to tap its umbrella reinsurance.  *See* Ex. AF (D-103) & Ex. AG (D-104) (listing as a "Benefit of the Agreement" that "the umbrella policies are triggered and we are able to obtain reinsurance recoveries.").  Nor did Utica offer any proof either to excuse its nonperformance of this condition precedent or to establish that "Clearwater's performance was not yet excused by reason of the unrealized condition."  As a result, Utica should not have prevailed on its breach of contract claims arising under the TPF&C Memoranda.  Thus, Clearwater is entitled to a directed judgment in its favor on Utica's claims and on Clearwater's counterclaims as each pertains to the TPF&C Memoranda.

To prevail on its breach of contract claims under the TPF&C Memoranda, Utica was required to prove that it complied with all of its obligations under the TPF&C Memoranda (or was excused from doing so) and, in addition, that Clearwater failed to perform despite an obligation to do so.  *Utica Mut.*, 906 F.3d at 22–23; *see Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (a claim for breach of contract requires showing "(i) the formation of a contract

11

between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages"). A condition precedent "must occur before a duty to perform a promise in the agreement arises," unless the condition is excused. *Utica Mut.*, 906 F.3d at 22 (citing *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995)). Failure to satisfy a condition precedent "excuses performance by the other party whose performance is so conditioned." *Id.* (quoting *Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 113 (1984)). Express conditions, such as the one set forth in the TPF&C Memoranda, are those agreed to by the parties themselves. *Oppenheimer*, 86 N.Y.2d at 690. Express conditions "must be literally performed; substantial performance will not suffice." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009).

Utica offered zero evidence at trial to show that it had fulfilled an express condition precedent to the enforcement of the TPF&C Memoranda either by obtaining TPF&C's or Clearwater's authorization to settle with Goulds. Utica also offered zero evidence at trial to show that performance of this condition precedent was excused.[12] As a result, there was a complete absence of evidence supporting the jury's verdict that Utica had proven its contract claims with respect to the TPF&C Memoranda. *See United States v. Space Hunters, Inc.*, 429 F.3d 416, 429 (2d Cir. 2005) (granting a renewed motion for judgment as a matter of law is appropriate where

---

[12] While a condition precedent may be excused on a handful of grounds, *see, e.g.*, Restatement (Second) of Contracts §§ 225-230, Utica did not seek to establish any of them at trial. Further, Utica's failure to fulfill this condition was material. Utica understood that without the Settlement Agreement's stipulation that the primary policies contained aggregate limits and those limits were exhausted, the Goulds claims would not reach the umbrella layers, which were reinsured. These facts were repeatedly trumpeted to Utica's board. *See* Ex. AF (D-103) & Ex. AG (D-104).

there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture") (quoting *Song*, 957 F.2d at 1046).[13]

Because Utica did not adduce any proof at trial that it sought authorization for settlement from TPF&C or Clearwater, Clearwater asks the Court to find that Clearwater was not liable for breach of the TPF&C Memoranda and reduce the damages awarded by $327,079.31.[14]  For the same reasons, Clearwater is entitled to a judgment in its favor on its counterclaim for $78,747.00,[15] representing the amounts paid to Utica for billings under the TPF&C Memoranda.

## IV.   CLEARWATER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THOSE PORTIONS OF UTICA'S BILLINGS THAT UTICA WAS NOT OBLIGATED TO PAY TO GOULDS UNDER THE <u>1978-81 UMBRELLA POLICIES</u>

Clearwater is entitled to judgment as a matter of law on those portions of Utica's billings that Utica was not obligated to pay to Goulds under the 1978-81 umbrella policies, most notably defense expense, orphan shares, and the reset and additional umbrella limits.

In order to recover from Clearwater, Utica was required to establish at trial that the amounts it sought to recover from Clearwater were payable in the first instance by Utica to Goulds under the terms of the umbrella policies.  As the Second Circuit previously instructed: "Clearwater is not obligated under [any of the reinsurance contracts] to follow Utica's settlement with Goulds, but

---

[13] The Court's decision to reject Clearwater's proposed verdict form, which specifically asked the jury about the TPF&C Memoranda, further compounded the lack of proof of Utica's fulfillment of this condition precedent, as it ensured that the jury was entirely unaware that this condition precedent existed, which permitted Utica to prevail without establishing it had complied with its obligations.  Clearwater's final proposed verdict form specifically asked the jury to find Clearwater had proven it had satisfied this condition precedent.  *See* Dkt. 245 at Question 7.

[14] *See* Ex. N (P-329A) at 7.  $327,079.31 represents the sum of Clearwater's total billings under the three TPF&C contracts.

[15] *See* Ex. M (P-325) at 2-3 (chart of $993,159 in billings Clearwater paid subject to a reservation of rights).

13

rather must indemnify Utica according to Utica's proven liability on the umbrella policies." *Utica Mut.*, 906 F.3d at 25.  In other words, Clearwater's liability to Utica under the reinsurance contracts is tethered to Utica's liability to Goulds under the terms of the underlying 1978-81 umbrella policies as written.

At trial, the evidence overwhelmingly showed that the umbrella policies did not obligate Utica to pay Goulds (1) the orphan share amounts,[16] (2) the reset of the umbrella policy limits to 0,[17] or (3) the increase in umbrella policy limits from $25 million to $48.333 million.[18]  Indeed,

---

[16] Ex. J (P-111); 6/29/21 Trial Tr. 314:14-24 (Martin) ("Q: […] after Utica Mutual signed the settlement agreement, Utica Mutual then made the decision to reallocate orphan shares to all of the umbrella policies, right?  A: Yes.  Q: And as we talked earlier, the orphan share . . . didn't arise from or have anything to do with the 1978, '79, '80, '81 policies in and of themselves, correct?  A: Yes.  That's fair.").

[17] Ex. J (P-111) at 18; 6/29/21 Trial Tr. 320:14-21 (Martin) ("Q: […] So, in other words, the umbrella policies before the settlement had been drawn down by a certain amount of money, and then you would increase the umbrella policies as part of the settlement from $255 million to $325 million, and you let them start again at zero for those?  A: Vis-à-vis Goulds.  They had the $325 million and the umbrella."); *id.* 321:25–322:3 (Martin) ("Q: […] But the point is, that was forgiven and they could start over with that new $325 million umbrella limit now.  Right?  A: Yes."); 6/30/21 Trial Tr. 607:15–608:11 (Hammond) ("Q: In addition to increasing the limits on these three policies in this chart, the chart also reflects Utica's agreement to reset, if you will, all the umbrella policies issued to Goulds to zero as of the date of the settlement agreement, correct?  A: Well, it allows that there's $325 million going forward.  Q: Right.  So you would agree that there are no impairments listed on this chart as against these new aggregate limits, right?  A: Not on this chart.  […] Q: So, for example, if you look at the '81 policy, and the settlement agreement sets out a new limit of $25 million, that would mean that any previously paid claims under this 1981 policy don't impair that new $25 million, right?  A: Under the terms of the settlement agreement, yes.").

