# **EXHIBIT W**

# COMMERCIAL UMBRELLA LIABILITY POLICY



Marsh & McLennan

Tel. 716 262-4800

One West Main Street, Rochester, New York 14614

# UTICA/GRAPHIC

UTICA MUTUAL INSURANCE COMPANY
GRAPHICS ARTS MUTUAL INSURANCE COMPANY
New Hartford, New York

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
CASE NO. 6:13-cv-1178
DEFENDANT EXHIBIT NO. D-11
DATE ENTERED _____
LAWRENCE K. BAERMAN, CLERK
BY:_____
Deputy Clerk

The company (a mutual insurance company herein called the company) indicated in the declarations

In consideration of the payment of the premium, in reliance upon the statements in the declarations and subject to all the terms of the policy, agrees with the named insured as follows:

## I. COVERAGE — EXCESS LIABILITY

To pay on behalf of the insured all sums in excess of the retained limit which the insured shall become legally obligated to pay, or with the consent of the company, agrees to pay, direct or consequential because of:

(a) personal injury
(b) property damage, or
(c) advertising offense

to which this policy applies and caused by an occurrence during the policy period anywhere in the world.

## II. DEFENSE — DEFENSE COSTS — INVESTIGATION — ASSISTANCE AND COOPERATION

With respect to any occurrence not covered by the policies listed in the schedule of underlying insurance or any other insurance collectible by the insured, but covered by the terms and conditions of this policy (including damages wholly or partly within the amount of the retained limit), the company shall:

(a) defend any suit against the insured alleging personal injury, property damage, or advertising offense, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish any such bonds;

(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

(d) reimburse the insured for all reasonable expenses, including loss of earnings not to exceed $50 a day incurred at the company's request; the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy;

(e) the insured agrees to arrange for the investigation, defense or settlement of any such claim or suit in any country where the company may be prevented by law from carrying out this agreement; the company will pay defense expenses incurred with its written consent in addition to its applicable limit of liability under this policy and will promptly reimburse the insured for its proper share, subject to its applicable limit of liability under this policy, of any settlement above the retained limit made with the company's written consent;

(f) the company shall have the right to associate at its own expense with the insured or any underlying insurer in the investigation, defense or settlement of any claim or suit which, in the company's opinion, may require payment hereunder; the insured, at the company's request, shall assist and cooperate in every way with respect to the handling of all claims or suits and the enforcement of all rights of salvage, contribution or indemnity that may affect the company's obligations under this policy;

(g) the insured agrees to reimburse the company promptly for amounts paid in settlement of claims or suits to the extent that such amounts are within the insured's retention as stated in the declarations;

(h) this policy does not apply to defense costs covered by policies of underlying insurance.

## III. EXCLUSIONS

This policy does not apply:

(a) to any obligation for which the insured or any company as its insurer may be held liable under any workmen's compensation, unemployment compensation, disability benefits law or any similar law; this exclusion, however, shall not apply to liability of others assumed by the insured under a contract or agreement;

(b) to any employee, as an insured, with respect to personal injury to another employee of the same employer injured in the course of such employment, but this exclusion shall not apply to personal injury with respect to which insurance is afforded the insured by underlying insurance;

(c) to liability assumed by the insured under a contract or agreement if the occurrence is prior to the time such contract or agreement was effective;

(d) to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is both sudden and accidental;

(e) to advertising offense claimed for
(1) failure to perform any contract
(2) a mistake in the advertised price or an incorrect description of any article or commodity
(3) infringement of a patent, registered trademark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

(f) to personal injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) a watercraft over 50 feet in length, if the occurrence takes place away from premises owned by, rented to or controlled by the named insured, or
(2) an aircraft
if such watercraft or aircraft is owned or chartered without crew by or on behalf of the named insured; but this exclusion shall not apply:
  (i) to liability arising out of operations performed by independent contractors, or
  (ii) to liability for personal injury to any employee of the insured arising out of and in the course of his employment by the insured (subject to exclusion (a)),
  (iii) insofar as coverage is provided for such by policies listed in the schedule of underlying insurance;

