**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UTICA MUTUAL INSURANCE**
**COMPANY,**

                              **Plaintiff,**

                    **v.**

**CLEARWATER INSURANCE**
**COMPANY,**

                              **Defendant.**
_____

                                        **6:13-cv-1178**
                                        **(GLS/TWD)**

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Cooper, Erving Law Firm                 PHILIP G. STECK, ESQ.
39 North Pearl Street
4th Floor
Albany, NY 12207

Sidley, Austin Law Firm                 THOMAS D. CUNNINGHAM,
One South Dearborn Street ESQ.          ESQ.
Chicago, IL 60603

Hunton Andrews Kurth LLP                ADRIANA ALEXIS PEREZ,
333 SE 2nd Avenue, Suite 2400           ESQ.
Miami, FL 33131

2200 Pennsylvania Avenue, NW            SYED S. AHMAD, ESQ.
Washington, DC 20037-1701

Webber & Theis PC                       DANIEL R. THEIS, ESQ.
202 Lincoln Square
P.O. Box 189
Urbana, IL 61803

**FOR THE DEFENDANT:**
Norton Rose Fulbright US LLP          JOHN F. FINNEGAN, ESQ.
1301 Avenue of the Americas          THOMAS J. McCORMACK,
New York, NY 10019                   ESQ.
                                     VICTORIA CORDER, ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Utica Mutual Insurance Company commenced this diversity

action against defendant Clearwater Insurance Company, alleging breach

of contract claims and seeking declaratory relief and damages.  (*See*

*generally* Dkt. No. 1.)  Clearwater counterclaimed for breach of contract

and sought to recoup a payment it already made to Utica.  (Dkt. No. 17

¶¶ 66-70.)  Following trial, a jury rendered a verdict fully favorable to Utica,

(Dkt. No. 251), and judgment was entered consistent with that verdict, (Dkt.

No. 252).  Pending are Utica's motion to correct or amend the judgment,

(Dkt. No. 255), Clearwater's motion for judgment as a matter of law, for a

new trial, or to alter or amend the judgment, (Dkt. No. 258), and

Clearwater's motion to stay the judgment pending resolution of these post-

trial motions, (Dkt. No. 259).  For the reasons that follow, Utica's motion is

2

denied, Clearwater's motion for judgment as a matter of law, for a new trial, or to alter or amend the judgment is granted in part and denied in part, and Clearwater's motion to stay is denied as moot.

## II. Background

### A. Facts

The court assumes the parties' familiarity with the factual background of this action, which will not be rehashed in full detail here.  This is a dispute concerning reinsurance contracts.  Utica issued various liability insurance policies to Goulds Pumps, Inc., some of which were reinsured by Clearwater.  (Dkt. No. 106 at 2-3.)  When Goulds was subjected to a multitude of asbestos bodily injury claims, a dispute between Goulds and Utica arose as to Utica's potential liability, given that many of the policies between Utica and Goulds did not state what the aggregate limits of those policies were.  (*Id.* at 4-6.)  Utica and Goulds eventually settled the matter, and Utica subsequently sought indemnification from Clearwater pursuant to the applicable reinsurance contracts.  (*Id.* at 6, 8-9.)  Clearwater made one payment to Utica, and then refused to make any further payments.  (*Id.* at 9.)  Utica brought suit seeking the outstanding indemnification payments owed by Clearwater, and Clearwater counterclaimed seeking return of the

3

payment it made to Utica.  (*See generally* Dkt. No. 1; Dkt. No. 17 ¶¶ 66-70.)

**B.      Procedural History**

Utica moved for summary judgment seeking judgment on both its claims and Clearwater's counterclaim.  (Dkt. No. 64.)  Clearwater also moved for partial summary judgment seeking a declaration that Clearwater was not liable for any of the costs that Utica incurred to defend Goulds' asbestos claims.  (Dkt. No. 65.)  By Memorandum-Decision and Order, the court granted Utica's motion and denied Clearwater's, concluding that Clearwater was obligated to indemnify Utica according to Utica's settlement with Goulds.  (Dkt. No. 106.)

On appeal, the Memorandum-Decision and Order was vacated by the Second Circuit Court of Appeals, and the matter was remanded for further proceedings.  (Dkt. No. 138.)  The Second Circuit specifically noted that Clearwater was liable only for loss expenses insured under Utica's umbrella policies, which covered expenses "not covered by" primary insurance.  (*Id.* at 14-16.)  The Second Circuit ultimately found that it was the district court's responsibility to determine the meaning of "not covered by."  (*Id.* at 17-19.)

4

On remand, supplemental briefing with respect to Clearwater's partial summary judgment motion, (Dkt. No. 65), was submitted, in which Clearwater argued that "the 'occurrence not covered by' language contained in [the relevant umbrella policies] is unambiguous, and, that these [u]mbrella [p]olicies do not require Utica to pay any asbestos defense costs incurred by Goulds following the exhaustion of Utica's underlying primary policies," (Dkt. No. 144 at 1, 6-7; Dkt. No. 157 at 1-4.) The court denied Clearwater's motion, finding that, "[u]ltimately, the 'not covered by' provision in the umbrella policies, taken in the context of the agreement as a whole and viewed in the light most favorable to Utica, is susceptible to more than one reasonable meaning." (Dkt. No. 158 at 10.) The action was thus deemed trial-ready. (*Id.* at 12.)