[18] Ex. J (P-111) at 18; 6/29/21 Trial Tr. 316:14-23 (Martin) ("Q: And after the settlement, because you increased the umbrella limits on three of the four years here by $70 million, the umbrella limits went to $325 million, right?  A: Yes.  There was a different treatment of expense after the settlement agreement but they did go to 325 million.  That's true.  Q: Okay.  And that was all at the umbrella level, correct?  A: That is true."); *id.* 317:19-25 (Martin) ("Q: […] But my understanding, the understanding is that none of those increased limits were added to the primary policies, which were the focus of the actual dispute in California about whether they did in fact have limits, right?  A: They were not applied to those four primary policies.  That is true."); 6/30/21 Trial Tr. 606:3-12 (Hammond) ("Q: […] And this, you would agree, is the chart of limits for the Goulds umbrella policies as agreed to under the terms of settlement agreement, right?  A: Under

14

the evidence at trial established that Utica undertook to pay these amounts to Goulds based upon the terms of the 2007 Settlement Agreement only and had no antecedent obligation to pay these amounts based on the terms of the umbrella policies as written.[19]

Furthermore, post-settlement, Utica could not bill Clearwater for defense expense on a supplemental basis (even assuming the umbrella policies required Utica to pay defense expense) because under the Settlement Agreement, Utica pays Goulds's defense expense on a cost-inclusive basis. Here, too, the MunichRe/Century Decision is controlling. According to the Second Circuit, a "cedent's [post-settlement] billing to its reinsurers" must be "at least consistent with the settlement" and may not "contradict" it. Ex. A (MunichRe/Century Decision) at 19-20.[20] Here, as

---

the settlement agreement, yes.  Q: And you would agree that the limits set forth on this chart are different from the limits set forth in the umbrella policies listed here?  A: Yes.").

[19] 7/1/21 Trial Tr. 892:1-9 (Turi) ("Q: Now, another component of the settlement agreement with Goulds was that Utica Mutual  agreed to increase the limits of Utica Mutual's 1978, 1979, and 1980 umbrella policies from 25 million to 48,333,332 for each of those three years, right?  A: For purposes of eroding the $325 million cap, we added additional amount of cap for those policy years so that we could get all of the limits to equal 325 million.  Yes."); 7/2/21 Trial Tr. 1057:13–1058:2 (Creedon) ("Q: […] But prior to the settlement, Utica Mutual had not allocated the orphan share amounts to reinsurers, correct?  A: That's right. […] Q: […] after the settlement, Utica Mutual then allocated the orphan share amounts to the reinsurers, yes?  A: Yes, we did."); 7/1/21 Trial Tr. 895:9–896:4 (Turi) ("Q: The third part of the settlement was that the $325 million in umbrella limits was refreshed, right?  A: The $325 million cap was provided to Goulds as of the date of the settlement.  The effective date of the settlement agreement, I think is of 1/1/06 even though it was signed in 2007.  Q: Right.  And so -- and the caps were fresh, I mean, the 325 million would start at dollar one, right?  A: It would start as of 1/1/06 and be eroded for payments thereafter.  Q: And prior to that time, under the umbrella policies, Utica had paid approximately $31 million under those umbrella policies?  A: I don't recall as I sit here but okay.  Q: And so that $31 million of money that had already been paid under the umbrella policies as part of the settlement was forgiven because the new limits started at dollar one, right?  A: Well, it was part of our negotiation.  It was part of the settlement that we would start paying 325 million from 1/1/06 forward.").

[20] Furthermore, this conclusion was reached for a reinsurance certificate that contained a follow-the-settlements clause, which Clearwater's do not contain. *See Utica Mut.*, 906 F.3d at 24–25 (rejecting Utica's argument that the reinsurance contracts contain any follow the settlements obligations).

15

in *Century*, Utica did precisely what the Second Circuit found Utica could not do: Utica paid defense expense to Goulds on one basis (cost-inclusive) and billed Clearwater on an entirely different basis (cost-supplemental).  As was demonstrated at trial, Utica's dichotomous conduct is most evident in Utica's 1981 billings to its reinsurers.  Under the Settlement Agreement, Utica's payments to Goulds on and after January 1, 2006 could not exceed $25 million.  Yet, Utica sought to bill reinsurers more than $38 million.  Utica's accounting legerdemain was accomplished by paying Goulds defense expense on one basis (cost-inclusive) and billing reinsurers on an entirely different basis (cost-supplemental)—a practice the Second Circuit found was "invalid."  *Id.* at 20.[21]

No rational jury could have found that Utica was obligated to pay orphan shares, reset policy limits, and/or increased limits to Goulds under the terms of the umbrella policies, or that Clearwater was obligated to pay defense expenses that Utica itself was not paying on a cost-supplemental basis.  For this reason, this Court should either direct judgment on these amounts in Clearwater's favor or order a new trial.

The common law of indemnification cannot be used by Utica to establish its liability to Goulds (and therefore, Clearwater's liability to Utica under the reinsurance contracts) for these amounts either—a theory that was introduced on the eve of and during trial over Clearwater's

---

[21] Ex. O (P-148) (spreadsheet tracking Utica's payments to Goulds); Ex. AH (D-134) (Utica's spreadsheet used to bill reinsurers); 6/30/21 Trial Tr. 611:8–615:17 (Hammond) ("Q: And this is the spreadsheet you used to bill reinsurers like Clearwater?  A: Yes.  Q: And these numbers are different from the numbers on the spreadsheet tracking payments to Goulds that was shared with Goulds?  A: Yes. [...]  Q: [...] You would agree that the number $38 million is not the aggregate limit set forth in the 1981 umbrella policy, correct?  A: The aggregate limit is 25 million on the 1981.  Q: So you would agree with me?  A: Yes.")

Utica may try to confuse the issue (as it has done previously) by claiming that it paid tons of millions of defense expense prior to January 1, 2006.  This assertion, if advanced, is contrary to the evidence, which reflects that at most Utica may have allocated $760,037.20 in defense expense to the 1981 umbrella as of December 22, 2005.  *See* Ex. D-84.

objection.[22]  The common law indemnification doctrine is a narrow one that does not fit the facts here and, in any event, is not a substitute for Utica proving its obligation to Goulds by a preponderance of the evidence.   The common law of indemnification provides that where an insured (here, Goulds) offers its insurer (here, Utica) an opportunity to defend a third-party action (asbestos claims) and the insurer declines, and the insured later settles the third-party action in good faith, the common law of indemnification establishes a rebuttable presumption that, in an action between the insured and its insurer, the facts asserted in the third-party complaint are true. *HS Equities, Inc. v. Hartford Accident & Indem. Co.*, 661 F.2d 264, 268 (2d Cir. 1981) ("*HS Equities II*") ("[W]hen an indemnitor has been accorded a reasonable opportunity to defend a third-party action against the indemnitee and declines, the good-faith settlement of the third-party claim by the indemnitee *is presumptive evidence of the facts alleged in the third-party complaint*.") (emphasis added); *see also HS Equities, Inc. v. Hartford Accident & Indem. Co.*, 609 F.2d 669, 674–75 (2d Cir. 1979) ("*HS Equities I*") ("[C]ertain consequences attached to Hartford's decisions to decline to assume the defense of the Odyssey action . . . . One of these consequences . . . is that the burden was placed on Hartford to successfully contest matters which otherwise are presumed to have been established in the litigation against HS.  HS was entitled to advance the fact of its settlement of the Odessey action as presumptive evidence of the conclusion that Michael had committed the actions alleged in the Odesseys' complaint.").

Thus, the common law of indemnification could only establish a rebuttable presumption of Utica's liability to Goulds *if* (1) Utica had declined to defend the asbestos suits brought against

---

[22]  *See* Dkt. 218 (Clearwater's Objection to Utica's Proposed Charges) at 4-5; Dkt. 203 (Clearwater's Opposition to Utica Mutual's Motion *in Limine* No. 1) at 7-10; Final Pretrial Conf. Tr. 61:8–62:6; Dkt. 240 (Clearwater's Bench Mem. Regarding Common Law Indemnification); Dkt. 250 at 4 (Clearwater's Objections to the Court's Jury Charges and Verdict Form).