(g) to property damage to
(1) property owned by the insured
(2) property rented to, occupied or used by, or in the care, custody, control of the insured but only to the extent the insured provides or is under contract to provide insurance therefore;

(h) with respect to premises alienated by the name insured, work performed by or on behalf of the named insured or the insured's products,
(1) to any property damage to such premises, work or products which arises out of any part or portion thereof or out of any materials, parts or equipment furnished in connection therewith;
(2) to loss of use of tangible property which has not been physically injured or destroyed resulting from
  (i) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
  (ii) the failure of the insured's products or such work to meet the level of performance, quality, fitness, or durability warranted or represented by the named insured;
but part (2) of exclusion (h), does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the insured's products or such work after such products or work have been put to use by any person or organization other than an insured;
(3) to damages claimed for the withdrawal, inspection, repair, replacement or loss of use of such products or work or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(i) to personal injury or property damage
(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;
(2) resulting from the hazardous properties of nuclear material and with respect to which
  (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or
  (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or
(3) resulting from the hazardous properties of nuclear material, if
  (i) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;
  (ii) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or
  (iii) the personal injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance,

GPA 00857

operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (iii) applies only to **property damage** to such **nuclear facility** and any property thereat

As used in this exclusion (i):

"**hazardous properties**" include radioactive, toxic or explosive properties;

"**nuclear material**" means source material, special nuclear material or byproduct material;

"**source material**," "**special nuclear material**," and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"**waste**" means any waste material (1) containing **by-product material** and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

"**nuclear facility**" means

(a) any nuclear reactor,
(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium; (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**,
(c) any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operation;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**property damage**" includes all forms of radioactive contamination of property;

(j) to **personal injury** or **property damage** for which liability is assumed under any contract or agreement, if such injury or damage is due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing.

### IV. LIMITS OF LIABILITY

1. Regardless of the number of persons or organizations who are **insureds** under this policy and regardless of the number of claims made and suits brought against any and all **insureds**;

(a) the total limit of the company's liability from any one **occurrence** shall be the occurrence limit stated in the declarations;

(b) the company's limit shall be further limited to the amount stated in the declarations as the aggregate limit with respect to all loss caused by one or more **occurrences** during each annual policy period and arising out of
   (1) the **products-completed operations hazard**
   (2) all **property damage**
   (3) all **advertising offense**
   (4) occupational disease sustained by employees of the **insured**
   (5) all **professional liability**.

2. For the purpose of determining the limits of the company's liability

(a) all **personal injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions; or

(b) all **advertising offense** involving one or more causes of injury, including all reproductions or repetitions thereof, regardless of the number and kind of media used;

shall be considered as the result of one and the same **occurrence**.

### V. DEFINITIONS

(a) **Advertising offense** means damages because of libel, slander, defamation, infringement of copyright or title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy arising out of the **insured's** advertising activities.

(b) **Automobile** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any equipment attached thereto.

(c) **Bodily injury** includes sickness or disease or death resulting at any time therefrom.

(d) **Insured** includes the named insured as stated in the declarations and also includes any executive officer, director, stockholder or employee while acting within the scope of his duties as such.

If the named insured is a partnership, the unqualified word "insured" also includes any partner thereof but only with respect to his liability as such.

If the named insured is an individual, the unqualified word "insured" includes the person so designated but only with respect to the conduct of a business of which he is sole proprietor and also includes the spouse of the named insured with respect to the conduct of such business.

The term **insured** also includes any other person or organization who is an insured under any policy of underlying insurance, subject to all the limitations upon coverage under such policy other than the limits of the underlying insurer's liability.

The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, but the inclusion herein of more than one **insured** shall not operate to increase the limits of the company's liability.

(e) **Occurrence** means an accident, including continuous or repeated exposure to conditions, which results in **personal injury**, **property damage** or **advertising offense** which is neither expected nor intended from the standpoint of the **insured**.