Consistent with the trial scheduling order, (Dkt. No 166), the parties filed a multitude of documents, including, proposed jury instructions by Clearwater, which focused in part on the duty of "utmost good faith," (Dkt. No. 189 at 5-6, 27, 37-40; Dkt. No. 230 at 2; Dkt. No. 242 at 10, 16, 26, 31; Dkt. No. 246.) Clearwater also submitted a proposed verdict form. (Dkt. No. 190; Dkt. No. 245). Finally, Clearwater submitted a memorandum regarding the applicability of common law indemnification to the action.

(Dkt. No. 240.)

Clearwater objected to the court's jury instructions and verdict form. (Dkt. No. 250; Dkt. No. 270, Attach. 1 at 1689.)  Ultimately, a verdict favorable to Utica was rendered, (Dkt. No. 251), and judgment was entered in Utica's favor, (Dkt. No. 252).  Specifically, the jury found that Utica proved by a preponderance of the evidence that: Utica and Goulds intended for the primary polices at issue to contain aggregate limits, Utica had an obligation to defend Goulds under the umbrella policies at issue, and Utica's settlement with Goulds was negotiated in good faith.  (Dkt. No. 250 at 2.)  The jury also found that Clearwater did not prove by substantial evidence that Utica's settlement reflected bad faith, fraud, or factual or legal error, or by a preponderance of the evidence, that Utica breached either its implied duty of good faith or its duty of utmost good faith.  (*Id.* at 2-3.)  Finally, the jury awarded $10,901,005.03 in damages to Utica, and found that Utica suffered these damages on December 2, 2012.  (*Id.* at 3.)

6

### III.  <u>Standards of Review</u>

**A.**   <u>Rule 50</u>

Rule  50(b) of the Federal Rules of Civil Procedure governs post-trial motions for judgment as a matter of law.  *See* Fed. R. Civ. P. 50(b).  "In ruling on [a Rule 50(b)] motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."  *Id.*  In ruling on a Rule 50(b) motion the court "consider[s] the evidence in the light most favorable to the non-moving party and giv[es] that party the benefit of all reasonable inferences that the jury might have drawn in that party's favor from the evidence."  *Triolo v. Nassau County*, 24 F.4th 98, 105 (2d Cir. 2022) (citation omitted).  A Rule 50(b) motion should only be granted where, "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that [a] reasonable and fair minded [jury] could not arrive at a verdict against it." *Id.* (citation omitted).  "The movant's burden is particularly heavy where . . . the jury has deliberated in the case and actually returned its verdict."  *Id.* (internal quotation marks and citation omitted).

**B.**   **Rule 59**

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial

may be granted "for any reason for which a new trial has heretofore been

granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A

court may award a new trial under Rule 59(a) when: "(1) the verdict is

against the clear weight of the evidence; (2) the trial court was not fair; (3)

substantial errors occurred in the admission or rejection of evidence or the

giving or refusal of instructions to the jury; or (4) damages are excessive."

*Moore v. Keller*, No. 5:16-CV-1230, 2021 WL 4066541, at *2 (N.D.N.Y.

Sept. 7, 2021) (citation omitted); *see Dizak v. Hawks*, No. 9:15-CV-1171,

2020 WL 204297, at *2 (N.D.N.Y. Jan. 13, 2020); *Maureen Christensen v.*

*County of Dutchess*, 548 F. App'x 651, 653 (2d Cir. 2013) (holding that, in

granting a Rule 59(a) motion, a court "must conclude that the jury has

reached a seriously erroneous result or the verdict is a miscarriage of

justice, *i.e.,* it must view the jury's verdict as against the weight of the

evidence" (citation omitted)).  "Unlike judgment as a matter of law, a new

trial may be granted [under Rule 59(a)] even if there is substantial evidence

supporting the jury's verdict" and "a trial judge is free to weight the

evidence himself, and need not view it in the light most favorable to the

verdict winner." *Moore*,  2021 WL 4066541, at *2.

Under Rule 59(e) of the Federal Rules of Civil Procedure, a district court may "alter or amend a judgment" following a jury trial.  *See* Fed. R. Civ. P. 59(e).  Pursuant to Rule 59(e), "district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice."  *4 Pillar Dynasty LLC v. N.Y. & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) (citation omitted).  However, a motion pursuant to Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Id.* (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).

## C.   <u>Rule 60</u>

Rule 60(a) of the Federal Rules of Civil Procedure allows a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Rule 60(a) allows the court to correct a mistake regarding a judgment "in order to implement the result intended by the court" with respect to that judgment.  *Weiming Chen v. Ying-Jeou Ma*, 595 F. App'x 79, 80 (2d Cir. 2015) (internal quotation marks and citation omitted); *see Funches v. Walsh*, No. 05 Civ. 2839, 2019 WL 1368999, at *1 n.2 (S.D.N.Y. Mar. 26,

2019) (citations omitted).  "However, a court acting pursuant to Rule 60(a) may not make changes that alter the original meaning [of the judgment] to correct a legal or factual error."  *Weiming*, 595 F. App'x at 80 (internal quotation marks and citation omitted).