Goulds, which it did not do, (2) Goulds subsequently settled those asbestos suits in good faith, which did not occur (Utica settled them), *and* (3) the facts alleged in the asbestos suit complaints established Utica's liability for orphan shares, reset umbrella policy limits, additional umbrella policy limits, and defense expense in addition to limits. *See HS Equities II*, 661 F.2d at 268. There was no proof at trial that any of this happened. To the contrary, the record establishes that Utica did not decline to defend Goulds. Further, the record is devoid of any evidence concerning the complaints in the underlying asbestos claims made against Goulds.

The evidence adduced at trial showed *only* that the orphan shares, reset limits, and additional limits were concessions made in settling the Utica/Goulds coverage controversy—a dispute driven by the primary policies' lack of aggregate limits.[23] There are no facts in the record pertaining to any of the thousands of underlying asbestos claims filed against Goulds, and certainly none that establish Utica's liability for these amounts. Whether or not Goulds was liable to Utica for orphan shares, and whether or not Utica was liable to Goulds to provide reset and increased umbrella policy limits **had nothing to do with the third-party asbestos claims filed against Goulds**, and there was no proof in this case that they did. To the contrary, the overwhelming evidence showed that liability for the orphan shares was an insurance issue between Utica and Goulds, entirely unrelated to the claims filed by asbestos plaintiffs against Goulds. On these facts, the common law of indemnification could never establish Utica's liability for these amounts. *See HS Equities II*, 661 F.2d at 268.

---

[23] *See* Ex. AC (D-29); Ex. I (P-98), Ex. AE (D-72), Ex. K (P-114) at 12-13; 7/1/21 Trial Tr. 891:3-8 (Turi) ("Q: So in exchange for the settlement, one of the things that Utica did was it forgave Goulds the amounts that Utica Mutual was claiming was due from Goulds or other insurers as orphan share payments, right?  A: Yes, up until 1/1/06."); 6/29/21 Trial Tr. 316:24 - 317:3 (Martin) ("Q: And when you agreed to give Goulds additional limits of $70 million, you did not agree to put any additional limits on the primary policies, correct? A: Correct. The primary policies were exhausted pursuant to the agreement.").

18

Nor was there any evidence presented of a good-faith settlement between a claimant and Goulds that could be used to establish a presumption of Utica's liability to Goulds for these amounts through the common law of indemnification.  In short, the doctrine is inapplicable to the facts presented to the jury.

Moreover, the common law of indemnification—even if it were applicable to the facts here, which it is not—only establishes an insured's good-faith settlement as presumptive evidence of the facts alleged in the third-party complaint.  The common law of indemnification does not provide an avenue for Utica to prove its *liability* to Goulds for the orphan shares, reset and increased limits, or defense expense.  Even under the more deferential "follow-the-settlements" doctrine (which does not apply here), a reinsurer "cannot be held accountable for a[] [settlement] allocation that is contrary to [the] express language in their reinsurance policies," nor be required to pay reinsurance billings that are inconsistent with and contradict Utica's performance of the settlement, as Utica seeks with respect to defense expense.  Ex. A (MunichRe/Century Decision) at 19, 21.

In sum, Utica failed to adduce any evidence showing that it was obligated by either the terms of the 1978-81 umbrella policies or the common law of indemnification (which does not apply) to pay orphan shares, reset or additional umbrella policy limits, or supplemental defense expense.  Therefore, Clearwater is entitled to judgment as a matter of law in its favor on that portion of the reinsurance billings that are attributable to these amounts, which Clearwater did not reinsure.

**V.   CLEARWATER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THE PRIMARY POLICIES LACK PRODUCTS AGGREGATE LIMITS**

To prevail on its breach of contract claims absent the application of follow-the-settlements, Utica "ha[d] the burden of proving that the loss was specifically caused by a risk covered in the reinsurance contract." *Utica Mut.*, 906 F.3d at 25 (citation omitted).

The Second Circuit previously found that Utica's 1978-81 primary policies issued to Goulds lacked aggregate limits, impliedly holding that the contracts were unambiguous as a matter of law, requiring an interpretation based upon the policies' plain language without extrinsic evidence.  In the Second Circuit's own words:

- "The primary policies Utica issued to Goulds from 1978 to 1981 had a glaring omission: they did not include aggregate limits of liability.  In other words, the policies failed to specify the maximum amount Utica would pay Goulds.  Because that maximum amount defined the limit of Utica's liability to Goulds under its primary policies, the omissions exposed Utica to potentially limitless liability."

- "The absence of a specific aggregate-liability limit became a problem for Utica."

- "The policies simultaneously proved costly to Utica, which had failed to include aggregate limits in certain years' policies."

*Id.* at 14, 16.

The Second Circuit's determination that the 1978-81 primary policies are unambiguous and lack aggregate limits was (and remains) binding on this Court.  *See Kerman v. City of New York*, 374 F.3d 93, 110 (2d Cir. 2004) ("Where issues have been explicitly or *implicitly* decided on appeal, the law-of-the case doctrine obliges the district court on remand to follow the decision of the court of appeals. […] Where the appellate court has decided a question of law, the lower court on remand lacks discretion to decide that question to the contrary.") (internal quotations and citations omitted); *MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*, No. 603751/2009, 2017 WL 1201868, at *11 (Sup. Ct., N.Y. Cty. Mar. 31, 2017) (where binding precedent exists holding that

a contract is unambiguous, "the court is legally prohibited from considering parol evidence to interpret it"); *see also Haskin v. United States*, No. 10-cv-5089, 2015 WL 3971730, at *7 (E.D.N.Y. June 30, 2015) ("The fact that the issues were presented to the Second Circuit in a different posture does not negate its findings[.]").

If this Court had found that as a matter of law there were no aggregate limits in the 1978-81 primary policies, that would eliminate any exposure Utica's 1978-81 umbrella policies may have had to Goulds's asbestos losses.  As Clearwater only reinsured a portion of the 1978-81 umbrella policies, this dynamic also would have eliminated Clearwater's liability to Utica under Clearwater's reinsurance contracts.[24]

Despite the Second Circuit's determinations, this Court found that the 1978-81 primary policies were ambiguous, declined to hold that the primary policies lacked aggregate limits as a matter of law and remove the issue of contract interpretation from the jury's consideration, and permitted Utica to introduce extrinsic evidence at trial.[25]

It is Clearwater's position that the Second Circuit's determination that the 1978-81 primary policies are unambiguous contracts was correct and should be adopted by this Court now.  The interpretation of the policies is a question of law for the Court to decide with reference to policy language alone and should not have been submitted to the jury.  *See Schron v. Troutman Sanders*

---

[24] There was no proof adduced at trial to show that the 1978-81 primary policies were ever exhausted by meeting the occurrence limit of those policies (which all parties agree exists).  This means that the only way the 1978-81 umbrella policies reinsured by Clearwater could have been triggered was by Goulds' claims exhausting a primary policy's aggregate limit – of which there were none in the relevant policies.

[25] *See* Pretrial Conf. Tr. 37:1-8 (denying Clearwater's Motion *in Limine* to exclude parol evidence); *id.* 43:2-5 ("THE COURT: The contract is ambiguous.  That's the way we stand for purposes of this trial and, therefore, that's the primary issue that the jury has got to decide."); 7/2/21 Trial Tr. 1085:25–1086:16 ("THE COURT: […] [T]hose four contracts are ambiguous.  It's up to the jury to decide whether or not there were aggregate limits intended . . . between Goulds and Utica.").