(f) **Personal injury:** The words "personal injury," as used in this policy, shall mean:
   (a) **bodily injury**, mental injury, mental anguish, shock, sickness, or disease or death resulting therefrom;
   (b) false arrest, false imprisonment, false eviction, or detention;
   (c) malicious prosecution, invasion of rights of privacy, humiliation, libel, slander, defamation of character, infringement of copyright, patents, title or slogan, excluding any such injury included within the definition of **advertising offense**.

(g) **Products-completed operations hazard** means (1) the **insured's products**, if the **personal injury** or **property damage** occurs after possession thereof has been relinquished to others, and (2) operations performed by or on behalf of the named **insured** (wherever performed and whether or not involving the **insured's products**), if the **personal injury** or **property damage** occurs after such operations have been completed or abandoned. Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

(h) **Insured's products** means goods or products manufactured, sold, handled or distributed by the name **insured** or by others trading under his name.

(i) **Property damage** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period, or (3) injury to intangible property which occurs during the policy period sustained by an organization as a result of false eviction, malicious prosecution, libel, slander or defamation, but excluding any such damage included within the definition of **advertising offense**.

(j) **Retained limit** means as to each **occurrence** with respect to which insurance is afforded under this policy:
   (1) if an underlying policy is also applicable or would be applicable but for breach of policy conditions; the relevant "each person," "each accident," "each occurrence" or similar limit of liability stated therein (less any reduction thereof by reason of an overriding aggregate limit of liability) plus all amounts payable under other insurance, if any;
   (2) if any underlying policy otherwise applicable is inapplicable by reason of exhaustion of an aggregate limit of liability; all amounts payable under other insurance, if any; or
   (3) if neither paragraphs (1) or (2) above apply and
      (a) the insured has other insurance; all amounts payable under such other insurance, but in no event less than the amount stated in the declarations as the **insured's** retention, or
      (b) the insured has no other insurance; the amount stated in the declarations as the **insured's** retention.

For the purpose of determining the **retained limit**, "other insurance" means any other valid and collectible insurance (except under an underlying policy) which is available to the **insured**, or would be available to the insured in the absence of this policy, it being the intention that this policy shall not apply under or contribute with such other insurance unless the company's agreement thereto is endorsed hereon.

### VI. CONDITIONS

GPA 00858

(a) **Premium:** The premium for this policy is stated in the declarations and is not subject to adjustment unless otherwise indicated by an endorsement to this policy.

The company may examine and audit the named **insured**'s books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

(b) **Notice of Occurrence:** Upon the happening of any **occurrence** reasonably likely to involve any of the coverages of this policy, written notice containing particulars sufficient to identify the **insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **insured** to the company or any of its authorized agents as soon as practicable.

(c) **Appeals:** In the event the **insured** or the **insured's** underlying insurers elect not to appeal a judgment which appears to the company as likely to involve payment under this policy, the company may elect to make such appeal at its own cost and expense, and shall be liable for the taxable costs, disbursements and interest incidental to the appeal, but in no event shall the liability of the company for any one **occurrence** exceed the limit of liability set forth in this policy plus such incidental costs, disbursements and interest.

(d) **Action Against Company:** No action shall lie against the company unless, as a condition precedent thereto, the **insured** shall have fully complied with all the terms of this policy, nor until the amount of the **insured's** obligation to pay shall have been finally determined either by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the **insured** to determine the **insured's** liability.

Bankruptcy or insolvency of the **insured** or of the **insured's** estate shall not relieve the company of any of its obligations hereunder.

(e) **Other Insurance:** If other valid and collectible insurance with any other insurer is available to the **insured** covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance.

(f) **Subrogation:** The company shall be subrogated to the extent of any payment hereunder to all the **insured's** rights of recovery therefor; and the **insured** shall do everything necessary to secure such rights. Any amounts so recovered shall be apportioned as follows:

Any interest (including the **insured**) having paid an amount in excess of the retained limit plus the limit of liability hereunder shall be reimbursed first to the extent of actual payment. The company shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains, it shall be applied to reimburse the **insured** or any underlying insurer, as their interests may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the company, it shall bear the expenses thereof. The **insured** shall do nothing after loss to prejudice such rights.