As relevant here, Rule 60(b) of the Federal Rules of Civil Procedure authorizes a court to grant relief from a judgment because of "mistake, inadvertence, surprise, or excusable neglect; . . . [or] any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (6).  Granting relief under Rule 60(b) requires a showing that "extraordinary circumstances warrant such relief."  *Keepers, Inc. v. City of Milford*, 776 F. App'x 734, 735 (2d Cir. 2019) (internal quotation marks and citation omitted); *see Whitaker v. N.Y. Univ.*, 543 F. App'x 113, 114 (2d Cir. 2013) (citations omitted).  Further, "a Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided."  *Whitaker*, 543 F. App'x at 114.

## IV.  Discussion

Clearwater makes a host of arguments for why it is entitled to a new trial, judgment as a matter or law, and/or an amendment of the judgment. Clearwater asserts that it is not required to pay supplemental defense costs to Utica, and given that Utica billed these defense costs to

10

Clearwater, that it is entitled to a new trial to determine if Utica violated their duty of "good faith and utmost good faith."  (Dkt. No. 258, Attach. 1 at 4-10.)  Further, Clearwater maintains that the evidence at trial did not support the jury's verdict that Utica had proven its contract claim under the Towers, Perrin, Forster & Crosby, Inc. (TPF&C) Memoranda, (*id.* at 10-13), that Utica was not entitled to portions of their billings, including, "orphan shares" and the "reset of the umbrella policy limits," (*id.* at 13-19), and that the policies at issue unambiguously lacked aggregate limits, (*id.* at 20-22).  Clearwater also seeks a new trial due to alleged errors in the jury instructions and verdict form.  (*Id.* at 22-36.)  Finally, Clearwater contends that the court should vacate the award of prejudgment interest, or amend the date from which interest is calculated.  (*Id.* at 36-40.)  For the reasons that follow, Clearwater's motion is granted in part, and denied in part, as outlined below.

**A.    Supplemental Defense Costs**

Clearwater argues that, while at trial the jury was left to determine whether the polices at issue entitled Utica to supplemental defense costs, it is now entitled to judgment as a matter of law on the issue, due to the post-verdict Second Circuit opinion rendered in *Utica Mutual Ins. Co. v.*

*Munich Reinsurance Am., Inc.*, 7 F.4th 50 (2d Cir. 2021), which found the phrase "occurrence not covered by" to be unambiguous.  (Dkt. No. 258, Attach. 1 at 4-10.)  Utica disputes the binding nature of *Munich*, largely because that decision addressed different policies, with materially different language.  (Dkt. No. 264 at 4-10.)  Utica further contends, in the alternative, that the jury's findings with respect to the common law of contractual indemnification provide an alternate avenue for Utica to recover defense costs.  (*Id.* at 10-11.)

*Munich*, addressed the question of whether Utica's 1973 umbrella policy[1] entitled Utica to supplemental defense costs.  *See Munich*, 7 F.4th at 56-58.  In making this determination, the Second Circuit noted that the umbrella policy at issue there provided "vertical and horizontal coverage."[2] *Id.* at 56.  The Court further determined that the underlying primary policy at issue covered asbestos claims, so once that primary coverage was

---

[1]  This policy is not at issue in this case.  The relevant polices here are Utica's 1978-81 umbrella policies.

[2]  "Vertical coverage" is coverage that "rests on top of the . . . primary policy," and essentially provides additional coverage for the categories of risks covered in the primary policy, which would only apply if the primary policy limits were exhausted.  *Munich*, 7 F.4th at 56.  "Horizontal coverage," also referred to as "drop down coverage," affords "coverage in the first instance for categories of risks not covered by the underlying primary policy," making exhaustion of primary limits irrelevant for this coverage (given that there is no "primary" coverage at all).  *Id.*

exhausted, the excess coverage (or "vertical coverage") provided for defense costs. *See id.* at 56-58. The question then became, "whether defense costs eroded the umbrella policy limits, or were supplemental to them." *Id.* This is where Utica and Munich's interpretation of the policy diverged. Utica claimed that an "endorsement to the umbrella policy made defense supplemental for the vertical . . . coverage as well [as the horizontal coverage]." *Id.* Munich maintained that defense was only supplemental for the horizontal coverage. *See id.* The Second Circuit rejected Utica's theory, noting that the endorsement stated:

> With respect to any *occurrence not covered by the underlying policy(ies) of insurance* . . . , but covered by the terms and conditions of this policy . . . [Utica] shall: (a) defend any suit against the insured ... [and] (c) pay all expenses incurred by the company . . . . and the amounts so incurred, except settlements of claims and suits, are payable by the company *in addition to* the applicable limit of liability of this policy.