*LLP*, 20 N.Y.3d 430, 436 (2013) (a clear, unambiguous written agreement must be enforced according to the plain meaning of its terms); *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990) (extrinsic evidence may not be introduced to create an ambiguity); *Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 85 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court[.]").

As the 1978-81 primary policies lack aggregate limits, a jury could not have found Clearwater breached the reinsurance contracts.  The absence of aggregate limits meant no amounts could have been properly billed to Clearwater as Utica's 1978-81 umbrella policies were never triggered.  Accordingly, Clearwater is entitled to judgment as a matter of law in its favor on Utica's five breach of contract claims, and judgment in its favor on its counterclaim seeking the return of previously paid amounts.

## VI. CLEARWATER IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY CHARGES ERRONEOUSLY INSTRUCTED THE JURY ABOUT THE DUTY OF UTMOST GOOD FAITH

Over Clearwater's strenuous objections, made orally and in written briefing,[26] the Court declined to charge the jury as Clearwater had requested and instead adopted Utica's charges concerning the duty of utmost good faith even though Utica's charges were legally erroneous and prejudicial to Clearwater.  A new trial is in order.

A jury instruction is erroneous if it "misleads the jury as to the correct legal standard or does not adequately inform the jury on the law."  *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 390 (2d Cir. 2006).  As the Second Circuit remarked in the MunichRe/Century Decision, a

---

[26] *See* Dkt. 218 (Clearwater's Objection to Utica's Proposed Charges) at 1, 4; 7/8/21 Trial Tr. 1689:4-19 (objecting to the Court's proposed instructions and charges); Dkt. 250 (written objections to Court's proposed instructions and charges) at 1-6; *see also* Dkt. 242 (Clearwater's Final Proposed Jury Charges) at 16, 18-23; Dkt. 245 (Clearwater's Proposed Final Verdict Form); Dkt. 246 (Clearwater's Mem. in Support of Utmost Good Faith Charge).

"jury instruction that misinforms the jury on the law requires a new trial unless the error is harmless." Ex. A (MunichRe/Century Decision) at 34.  An erroneous jury instruction is prejudicial and not harmless where "it is not clear how this omission influenced the jury's damages award." *See Boyce*, 464 F.3d at 390–91 (finding error was prejudicial and remanding for new trial); *LNC Invs., Inc. v. First Fidelity Bank, N.A. N.J.*, 173 F.3d 454, 462 (2d Cir. 1999) ("An error is deemed harmless if we are convinced that the error did not influence the jury's verdict.") (quoting *United States v. Masotto*, 73 F.3d 1233, 1239 (2d Cir. 1996)).

This Court's jury charges were erroneous and prejudicial in several respects.  As an initial matter, the charges failed to define the duty of utmost good faith as that duty applied to this case, only explaining what must be found to prove a breach of the duty.[27]  Jury instructions must give the jury a "standard by which to evaluate [the] statements or to determine their relevance to the case."  *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 231 (2d Cir. 1991) (quoting *Posttape Assocs. v. Eastman Kodak Co.*, 537 F.2d 751, 757 (3d Cir. 1976)).  The absence of any definition of the duty of utmost good faith left the jury with insufficient context to determine how the duties of utmost good faith and good faith differed from one another and provided the jury no guidance to decide whether Utica had breached either duty, prejudicing Clearwater and warranting a new trial.  *See id.* (remanding for a new trial where the jury was "left with no legal context in which to assess the significance of the bad faith evidence" relevant to defendant's counterclaim).

The charges also erroneously advanced the position that Clearwater bore the burden of proof to establish that Utica violated the duty of utmost good faith.  Clearwater asserted breach of the duty of utmost good faith as a way to dispute an element of Utica's contract claims *as well as* an affirmative defense.  Clearwater only bore the burden of proof on the latter.

---

[27] In contrast, Clearwater proposed a definition as it applied to this case.  *See* Dkt. 242 at 18-19.

As part of its breach of contract claim *Utica*, not Clearwater, was required to show that it had proven all the elements of its contract claims, including that it complied with all of its obligations under the reinsurance contracts and that Clearwater was therefore obligated to perform. One of Utica's obligations under its reinsurance contracts with Clearwater was to comply with its duty of utmost good faith. *See In Re Liquidation of Union Indem. Ins. Co. of N.Y.*, 89 N.Y.2d 94, 106, 674 N.E.2d 313, 319 (1996) ("The phrase *uberrimae fidei* and its translation, "of the utmost good faith," has long been used to characterize the core duty accompanying reinsurance contracts."); *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 90 Civ. 7811, 1995 WL 3006, at *5 (S.D.N.Y. 1995) ("The doctrine [of utmost good faith] most often surfaces to act as a standard of interpreting a party's contractual obligations[.]"); *see also* Jury Instructions (Dkt. 629-1 at 22-23), *Utica Mut. Ins. Co. v. Century Indem. Co.*, No. 6:13-cv-995 (N.D.N.Y. Sept. 30, 2019) (Utica bore the burden to prove that it did what it was obligated to do under the contracts terms, but this element was disputed since "Century also contends that Utica Mutual failed to satisfy its obligation to act with good faith under the 1973 certificate."); *Chem. Bank v. Stahl*, 272 A.D.2d 1, 15 (1st Dep't 2000) (reversing summary judgment on party's breach of contract claim because party's prior conduct breaching duty of good faith and fair dealing excused opposing party's performance).

Here, the Court instructed the jury that Utica must establish that "it did what it was obligated to do under the reinsurance contracts," but failed to note that the parties disputed whether Utica performed its obligations under the reinsurance contracts and whether Clearwater was obligated to perform under the contracts due to the fact that Clearwater contended Utica had failed to satisfy its obligation to act with good faith or with utmost good faith. 7/8/21 Trial Tr. 1667:24–1668:12, 1671:5-20 (Jury Charge). The Court only instructed the jury on the duty of utmost good

faith in the context of Clearwater's affirmative defenses, which is not how Clearwater had proposed charging the jury.[28]  As a result, the jury was never told that Clearwater disputed that Utica had performed its obligations under the contract and disputed whether Clearwater was obligated to pay the reinsurance billings, which, if the jury had agreed, meant that Utica had failed to prove its contract claims and the jury would not need to consider Clearwater's affirmative defenses.   In other words, the instruction provided by the Court (as distinguished from the instruction proposed by Clearwater) improperly shifted Utica's burden of proof on its claims to Clearwater.  The omission and given charge was erroneous and highly prejudicial.  *See Terra Firma Invs. (GP) 2 Ltd. v. Citigroup Inc.*, 716 F.3d 296, 301 (2d Cir. 2013) (where instruction incorrectly shifted the burden of proof, it was "prejudicial and require[d] reversal").  Clearwater's charges plainly contemplate that Utica's compliance with the duty of utmost good faith was a condition precedent to the enforcement of the reinsurance contracts, *in addition* to being an affirmative defense that excused Clearwater's performance.  *See* Dkt. 242 at 16, 26.

Next, the charges provided to the jury contain several, specific erroneous statements of law concerning the duty of utmost good faith each of which prejudiced Clearwater.   The more egregious and prejudicial misstatements are addressed below.