(g) **Changes:** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

(h) **Assignment:** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon. If, however, the **insured** shall die or be adjudged bankrupt or insolvent while this policy is in force, this policy, unless cancelled, shall cover the **insured's** legal representative as **insured**, but only while acting within the scope of his duties as such.

(i) **Cancellation:** This policy may be cancelled by the named **insured** by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named **insured** at the address shown in this policy written notice stating when not less than thirty days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named **insured** or by the company shall be equivalent to mailing.

If the named **insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

If this policy insures more than one named **insured**, cancellation may be effected by the first of such named **insureds** for the account of all the named **insureds**; notice of cancellation by the company to such first named **insured** shall be deemed notice to all **insureds** and payment of any unearned premium to such first named **insured** shall be for the account of all interests therein.

(j) **Maintenance of Underlying Insurance:** Each policy described in the declarations shall be maintained in full effect during the currency of this policy, except for any reduction of the aggregate limit or limits contained therein solely by payment of claims arising out of **occurrences** taking place during the period of this policy. Failure of the named **insured** to comply with the foregoing shall not invalidate this policy but in the event of such failure, the company shall be liable only to the extent that it would have been liable had the named **insured** complied therewith.

Upon notice that any aggregate limit of liability under any policy of underlying insurance has been exhausted, the named **insured** shall immediately make all reasonable efforts to reinstate such limits.

The named **insured** shall give the company written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying insurance, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

(k) **Declarations:** By acceptance of this policy the named **insured** agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

(l) **Mutuals — Participation Clause Without Contingent Liability: No Contingent Liability:** This policy is non-assessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law in the distribution of dividends so fixed and determined.

---

**UTICA MUTUAL INSURANCE COMPANY**

**Mutuals — Membership and Voting Notice:** The insured is notified that by virtue of this policy, he is a member of the Utica Mutual Insurance Company of New Hartford, New York, and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office, New Hartford, New York, on the fourth Monday of February, in each year, at 1:30 o'clock P.M.

**IN WITNESS WHEREOF,** the Utica Mutual Insurance Company has caused this policy to be signed by its president and secretary at New Hartford, New York, and countersigned on the declarations page by a duly authorized representative of the Company.

*[signature]* President

*[signature]* Secretary Pro Tem

**GRAPHIC ARTS MUTUAL INSURANCE COMPANY**

**Mutuals — Membership and Voting Notice:** The insured is notified that by virtue of this policy, he is a member of the Graphic Arts Mutual Insurance Company of New Hartford, New York, and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office, New Hartford, New York, on the third Monday of April, in each year, at 4:00 o'clock P.M.

**IN WITNESS WHEREOF,** the Graphic Arts Mutual Insurance Company has caused this policy to be signed by its president and secretary at New Hartford, New York, and countersigned on the declarations page by a duly authorized representative of the Company.

*[signature]* President

*[signature]* Secretary

GPA 00859

U/G-P-UL Ed. 11-74

| [X] **Utica Mutual Insurance Company** | [ ] **Graphic Arts Mutual Insurance Company** |

NEW HARTFORD, NEW YORK

**UMBRELLA LIABILITY POLICY**   NO. LU 4799

| PRODUCER | PRODUCER'S NO. | RENEWAL OF POL. NO. |
|---|---|---|
| Marsh & McLennan, Inc. | U3526 | Same |