*Id.* at 56-57 (emphasis added). The Second Circuit reasoned that "[t]he phrase 'occurrence not covered by' unambiguously referred to the policy's [horizontal coverage] of risks," but not the vertical coverage. *Id.* at 57.

"An insurance agreement is subject to principles of contract interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of*

13

*Pittsburgh*, 25 N.Y.3d 675, 680 (2015).  A contract must be read in light of its "precise terminology" and "specific context."  *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 890 F.3d 74, 77 (2d Cir. 2018) (noting that a "district court should construe each reinsurance policy . . . in light of its language and . . . specific context" (internal quotation marks and citations omitted).  Further, a contract must be read "as a whole," "placing words and phrases in their proper contexts."  *N.Y. Univ. v. Factory Mut. Ins. Co.*, No. 20-1093-CV, 2021 WL 3136078, at *2 n.10 (2d Cir. July 26, 2021); *see Weiss v. Weiss*, 52 N.Y.2d 170, 174 (1981) ("[A]n agreement, where possible, should be read as a whole so as to give each section meaning.").  "An agreement is unambiguous when its words have a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion."  *Vintage, LLC v. Laws Const. Corp.*, 13 N.Y.3d 847, 849 (2009) (internal quotation marks and citation omitted).

These principles of contract interpretation indicate why the Second Circuit's interpretation of different policies, with different language, does not bind the court here.  *Munich* dealt with Utica's 1973 umbrella policy, which contained materially different language than the policies at issue in

this case (Utica's 1978-81 umbrella policies).  While Clearwater

emphasizes the similarities between the umbrella policies, namely the

presence of the phrase "occurrence not covered by," (Dkt. No. 258, Attach.

1 at 4-5), it has conceded in the past that the policies' language is

"somewhat different," (Dkt. No. 157 at 2).

   The umbrella policy at issue here states: "With respect to any

occurrence *not covered by* [the primary policy], but covered by the terms

and conditions of this policy (*including damages wholly or partly within the*

*amount of the retained limit*), the company shall: [cover expenses in

addition to the stated limit]."  (Dkt. No. 258, Attach. 24 (emphasis added).)

"Retained limit" was defined by these same umbrella policies "as to each

occurrence with respect to which insurance is afforded under this

policy: . . . if any underlying policy otherwise *applicable is inapplicable by*

*reason of exhaustion of an aggregate limit of liability*; all amounts payable

under other insurance, if any."  (*Id.* (emphasis added).)  The presence of

this definition in the policies at issue demonstrates a key difference from

these policies and the one analyzed by the *Munich* court.  In *Munich*, the

Second Circuit found that "'inapplicable'-- although not defined in the

contract--plainly means there is no underlying primary insurance for the

15

occurrence."  *Munich*, 7 F. 4th at 57; *see Utica Mutual Ins. Co. v. Munich Reinsurance Am., Inc.*, 381 F. Supp. 3d 185, 211-12 (N.D.N.Y. 2019) (underlying decision likening the phrase "not covered by" to the term "inapplicable").  But, here, the policy explicitly notes that primary insurance may be "inapplicable by reason of exhaustion of an aggregate limit of liability."  (Dkt. No. 258, Attach. 24.)

Ultimately, the phrase "occurrence not covered by" read in the context of the entire umbrella policy, and, specifically with the definition of "retained limit" in mind, is susceptible to more than one reasonable meaning.  "Occurrence not covered by" could be read to mean coverage outside of the scope of the underlying primary policies' coverage, or, it could mean where the underlying policy coverage has been exhausted – again, specifically given the presence of the definition of "retained limit."[3] *Munich's* holding with respect to materially different umbrella policies does not change this result.  *See Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 594 F. App'x 700, 704 (2d Cir. 2014) (distinguishing decisions that

---

[3]  "[A]s to each occurrence with respect to which insurance is afforded under this policy: . . . if any underlying policy otherwise *applicable is inapplicable by reason of exhaustion of an aggregate limit of liability*; all amounts payable under other insurance, if any."  ((Dkt. No. 258, Attach. 24 (emphasis added).)

interpreted different policies than the specific policy at issue).

For these reasons,[4] there is no reason to set aside prior rulings regarding the ambiguity of the polices at issue, (Dkt. No. 106 at 23; Dkt. No. 158 at 10-11 ("[the policy] is susceptible to more than one reasonable meaning")), and the jury's verdict, finding that Utica was entitled to supplemental defense costs, (Dkt. No. 251).

Given that Utica was entitled to supplemental defense costs from Clearwater by virtue of the jury's verdicts, it therefore follows that billing these cost to Clearwater could not be a violation of any duty owed by Utica, and thus, Clearwater's request for a new trial on this issue is also denied.