First, the Court charged the jury that: "**There is a presumption against the finding of breach of the duty of utmost good faith by an insurer**."  7/8/21 Trial Tr. 1678:15-19 (emphasis added).   This is an incorrect statement of law and prejudiced Clearwater.  ***There is no such presumption.***

In Utica's proposed charges stating that such a presumption exists, which the Court appears to have adopted, Utica cherry-picked a statement from a section of the *Century* court's opinion

---

[28] *See* Dkt. 242 (Clearwater's Proposed Final Charges) at 16, 18-23.

concerning *Utica*'s claim against *Century* for bad faith failure to pay its reinsurance billings. *See Utica Mut. Ins. Co. v. Century Indem. Co.*, No. 6:13-cv-995, 2018 WL 4625404, at \*12–13 (N.D.N.Y. Sept. 26, 2018). ***This statement has nothing whatsoever to do with Century's claim against Utica for breaching its duty of utmost good faith***. *See id.* Significantly, the portion of the *Century* opinion that addresses the duty of utmost good faith makes no mention of such a presumption, and the jury charges in *Century* do not discuss any such presumption, ***because none exists***. *Id.* at \*9; *see Century* Jury Instructions (Dkt. 629-1), *Utica Mut. Ins. Co. v. Century Indem. Co.*, No. 6:13-cv-995 (N.D.N.Y. Sept. 30, 2019). Utica distorted *Century* and, in doing so, beguiled this Court.

Instructing the jury that there is a negative presumption (when there is not) grossly misstates the law and plainly made it more difficult for the jury to find that Utica had not complied with its duty of utmost good faith, necessitating a new trial. *See Boyce*, 464 F.3d at 392 (remanding for new trial where the court's characterization of a legal principle "improperly framed the rule in a negative light" and it was not clear that this negative characterization did not influence the jury's damages award).

Second, the Court charged the jury that: "**To prove that Utica had such a duty** [referring to the duty of utmost good faith], **Clearwater must show either that Utica was aware of the duty at the time of the contract, or that the duty's existence was so notorious at the time of contract that it should have been aware of it**." 7/8/21 Trial Tr. 1679:1-5 (emphasis added). This too was erroneous and prejudiced Clearwater.

Under New York law, Clearwater did not have to prove Utica's awareness of the duty of utmost good faith or the duty's existence, as it is not a duty that arises solely out of trade usage or industry custom. Courts applying New York law consistently recognize that the duty of utmost

good faith (just like the duty of good faith generally) is implied by law in all reinsurance contracts and imposes obligations on the parties to those contracts.  *See In Re Liquidation of Union Indem.*, 89 N.Y.2d at 106 ("The phrase *uberrimae fidei* and its translation, 'of the utmost good faith,' has long been used to characterize the core duty accompanying reinsurance contracts.") (citations omitted); *United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*, 53 F. Supp. 2d 632, 641 (S.D.N.Y. 1999) ("A reinsured owes its reinsurer a duty of utmost good faith.") (citing *Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 992 F. Supp. 278, 282 (S.D.N.Y. 1998)).  Indeed, Utica's own witnesses acknowledged the duty.  *See* 6/29/21 Trial Tr. 253:20-23 (Martin) ("Q: And you believed that as part of the duty of utmost good faith, a ceding company like Utica Mutual owes its reinsurers a duty to be completely transparent, correct?  A: Yes."); 6/30/21 Trial Tr. 604:24–605:2 (Hammond) ("Q: And you're also aware that that duty of utmost good faith requires insurers like Utica to be honest and forthright with their reinsurers, correct?  A: Yes.").

Here, too, Utica's proposed charges misled the Court, which adopted Utica's requests to charge.  In support of the proposition that Clearwater had a burden of establishing that the duty exists, Utica cited *British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 342 F.3d 78, 84 (2d Cir. 2003).  Dkt. 243 at n.15.  However, Utica failed to inform the Court that *British Int'l* discussed an alleged custom or practice of "reinsurers paying declaratory judgment expenses," not a custom or practice pertaining to the duty of utmost good faith.  Utica's proposed charge, which this Court accepted wholesale, once again affirmatively misstated the law, and created a burden of proof that simply does not exist, prejudicing Clearwater at trial.  *See Terra Firma*, 716 F.3d at 301 (where a jury instruction incorrectly shifted the burden of proof, it was "prejudicial and require[s] reversal").

Third, the Court charged the jury that:

> **To prove that Utica breached this duty, Clearwater must show that Utica either deliberately deceived Clearwater about a material fact, or recklessly disregarded Clearwater's right to the disclosure of material facts.  A showing**

**that Utica made an honest mistake or even a showing that Utica was negligent is not sufficient.  The duty of utmost good faith does not require Utica to put Clearwater's interests ahead of its own interest.  […]   Clearwater must additionally prove by a preponderance of the evidence that Utica's failure to disclose information to it caused Clearwater prejudice.  This means that Utica's failure to disclose caused economic harm to Clearwater, other than its payment of the 993,000-plus.**

7/8/21 Trial Tr. 1679:6-14, 1679:20-25 (emphasis added).

These instructions were erroneous and contravene controlling law insofar as they require Clearwater to prove Utica's intent, to establish that any nondisclosure prejudiced Clearwater, and permitted Utica to put its interests before Clearwater's.

There is no requirement that Utica had to intend to deceive Clearwater, or recklessly disregard Clearwater's right to the disclosure of material facts, in order to breach the duty of utmost good faith here.  To the contrary, as the New York Court of Appeals and the Second Circuit have held, both innocent and intentional failures to communicate material facts to reinsurers violate the duty of utmost good faith.  *See In Re Liquidation of Union Indem.*, 89 N.Y.2d at 107 ("A reinsured need not possess a specific intent to conceal information from a reinsurer to make a contract voidable, rather an innocent failure to disclose a material fact is sufficient.") (internal quotations omitted); *Allendale Mut.*, 992 F. Supp. at 282 (same); *Reliance Ins. Co. v. Certain Member Cos*., 886 F. Supp. 1147, 1154 (S.D.N.Y. 1995) ("[P]laintiffs are not required to prove intent to show a violation of the duty of *uberrimae fidei*."), *aff'd*, 99 F.3d 402 (2d Cir. 1995); *Utica Mut.*, No. 6:13-cv-995, 2018 WL 4625404, at *12–13 ("[T]he failure to disclose need not be fraudulent or even intentional; rather, an innocent failure to disclose a material fact is sufficient.  Non-disclosure of such material facts renders a reinsurance agreement voidable or rescindable.") (internal quotations and citation omitted); *see also* Henry T. Kramer, "The Nature of Reinsurance," in Reinsurance 9 (Strain ed. 1980) ("A basic duty of the reinsured is to disclose to the reinsurer all known information touching on the risk of loss…In the case of misrepresentation by the reinsured, relief

28

may also be had if the effect is to seriously injure the reinsurer, even if (depending on the circumstances) the misrepresentation is innocent."); Paul, "Underwriting the Reinsured,' in Reinsurance 501 (Strain ed., rev. ed. 1997).

The Munich Re/Century Decision is also instructive. There, the Second Circuit concluded that Utica could be found to have breached the duty of good faith simply by billing its reinsurer for amounts that were not due. Ex. A (MunichRe/Century Decision) at 34-35. If maleficent intent or recklessness is not required to breach the duty of good faith, it most assuredly is not required to breach the duty of <u>utmost</u> good faith. To charge the jury that Clearwater was required to prove Utica's intent was erroneous and prejudiced Clearwater.