**DECLARATIONS:**

| ITEM 1 | NAMED INSURED |
|---|---|
| | Goulds Pumps, Inc. |

| ADDRESS NO. | STREET | CITY | COUNTY | STATE |
|---|---|---|---|---|
| | 240 Fall St., | Seneca Falls, | Seneca Co., | N. Y. 13148 |

| BUSINESS OF INSURED: | NAMED INSURED IS: | | |
|---|---|---|---|
| Pump Mfg. | ☐ INDIVIDUAL | ☒ CORPORATION | ☐ PARTNERSHIP |

| ITEM 2 | POLICY PERIOD: FROM | 1/1 19 78 | TO | 1/1 19 79 |
|---|---|---|---|---|

12:01 A.M., standard time at the address of the named insured as stated herein.

| ITEM 3 RETAINED LIMIT: | ITEM 4 OCCURRENCE LIMIT: | ITEM 5 AGGREGATE LIMIT: | ITEM 6 | PREMIUMS: |
|---|---|---|---|---|
| $25,000 | $10,000,000 | $10,000,000 | | $ 6,581 MINIMUM PREMIUM |
| | | | | $ 65,806 TOTAL ADVANCE |
| ITEM 7 | SCHEDULE OF UNDERLYING INSURANCE: | Basis for premium is judgement based upon type of risk | | $ DUE EACH ANNIVERSARY |

| TYPE OF POLICY COVERAGE AFFORDED | POLICY NUMBER | INSURER | POLICY PERIOD | LIMITS OF LIABILITY BODILY INJURY | PROPERTY DAMAGE |
|---|---|---|---|---|---|
| PUBLIC LIABILITY | GLA 25439 | UMICO | 1/1/78-79 | 500 CSL | |
| SPECIAL MULTI-PERIL | | | | | |
| AUTOMOBILE | GLA 25918 | UMICO | 1/1/78-79 | 500/500 | 100 |
| AIRCRAFT LIABILITY | | | | | |
| WATERCRAFT LIABILITY | | | | | |
| WORKMEN'S COMPENSATION | W 236860-78 W 236859-78 | UMICO | 1/1/78-79 | EMPLOYER'S LIABILITY LIMIT $ 100,000 | |
| BAILEE'S COVERAGE | | | | | |
| PROFESSIONAL LIABILITY | | | | EACH PERSON | AGGREGATE |
| | | | | | |

| ENDORSEMENT(S) ATTACHED HERETO: | 8E 456(1-8) 8E1249 | | | |
|---|---|---|---|---|
| COUNTERSIGNED AT: Utica, N. Y. | DATE: 1/11/78 | BY: MARSH & McLENNAN INCORPORATED | | msr 3 (AUTHORIZED REPRESENTATIVE) |

U/G-D-UL Ed. 4-77

INSURED

GPA 00860

(1)

CONTRACTUAL LIABILITY FOLLOWING FORM ENDORSEMENT

In consideration of the reduced premium charged, it is agreed that the insurance afforded by this policy shall not apply with respect to any liability assumed by the insured under any written or oral contract or agreement, unless such liability is covered by valid and collectible underlying insurance at the limits shown in the schedule of underlying insurance, but only for such contracts for which coverage is afforded by said underlying insurance.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective _____ (12:01 A.M., standard time) forms a part of policy No. LU 4799

is issued by MARSH & McLENNAN INCORPORATED

By _____ (Authorized Representative) Vice-Pres.

Name and Address of Insured

Producer

Producer No.

GPA 00861

8-E-456 Ed. 7-76

INSURED

(2)

ARCHITECTS, ENGINEERS OR SURVEYORS PROFESSIONAL LIABILITY EXCLUSION

In consideration of the reduced premium charged, it is agreed that the insurance afforded by this policy shall not apply with respect to liabili arising out of the rendering of, or the failure to render, professional services by or on behalf of the insured, for others, in the insureds capacity as an architect, engineer or surveyor, including, but not limited to, any negligent act, error, omission or mistake involving the preparation of surveys, maps, plans, designs or specifications or supervisory inspection or engineering services furnished in connection therewith.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective _____ (12:01 A.M., standard time) forms a part of policy No. LU 4799

is issued by

MARSH & McLENNAN INCORPORATED

By _____ (Authorized Representative)

Name and Address of Insured

Producer

Producer No.