## B.   **TPF&C Memoranda**

Clearwater also argues that it is entitled to judgment as a matter of law with respect to Utica's claims for breach of the TPF&C Memoranda. (Dkt. No. 258, Attach. 1 at 11.)  It asserts that Utica did not adduce proof at trial that it received consent from TPF&C or Clearwater, as required by the TPF&C Memoranda, to settle with Goulds, nor that it was excused from

---

[4]  The court need not address Utica's argument, in the alternative, that the jury's findings with respect to the common law of contractual indemnification provide an alternate avenue for Utica to recover defense costs, (Dkt. No. 264 at 10-11), as defense cost were properly awarded by the jury under the umbrella policy.

doing so.  (Dkt. No. 258, Attach. 1 at 11.)  Utica disagrees, claiming that Clearwater is ignoring a provision in the TPF&C Memoranda that states "[p]ayments of their proportion of loss and expense paid by [Utica] will be made by the Reinsurers to the Reassured promptly following receipt of proof of loss," and therefore, proof of consent was not necessary.  (Dkt. No. 264 at 11-14.)

The court agrees with Utica.  A reasonable jury could read the provision in the TPF&C Memoranda stating that "[p]ayments of their proportion of loss and expense paid by [Utica] will be made by the Reinsurers to the Reassured promptly following receipt of proof of loss," (Dkt. No. 258, Attach. 5 at 2; Dkt. 258, Attach. 6 at 2), to mean that when Utica makes a payment "of loss and expense" under the policies, and then Utica provides a proof of the loss to Clearwater, that it is then entitled to indemnification, and that therefore, consent from Clearwater or TPF&C is not required.

Were it the case that failure to receive consent from either Clearwater or TPF&C (or to demonstrate that this requirement was excused) would foreclose Utica from binding Clearwater on the settlement with Goulds under the TPF&C Memoranda, the Second Circuit in *Utica*

18

*Mut. Ins. Co. v. Clearwater Ins. Co.* would have noted as much when ruling

on the parties' prior cross-appeals.  There, the Second Circuit noted that

Utica had failed to receive consent or demonstrate that it was excused

from doing so.  *See Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12,

21-23 (2d Cir. 2018).  It then explained that, because of this shortcoming

"Utica [had] failed to show that Clearwater was obliged to *follow the*

*settlement* under the TPF&C Memoranda" and "accordingly vacate[d] the

district court's grant of summary judgment for Utica and remand[ed] for trial

to determine Clearwater's actual liability to Utica *under both the TPF&C*

*[M]emoranda* and the Clearwater certificates."  *Id.* at 21-23, 25 (emphasis

added).  If recovery under the TPF&C Memoranda was completely barred

by Utica's failure to receive consent or demonstrate that it was excused

from doing so, the Second Circuit would have directed judgment on this

issue and would not have "remand[ed] for trial to determine Clearwater's

actual liability to Utica under . . . *the TPF&C [M]emoranda*."  *Id.* at 25

(emphasis added).

　　　　For these reasons,[5] and given the evidence presented at trial, a

---

　　　　[5] Utica further argues that because Clearwater made one payment under the TPF&C
Memoranda without TPF&C's consent, that this course of performance confirms that consent
is not required under the TPF&C Memoranda.  (Dkt. No. 264 at 14.)  That argument is not

rational jury could – and did – find that Utica proved its contract claims with respect to the TPF&C Memoranda.  Therefore, Clearwater's motion is denied.

## C.   <u>Defense Expense, Orphan Shares, and Umbrella Limits</u>

Clearwater next argues that it is entitled to judgment as a matter of law on the "portions of Utica's billings that Utica was not obligated to pay to Goulds under the . . . umbrella policies, most notably defense expense, orphan shares, and the reset and additional umbrella limits," and that "[t]he common law of indemnification cannot be used by Utica to establish . . . Clearwater's liability."  (Dkt. No. 258, Attach. 1 at 13, 16.)

Utica argues that the evidence at trial demonstrated that Utica was entitled to the entirety of the billings under the umbrella policies, (Dkt. No. 264 at 14-19), none the less, the orphan shares did not affect the billings, (*id.* at 15), Clearwater waived these arguments by not making them in their Rule 50(a) motion, (*id.* at 15, 17), and common law indemnification supports their position, (*id.* at 15-16).

With respect to orphan shares, Clearwater's argument is irrelevant,

_____

persuasive because Clearwater made the payment under an express reservation of rights. (Dkt. No. 268 at 13.)

as the evidence presented at trial demonstrated that liability from these shares did not affect the billings to Clearwater.  (Dkt. No. 269, Attach. 2 at 593-94; Dkt. No. 269, Attach. 3 at 1106-07 ("Q: . . . In the absence of the $31 million that was billed across the umbrella policies for orphan share, how would the billings to Clearwater be affected?  A[:] They wouldn't have. They would have been billed the same amount."); *id.* at 1107-12, 1151.) Therefore, even if Utica was not entitled to bill for orphan shares, the amount of damages awarded would not be adjusted.

Regarding Clearwater's argument concerning defense costs, it claims Utica's billings ran afoul of the *Munich* decision, (Dkt. No. 258, Attach. 1 at 15-16), which stated that a "cedent's billing to its reinsurers" must be "at least consistent with, and . . . not contradict . . . the settlement."  *Munich*, 7 F.4th at 59.  But again, a reasonable jury could have found the evidence presented at trial showed that Utica did comply with *Munich*,[6] and billed Clearwater in accordance with the Goulds settlement.  (Dkt. No. 264, Attach 9 at 4, 18-19 (Ex. P-424 (showing that

---

[6]  It is worth noting that the holding in *Munich* was specifically within the context of "when a reinsurance certificate contains a follow-the-settlements clause," 7 F. 4th at 59, which is not the case here as Clearwater's obligations to Utica are not subject to the follow-the-settlements doctrine.  *See Utica Mutual Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 25 (2d Cir. 2018).