Requiring Clearwater to prove it was harmed financially by Utica's violation of the duty also misstates the law. Such a showing is not required. *See Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 09 CIV. 10607 RKE, 2014 WL 1285507, at *21 (S.D.N.Y. Mar. 31, 2014) (Where the "cedent has not met its obligation of utmost good faith, [] the cedent's claim will be barred even absent a showing of tangible economic injury."), *aff'd*, 599 F. App'x 16 (2d Cir. 2015); *see also Allendale Mut.*, 992 F. Supp. at 286 (cedent's breach of the duty of utmost good faith excused its reinsurer's performance without requiring a showing of prejudice).

In addition, as this is not a late notice case, therefore, Clearwater was not required to show prejudice. While a small subset of reinsurance disputes, those involving untimely notice, might require a showing of prejudice in certain circumstances, these decisions are not germane to this case. Prejudice is an element of a late notice defense, but is not an element of a claim asserting breach of the duty of utmost good faith. *See  Allendale Mut.*, 992 F. Supp. at 286 (cedent's breach of the duty of utmost good faith excused its reinsurer's performance without requiring a showing of prejudice). There is no argument for extending *Unigard*'s holding (the sole case cited by Utica

in support of its proposed instruction) to the facts of this case.  S*ee* Dkt. 243 at n.16 (citing *Unigard Sec. Ins. Co. Inc. v. N. River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993).[29]

In addition, the portion of the charge stating that Utica is not required to put Clearwater's interests ahead of Utica's interests is misleading, incomplete and an argumentative statement of law.  Under New York law, the duty of utmost good faith "requires [the cedent] to protect its reinsurers' interests as if they were the cedent's own."  *Assoc. Indus. Ins. Co., Inc. v. Excalibur Reins. Corp.*, No. 13 Civ. 8239(CM), 2014 WL 6792021, at *6 (S.D.N.Y. Nov. 26, 2014).  The Court's instruction informed the jury what Utica did not have to do, rather than inform the jury what Utica was required to do.  The instruction was therefore argumentative and unhelpful, and coupled with the omission of any definition of the duty and the burdens imposed upon Clearwater, further supports a new trial.

Fourth, the Court instructed the jury that: "**Clearwater may not establish that Utica failed to perform because of any alleged misrepresentation or nondisclosures by Utica if Clearwater failed to make use of the means and verification that were available to it.**"  7/8/21 Trial Tr. 1679:15-19 (emphasis added).  This charge, proposed by Utica and adopted by the Court, is inapplicable to the duty of utmost good faith and contravenes well-established law relating to

---

[29] The *Unigard* court's application of an intent requirement was explicitly limited to the context of a late notice defense.  *See Unigard*, 4 F.3d at 1069 (stating that a cedent's "failure to provide prompt notice may entitle a reinsurer to relief without prejudice" where the cedent "acted in bad faith" and therefore considering "[t]he question, then, is what good faith requires of a ceding insurer *in the notice context*") (emphasis added).  As discussed above and in Clearwater's Memorandum in Support of its Utmost Good Faith Charge, these requirements are inapplicable outside the context of a late notice defense.  S*ee* Dkt. 246 (Clearwater Mem. in Support of Utmost Good Faith Charge) at 7.  This is particularly true here, where Utica issued both the primary and umbrella policies to Goulds and, therefore, was inherently conflicted in deciding issues that arose between itself and Goulds as Utica was motivated to conceal information from its reinsurers, who only reinsured the umbrella policies.  This fact materially alters the lens with which Utica's disclosure obligations in connection with settlement should be viewed.

the doctrine.[30]  In essence, this instruction posits that, even if Utica made affirmative misrepresentations or knowingly withheld information from Clearwater, Clearwater should have known better than to trust Utica—who owes it a duty of utmost good faith—and should have undertaken to verify the completeness and accuracy of Utica's statements and affirmative representations.  Such a notion contradicts both settled law and the testimony of Utica's own witnesses.  The duty of utmost good faith "imposes ***no duty of inquiry upon a reinsurer***; rather, the burden is on the reassured to ***volunteer*** all material facts."  *Allendale Mut.*, 992 F. Supp. at 282 (emphasis added) (collecting cases); *Reliance Ins.*, 886 F. Supp. at 1154 ("[T]he cases make it clear that because the assured (or reassured in a reinsurance situation) 'is in the best position to know of any circumstances material to the risk, he must reveal those facts to the underwriter, rather than wait for the underwriter to inquire.'") (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir. 1986)); *see also* 6/30/21 Trial Tr. 604:24–605:2 (Hammond) ("Q: And you're also aware that that duty of utmost good faith requires insurers like Utica to be honest and forthright with their reinsurers, correct?  A: Yes.").

Fifth, the Court charged the jury that: "**If Utica substantially complied with the duty of utmost good faith, there is no prejudice.  […]  When the only performance issue was**

---

[30] *See* Dkt. 243 (Utica's Proposed Instructions) at 9 (citing *UST Private Equity Inv'rs Fund, Inc. v. Salomon Smith Barney*, 733 N.Y.S.2d 385, 386 (1st Dep't 2001) and stating that "a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties").  This case, like many others cited by Utica in its proposed instruction on the duty of utmost good faith, does not touch upon the duty of utmost good faith, or even insurance.  *UST Private Equity* deals solely with misrepresentations made during the private placement sale of stock, an entirely different relationship than that between a reinsurer and its cedent, who are supposed to act as partners.  *See* 6/29/21 Trial Tr. 253:24–254:2 (Martin) ("Q: And as part of that duty of utmost good faith, you believed that your reinsurers were your partners, correct?  A: We considered our reinsurers our partners, yes."); *see also Assoc. Indus.*, 2014 WL 6792021, at *6 (the duty of utmost good faith "requires [the cedent] to protect its reinsurers' interests as if they were the cedent's own").

**timeliness, there's a strong support for a finding of substantial performance**." 7/8/21 Trial Tr. 1679:25–1680:7 (emphasis added). This charge, which Utica proposed, lacks legal and factual support in the record, does not fairly summarize Clearwater's theory of how Utica violated its duty of utmost good faith or Utica's defense thereto, and should not have been given over Clearwater's objection.[31]

As an initial matter, Utica did not cite any authority to support the application of the substantial performance doctrine to the duty of utmost good faith. *See* Dkt. 243 at 10 (showing no citation to support the first sentence of this portion of the charge). Moreover, the case Utica cited in support of this sentence of its proposed charge simply defines substantial performance and does not mention reinsurance or the duty of utmost good faith. *See id.* at n.21 (citing *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 311-12 (2d Cir. 2016) ("Substantial performance is performance, the deviations permitted being minor, unimportant, inadvertent, and unintentional.")).

Utica's lack of authority is unsurprising, as Utica's proposed charge conflicts with the stringent requirements of the duty of utmost good faith. *See* Black's Law Dictionary 1520 (6th ed. 1990) (defining the duty as "[t]he most abundant good faith; absolute and perfect candor or openness and honesty; the absence of any concealment or deception, *however slight*.") (emphasis added); *Reliance Ins.*, 886 F. Supp. at 1154 ("[P]laintiffs are *not required to prove intent* to show a violation of the duty of *uberrimae fidei*.") (emphasis added); *Allendale Mut.*, 992 F. Supp. at 282 ("This doctrine imposes no duty of inquiry upon a reinsurer; rather, the burden is on the reassured to volunteer *all* material facts.") (emphasis added).

---

[31] Clearwater refers the Court specifically to all the arguments and case law set forth in its memorandum filed on July 6, 2021 in support of its request to charge on the duty of utmost good faith. *See* Dkt. 246 (Mem. in Support of Utmost Good Faith Charge).