GPA 00862

B-E-456 Ed. 7-76

INSURED

(3) Revised

It is agreed that the minimum and deposit premium for the policy period will be $65,806. The adjustment rate will be $.321 per $1,000 of sales; (based on $205,000,000 of sales.)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective 1/1/78 (12:01 A.M., standard time) forms a part of policy No. LU 4799

is issued by Utica Mutual Insurance Co., New Hartford, N. Y.

MARSH & McLENNAN INCORPORATED
(Authorized Representative)
By................................................Vice Pres.

Name and Address of Insured

Goulds Pumps, Inc.
240 Fall St.
Seneca Falls, N. Y. 13148

Producer

Marsh & McLennan, Inc.

GPA 00863

Producer No. U3526  1/23/78 es 3

8-E-456 Ed. 7-76

INSURED

(3)

It is agreed that the minimum and deposit premium for the policy period will be $65,806. The adjustment rate will be $.321 per $1,000 of sales; (based on $205,000 of Sales.)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective _____ (12:01 A.M., standard time) forms a part of policy No. LU 4799

is issued by

MARSH & McLENNAN INCORPORATED

_____
(Authorized Representative)

Name and Address of Insured

Producer

Producer No.   **GPA 00864**

8-E-456 Ed. 7-76

**INSURED**

(4)

## PROPERTY DAMAGE LIMITATION

### PERSONAL PROPERTY

It is agreed that this policy shall not apply to any liability or property damage to personal property

      (1) owned or occupied by or rented to the insured,

      (2) used by the insured, or

      (3) in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

Wherever used herein, the term "Personal Property" shall mean all property other than real property.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective _____ (12:01 A.M., standard time) forms a part of policy No. LU 4799

is issued by

MARSH & McLENNAN INCORPORATED

(Authorized Representative)

Name and Address of Insured

Producer

Producer No.

GPA 00865

8-E-456 Ed. 7-76

INSURED

(5)

## PROPERTY DAMAGE LIMITATION

### REAL PROPERTY

It is agreed that this policy shall not apply to any liability for property damage to real property

    (1) owned or occupied by or rented to the insured,

    (2) used by the insured, or

    (3) in the care, custody of control of the insured or as to which the insured is for any purpose exercising physical control;

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective    (12:01 A.M., standard time)    forms a part of policy No.    LU 4799

is issued by    MARSH & M_____

_____ (Authorized Representative)

Name and Address of Insured

Producer

Producer No.

GPA 00866

8-E-456 Ed. 7-76      INSURED

(6)

## PUNITIVE DAMAGES LIMITATION

It is agreed that this policy does not apply to liability for punitive or exemplary damages unless such liability is covered by valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance, for the full limit shown therein, and then only for such hazards for which coverage is afforded under said underlying insurance.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective _____ (12:01 A.M., standard time) forms a part of policy No. LU 4799

is issued by

MARSH & McLENNAN INCORPORATED

(Authorized Representative)

Name and Address of Insured

Producer

Producer No.

GPA 00867

B-E-456 Ed. 7-76

INSURED

(7)

## AIRCRAFT PRODUCTS EXCLUSION

It is agreed that this policy shall not apply to any liability arising out of aircraft products or reliance upon any representation or warranty made with respect thereto, or to any liability arising out of the grounding of any aircraft.

"Aircraft Products" means aircraft (Including missiles or spacecraft) and any other goods or products manufactured, sold, handled or distributed or services provided or recommended by the insured or by other trading under his name for use in the manufacture, repair, operation, maintenance or use of any aircraft.