Utica's payments and reinsurance billings matched).)

Finally, with respect to Clearwater's remaining arguments pertaining to Utica's billings, there was evidence presented at trial that supports Utica's assertion that it was entitled to the entirety of their billing under the umbrella policies at issue.  (*See, e.g.*, Dkt. No. 269, Attach. 2 at 596-97 (noting that the policies had a $25 million dollar limit for indemnity only, with expense paid in addition, for a total of $48 million, and that "Utica's billings" were "based on the terms of the umbrella policies").)  Thus, a reasonable jury could have found, based on this evidence, that Utica was entitled to the entirety of their billings to Clearwater,[7] and, therefore, Clearwater's motion for judgment as a matter of law is denied.

**D.**   **Aggregate Limits**

Clearwater argues that it is entitled to judgment as a matter of law because the primary policies did not contain aggregate limits.  (Dkt. No. 258, Attach. 1 at 21-22.)  In support of this position, it contends that the Second Circuit has found that the policies at issue unambiguously did not contain aggregate limits.  (*Id.* at 20-21.)  Therefore, it asserts that,

---

[7]   For this reason, the court need not address the parties' arguments pertaining to the common law of indemnification nor Utica's argument that Clearwater waived its ability to make this argument.

these policies would never have been triggered, and Clearwater would not be subject to any liability.  (*Id.* at 21-22.)

Clearwater is mistaken.  The Second Circuit did not rule that the policies at issue unambiguously contained no aggregate limits.  *See generally Utica Mutual Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12 (2d Cir. 2018).  The Second Circuit , in detailing the background of the case and the grounds for the dispute between Utica and Goulds stated that "[t]he primary policies Utica issued to Goulds from 1978 to 1981 had a glaring omission: they did not include aggregate limits of liability," and "[t]he [Utica-Goulds] settlement treated the primary policies as having aggregate limits."  *Id.* at 16.

There is no reason to disturb the prior rulings that the primary policies were ambiguous with respect to aggregate limits, (*see, e.g.*, Dkt. No. 269 at 1086 ("The fundamental issue is the ambiguity in the underlying Goulds-Utica contracts . . . .  In other words, those four contracts are ambiguous.  It's up to the jury to decide whether or not there were aggregate limits intended . . . between Goulds and Utica."), and the jury's verdict on the issue, (Dkt. No. 251 (responding yes to question one on the special verdict form which stated: "Did Utica prove by a preponderance of

the evidence that Utica and Goulds intended for the 1978-81 *primary policies* to contain aggregate limits")).

## E.    <u>The Duty of Utmost Good Faith</u>

Clearwater argues that it is entitled to a new trial because the court instructed the jury on "the duty of utmost good faith . . . [in a] legally erroneous and prejudicial" manner.  (Dkt. No. 258, Attach. 1 at 22-33.)  It makes a host of arguments for why the court's instructions were improper, including that the instructions "failed to define the duty of utmost good faith," "erroneously advanced the position that Clearwater bore the burden of proof" with respect to violation of the duty, contained a negative presumption against finding that this duty was violated, incorrectly required proof of a level of awareness of this duty by Utica, contained errors with respect to Utica's requisite level of intent, required that Clearwater be prejudiced, allowed Utica to improperly "put its interests before Clearwater's," required Clearwater to make efforts to negate any non-disclosures by Utica, and, finally, included the concept of substantial performance with respect to the duty.  (*Id.* at 23-32.)  Clearwater contends that the instructions resulted in prejudice to it because the jury could have found the duty was violated by Utica "failing to disclose and

misrepresenting the nature of the fight with Goulds, improperly allocating

extra-contractual amounts to Clearwater in its settlement with Goulds, and

improperly billing Clearwater for orphan shares, reset and increased

umbrella policy limits, and—most egregiously—defense costs and

declaratory judgment expenses."  (Dkt. No. 268 at 3-4.)  Utica argues that

while these instructions were appropriate, (Dkt. No. 264 at 29-36), even if

they were not, Clearwater was not prejudiced by them, (*id.* at 27-29).

"A jury instruction is erroneous if it misleads the jury as to the correct

legal standard or does not adequately inform the jury on the law."  *Boyce v.

Soundview Tech. Grp., Inc.*, 464 F.3d 376, 390 (2d Cir. 2006) (citation

omitted).  "A jury instruction that misinforms the jury on the law requires a

new trial unless the error is harmless."  *Munich*, 7 F.4th at 65 (citing *Fid. &

Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 139 (2d

Cir. 2008).  "An error is . . . harmless if . . . the error did not influence the

jury's verdict."  *LNC Invs., Inc. v. First Fidelity Bank, N.A. N.J.*, 173 F.3d

454, 462 (2d Cir. 1999) (citation omitted); *see Continental Casualty Co. v.