Under no circumstances can the foregoing errors be considered harmless, particularly when viewed collectively. *See* Ex. A (MunichRe/Century Decision) at 34-35 (rejecting Utica's argument that error in jury instruction was harmless because the finding that Utica had not breached its duty of good faith "was tainted by the erroneous instruction on Century's obligations"); *LNC Invs.*, 173 F.3d at 463 ("[W]here jury instructions create an erroneous impression regarding the standard of liability, it is not harmless error because it goes directly to the plaintiff's claim, and a new trial is warranted.") (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 554–55 (2d Cir. 1996)). To reiterate, in the MunichRe/Century Decision, the Second Circuit found that a single act by Utica—billing reinsurers for defense expenses that were not due—could, standing alone, constitute a breach of good faith. Ex. A (MunichRe/Century Decision) at 34-35. The Second Circuit imposed no additional requirements (for example, intent) and endorsed no caveats (for example, substantial compliance). *See id*.

In sum, the charges on the duty of utmost good faith (many of which were adopted from Utica's proposed instructions) do not correctly reflect the applicable law, created burdens of proof for Clearwater that do not exist under the law, and should not have been given. As a finding by the jury that Utica had breached its duty of utmost good faith would have barred Utica's claims, the clear misstatements of law in the instruction on this duty necessarily prejudiced Clearwater and require a new trial.

## VII. CLEARWATER IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY CHARGES AND VERDICT SHEET IMPROPERLY PERMITTED THE JURY TO FIND CLEARWATER LIABLE WITHOUT REQUIRING UTICA TO PROVE ALL THE ELEMENTS OF ITS CONTRACT CLAIMS

Clearwater is also entitled to a new trial because the charges and verdict sheet on the common law of indemnification permitted the jury to find Utica was obligated to pay certain amounts to Goulds even though the Second Circuit previously had ruled that the Settlement was

entitled to no deference.  Utica's efforts to supplant the Second Circuit's decision by substituting common law indemnification in place of follow the settlements should have been disallowed (for the reasons discussed above).  Legal errors in verdict sheets may also justify a new trial.  *Assembly Point Aviation, Inc. v. Richmor Aviation, Inc.*, No. 1:13-cv-298, 2017 WL 2223919, at *2 (N.D.N.Y. May 19, 2017) (citing *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 136 (2d Cir. 2005) (vacating jury verdict and remanding for new trial where verdict sheet "misinformed the jurors in a critical way and undermined the integrity of the trial")).

The jury instructions erroneously instructed the jury on Utica's ability to prove its liability under the common law of indemnification with proof of a good faith settlement with Goulds.  *Compare* 7/8/21 Trial Tr. 1672:4-8 ("The second way Utica may prove the underling liability to Goulds is to show that it's [*sic*] settled with Goulds in good faith.  Under the law as it applies here, a good faith settlement by a party in Utica's position is presumptive evidence of its liability to Goulds.") *with HS Equities II*, 661 F.2d at 268 ("[W]hen an indemnitor has been accorded a reasonable opportunity to defend a third-party action against the indemnitee and declines, the good-faith settlement of the third-party claim by the indemnitee *is presumptive evidence of the facts alleged in the third-party complaint*.") (emphasis added).

It is undisputed that follow-the-settlements is no longer in this case.  Furthermore, as set forth in Section IV, *supra*, Utica should not have been permitted to prove its liability with reference to the common law of indemnification because Utica did not settle coverage claims with Goulds that it seeks to pass along to Clearwater; it settled other, tertiary issues.  For these reasons, the charge explaining that Utica could establish Clearwater's liability simply by showing a good faith settlement was erroneous.  The charge allowed a finding of liability outside the terms of the umbrella policies.

The charge also runs afoul of the MunichRe/Century Decision.  There, the Second Circuit rejected a similar argument by Utica that it could bill Century for amounts not covered by the reinsured umbrella policies based on its settlement with Goulds.  Utica touted the more deferential follow-the-settlements standard in its disputes with MunichRe and Century.  *See* Ex. A (MunichRe/Century Decision) at 9-26.  The Second Circuit held that the reinsurance contracts followed Utica's obligations under the umbrella policies, and reinsurers could "not be held accountable for an allocation" contrary to the express terms of the reinsurance policy.  *Id.* at 21. The same is true here.

This Court's charge was also prejudicial because it provided the jury a path to finding Clearwater liable without requiring Utica to prove all four essential elements of its contract claims by a preponderance of the evidence.  *See United States v. Quattrone*, 441 F.3d 153, 179 (2d Cir. 2006) (remanding for new trial where jury instruction failed to charge jury on disputed element of a claim); *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir. 1993) (same).

The verdict sheet magnified this erroneous charge and further lowered Utica's burden of proof on its contract claims because it utterly failed to ask the jury whether Utica had proven that it was liable to Goulds under the umbrella policies for each and every component of the amounts sought by Utica.  Ironically, this omitted question was the very question that the Second Circuit remanded to be answered after deciding that follow-the-settlements did not apply.  *See Utica Mut.*, 906 F.3d at 25–26 (remanding "for the district court to determine indemnification that Clearwater owes to Utica under (1) the TPF&C memoranda and (2) the Clearwater certificates on the basis of Utica's *proven* liability under its umbrella policies issued to Goulds") (emphasis added).  Unlike the verdict form given to the jury, Clearwater's proposed verdict form had asked: "Did Utica establish by a preponderance of the evidence that the amounts it [] now seeks to recover from

Clearwater under the 1978-81 reinsurance contracts represent only Clearwater's proportional share of Utica's proven liability under the 1978 to 1981 umbrella policies that Utica issued to Goulds?" Dkt. 245 at 2.

It was erroneous for Utica to offer, and for the Court to adopt over Clearwater's objections and submissions, a verdict form that failed to ask the jury this pivotal, crucial question. As a result, the jury was never asked to determine whether Utica had proven it was obligated to pay Goulds all of the amounts Utica was asking Clearwater to reimburse, including, by way of illustration, orphan shares and reset and additional umbrella limits. In other words, Utica was allowed to prevail at trial without ever establishing the elements of its claims.

## VIII.   THE COURT SHOULD VACATE THE AWARD OF PREJUDGMENT INTEREST OR AMEND THE DATE FROM WHICH UTICA IS ENTITLED TO BEGIN CALCULATING PREJUDGMENT INTEREST

The jury awarded prejudgment interest beginning on December 2, 2012, which is thirty days after the date of the first reinsurance bill submitted to Clearwater that Clearwater did not pay. Calculating prejudgment interest based upon that date runs afoul of New York law and results in an improper windfall to Utica. Moreover, there is no support in the record for the jury to have awarded prejudgment interest beginning then. Each of those circumstances require the Court to vacate or, at a minimum, to amend the judgment. Once more, Utica is to blame for leading the jury (and the Court) astray. After all, Utica insisted on asking the jury to select a single date, and it was Utica that tied that date to its earliest unpaid bill.

New York law governs "the award of prejudgment interest" in this diversity jurisdiction case. *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008). Section 5001(b) of New York Civil Practice Law and Rules governs the calculation of prejudgment interest:

> Interest shall be computed from the earliest ascertainable date the cause of action existed, ***except that interest upon damages incurred thereafter shall be computed from the date incurred***. Where such damages were incurred at various times,

36

interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable ***intermediate*** date.