"Grounding" shall mean the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof, sold, handled or distributed by the insured or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders or drawings of the insured or with tools, machinery or other equipment furnished to such persons or organizations by the insured, whether such aircraft so withdrawn are owned or operated by the same or different persons or organizations.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective _____ (12:01 A.M., standard time) forms a part of policy No. LU 4799

is issued by _____ MARSH & McLENNAN INCORPORATED

_____ (Authorized Representative)

Name and Address of Insured

Producer

Producer No.   GPA 00868

B-E-456 Ed. 7-76

INSURED

(8)

## JOINT VENTURE ENDORSEMENT

1. It is hereby understood and agreed by the Assured and Underwriters that, as regards any liability of the Assured which is insured under this policy and arises in any manner whatsoever out of the operations or existence of any joint venture, co-venture, joint lease, joint operating agreement or partnership (hereinafter called "Joint Venture") in which the Assured has an interest, the liability of Underwriters under this Policy shall be limited to the product of (a) the percentage interest of the Assured in the said Joint Venture and (b) the total limit of liability insurance afforded the Assured by this Policy. Where the percentage interest of the Assured is said Joint Venture is not set forth in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the Joint Venture. Such Percentage shall not be increased by the insolvency of others interested in the said Joint Venture.

2. It is further understood and agreed that, where any underlying insurance(s) have been reduced by a clause having the same effect as paragraph (1), the liability of Underwriters under this Policy, as limited by paragraph (1) shall be excess of the sum of (a) such reduced limits of any underlying insurance(s) and (b) the limits of any underlying insurance(s) not reduced.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective _____ (12:01 A.M., standard time) forms a part of policy No. LU 4799

is issued by   MARSH & McLENNAN [illegible]

                             By _____ (Authorized Representative) _____

Name and Address of Insured

                                                    Producer

⌐              ⌐
 •              ⌐
                                                    Producer No.          **GPA 00869**
└              ┘

8-E-466 Ed. 7-76

INSURED

It is agreed that effective 2/1/78 the limit of liability is amended to $25,000,000. The adjustment rate for the policy period is amended to .427 per $1,000 of sales.

In consideration of the above the total advance premium is amended to read:
From:  65,806.  to:  87,583.

Total Net Addl. Prem. $21,777.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective 2/1/78 (12:01 A.M., standard time) forms a part of policy No. LU 4799

is issued by Utica Mutual Insurance Co., New Hartford, N. Y.

(Authorized Representative)

Name and Address of Insured

Producer

   Goulds Pumps, Inc.
   240 Fall St.
   Seneca Falls, N. Y. 13148

Marsh & McLennan, Inc.

GPA 00870

Producer No. U3526  mbm 3
2/15/78

8-E-456 Ed. 7-76

INSURED

(9)

"EXCLUSION OF EMPLOYEE RETIREMENT INCOME SECURITY ACT LIABILITY"

"In consideration of the premium charged, it is agreed that the insurance afforded by this policy shall not apply with respect to any liability arising out of the intentional or unintentional violation or violations of any provision or provisions of the Employee Retirement Income Security Act of 1974, Public Law 93-406 (comonly referred to as the Pension Reform Act of 1974), or any amendments thereto."

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective  1/1/78  (12:01 A.M., standard time)  forms a part of policy No.  LU 4799

is issued by  Utica Mutual Insurance Co., New Hartford, N. Y.

MARSH & McLENNAN INCORPORATED
(Authorized Representative)

By............................... Vice Pres.

Name and Address of Insured

Producer

Goulds Pumps, Inc.
240 Fall St.
Seneca Falls, N. Y. 13148

GPA 00871

Marsh & McLennan, Inc.

Producer No.  U3526  1/23/78 es

8-E-456 Ed. 7-76

INSURED

COMMERCIAL UMBRELLA LIABILITY POLICY

NEW YORK AMENDATORY ENDORSEMENT

1. This insurance does not apply to and the company shall not be liable to make any payment (including indemnification) for damage, loss or liability on account of discrimination because of sex, race, creed, color, or national origin.

2. The first paragraph of Condition (d) action against Company is amended to read as follows:

   No action shall lie against the company unless, as the condition precedent thereto, the insured shall have fully complied with all the terms of the policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgement against the insured or by written agreement of the insured, the claimant and the company.

8-E-1249 Ed. 12-74

GPA 00872