Boughton*, 695 F. App'x  596, 600-01 (2d Cir. 2017) (finding, where the jury

instruction arguably improperly shifted the burden of proof, that the error

was harmless because it did not affect the jury's verdict).

25

Most of Clearwater's arguments with respect to the legal errors in the jury instructions have already been raised, and the court and parties have spent a vast amount of time advocating for and determining the proper jury instructions.  (*See, e.g.*, Dkt. No. 246 at 2-10; Dkt. No. 250 at 1-2.)  The court is no more persuaded now by Clearwater's contentions than when they were previously raised.

Clearwater makes one additional argument that was not raised in advance of charging the jury, regarding the Second Circuit's decision in *Munich*.  It argues that there, the Second Circuit held that "Utica could be found to have breached the duty of good faith simply by billing its reinsurer for amounts that were not due," without requiring any additional requirements, and, thus, the instructions here, which did include some additional requirements were erroneous.  (Dkt. No. 258, Attach. 1 at 33.) Assuming arguendo that the court erred, Clearwater can not demonstrate how it was prejudiced.  While the Second Circuit in *Munich* found that Utica billing for defense costs it was not entitled to recoup could have been a violation of the duty of good faith, in reaching this conclusion the Court also noted Utica was not entitled to supplemental defense costs under the umbrella policies at issue there, but "if [Utica was entitled to] defense in

26

addition to limits . . . then it w[ould be] natural for the jury to conclude that Utica's billing was proper and therefore in good faith."  *Munich*, 7 F. 4th at 65.  Here, the jury found that Utica was entitled to supplemental defense cost. (Dkt. No. 251.)  Therefore, even if Clearwater's desired utmost good faith instructions were given, it would not have changed the outcome of the verdict.  For these reasons, Clearwater's request for a new trial is denied. *See LNC Invs., Inc. v. First Fidelity Bank, N.A. N.J.*, 173 F.3d 454, 462 (2d Cir. 1999) ("An error is . . . harmless if . . . the error did not influence the jury's verdict." (citation omitted).)

## F.   Jury Instructions and Verdict Sheet on Indemnification and Elements of the Claims

Clearwater argues that it is entitled to a new trial because the "verdict sheet on the common law of indemnification [erroneously] permitted the jury to find Utica was obligated to pay certain amounts to Goulds."  (Dkt. No. 258, Attach. 1 at 33-34.)  Further, it asserts that "[t]he jury instructions erroneously instructed the jury on Utica's ability to prove its liability under the common law of indemnification with proof of a good faith settlement with Goulds."  (*Id.* at 34.)  It goes on to contend that the jury instructions were improper in light of the post-verdict *Munich* decision, (*id.* at 35), and

27

that the jury instructions and verdict sheet improperly "provided the jury a path to finding Clearwater liable without requiring Utica to prove all four essential elements of its contract claims by a preponderance of the evidence." (*Id.* at 35.)

Clearwater's position on the jury instructions and verdict sheet, especially with respect to the common law of indemnification, was clear before the jury was charged and presented with the verdict sheet. (Dkt. No. 242 (Clearwater's proposed jury instructions); Dkt. No. 245 (Clearwater's proposed verdict sheet); (Dkt. No. 240 (Clearwater's memorandum regarding the applicability of common law indemnification to the action).) The court is no more persuaded by Clearwater's arguments now than it was before, when it declined to adopt its proposed instructions and verdict sheet.

With respect to the common law of indemnification, even if the instructions or verdict sheet, were legally flawed it would not affect the jury's verdict, as the jury found Clearwater liable under the umbrella policies. (Dkt. No. 251.) For these reason, Clearwater's motion for a new trial is denied.

**G.    Damages**[8]

Clearwater argues that the court should vacate the award of prejudgment interest or amend the date from which Utica is entitled to begin calculating prejudgment interest.  (Dkt. No. 258, Attach. 1 at 36-40.) In support of this position, Clearwater contends that calculating prejudgment interest beginning on the date selected by the jury, December 2, 2012 (thirty days after the date of the first reinsurance bill submitted to Clearwater that went unpaid), "runs afoul of New York law and results in an improper windfall to Utica" and "there is no support in the record for the jury to have awarded prejudgment interest beginning then."  (*Id.* at 36-38.)

Utica argues that Clearwater waived this argument by not objecting to the jury instructions and verdict form that required the jury to select a date for the calculation of prejudgment interest, (Dkt. No. 264 at 37-41), and the date selected by the jury is supported by the evidence and law, (Dkt. No. 264 at 42-44), but that the judgment should be amended to include the specific amount, (Dkt. No. 255, Attach. 1 at 1-5).

"In a diversity case, state law governs the award of prejudgment

---

[8]  For the sake of clarity, Utica's motion to amend the judgment and associated briefing will be discussed contemporaneously with Clearwater's motion.

interest." *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008).  New York Law governs this action.  (Dkt. No. 54 at 6 n.3.)  N.Y. C.P.L.R. 5001(a) provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract."  *See ABKCO Music & Records Inc. v. Chimeron LLC*, 517 F. App'x 3, 4 (2d Cir. Feb. 21, 2013) (internal quotation marks and citation omitted).  "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. 5001(b).