N.Y. C.P.L.R. § 5001(b) (emphasis added).  Thus, as the statute prescribes, where damages are incurred at various points in time, interest should be computed for each item of damage from the date it was incurred or upon a single, reasonable ***intermediate*** date.  *See Spodek v. Park Prop. Dev. Assocs.*, 96 N.Y.2d 577, 581 (2001) (prejudgment interest for each missed promissory note payment was calculated based upon the date each payment was due); *Volkswagen Bristol Motors, Inc. v. Daimler-Benz of N.A., Inc.*, 46 A.D.2d 644, 644–45 (1st Dep't 1974) (prejudgment interest was calculated based upon the date each installment payment was due); *compare with 155 Henry Owners Corp. v. Lovlyn Realty Co.*, 231 A.D.2d 559, 560 (2d Dep't 1996) (an "[earliest] ascertainable date" as opposed to a reasonable intermediate date "assumes that whatever damages are sought are shown to have been sustained at least by that time").  Significantly, in 2016, following the Court's entry of summary judgment, Utica calculated interest using multiple billing dates (not a single date) to calculate prejudgment interest.  *See* Dkt. 120 (Mem. in Support of Utica's Prejudgment Interest Recovery under N.Y. C.P.L.R. § 5001).  Utica's more recent abandonment of this approach—an approach prescribed by statute—is inexplicable, and reflective of Utica's unrelenting efforts to extract from Clearwater amounts that are not genuinely due.  *See* Dkt. 255 (Utica's Motion to Amend/Correct Judgment).

Here, the total amount of damages awarded at trial ($10,901,005) was the sum of all of the reinsurance billings issued by Utica to Clearwater between November 2, 2012 and May 2, 2016.  *See* Ex. N (P-329A).  The total sum of Utica's damages, plainly, had not accrued by December 2, 2012.  Indeed, when Utica commenced suit in September **2013**, Utica still not billed Clearwater under the 1978 Certificate, which now accounts for more than $5 million of Utica's billings.

Further, at trial, it was undisputed that Utica's damages were incurred at various points in time over the course of four years, as stipulated in P-329A.[32]

Selecting December 2, 2012 results in a windfall for Utica, which is contrary to the purpose New York's prejudgment interest statute. *See Wolf v. Am. Tech. Ceramics Corp.*, 84 A.D.3d 1224 (2d Dep't 2011) (modifying judgment awarding prejudgment interest to avoid a windfall because damages accrued on multiple dates subsequent to the date chosen); *Random Ventures, Inc. v. Advanced Armament Corp., LLC*, 2014 WL 2082124, at *1 (S.D.N.Y. May 2, 2014), *aff'd as modified sub nom. Thompson v. Advanced Armament Corp., LLC*, 614 F. App'x 523 (2d Cir. 2015) (modifying judgment awarding prejudgment interest to avoid a windfall where damages accrued at later dates than the date chosen); *AboveNet Commc'ns, Inc. v. A&D Data Corp.*, No. 08 Civ. 6188, 2010 WL 235005, at *6 (S.D.N.Y. Jan. 19, 2010) ("Pre-judgment interest is intended to 'make an aggrieved party whole.'") (quoting *Spodek*, 96 N.Y.2d at 581).

Vacating the judgment, as opposed to amending it, is warranted here.  Utica, as the party seeking prejudgment interest, bore the burden of proving by a preponderance of the evidence a method for properly calculating prejudgment interest under New York law, either by establishing the dates upon which its damages were incurred or by proving a single, reasonable intermediate date for calculating interest.  *See Sriraman v. Patel*, 761 F. Supp. 2d 23, 25 (E.D.N.Y. 2011) (holding that the party seeking interest must proffer and establish a "method of computing interest"); *Kachkovskiy v. Khlebopros*, 164 A.D.3d 568, 572 (2d Dep't 2018) (where plaintiff "failed to demonstrate when the damages were incurred" as result of breach of contract, he was

---

[32] *See* 7/8/21 Trial Tr. 1646:12-14 (Utica's attorney in closing: "Remember, if you look at 329-A, there are literally dozens of bills every few months.  I think we counted it's 41.").

not entitled to prejudgment interest).  Utica eschewed this burden and choose instead to lead the jury down a primrose path.  Utica should bear the consequences for its misconduct.

Based upon the evidence adduced at trial, no reasonable juror could have found that Clearwater should begin paying prejudgment interest on all of the reinsurance billings from December 2, 2012.  To be sure, the reinsurance contracts require merely that Clearwater pay "promptly" following its "receipt" of invoices (s*ee, e.g.*, Ex. C (P-1)). [33]  Since Clearwater had only received a few of what became dozens of bills by December 2, 2012, payment could not possibly have been due from most billings on December 2, 2012.  As an aside, Utica utterly failed (now, as was also true following summary judgment) to prove the dates when Clearwater *received* all of Utica's bills, particularly those that first went to Clearwater's insurance broker, JLT Towers Re. [34]  Thus, no reasonable juror could have found that Utica had proven when each and every bill was due, even assuming a 30-day deadline.

Moreover, by Clearwater's calculation, the average date the outstanding billings were *issued* is September 25, 2014, and the median date these bills were issued is September 18, 2014.  *See* Ex. N (P-329A).  Therefore, in light of the dates when the outstanding bills were actually due, even assuming a 30-day deadline, no reasonable juror could have found December 2, 2012 to be a reasonable intermediate date for the calculation of prejudgment interest.

---

[33] *See* 7/1/21 Trial Tr. 987:3-18 (McKay) ("Q: Mr. Thies . . . never asked what you would consider timely.  [Is] 90 days considered timely in the industry?  A: It could even be sooner but we -- typically 30, 60 days.  […] [Q:] Would you have accepted a payment 90 days later as being timely?  A: May have.  Again, I think that -- again, what I would have expected is communication.  More communication, I think.").

[34] *Compare* Dkt. 119 at 15-16 (observing, for example, that a bill on the contract N-21163 dated by Utica as September 30, 2015 was in fact received by Clearwater on October 15, 2015) *with* Ex. N (P-329A) at 5 (designating the "Billing Date" for the same bill as September 30, 2015) *and* Ex. L (P-310) at 242 (providing only Utica's transmission of the billing to the broker, but not the broker's transmission to Clearwater).

For these reasons, the Court should vacate the award of prejudgment interest or, at a minimum, amend the judgment.

## **CONCLUSION**

For the foregoing reasons (and those discussed in earlier Clearwater filings), the Court should grant Clearwater's motion for judgment as a matter of law and for a new trial or to alter or amend the judgment and award Clearwater such other and further relief the Court deems just and proper.

Dated: August 5, 2021

                                          **NORTON ROSE FULBRIGHT US LLP**

                                          By: */s/ Thomas J. McCormack*
                                              Thomas J. McCormack
                                              John F. Finnegan
                                              Victoria V. Corder
                                              Allison L. Silverman

                                            1301 Avenue of the Americas
                                            New York, New York  10019-6022
                                            Tel.:   (212) 318-3000
                                            Fax:   (212) 318-3400

                                            Joy L. Langford
                                            799 9th Street NW
                                            Suite 1000
                                            Washington, DC 20001
                                            Tel.:   (202) 318-3000
                                            Fax:   (212) 318-3400

                                            *Attorneys for Defendant,*
                                            *Clearwater Insurance Company*

## <u>CERTIFICATION OF SERVICE</u>

I certify that on August 5, 2021, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on all Counsel of Record.


*/s/ Thomas J. McCormack*
Thomas J. McCormack