    As a preliminary matter, Clearwater did not waive their argument regarding prejudgment interest.  (Dkt. No. 1692 (the court stating that Clearwater "was free to raise [this] issue with [it] by way of motion" after Clearwater objected to the jury's selection of the date to begin calculating prejudgment interest after being prohibited by the court from objecting beforehand); Dkt. No. 245 at 4 (Clearwater's proposed verdict form allowing for the selection of more than one date for the purposes of calculating prejudgment interest).)  Failing to raise the issue in its Rule 50(a) motion does not waive the argument now because the jury instructions did not exist when Clearwater filed its rule 50(a) motion.

Turning to the substance of the argument, calculating prejudgment interest beginning on December 2, 2012, would result in a windfall to Utica, and no reasonable jury could have found that prejudgment interest should run for the total damages beginning on December 2, 2012.  (Dkt. No. 261, Attach. 1 (Ex. P-329A (showing that only a fraction of the total damages awarded had accrued by December 2, 2012)); *see GE Funding Capital Mkt. Servs., Inc. v. Nebraska Inv. Fin. Auth.*, 767 F. App'x 110, 115 (2d Cir. 2019) ("New York courts accordingly have looked to the economic realities of a given case to avoid conferring windfalls in the form of prejudgment interest."); *see also Random Ventures, Inc. v. Advanced Armament Corp., LLC*, No. 12 Civ. 6792, 2014 WL 2082124, at *2 (S.D.N.Y. May 2, 2014) ("[T]he Court agrees that no prejudgment interest should be imposed with respect to . . . payments [that] had not yet become due at the time of the breach, an award of prejudgment interest would result in a windfall.") Therefore, the judgment must be amended.

Clearwater and Utica both suggest "reasonable intermediate dates" from which to calculate prejudgment interest.  Utica proposes September 20, 2013, the date this action was filed, or, December 16, 2013, the median date between thirty days after Utica's first bill on June 22, 2011,

and thirty days after the final bill on May 3, 2016.  (Dkt. No. 264 at 45.) Clearwater proposes September 2, 2015, as a reasonable intermediate date, because that "is in or around" the "midpoint for billings."  (Dkt. No. 261 at 9.)

The court agrees with Clearwater that September 2, 2015 is a reasonable date to begin calculating prejudgment interest.[9]  *See Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, 577 F. App'x 58, 61 (2d Cir. 2014) ("District courts are afforded wide discretion in determining a reasonable intermediate date from which to calculate prejudgment interest." (internal quotation marks and citation omitted)); *see also Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 435 (S.D.N.Y. 2004) ("[W]here damages are incurred at various times after the cause of action accrues, [N.Y. C.P.L.R.] 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).  Using September 2, 2015 to

---

[9]  The court previously stated "a midpoint between ninety days after the oldest unpaid billing . . . and ninety days after the most recent unpaid billing" would be an appropriate method to determine a reasonable midpoint.  (Dkt. No. 130 at 4.)  However, this determination was made almost six years ago and in connection with an order which was ultimately vacated by the Second Circuit.  The court now believes that the midpoint for billings is a more fair way to calculate the reasonable intermediate date.

begin calculating prejudgment interest yields $5,741,397.12.[10]

Clearwater's motion to amend is granted in part, in so far as the judgment will be amended to reflect this,[11] and denied in all other respects.  Utica's motion to amend the judgment is denied.[12]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Utica's motion to correct or amend the judgment (Dkt. No. 255) is **DENIED**; and it is further

**ORDERED** that Clearwater's motion for judgment as a matter of law, for a new trial, or to alter or amend the judgment (Dkt. No. 258) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** to the extent that it sought the judgment be amended to include $5,741,397.12 in prejudgment interest; and

---

[10]  Nine percent (the statutory interest per annum) of the jury award of $10,901,005.03 yields a per deem rate of interest of $2,687.92.  $2,687.92 times 2,136 (the number of days from September 2, 2015 to July 8, 2021) equals $5,741,397.12, the total prejudgment interest amount.

[11]  Clearwater contends that one day of post-verdict interest should also be awarded, pursuant to N.Y. C.P.L.R. 5002, because the final judgment was entered one day after the verdict. (Dkt. No. 261 at 10.)  However, "post[-]judgment interest is governed by federal statute [in a diversity case]" and is "calculated from the date of the entry of the judgment" not entry of verdict.  *Schipani v. McLeod*, 541 F.3d 158, 164-65 (2d Cir. 2008).

[12]  Clearwater also moved for a stay pending resolution of the post-trial motions.  (Dkt. No. 259, Attach. 1.)  That motion is denied as moot.

**DENIED** in all other respects; and it is further

**ORDERED** that the Clerk is directed to amend the judgment (Dkt.

No. 252) to include $5,741,397.12 in prejudgment interest in favor of Utica;

and it is further

**ORDERED** that Clearwater's motion to stay the judgment (Dkt.

No. 259) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

March 18, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge